## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANGEL DAVID MORALES-VALLELLANES | CIVIL NO. 97-2459(HL) |
| Plaintiff, | |
| v. | |
| WILLIAM J. HENDERSON, UNITED STATES POSTMASTER GENERAL; AMERICAN POSTAL WORKERS UNION, PUERTO RICO AREA LOCAL (A.P.W.U.-P.R.A.L.)A.F.L.-C.I.O., DANIEL SOTO, PRESIDENT A.P.W.U.-PRAL; ENRIQUE LOPEZ | DAMAGES BASED ON RETALIATION AND DISCRIMINATION; PROHIBITED PERSONNEL PRACTICES; UNFAIR LABOR PRACTICES; BREACH OF COLLECTIVE BARGAINING AGREEMENT |
| Defendants | TRIAL BY JURY IS HEREBY REQUESTED |

## AMENDED COMPLAINT

TO THE HONORABLE COURT:

COMES NOW, Plaintiff, by and through the undersigned attorney and very respectfully alleges, states and prays:

### I.    JURISDICTION AND VENUE:

1.     This Honorable Court has jurisdiction over the instant case since this is a civil action for damages brought against the United States Postal Service. 39 U.S.C. § 409(a). Furthermore, Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy. 39 U.S.C. § 1208(b).

2.     As the violation of the contract between the United States Postal Service and the plaintiff's labor union, the prohibited personnel actions, the unlawful employment practices and other federal statutory violations complained of herein occurred within the District of Puerto Rico,

Complaint
Angel David Morales-Vallellanes
Page 2

venue is proper in this District pursuant to the above referred laws and statutes in paragraph number one (1).

## II. THE PARTIES:

3.    Plaintiff Angel David Morales-Vallellanes is a single man at all times relevant her he was and is still a resident of Guaynabo, Puerto Rico, of legal age and sound of mind.

4.    Co-defendant William J. Henderson, U.S. Postmaster General, is herein included the chief executive officer and in representation of the United States Postal Service ("U.S.P.S." The U.S.P.S. was plaintiff's employer at all times relevant hereto and is an independen establishment of the executive branch of the Government of the United States, which may sue and be sued in its official name. 39 U.S.C. § 401(1). The U.S.P.S. is engaged in the collection, handling, transportation, delivery, forwarding, returning, and is authorized to hold and dispose of undeliverable mail. The U.S.P.S. committed unfair labor practices, prohibited personnel actions, as well as retaliatory and discriminatory acts through its officers and/or employees against plaintiff. Also, by causing plaintiff's constructive discharge from employment, the U.S.P.S. violated the collective bargaining agreement between the U.S.P.S. and plaintiff's labor union.

5.    Co-defendant American Postal Workers Union, AFL-CIO ("A.P.W.U."), is, and at all times mentioned was, a labor organization representing employees in an industry affecting commerce as defined in Section 501(1), (3) and 2(5) of the LMRA, 29 U.S.C. § 142(1), (3), and 152(5)), and within the meaning of Section 301 of the Act, 29 U.S.C. § 185). During all times mentioned, A.P.W.U. was the recognized and/or certified collective bargaining representative of the bargaining unit consisting of the U.S.P.S.'s employees, including plaintiff.

6.    Co-defendant Daniel Soto, is the president of the Puerto Rico Area Local A.P.W.U.,

**Complaint**
**Angel David Morales-Vallellanes**
**Page 3**

is included herein in his official capacity for his negligent acts and omissions in processing the

grievances presented to the A.P.W.U. by the Plaintiff and for conspiring with other co-defendants

in the establishment of a hostile work environment against the Plaintiff and in the commission of

the unfair labor practices alleged in the instant complaint.

7.      Co-defendant Enrique Lopez, manager of the U.S.P.S. Caparra Station, is included

in his personal and official capacity for the intentional, malicious, retaliatory, and discriminatory

acts committed against the Plaintiff plead herein.

8.      John and Jane Doe are included as additional unknown defendants for their respective

acts or omissions committed against the Plaintiff.

9.      Defendants are jointly and severally responsible for all acts committed by themselves

its agents, representatives and employees within the scope of their employment.

**III. FACTS:**

10.     Plaintiff was employed by codefendant U.S.P.S. and is a member of A.P.W.U. since

1988.

11.     Angel David Morales-Vallellanes was employed by the codefendant United States

Postal Service (hereafter U.S.P.S.) and was represented for the purposes of the collective bargaining

by codefendant American Postal Workers Union, AFL-CIO (hereafter A.P.W.U.), at all times

material to this action.

12.     Plaintiff filed several complaints about health and safety hazards at his workplace,

the Caparra Heights Station of the U.S.P.S., at the Occupational Safety and Health Administration

("O.S.H.A.").

13.     O.S.H.A. investigated plaintiff's complaints and assured plaintiff that he was

**Complaint**
**Angel David Morales-Vallellanes**
**Page 4**

protected under federal law against any acts of retaliation or discrimination resulting from his safety and health activities. After O.S.H.A. confirmed through its inspections that plaintiff's complaint were true, O.S.H.A. ordered that the safety and health violations be corrected. O.S.H.A. sent its inspectors twice. However, well after the time period allowed after each inspection for the corrections to take place, no action was taken by the U.S.P.S. through its management for the Caparra Heights Station.

