IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANGEL DAVID MORALES VALLELLANES,
    Plaintiff,

v.

JOHN E. POTTER, POSTMASTER GENERAL, U.S. POSTAL SERVICE, et. als.
    Defendant.

Civil No. 97-2459 (JAG/GAG)

**DEFENDANT'S MEMORANDUM OF LAW IN
SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE COURT:

COMES NOW, the Defendant and through his undersigned attorneys respectfully submits his Memorandum of Law, as follows:

### I.  NATURE OF THE CASE AND JURISDICTION

The Plaintiff has filed this civil action against the United States Postal Service (Postal Service) claiming, inter alia, retaliatory discrimination and discrimination on the basis of gender in violation of Title VII, 42 U.S.C. § 2000 et seq. and 42 U.S.C. § 1981a. **See *Amended Complaint, Count One.*** Morales alleged that he was the target of retaliatory and discriminatory acts provoked by complaints that he filed with the Occupational Safety and Health Administration ("OSHA"). Angel David Morales Vallellanes ("Morales") also sued the American Postal Workers Union ("APWU" or "Union") and its president, Daniel Soto, in the same action, claiming that the Union breached its duty of fair representation by failing to submit and process his grievances against the Postal Service.

The United States District Court for the District of Puerto Rico referred the case to a

magistrate judge, who recommended that the court grant motions for summary judgment submitted by defendants Postal Service and the Union. Concluding that "Plaintiff ... failed to raise any material issue not adequately addressed by the magistrate judge in his Report," the district court adopted the magistrate judge's report and recommendation, and granted the defendants' motions for summary judgment.

On August 4, 2003 the Unites States Court of Appeals for the First Circuit ("1St Circuit") affirmed in part and reversed in part. Specifically, the 1st Circuit affirmed the dismissal of all claims against the union and the court limited plaintiff's EEO claims to three allegations:

> (1)   Morales's allegation that Job Bid # 2541417 was posted with Thursday/Sunday rest days rather than Saturday/Sunday rest days in retaliation for plaintiffs OSHA complaints
>
> (2)   Morales's allegation of sexual discrimination and retaliation arising from an April 9, 1996 incident in which plaintiffs duties and responsibilities were awarded to a female employee and he was given window clerk duties to perform
>
> (3)   Morales's allegation that the "coffee and lunch breaks" policy was not applied in an equal and nondiscriminatory matter

Plaintiff's allegation that a job bid was changed in retaliation for filing OSHA complaints during the previous year is both factually and legally flawed. It is the Postal Service's position that his retaliation claim must fail as a matter of law because retaliation for making safety complaints to the Department of Labor, are clearly covered by a separate Congressionally mandated statutory framework. ***See 29 USCS § 660.***

In addition, the job bid was changed due to the operational needs of the office (too many positions existed with Saturday/Sunday rest days) and not for any discriminatory reason.

Second, Plaintiffs allegation that on April 9, 1996 his duties and responsibilities were awarded to a female employee for discriminatory and retaliatory purposes is also not supported by the evidence. As noted infra, the Plaintiff's job duties were rotated among a number of employees so that he was not the only employee in the office who was experienced in processing certain types of mail.

Lastly, Plaintiff's allegation that "coffee and lunch breaks" policy was not applied in an equal and nondiscriminatory matter is also without merit.

## II. STATEMENT OF THE MATERIAL FACTS

At the time of the events, which are the subject of the civil action, Plaintiff Angel David Morales Vallellanes was assigned as full time window/distribution clerk at the Caparra Heights Post Office ("Chaparral Heights") in Chaparral Heights, Puerto Rico. **See Morales Affidavit, p. 1, attached hereto as Levine Decl. Exhibit E.**

At the time of the events, Enrique Lopez was a Supervisor, Customer Services ("Spvr. Lopez") and Jose Sepulveda was Manager, Customer Services ("Mgr. Sepulveda") at Caparra Heights.