14. Plaintiff kept O.S.H.A. informed about his employer failure to take remedial action. Plaintiff also informed O.S.H.A. on several occasions that his employer suspected that plaintiff was the one that had filed the complaints at O.S.H.A. -because of plaintiff's prior safety and health activities- and that he was the subject of retaliatory and discriminatory practices from his employer U.S.P.S..

15. Because of the U.S.P.S.'s failure to take corrective action, notwithstanding that Safety Forms 1767 had been filed by Plaintiff and other coworkers, as the U.S.P.S. procedure directs, on April 7, 1995, as a result of complaints made by fellow employees, Plaintiff filed a formal complaint at O.S.H.A. regarding dust accumulation and unsanitary conditions at his workplace.

16. O.S.H.A. ordered U.S.P.S. to correct the violations by June 19, 1995 without an inspection.

17. On June 21, 1995, U.S.P.S. Postmaster Odarit Tirado responded accepting the dust accumulation problem as well as the problem in regard of rodents and roaches and assured that they had already taken care of the situation.

18. One week later, Plaintiff was threatened by coworker Antonio Hernández supported

Complaint
Angel David Morales-Vallellanes
Page 5

by employee Luis Ramos. Plaintiff reported this incident to Postal Inspection Service but nothing was done.

19.     On July 3, 1995, Plaintiff was threatened again by employee Antonio Hernández. This time he stated that he was going to use a gun against Plaintiff. Plaintiff also reported this incident to Postal Inspection Service but again nothing was done.

20.     On August 1, 1995, Plaintiff advised O.S.H.A. that the violations were not corrected and requested to follow up on the investigation and conduct an inspection at the Caparra Heights Station.

21.     For several years, Plaintiff had been interested in a position with Saturdays and Sundays off. He had bided on several occasions for a Distribution and Window Clerk position with those days off, arriving second on the last bid. In January 1996, a new bid was posted for a position as the one sought by the Plaintiff. Upon gaining knowledge of Plaintiff's interest in the position and his chances to get it, Manager José Supúlveda and Supervisor Juan Rodríguez changed the days off, from Sunday and Saturday to Sunday and Thursday, in retaliation for plaintiff OSHA's activities and E.E.O. complaint filed by the Plaintiff several years ago against them.

22.     On February 15, 1996, Plaintiff filed an E.E.O. precomplaint before E.E.O. officer Carmen Rosa, wife of U.S.P.S. of Safety Manager, Cándido López, based on retaliation against Manager José Sepúlveda and Supervisor Juan Rodríguez. Nothing has been done as of this date with regard to Plaintiff's complaint.

23.     On February 23, 1996, O.S.H.A. sent a letter to Manager José Sepúlveda notifying that unsanitary conditions were maintained in the working facilities at Caparra Station and that the work area was filthy due to dust accumulation. O.S.H.A. gave until March 4, 1996 as deadline to

Complaint
Angel David Morales-Vallellanes
Page 6

correct violations, in order to avoid an O.S.H.A. protected inspection (another opportunity given by O.S.H.A. to U.S.P.S. in order to avoid an O.S.H.A. inspection). Plaintiff was informed that O.S.H.A. provides protection for employees against retaliation because of their involvement in safety and health protection activities.

24.     On March 5th, 1996, a meeting for Safety Captains was held at General Post Office, in Hato Rey, and Plaintiff attended the same as Safety Captain of Caparra Station. During the meeting, John Malavé, District Manager, and Virginia Matías, Postal Operations Manager, spoke about the importance of informing management about safety hazards. At that time, Plaintiff informed Mr. Malavé about the safety hazards at the Caparra Station, and that he had to refer the matter to O.S.H.A. due to the lack of interest to safety issues showed by management. In addition, Plaintiff informed Mr. Malavé about the order issued by O.S.H.A. to correct the safety violations at the Caparra Heights Station by March 4, 1996 in order to avoid an inspection, but time had elapsed and the violations were not corrected. Same day afternoon, John Malavé went to Caparra Station and was seen talking to employee Luis Ramos.

25.     Two (2) days after the meeting for Safety Captains, on March 7th, 1996, Plaintiff was placed under investigation by U.S.P.S. for the third time regarding a threat to death he allegedly made to coworker Luis Ramos back in June 29, 1995. Notwithstanding the fact that Plaintiff was cleared twice from the charges presented against him, Postal Inspector Eliezer Julián interviewed plaintiff and asked him to take a polygraph test.

26.     On March 19, 1996, Plaintiff sent a certified letter to O.S.H.A. Area Director José Carpena informing that he was being discriminated against and was the object of retaliatory acts due to his safety and health complaints filed at O.S.H.A..

Complaint
Angel David Morales-Vallellanes
Page 7

27.    Caparra Station Supervisor Enrique López issued a letter of warning to Plaintiff on March 23, 1996 for unsatisfactory performance based on Mr. Morales alleged abuse of his coffee breaks. The letter of warning was later eliminated from Plaintiff's record as it was proven that the same was based on false facts.  Same day Plaintiff informed John Malavé by certified letter all relevant facts up that date.