Between April 1995 and April 1996, Plaintiff filed four (4) complaints with the Occupational Safety and Health Administration ("OSHA"). **See Morales-Vallellanes v: Potter, 2003 U.S. LEXIS 15513 (August 4, 2003), p. 3, attached hereto as Levine Decl. Exhibit F.**

On February 15, 1996, Plaintiff filed an informal complaint. Plaintiff alleged that Job ID No. 2541417, Posting No. 96-007, a Distribution and Window Clerk position with Saturdays and Sundays as the rest days, had been taken down from posting and reposted with Sunday and Thursday as the rest days. Plaintiff alleged this change was due to his interest in the position, and was a retaliatory

action. **See Morales Affidavit, p. 3, attached hereto as Levine Decl. Exhibit G.**

The National Agreement between the United States Postal Service ("Postal Service") and the American Postal Workers Union ("APWU") states, in pertinent parts that the employer shall have the exclusive right: to maintain the efficiency of the operations entrusted to it; to determine the methods, means, and personnel by which such operations are conducted. **See National Agreement, p. 6, attached hereto as Levine Decl. Exhibit H.**

Mgr. Sepulveda changed the rest days for the aforementioned position due to the needs of the service. The operation was suffering as the result of too many employees having the entire weekend as rest days. The change was made in accordance with the National Agreement. At the time the change in rest days was made to this position, Plaintiff was not the senior clerk but was No. 432 on the seniority list. **See Sepulveda Affidavit, p. 1, attached hereto as Levine Decl. Exhibit I.**

Supv. Lopez's supervisory duties also included the scheduling of employees assigned to Caparra Heights. Each employee was entitled to two (2) ten (10) minute breaks in addition to either a half-hour or hour lunch break. One ten-minute break would be taken in the first half of the employee's tour with the second break in the latter half of the tour. These breaks were afforded to all employees in a fair and non-discriminatory manner, with consideration given to the needs of the postal operation.

Plaintiff alleges that the break policy was not applied in an equal, non-discriminatory manner. Plaintiff bases this allegation on his observing a female employee, Maria Irene, taking a break as soon as she begins her tour. **See Morales " Affidavit, attached hereto as Levine Decl. Exhibit B.**

Maria Irene has breakfast in the break room before she begins her tour. As she has not yet punched in she was not in violation of the break policy. Her assigned breaks are the only breaks she takes; she does not abuse the break policy.

On April 20, 1996, Supv. Lopez celebrated Secretary's Week with employees Rita Maldonado and Maria Irene by taking them to lunch. Ms. Maldonado was the Office Clerk; Supv. Lopez invited Ms. Irene to avoid any hint of impropriety. As this was a special occasion they exceeded the allotted time of their assigned lunch breaks. When they returned from lunch, Supv. Lopez manually adjusted their time cards so they would not be penalized. **See Deposition of Enrique' Lopez, p. 23 - 25, attached hereto as Levine Decl. Exhibit D.**

Plaintiff alleges that Supv. Lopez conducted a service talk on April 9, 1996 regarding the Postal Service break policy. **See Morales Affidavit, attached hereto as Levine Decl. Exhibit B.** It is customary for supervisors to give service talks on a variety of subjects impacting Postal operations. These talks would be given on an "as needed basis" to all employees to ensure compliance with Postal Service policies.

Supv. Lopez actually conducted a service talk on May 18, 1996 with employees to emphasize they adhere to the time limitations concerning breaks, and to point out that abuses of the break policy were not to be tolerated. This talk was precipitated due to continued abuses of the break policy. At the time Supv. Lopez gave the service talk; he was unaware that Mr. Morales had named him as a Responsible Management Official in his EEO complaint. **See Lopez Deposition Pages 51 and 67, attached hereto as s Levine Decl. Exhibit C.** To exercise control over employee breaks, employees were asked to record the duration of their breaks by using a time clock. However, this soon proved to be a cumbersome process, and was discontinued after only a few days.

On September 9, 1996, Plaintiff filed a second Formal EEO Complaint alleging discrimination based on sex and retaliation for the EEO complaint filed in April 1996. He filed this complaint because of the alleged discriminatory break policy and another alleged episode of retaliation.