28.    On March 26, 1996, plaintiff sent a second certified letter to O.S.H.A. Area Director, José Carpena informing with full details the discriminatory acts and reprisals suffered to date.

29.    On April 1st, 1996, Plaintiff received a letter informing that from that date, his new contact at O.S.H.A. would be John E. Plummer, Director of Office of Federal Agency Programs.

30.    On April 6, 1996, Plaintiff sent a second certified letter to John Malavé explaining in detail and in chronological order, everything regarding the safety and health violations at Caparra Station, the discriminatory acts committed against him and the hostile environment promoted particulary by supervisor Enrique López against Plaintiff.  Plaintiff received no response to this letter. Three (3) days later, a new discriminatory policy of coffee and lunch breaks was established by supervisor, Enrique López at Caparra Station on April 9, 1996, against male employees, specially Plaintiff.

31.    By April 10, 1996, Plaintiff received a medical report from his Otolaryngologist which stated that the unsafe working conditions existing at his workplace were affecting him. The doctor recommended a clean workplace environment in order to improve his condition.  Plaintiff gave this letter to supervisor Enrique López.

32.    On April 25th, 1996, Plaintiff filed an E.E.O. precomplaint based on retaliation and sex discrimination, regarding the application of the new break policy.

Complaint
Angel David Morales-Vallellanes
Page 8

33.    On May 18, 1996, Supervisor Enrique López met with clerks of Caparra Station and said, in an angry manner, that "because somebody filed an E.E.O. complaint against me, now everybody must use time cards and hit them each time an employee takes a break". With this action he tried to put employees against Plaintiff, and to promote and maintain a hostile environment against him. As a result, several employees blamed Plaintiff for López' action.

34.    On or about May 21, 1996, Caparra Station Supervisor, Enrique López removed Plaintiff from his regular duties as a Business Reply Mail Clerk, Postage Due Clerk and Express Mail Clerk, where Plaintiff had been assigned as a reasonable accommodation due to a job related injury. He was replaced by coworker Mayra Irene. Later, due to his new duties, Plaintiff hurt his right arm and was forced to begin treatment for his condition in August 1996 from a physical therapist. Plaintiff had to file an O.W.C.P. Form CA-2A.

35.    On June 13, 1996, O.S.H.A. inspectors Madeline Medina and Efigenio Rivera appeared at Caparra Station to perform an inspection. They found that Plaintiff's reports were true and five additional violations. O.S.H.A. gave until to October 9, 1996 to correct the violations. Again, O.S.H.A. informed Plaintiff that he was protected by law against retaliation and discrimination due to his safety and health activities.

36.    In a A.P.W.U. membership meeting on June 22, 1996, Plaintiff read a letter to A.P.W.U. President Héctor Torres requesting a reconsideration to Mr. Torres' refusal to appoint Plaintiff as Union Shop Steward for Caparra Station. His answer was that Plaintiff was under an investigation by the Postal Inspection Service regarding the Luis Ramos issue and that Plaintiff refused to take a polygraph test.

37.    On June 27, 1996, Plaintiff sent a third letter by fax to John Malavé informing him

**Complaint**
**Angel David Morales-Vallellanes**
**Page 9**

that the maintenance employee for Caparra Station had been sick for several days, so Caparra

Station had been not cleaned since then. Plaintiff received no response to this letter.

38.    On July 6, 1996, while Plaintiff's car was within the parking lot area of Caparra

Station, which has a controlled access system, one tire was punctured. Four (4) days after that

incident, on July 10th, 1996, the two (2) front tires of Plaintiff's car were punctured while the vehicle

was within the same parking lot area. Both incidents were reported to the Postal Inspection Service,

but no action was taken.

39.    On August 6, 1996, Plaintiff sent a certified letter to his new contact at O.S.H.A.,

John E. Plummer, explaining and informing in detail the reprisals taken against Plaintiff to that date.

40.    Caparra Station Supervisor, Enrique López met on August 24, 1996 with Plaintiff and

another coworker. He warned that he was going to watch them very closely but specially Plaintiff

because of the E.E.O. complaint Plaintiff filed against him, mentioned above. López said that he

was going to check their coffee breaks.

41.    On August 21st, 1996, after the retaliatory and discriminatory treatment he had been

receiving at his workplace, Plaintiff began to receive treatment from doctor Víctor Irizarry,

Psychologist.

42.    On September 5, 1996, Plaintiff filed a formal E.E.O. complaint based on sex

discrimination and retaliation, regarding breaks policy, harassment, and the removal of his duties.

43.    On October 10, 1996, after months waiting any action from O.S.H.A., Plaintiff

received a letter from John E. Plummer which stated that O.S.H.A. had no authority to protect Postal

employees and that they requested the U.S.P.S. to make an internal investigation. O.S.H.A. notified

Plaintiff that it did not have authority "to take remedial action on behalf of Federal employees who

**Complaint**
**Angel David Morales-Vallellanes**
**Page 10**

believe that they have suffered reprisal for reporting unsafe or unhealthful working conditions". At the same time, O.S.H.A. -without plaintiff's authorization- forwarded plaintiff's file to the U.S.P.S.. Also, O.S.H.A. informed that they gave to the U.S.P.S. all the information Plaintiff sent to O.S.H.A. regarding Plaintiff's reprisal and discrimination charges. In so doing O.S.H.A. confirmed that plaintiff was the one that had been filing complaints of safety and health violations and opened the door for additional reprisals against the plaintiff. Plaintiff was left defenseless.