Specifically, Plaintiff alleges that he was removed from his regular duties as Postage Due, Express Mail, and Business Reply Mail clerk and these responsibilities were assigned to Maria Irene. Several weeks later, Plaintiff discovered that other employees were being rotated into his position; he alleges this was done in retaliation for his previously filing an EEO complaint. **See Morales Affidavit, attached hereto as Levine Decl. Exhibit M.**

The responsibilities Plaintiff alleges were exclusively his are components of a Postal clerk position. After becoming aware of a lack of training and knowledge of the postal clerks employed at Caparra Heights for processing postage due and business reply mail, Spvr. Lopez decided to cross train several clerks in this area.

Until that time, Mr. Morales was the only clerk in Caparra Heights with this knowledge. In the event Mr. Morales was absent from work there would be no employee available to process postage due and business reply mail transactions, which would result in the delay of these types of mail. **See Lopez declaration, P.4, attached hereto as Levine Decl. Exhibit J.**

Contrary to any assertions by Mr. Morales, these functions are not specific to any particular clerk or position. All clerks can be assigned to processing all types of mail, including postage due and business reply mail. The cross training was simply a means to create a more efficient postal operation. Clerks receiving this training would be assigned this responsibility on a rotating schedule. Mr. Morales was included on this rotation. *Id.*

## I.  APPLICABLE LAW

### A.  Standards for Dismissal and for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. Pro. 56(c). The court must view the facts in a light most favorable to the non-moving party, drawing all reasonable inferences in Plaintiff's favor. ***Woods v. Friction Materials, Inc.,*** 30 F.3d 255, 259 (1st Cir. 1994). The party opposing a motion for summary judgment bears the burden of establishing sufficient evidence of a genuine issue of material fact in dispute. ***Celotex Corp. v. Catrett,*** 477 U.S. 317 (1986). Summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. ***Id.*** at 324.

To defeat a motion for summary judgment, the non-moving party must establish that a dispute is both genuine" and material." ***Anderson v. Liberty Lobby, Inc.,*** 477 U.S. 242, 247-48, (1986). See also: ***Hahn v. Sargent***, 523 F.2d 461, 464 (1st Cir. 1975), *cert. den.,* 425 U.S. 904, (1976). (The rule sets forth a bifurcated standard which the party opposing summary judgment must meet to defeat this motion. He [or she] must establish the existence of an issue of fact which is both genuine and material."') A factual dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id., at 248. In determining whether a dispute is material, the district court must look to the substantive law of the case, for only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. ***Anderson v. Liberty Lobby, Inc.,*** 477 U.S. 242 (1986).

In the employment discrimination context, where intent is at issue, the court's review will be most searching since these questions are most suited for jury determinations. ***Rossy v. Roche***

*Products Inc.,* 880 F.2d 621, 624 (1st Cir. 1989). However, even in an employment discrimination case, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. *Goldman v. First National Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir. 1993), *quoting* ***Medina-Munoz v. R.J.R. Tobacco Co.,*** 896 F.2d 5, 8 (1st Cir. 1990).

> B. **The Federal District Court Has No Jurisdiction Of Plaintiff's Retaliation Claim Based On His OSHA Complaints As Such Activity Is Clearly Conferred Under 29 USCS § 660 Which Has Not Been Plead Nor Exhausted By The Plaintiff**

The basis of Title VII retaliation requires that a complainant have engaged in prior EEO activity. See 29 C.F.R. § 1614.101(b). In this case, Plaintiff here is alleging that Job Bid # 2541417 was posted with Thursday/Sunday rest days rather than Saturday/Sunday rest days in retaliation for plaintiff's OSHA *complaints.* Retaliation for making safety complaints to the Department of Labor, are clearly covered by a separate Congressionally mandated statutory framework. Specifically, 29 USCS § 660 states,

> (c) Discharge or discrimination against employee for exercise of rights under 29 USCS §§ 651 et seq.; prohibition; procedure for relief.
>
> (1) No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this Act.
>
> (2) **Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination.** Upon receipt of such complaint, the Secretary shall cause such investigation to be made, as he deems appropriate. If upon such

> investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.
>
> (3) Within 90 days of the receipt of a complaint filed under this subsection the Secretary shall notify the complainant of his determination under paragraph (2) of this subsection.