44.    On October 26, 1996, Caparra Station Supervisor Enrique López asked Plaintiff to provide medical evidence regarding his right arm condition. He explained Plaintiff that he had to open his right arm injury case in order to return Plaintiff to his granted reasonable accommodation duties.

45.    On November 2, 1996, Plaintiff received a letter from O.S.H.A. informing that management at Caparra said that Safety violations were corrected.

46.    Plaintiff sent a certified letter to O.S.H.A. informing that Management at Caparra Station were not telling the truth because violations remained uncorrected.

47.    On December 6, 1996, O.S.H.A. inspectors Madeline Medina and Efigenio Rivera came to perform a second inspection at Caparra Station. They found that the violations had not been corrected. In addition, they found an hostile and aggressive behavior from supervisor, Enrique López. In a very revealing narrative report made by O.S.H.A. inspectors, they quoted Supervisor Enrique López saying that "the employee who was reporting conditions to O.S.H.A. will be severely punished". O.S.H.A. inspectors warned López that he could not do that.

48.    After that day, Plaintiff's work within the U.S.P.S. became a nightmare. Harassment against him was severe and on a daily basis.

Complaint
Angel David Morales-Vallellanes
Page 11

49. In the same narrative report, O.S.H.A. inspectors found several contradictory statements between what supervisor López said and what they found. Supervisor López called one of the inspectors a liar. It was clear that Supervisor López had no interest to correct the safety and health violations. What he wanted was to identify the employee that made the reports to O.S.H.A..

50. A that time, a new deadline was given to the U.S.P.S. to correct the violations was set for January 17, 1997.

51. Also on December 6, 1996, Safety Manager Cándido López and a U.S.P.S. Labor Relations Officer, Juan Delgado went to Caparra Station. Supervisor Enrique López talked to them about the O.S.H.A. inspection.

52. On the very next day, Plaintiff received a strange provocation from employee Antonio López. Without any reason, he called Plaintiff "you are a son of a bitch". There were witnesses but nobody wanted to testify. Plaintiff reported in writing this to supervisor Enrique López, but he did nothing.

53. Plaintiff received a letter of warning on December 13th, 1996 from Supervisor Enrique López urging Plaintiff to submit a medical evaluation regarding Plaintiff's right arm condition.

54. On December 14, 1996, Plaintiff received another provocation from supervisor Enrique López. At the end of the tour, when Plaintiff was going to reach his time card, López stood at one side of Plaintiff while letter carrier Eliezer Báez stood at the other side almost not letting Plaintiff pass so he had to look for a little space in order to avoid bumping them while Eliezer Báez shouted provocative phrases.

55. Plaintiff sent a fourth certified letter to District Manager John Malavé informing

**Complaint**
**Angel David Morales-Vallellanes**
**Page 12**

about all the harassment and provocations he had received including the latest incident with supervisor López on December 14. Plaintiff mentioned that he was concerned about his personal safety. Mr. Malavé did not respond to this letter.

56.    On December 17, 1996, a new uniform policy was notified by Caparra Station Supervisor Enrique López in a meeting with all employees. During the meeting, supervisor Enrique López approached Plaintiff and informed him that he could no longer wear the U.S.P.S. jacket that he had been wearing for several years. On the same day, Plaintiff meet with the superiors of Enrique López, Virginia Matías and Rubén Lugo, Acting Postal Operations Manager, about his need to wear his jacket because Plaintiff was very sensitive to cold. Both superiors acknowledged that the jacket was proper within the U.S.P.S. Code and told Plaintiff not to worry because they would discuss the issue with supervisor Enrique López.

57.    In despite of the above, Plaintiff was suspended for seven days on December 20th, 1996, for using his jacket. The letter of suspension was given to Plaintiff during the Christmas party in front of several coworkers of the Caparra Station. It was humiliating to Plaintiff.

58.    On or about December 21, 1996, Supervisor Enrique López was promoted to Manager.

59.    On December 23, 1996, Plaintiff met with Rubén Lugo, Acting Postal Operations Manager, a superior of newly named manager Enrique López, regarding the suspension letter. During the conversation Lugo admitted that the suspension was an act of revenge from Enrique López and further assured Plaintiff that he was going to take care of this situation. Nevertheless, Lugo did nothing.

60.    Plaintiff, on December 24, 1996, gave to Manager Enrique López the O.W.C.P. form

Complaint
Angel David Morales-Vallellanes
Page 13

CA-2A for recurrence of plaintiff's condition of his arm, as requested by Mr. López, as well as all

pertinent documents in order to reopen his right arm case.

    61.    On December 27, 1996, Plaintiff filed a new E.E.O. complaint based on retaliation

and physical disability regarding the letter of warning given to him on December 13, 1996.