As noted above, the Secretary of Labor is exclusively vested with the authority to file complaints in Federal District Court. See 29 USCS § 660 (2). There is no private right of action. *See Taylor v. Brighton Corp.,* 616 F.2d 256 (6th Cir. 1980). In *Creusere v. Bd. of Educ. of the City Sch. Dist. of Cincinnati,* 88 Fed. Appx. 813 (6th Cir. 2003), the 6th Circuit confirmed the above proposition, stating,

> Creusere was clearly engaged in a protected activity by requesting religious accommodation, writing the 1994 letter regarding the Labor Day holiday, and writing the September 11, 1996, letter regarding his layoff. His subsequent OCRC complaint is also protected by Title VII. The additional complaints raised in Creusere's brief such as his complaints about smoking, safety issues, and the CBA, however, are not protected activities under Title VII.

88 Fed Appx. at 821.

In *Michael G. Ypsilantis, v. Department of Labor,* Appeal No. 01A05062 (March 27, 2001) the Equal Employment Opportunity Commission, which promulgates all regulations related to Title VII recently noted,

> Our ruling is limited to EEO-based protected activity. *The Commission does not have jurisdiction to consider whether the agency retaliated against complainant on non-EEO-based protected activity.* The Commission therefore does not address complainant's allegations of retaliation involving his union, MSPB, and whistle blowing complaints to the Inspector General, Special Counsel, the Secretary of

    Labor, and one of Ohio's United States Senators. (See also 42 U.S.C.§2000e-3(a); 29 C.F.R. §1614.103(a); ***McDonnell Douglas Corp. v. Green***, 411 U.S. 792 (1973); (Employee's participation in protest that violated state laws was not protected activity under Title VII; ***Christopher v. Billington,*** 43 F.Supp. 2d. 39, 46 (D.DC 1999) (union activities are not protected activities under Title VII).

Thus, based on the foregoing, it is clear that the Plaintiff's allegation that he was retaliated against when rest days were changed on a particular bid position due to his complaint to OSHA has not stated a claim upon which relief can be granted under Title VII because it is not a protected activity under such statute for retaliation purposes. Additionally, since the Plaintiff has no private right of action under 29 USCS § 660 and this case does not involve the Secretary of Labor as a party, his action must be dismissed.

### C. Plaintiff Cannot Prove Retaliation With Regard to His Claim That Certain Job Duties Were Rotated Among Other Employees

As set forth by the 1st Circuit, the Plaintiff's second claim is that he was the victim of retaliation and sexual discrimination arising from an April 9, 1996 incident in which plaintiff's duties and responsibilities were awarded to a female employee and he was given window clerk duties to perform.

Plaintiff's claim of retaliation must meet the familiar McDonnell Douglas test. ***See McDonnell Douglas Corp. v. Green,*** 411 U.S. 792, (1973). First, Plaintiff must come forward with a prima facie showing of retaliation. See id. at 802; ***Mesnick v. General Electric Co.,*** 950 F. 2d 816, 827 (1st Cir. 1991). In order to state a prima facie case, the Plaintiff must show (1) that he engaged in an activity protected under Title VII or engaged in protected opposition to an activity, which participation or opposition was known by the employer; (2) one or more employment actions

disadvantaging him; and (3) a causal connection between the protected activity and the employment action. Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 38 (1st Cir. 2003); Benoit v. Technical Mfg. Corp., 331 F.3d 166, 175 (1st Cir. 2003); Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994). Once the Plaintiff is able to satisfy a prima facie case, the burden of production then shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action. The production of such a nondiscriminatory reason dispels the presumption of improper discrimination generated by the prima facie showing of discrimination. Id. The Plaintiff then must show that the proffered reason is actually a pretext for retaliation Id. at 823.