    62.    On December 28, 1996, Plaintiff was threatened and received provocations of sexual

nature from coworker Antonio López (same employee who provoked him on December 7, 1996).

He informed, in writing, to manager Enrique López about the occurrence of this incident. No action

was taken.

    63.    Plaintiff on December 30th, 1996, sent a fifth certified letter to John Malavé about

the incident of December 28. Also, he sent a certified letter to EEO officer Carmen Rosa, on the

same subject. He received no response from John Malavé.

    64.    On December 31, 1996, the U.S.P.S. Safety Manager Cándido López and Mr.

Delgado came to Caparra Station to interview Plaintiff regarding his allegations of reprisal due to

his Safety and Health Protecting Activities.

    65.    Manager of Caparra Station Enrique López informed Plaintiff on January 2nd, 1997

that he would no longer be the Safety Captain for the Caparra Station.

    66.    On January 4th, 1997, for the third time Plaintiff's car was vandalized when someone

poured sugar in the fuel tank. Plaintiff was driving on the highway when suddenly the car stopped

running. This life threatening incident was notified to the Postal Inspection Service by certified

letter. Nothing was done.

    67.    Manager Enrique López expulsed Plaintiff on January 10th, 1997 from Caparra

Station. He explained that suddenly he did not have any work for Plaintiff because of his right arm

Complaint
Angel David Morales-Vallellanes
Page 14

condition. Plaintiff's expulsion was until January 17th, 1997, and he did not received payments for

that period.

68.    On January 17, 1997, due to the hostile environment promoted against him, Plaintiff

began to see psychologist Iris Tous, of U.S.P.S. Employee Assistance Program.

69.    On January 18, 1997 Plaintiff began his seven (7) days suspension regarding the

jacket issue. On the same date, he received a letter from manager Enrique López notifying him to

report at the Caparra Station on or before January 22nd, 1997 with the medical evidence. This was

in despite of the fact that Plaintiff had already submitted all the medical evidence on December 24,

1996.

70.    Plaintiff returned to work on January 21, 1997, as per requested in the above

mentioned letter. However Manager Enrique López expulsed him again on the same date and

alleged he was still suspended, that he only wanted from Plaintiff was the medical evidence about

the condition in Plaintiff's right arm. On the same date Manager López expressed Plaintiff that he

had received his certification as Union Shop Steward for the Caparra Station.

71.    The following day, January 22nd, 1997, in a letter directed to Manager Enrique

López, a minority of the employees at Caparra Station -encouraged by Mr. López- protested

Plaintiff's appointment as Union Shop Steward.

72.    On January 24, 1997, Plaintiff filed another E.E.O. based on reprisals and physical

disability regarding the suspension letter, sexual harassment and his expulsion of January 10.

73.    Plaintiff received a phone call from E.E.O. officer Frank Giraud in order to meet on

Tuesday, January 28, with Virginia Matías, Enrique López and himself. Plaintiff requested Alberto

Ortiz, Union Representative, to be present. Mr. Giraud alleged that the meeting would be to try to

Complaint
Angel David Morales-Vallellanes
Page 15

solve Plaintiff's complaints.

74.    On the day of the meeting mentioned above, U.S.P.S.' Virginia Matías refused to meet and decided to make an independent investigation. However, the investigation conducted was not about Plaintiff's complaints but about Plaintiff's behavior and directed against Plaintiff. In fact, the investigators collected signatures and statements against Plaintiff as Union Shop Steward and Manager Enrique López called, on the same date, in the afternoon, A.P.W.U. headquarters to protest Plaintiff's certification as Shop Steward.

75.    On the same day, Plaintiff received a letter from O.S.H.A. informing that manager Enrique López stated that safety violations at Caparra Station were corrected. Again, that was not true.

76.    Also on January 28, Plaintiff submitted once again all the medical evidence regarding his right arm condition to the U.S.P.S. Injury Compensation Office.

77.    After the investigation was completed, on January 31st, 1997, Virginia Matías met with A.P.W.U. President, co-defendant Daniel Soto, and stated that she wanted to remove Plaintiff from Caparra Station, but she was not able to do so since Plaintiff was a Union Shop Steward at the station. Several days later, A.P.W.U. President Daniel Soto, dismissed Plaintiff as Shop Steward.

78.    On February 1, 1997, acting supervisor William Morales, a subordinate to Manager Enrique López, expulsed Plaintiff once again from the Caparra Station because, supposedly, there was no work for Plaintiff. However, Plaintiff's duties were assigned to another employee. Plaintiff was thereby placed on leave without pay.

79.    On the same date (February 1st, 1997), Plaintiff sent a letter to O.S.H.A. informing that safety violations had not been corrected.

Complaint
Angel David Morales-Vallellanes
Page 16

80.     On February 4, 1997, Plaintiff was expulsed from work again by acting supervisor William Morales for the same reason stated above.