With regard to the second prong of a prima facie case of retaliation, in Marrero v. Goya of P.R., Inc., 304 F.3d 7 (1st Cir. 2002) the 1st Circuit defined an adverse action as follows:

> We have explained that adverse employment actions include 'demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees."' White, 221 F.3d at 262 (quoting Hernandez-Torres, 158 F.3d at 47)i accord Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1283 (11th Cir. 1999). Whether an employment action is "adverse" -- and therefore actionable under Title VII -- is gauged by an objective standard. Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996). "Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." Id.

In the instant case, Plaintiff was not subject to an adverse employment action. As noted in the Statement of Undisputed Facts, the responsibilities Plaintiff alleges were exclusively his are components of a Postal clerk position. After becoming aware of a lack of training and knowledge of the postal clerks employed at Caparra Heights for processing postage due and business reply mail, Spvr. Lopez decided to cross train several clerks in this area. Until that time, Plaintiff was the only clerk in Caparra Heights with this knowledge. In the event Plaintiff was absent from work there

would be no employee available to process postage due and business reply mail transactions, which would result in the delay of these types of mail. **See Lopez Declaration, P. 4, attached hereto as Levine Decl. Exhibit J.**

Contrary to any assertions by Plaintiff, these functions are not specific to any particular clerk or position. All clerks can be assigned to processing all types of mail, including postage due and business reply mail. The cross training was simply a means

To create a more efficient postal operation. Clerks receiving this training would be assigned this responsibility on a rotating schedule. Mr. Morales was included on this rotation. **Id.**

As noted above, the 1st Circuit requires that a Plaintiff show that something of real consequence has been taken from him (ie. wages etc.). In this case, the Agency simply exercised good management practices by cross training other clerks to perform certain duties, which other clerks should have been performing on a rotating basis but had not been trained for. Thus, as a result, his claim should be dismissed for lack of an adverse employment action. Plaintiff continued to perform clerk duties, but was rotated along with other employees to handle postage due/ and business reply mail.

In this case, there is no allegation whatsoever by the plaintiff that his salary was affected in any way, nor than he was demoted, transferred or separated from the Postal Service. As a matter of fact, the Plaintiff is still an employee for the U.S.P.S.; he is on the Office of Worksmen Compensation Program (O.W.C.P.) under the U.S. Department of Labor netting income tax free compensation benefits equivalent to 66% of his salary since 1997. **(See Defendant's Statement of Uncontested Fact at paragraph 15 – Exhibits N & O).** Hardly an adverse action from the Defendant.

However, arguendo, if the court were to find that Plaintiff has been subjected to an adverse action, he cannot satisfy the last element of a prima facie case by providing any evidence of a causal

link between the protected activity and the adverse job action.  In <u>Mesnick</u> the First Circuit described the evidence that may be relevant for determining whether causation exists: (1) differential treatment in the workplace n9; (2) temporal proximity n10; (3) statistical evidence; and, (4) comments by the employer that intimate a retaliatory windset. n11 *Meznick,* 950 F.2d. at 828.

In the instant case, although Plaintiff filed a series of EEO complaints regarding his many complaints in the workplace in 1996 he can provide no evidence of differential treatment, statistical evidence or comments that allude to discriminatory animus. Temporal proximity in this case is easily created by Plaintiff since he filed so many complaints in a short period of time but he has no evidence that the Agency's legitimate business reasons for rotating clerks with regard to certain duties. (that in Plaintiff's absence many clerks could not perform some of the duties performed by Plaintiff) was a pretext for discrimination. Thus, his retaliation claim should be dismissed.  The long litany of events that plaintiff relates as basis for his claim not only are unrelated to any protected activity under the Civil Rights Act of 1964, as amended in 1991, but simply do not rise to a level that could alter the terms and conditions of plaintiff's employment with the Postal Service for a reasonable person in today's society in Industrial America.  Rather, those kinds of incidents are part of the "ordinary tribulations of the workplace. *Faragher v. City of Boca Ratón,* 524 U.S. 775, 788 (1998); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *Wright v. CompUSA, Inc.,* 352 F.3d. 472 (1st Cir. 2003), *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 752 (1988); *Oncale v. Sundowner Offshore Service, Inc.*, 523 U.S. 75, 81 (1998).   Thus, plaintiff's retaliation claim should be dismissed.