81.     On February 5, 1997, Plaintiff was forced to go to Hospital del Maestro for emergency treatment on his right arm as a result of the duties imposed on Plaintiff, as stated above; in despite of the fact that he had a diagnosed disability and that he had been given a reasonable accommodation for such disability. On the same day, Plaintiff began to see Psychiatrist Guillermo Hoyos (recommended by U.S.P.S. Employee Assistance Program Iris Tous) who found Plaintiff with a Mixed Anxiety and Depression Adjustment Disorder related to his work environment.

82.     By February 6, 1997, A.P.W.U. President Daniel Soto, after interviewing a few employees, dismissed Plaintiff as Union Shop Steward without even interviewing Plaintiff, and without following the Union's by-laws. Nevertheless, Plaintiff still was supported by the majority of the union members for the Shop Steward position at the Caparra Station.

83.     On February 7, 1997, Plaintiff was absent due to his condition in his right arm. The acting supervisor, William Morales, called Plaintiff to his house to harass him. Plaintiff sent two letters to Union President, Daniel Soto making him responsible for any and all actions taken by U.S.P.S.' management against him. Also, he requested Union representation regarding the two expulsions he suffered from supervisor William Morales. However, Daniel Soto failed to give Plaintiff union representation.

84.     Also on February 7, 1997, Plaintiff sent a letter via certified mail to Gail Sonneberg, Vice President of Human Resources Department, U.S.P.S., requesting the results of the investigation requested by O.S.H.A. in relation to Plaintiff's allegations of reprisal for his safety and health activities and the complaints Plaintiff had filed with O.S.H.A., as per the October 10, 1996 letter

Complaint
Angel David Morales-Vallellanes
Page 17

from John E. Plummer, Director of Office of Federal Agency Programs at O.S.H.A., informing

Plaintiff that O.S.H.A. had no authority to protect him and that the matter had been submitted to the

U.S.P.S.. Plaintiff received no response to his letter.

85.    On February 8, 1997, after Plaintiff gave to supervisor William Morales notice of the

settlement of the grievances filed by plaintiff regarding his suspension letter of December 20, 1996,

and the letter of warning of December 13, 1996. Mr. Morales got very angry and threatened

Plaintiff in the presence of other coworkers saying: "Remember that from all supervisors here I am

the one who can fuck you up the most." To date, plaintiff has not been compensated for the time that

he was suspended.

86.    Plaintiff notified via certified mail about the occurrence of the incident described

above to District Manager John Malavé and Virginia Matías. Again no response. This was the sixth

(6th) letter from Plaintiff to Mr. Malavé.

87.    On or about February 10, 1997 Plaintiff received two letters from Union President,

Daniel Soto. He stated in one letter that Plaintiff had to drop all grievances filed while he was Shop

Steward, one of which was about the dust problem and the other about one of his expulsions. In the

other letter, A.P.W.U. President Daniel Soto accepted that his investigation was prompted by

U.S.P.S.'s management investigation.

88.    Plaintiff went to a doctor's appointment on February 12, 1997 for his arms condition.

Doctor Ricardo Rodríguez found his arms in such a bad condition that he decided to excuse him

from work until February 19, 1997. Also he referred Plaintiff to receive some physical therapy and

prescribed some anti-inflammatory medicines.

89.    On February 20, 1997, Plaintiff came back to work. He was removed from Caparra

Complaint
Angel David Morales-Vallellanes
Page 18

Station by Virginia Matías because allegedly he was a safety hazard and a homosexual. She transferred him to the General Post Office, in San Juan. She alleged that Plaintiff was the one who promoted the hostile atmosphere at Caparra Station, that he was a safety hazard and that she had statements about Plaintiff from some of his co-workers saying that he was a homosexual. However, she refused to produce such statements to Plaintiff. Later, upon request from the Plaintiff, the A.P.W.U., in conspiration with U.S.P.S. management, refused to give or even show Plaintiff the same statements.

90.    On February 27, 1997, after several months under emotional and physical therapy, Plaintiff was given a medical certificate stating that he was not able to work. The U.S.P.S. was not a safe workplace anymore for Plaintiff as a result of the intentional emotional distress inflicted on the Plaintiff.

91.    Plaintiff, as a result of the retaliations taken and the hostile environment created against him, became afraid for his life and personal security.

92.    On March 11, 1997 Plaintiff sent a certified letter to Postmaster John Malavé requesting all evidence, pursuant to the Freedom of Information Act, the U.S.P.S. possessed regarding Plaintiff's cases. As usual, he received no response to this letter.

93.    On March 17, 1997, Plaintiff sent a letter to Union President Daniel Soto requesting all evidence he had regarding the U.S.P.S. investigation performed on January 29, 30 and 31, 1997 at Caparra Station, mentioned above. Plaintiff received no response to this letter.

94.    On March 26, 1997 Plaintiff sent a second letter to Union President in which Plaintiff requested the same information.

95.    On April 1, 1997 Plaintiff received a letter from Union President telling that he is not

Complaint
Angel David Morales-Vallellanes
Page 19

going to produce the documents requested by Plaintiff.

96.    On April 2, 1997, General Post Office Manager Rafael de Jesús, through his immediate supervisor, Claudia Ochoa requested Plaintiff more medical evidence in order to grant him sick leave.