### D. Plaintiff Cannot Prove a Prima Facie Case of Gender Discrimination With Regard to His Claims That Certain Job Duties Were Rotated Among Other Employees or With Regard to The Coffee And Lunch Breaks Policy

**Rotation of Job Duties**

Plaintiff has also alleged that when certain of his duties were rotated that the Agency did so due to discrimination based on gender. The First circuit follows the standard McDonnell-Douglass shifting burden analysis when deciding claims of disparate treatment under Title VII. Under the McDonnell Douglas analysis, a plaintiff must establish a prima facie case, which in turn gives rise to an inference of discrimination. See Dichner v. Liberty Travel, 141 F.3d 24, 29-30 (1st Cir. 1998). The employer then must state a legitimate, nondiscriminatory reason for its decision. See Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 44 (1st Cir. 2002). If the employer can state such a reason, the inference of discrimination disappears and the plaintiff is required to show that the employer's stated reason is a pretext for discrimination.

With regard to proving pretext, the First Circuit noted in Straughn v. Delta Air Lines, Inc., 250 F.3d 23 (1st Cir. 2001),

> In order to sustain her burden of persuasion on pretext, Straughn needed to demonstrate either that her dismissal was (i) "more likely motivated" by discrimination than by the explanation proffered by Delta, or (ii) the proffered "explanation [was] unworthy of credence" in circumstances where the suspect denial, taken together with other facts, suggests such a motivation. Burdine, 450 U.S. at 256. (citing McDonnell Douqlas, 411 U.S. at 804-05)i see also Fite v. Digital Equipment Corp., 232 F.3d 3, 6-7 (1st Cir. 2000)

The court continued,

> Although pretext may be established with evidence of "differential treatment in the workplace[,]" id. (quoting Mesnick v. General Elec. Co., 950 F.2d 816, 824 L1 st Cir. 1991)[1] cert.

denied, 504 U.S. 985, 119 L. Ed. 2d 586, 112 S. Ct. 2965 (1992)) (internal quotation marks omitted), Straughn failed to sustain her evidentiary burden in relation to the claim that she was singled out for inferior work assignments. The record discloses that the Vermont and Western New Hampshire sales territory, to which Straughn initially was assigned, historically has generated lower revenues than all but one other sales territory within the Boston Marketing Office area and accordingly has been selected in the past as a training territory for relatively inexperienced sales representatives.

> Nor did Straughn tender evidence that there was any normal time frame within which sales representatives in training customarily were transferred to more lucrative sales territories. Similarly, she proffered no evidence regarding any criteria utilized by Delta in determining when newer sales representatives were considered eligible for transfer to more desirable sales territories.
>
> On the other hand, the record plainly discloses that a white male sales representative drew the Maine sales territory, which is comparable to the Vermont-Western New Hampshire sales territory in terms of the driving distances and relatively low sales revenues. Yet Straughn proffered no evidence regarding the tenure of her counterpart in the Maine sales territory. Finally, there is no record evidence that Straughn's experience or tenure differed in any material respect from that of her predecessors in the Vermont-Western New Hampshire sales territory.
>
> Since Straughn tendered no competent evidence that her initial assignment as a sales representative differed materially from that of other relatively new sales representatives in the Boston Marketing Office, summary judgment was appropriate. See id.; Conward, 171 F.3d at 20 ("Where . . . the plaintiff in a disparate treatment race [or gender] discrimination case offers comparative evidence . . . to raise an inference of racial [or gender-based] discrimination, [she] must provide a suitable provenance for the evidence by showing that others similarly situated . . . in all relevant respects were treated differently by the employer.") (emphasis added).