97.    On April 23, 1997, Plaintiff sent two certified letters, one to Virginia Matías and one to District Manager John Malavé informing them about the fact that he was not receiving his salary. Plaintiff requested help to both of them in order to solve his problem. Plaintiff also requested any additional information that could help him. Again, he received no response to his letters.

98.    By May 10, 1997, Plaintiff sent a certified letter to U.S.P.S.' E.E.O. Officer, Frank Giraud, informing that since all time limits regarding his cases had expired, Plaintiff decided to file a civil action in the Federal District Court as permitted by law. He requested from Mr. Giraud all documents and information pertaining to any investigation regarding Plaintiff's cases. As may be expected by now, Mr. Giraud later admitted that no action had been taken by his office on Plaintiff's behalf.

99.    Plaintiff, as a result of the retaliatory and/or discriminatory acts committed by the co-defendants and because of the hostile environment promoted against him, was forced to leave his employment at U.S.P.S.. That is, Plaintiff was constructively discharged from the U.S.P.S..

100.    On September 5, 1997 Plaintiff sent a letter to Union President, Daniel Soto requesting the status of all his grievances. Later, on September 19, 1997, Plaintiff met Mr. Soto at the A.P.W.U. headquarters. Mr. Soto admitted that no action had been taken by him or the A.P.W.U. on Plaintiff's behalf.

COUNT I.    RETALIATION AND DISCRIMINATION

Complaint
Angel David Morales-Vallellanes
Page 20

101.    Plaintiff alleges and incorporates by reference each and every preceding allegation.

102.    The U.S.P.S., through its management, representatives and/or employees, has engaged in retaliatory activities against Plaintiff due to plaintiff's health and safety protection activities as alleged above, equal employment opportunity charges and filing of unfair labor practice charges.

103.    As a direct and proximate result of the U.S.P.S.' systematic, repeated and continuous harassment, as alleged above, the Plaintiff endured great mental suffering and emotional distress since his original notification to O.S.H.A. of the violations of safety and health standards at Caparra Station until Plaintiff's constructive discharge from employment.

104.    The U.S.P.S., Daniel Soto and Enrique López' conduct, as set forth above, constitutes unfair labor practices, prohibited personnel practices, retaliation, and discrimination against the Plaintiff for his willingness to engage in safety and health protecting activities and for attempting to vindicate his rights under applicable law.

105.    The U.S.P.S. and Enrique López violated Plaintiff's rights under Federal law when they unlawfully removed Plaintiff from the position granted to him as a reasonable accommodation for his arm condition, as alleged above. The duties imposed on Plaintiff were harmful to him and detrimental to his condition. Said co-defendants retaliated against the Plaintiff for his safety and health protecting activities by taking away Plaintiff's reasonable accommodation.

106.    Under Federal law, the employer is obliged to keep a disabled employee in the position granted to him as a reasonable accommodation.

107.    The duties imposed upon the Plaintiff involved the constant use of his arms, which aggravated Plaintiff's employment related injury in both arms, as set forth above.

**Complaint**
**Angel David Morales-Vallellanes**
**Page 21**

108.    Plaintiff, as a direct consequence of the employment related injury to his arms, is now suffering and will continue to suffer a limitation of his life activities and the performance of manual tasks. Also, his ability to work has been significantly reduced. The damages suffered by Plaintiff are hereby estimated in the amount of $200,000.00.

109.    As a result of said co-defendants intentional retaliatory and discriminatory acts, Plaintiff is entitled to monetary damages and such other relief, compensatory damages, damages for pain and suffering, out-of-pocket expenses, all of which are herein estimated in the amount of $500,000.00.

110.    Also, as a proximate result of co-defendants' conduct, Plaintiff has suffered and continues to suffer substantial losses in earnings, job experience, retirement benefits, and other employee benefits that he would have received absent co-defendants' intentional acts against the Plaintiff. Plaintiff is therefore entitled to front pay, back pay, severance pay and benefits. Such compensation is estimated in an amount no less than $2,000,000.

111.    As a further proximate result of the above mentioned acts, Plaintiff has suffered humiliation, mental pain and anguish, and loss of the ability to enjoy life. This damages are estimated in the amount of $1,000,000.00.

**COUNT II. CONSPIRACY**

112.    The U.S.P.S. and A.P.W.U., through its representatives, employees and agents, particularly co-defendants Daniel Soto and Enrique López, conspired against Plaintiff to cause his removal as Caparra Heights Station Shop Steward and later on his removal from Caparra Heights Station.

113.    Codefendant A.P.W.U. conspired with employer U.S.P.S. and caused the unlawful

Complaint
Angel David Morales-Vallellanes
Page 22

removal of Plaintiff as Shop Steward of the Caparra Station, his transfer to the General Post Office,

and later his constructive discharge from his employment from the U.S.P.S.. As a result of the

willful, illegal, retaliatory and discriminatory behavior described above, the Plaintiff has sustained

severe mental anguish and emotional distress. Also as a direct result of such behavior, the Plaintiff

was constructively discharged from his employment at the U.S.P.S.. Plaintiff thereby has sustained

damages and loss in the amount of $1,000,000.00.