250 F.3d at 35-36.

In the instant case, as noted in Point B, the Agency has proffered a legitimate reason for

rotating certain of Plaintiff's clerk duties. As noted in the Statement of Facts and the attached Declaration of Supv. Lopez, a rotation was created which included both men and women. Thus, any claim that his duties were rotated among others to favor one gender (women) is simply not true. Thus, his claim of gender discrimination should be dismissed as well. **See Lopez Declaration, P. 4, attached hereto as Levine Decl. Exhibit J.**

**Coffee and Lunch Breaks Policy Claim**

Lastly, as noted by the First Circuit, Plaintiff has alleged that the "coffee and lunch breaks" policy was not applied in an equal and nondiscriminatory matter. As noted above, the First Circuit follows the standard McDonnell-Douglass shifting burden analysis when deciding claims of disparate treatment under Title VII. See Dichner v. Liberty Travel, 141 F.3d 24, 29-30 (1st Cir. 1998). As with retaliation claims discussed earlier herein, the Plaintiff must prove a prima facie case of discrimination which includes proffering evidence of an adverse employment action. As the 1st Circuit has held in Marrero v. Goya of P.R., Inc., 304 F.3d 7 (1St Cir. 2002) an adverse action must an action of significant consequence that has a material effect on the terms and conditions of employment (ie. termination, demotion, refusal to promote etc.). Here, it is clear that Plaintiff's claim of sex discrimination related to the break policy must fail as it clearly does not rise to the level of an adverse action.

Arguendo, even if everything Plaintiff alleges herein is true (that one woman received longer breaks for some period of time) he has not and cannot show that his own conditions of employment were adversely affected in any manner. He has not alleged that he was not allowed his regular breaks nor has he alleged that he sought longer breaks but was denied same. There is

simply no evidence that he was adversely affected through this alleged conduct.

Arguendo, even if Plaintiff were to be able to prove a prima facie case of discrimination, Plaintiff's allegation is solely based on his observing one woman (Maria Irene) taking a break as soon as she begins her tour. **See Morales Affidavit, p. 3, Aattached hereto as Levine Decl. Exhibit M**. As noted by Supv. Lopez, s. Irene was having breakfast in the break room before beginning her tour. Ms. Irene had not yet punched in, so she was not in violation of the break policy. As noted by Supv. Lopez, Ms. Irene's assigned breaks are the only breaks she takes and she did not abuse the break policy. **See Lopez Declaration, P 2, attached hereto as Levine Decl. Exhibit J.**

However, even it were true that Supv. Lopez, due to some alleged implied intimate relationship with Ms. Irene, treated her more favorably than other employees (male and female) the favorable treatment would not be gender discrimination under Title VII, but merely favoritism motivated by friendship or romance which is not cognizable under Title VII. Title VII prohibits discrimination based on gender; it does not prohibit favoritism between a supervisor or subordinate whether that favorable treatment is motivated by a male superior mentoring a male subordinate or a male superior's romantic interest in a female subordinate. See <u>DeCintio v. Westchester County Medical, 807 F.2d 304, 307-8</u> (2nd Cir. 19861 (supervisor's preference of candidate for position over other candidate because of a romantic affair with the selected candidate was not discrimination based on sex). The holding of <u>DeCintio</u> has been cited with approval in the District of Puerto Rico. <u>See Lipsett v. Rive-Mora,</u> 669 F. Supp. 1188, 1200 (D. P. R. 1987).

Thus, Plaintiff's claim with regard to the break policy should be dismissed as it does not constitute an adverse employment action and, even if all of Plaintiff's allegations were true, would not violate Title VII.

### III. CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that his Motion for Summary Judgment be granted and plaintiff's complaint dismissed.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was filed with the Clerk of the Court using CM/ECF system, which will submit notification of such filing to: Miguel Miranda, Esq.

RESPECTFULLY SUBMITTED in San Juan, Puerto Rico, this 16th day of September 2005.

**H.S. GARCIA**
United States Attorney

*S/Fidel A. Sevillano Del Río*
Fidel A. Sevillano Del Rio
U.S.D.C.-PR 117812
Assistant U.S. Attorney
District of Puerto Rico
Torre Chardon Building, Suite 1201
350 Carlos Chardon Street
Hato Rey, Puerto Rico 00918
Telephone: (787) 766-5656
Telecopier: 787-766-6219