### COUNT III. BREACH OF COLLECTIVE BARGAINING AGREEMENT

114.    Codefendants A.P.W.U. and Daniel Soto handled Plaintiff's meritorious grievances

against employer U.S.P.S. in an arbitrary, negligent and perfunctory manner, and permitted the

U.S.P.S.' retaliatory practices in violation of union's duty of fair representation.

115.    The Plaintiff as a member of A.P.W.U. was entitled to fair representation by the

A.P.W.U. to prevent and/or defend and/or protect him against the unfair labor and retaliatory

practices by employer U.S.P.S.. The A.P.W.U. has breached its duty of fair representation owed

to Plaintiff by arbitrarily, capriciously, in bad faith and/or invidiously failing to process timely

Plaintiff's grievances through their grievance procedure, including final and binding arbitration if

necessary.

116.    The above, as well as Plaintiff's constructive discharge, constitute a breach and

violation of the collective bargaining agreement in force between U.S.P.S. and A.P.W.U., which,

except for unusual circumstances not here pertinent, allows the U.S.P.S. to discharge employees

covered by the agreement only for just cause.

117.    Plaintiff's constructive discharge from employment also violates the collective

bargaining agreement between the U.S.P.S. and the A.P.W.U.

Complaint
Angel David Morales-Vallellanes
Page 23

118.    Plaintiff made demand on the A.P.W.U. and, particularly, on co-defendant Daniel

Soto, who was obliged under the bylaws of the A.P.W.U. to duly process all of Plaintiff's grievances

on his behalf and to secure and protect Plaintiff's rights.  However, co-defendants A.P.W.U. and

Daniel Soto failed and/or refused to timely process plaintiff's grievances and to protect and

represent Plaintiff in response to the U.S.P.S.' retaliatory and discriminatory acts described herein.

119.    The acts and omissions committed by codefendants A.P.W.U. and Daniel Soto were

intentional, malicious and in reckless disregard of Plaintiff's rights, and constitute an abuse of

authority, a breach of the bargaining agreement and the A.P.W.U.'s by-laws and a violation of the

duty of fair representation of Union members, all of which have resulted in damages to the Plaintiff

in the sum of $1,000,000.00.

120.    As a direct consequence of co-defendants A.P.W.U. and Daniel Soto's breach of their

duties and obligations, Plaintiff has sustained grave and extensive losses and damages that are

estimated in the amount of $1,000,000.00.

121.    For the time period after being constructively discharged from his employment,

Plaintiff has suffered loss of wages and benefits that are to be determined in accordance with the

law, from the moment of Plaintiff's discharge up until the jury's verdict.

## COUNT VI. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

122.    Plaintiff alleges and incorporates by reference each and every preceding allegation.

123.    The U.S.P.S., A.P.W.U., Daniel Soto and Enrique López, in committing the above-

described acts, intended to and did inflict severe emotional distress upon the Plaintiff.  Said co-

defendants acted with a reckless disregard of the probability of causing emotional distress to the

Plaintiff.

Complaint
Angel David Morales-Vallellanes
Page 24

124.    As a direct result of the outrageous acts and omissions, retaliatory conduct, and discrimination, the Plaintiff became physically distraught, suffered severe emotional distress, and was forced to seek medical treatment, as alleged above, all of which resulted in damages to him in the amount of $1,000,000.00.

## REQUEST FOR ATTORNEY'S FEES, INTEREST AND LITIGATION COSTS

125.    Plaintiff requests attorney fees, interest and litigation associated costs.

## NOTICE OF EXHAUSTION OF ADMINISTRATIVE REMEDIES

126.    Plaintiff Angel David Morales has exhausted administrative remedies before the Equal Employment Opportunity, Occupational  Safety and Health Administration and Collective Bargain Agreement.

## REQUEST FOR TRIAL BY JURY

127.    Plaintiff invokes his constitutional right to a jury trial.

WHEREFORE, it is respectfully requested to this Honorable Court to grant all the compensatory and punitive damages above requested as well as any other additional relief authorized under the Law.

Respectfully submitted.

In San Juan, Puerto Rico, this 3th day of  May, 1999.

MIGUEL E. MIRANDA GUTIERREZ
USDC-PR NO. 203110
COND. EL CENTRO I, LOCAL 15-132
HATO REY PUERTO RICO  00918
PHONE NO. 282-0022
FAX NO. 751-0883

Complaint
Angel David Morales-Vallellanes
Page 25

## VERIFICATION

I, Angel David Morales-Vallellanes, of legal age, single, resident of Guaynabo, Puerto Rico,

being duly sworn, depose and state:

1.       That the above are my personal circumstances.

2.       That I have read the foregoing complaint that the allegations contained are true to my

best information and by personal knowledge, except those alleged by information and belief, which

I also believe to be true.

In San Juan, Puerto Rico, this 3th day of May, 1999.

*Angel David Morales Vallellanes*

**ANGEL DAVID MORALES-VALLELLANES**

AFFIDAVIT NO. 4 9 7

Sworn and subscribed before me by **ANGEL DAVID MORALES-VALLELLANES**, of

the above stated personal circumstances, whom I personally know, this 3th day of May, 1999, in

San Juan, Puerto Rico.

**NOTARY PUBLIC**