IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANGEL DAVID MORALES VALLELLANES,<br>    Plaintiff,<br><br>v.<br><br>JOHN E. POTTER, POSTMASTER GENERAL, U.S. POSTAL SERVICE, et. als.<br>    Defendant. | Civil No. 97-2459 (JAG/GAG) |

## STATEMENT OF UNCONTESTED FACTS

**TO THIS HONORABLE COURT:**

COMES NOW, the Defendant represented by the undersigned attorneys to respectfully, submits the Statement of Uncontested Facts in Support of his Motion for Summary Judgment, pursuant to Local Rule 56.

**1.** At the time of the events, which are the subject of the civil action, Plaintiff Angel David Morales Vallellanes was assigned as full time window/distribution clerk at the Caparra Heights Post Office ("Caparra Heights") in Caparra Heights, Puerto Rico. **See Morales Affidavit, p. 1, attached hereto as Levine Decl. Exhibit E.**

2. At the time of the events, Enrique Lopez was a Supervisor, Customer Services ("Spvr. Lopez") and Jose Sepulveda was Manager, Customer Services ("Mgr. Sepulveda") at Caparra Heights.

**3.** Between April 1995 and April 1996, Plaintiff filed four (4) complaints with the Occupational Safety and Health Administration ("OSHA"). **See** *Morales-Vallellanes v. Potter,* **2003 U.S. LEXIS 15513 (August 4, 2003), p. 3, attached hereto as Levine Decl. Exhibit F.**

**4.** On February 15, 1996, Plaintiff filed an informal complaint. Plaintiff alleged that Job ID No. 2541417, Posting No. 96-007, a Distribution and Window Clerk position with Saturdays and Sundays as the rest days, had been taken down from posting and reposted with Sunday and Thursday as the rest days.

Plaintiff alleged this change was due to his interest in the position, and was done in retaliation for prior EEO activity. **See Morales Affidavit, p. 3, attached hereto as Levine Decl. Exhibit G.**

5.  The National Agreement between the United States Postal Service ("Postal Service") and the American Postal Workers Union ("APWU") states, in pertinent parts that the Employer shall have the exclusive right:

To maintain the efficiency of the operations entrusted to it;

To determine the methods, means, and personnel by which such operations are to be conducted.

**See National Agreement, p. 6, attached hereto as Levine Decl. Exhibit H**

6.  Mgr. Sepulveda changed the rest days for the aforementioned position due to the needs of the service. The operation was suffering as the result of too many employees having the entire weekend as rest days. The change was made in accordance with the National Agreement. At the time the change in rest days was made to this position, Plaintiff was not the senior clerk but was No. 432 on the seniority list. **See Sepulveda Affidavit, P.1, attached hereto as Levine Decl. Exhibit I.**

7.  On April 9, 1996, Plaintiff states there was a service talk given by Spvr. Lopez regarding the coffee and lunch break policy at Caparra Heights. **See Morales Affidavit, attached hereto as Levine Decl. Exhibit B.**

8.  On April 20, 1996, Supervisor Lopez celebrated Secretary's Week with Rita Maldonado and Maria Irene by taking them to lunch. Ms. Maldonado was the Office Clerk; Spvr. Lopez invited Ms. Irene to avoid any hint of impropriety. As this was a special occasion they exceeded the allotted time of their assigned lunch breaks. When they returned from lunch, Spvr. Lopez manually adjusted their time cards so they would not be penalized. **See Lopez Declaration, P. 2, attached hereto as Levine Decl. Exhibit J.**

**9.** On April 25, 1996, Plaintiff filed a second informal complaint alleging the coffee and lunch break policy at the Caparra Heights station discriminated against male employees. Plaintiff identified Maria Irene as the female employee who is free to take breaks whenever she wants for as long as she wants, while the policy is enforced solely against him. **See Counselor's Report, P.1, attached hereto as Levine Decl. Exhibit K; See also Morales Affidavit, P.3, attached hereto as Levine Decl. Exhibit L.**

10. Plaintiff's allegation is based on his observing Maria Irene taking a break as soon as she begins her tour. **See Morales Affidavit, p. 3, attached hereto as Levine Decl. Exhibit L**. Ms. Irene was having breakfast in the break room before beginning her tour. She had not yet punched in, so she was not in violation of the break policy. Her assigned breaks are the only breaks she takes; she does not abuse the break policy. **See Lopez Declaration, P. 2, attached hereto as Levine Decl. Exhibit J. ,**.

**11.** Mr. Lopez conducted a service talk with his employees on May 18, 1996, during which he emphasized the importance of adhering to the time limitations of all breaks; abuses of the policy would not be tolerated. **See Lopez Declaration, P. 2 attached hereto as Levine Decl. Exhibit J.**

12. On September 9, 1996, Plaintiff filed a second Formal EEO Complaint alleging discrimination based on sex and retaliation for the EEO complaint filed in April 1996. He filed this complaint because of the discriminatory break policy and another episode of alleged retaliation. Specifically, Plaintiff alleges that he was removed from his regular duties as Postage Due, Express Mail, and Business Reply Mail clerk and these responsibilities were assigned to Maria Irene. Several weeks later, Plaintiff discovered that other employees were being rotated into his position;

he alleges this was done in retaliation for his previously filing an EEO complaint. **See Morales Affidavit, attached hereto as Levine Decl. Exhibit M.**

13. The responsibilities Plaintiff alleges were exclusively his are components of a Postal clerk position. After becoming aware of a lack of training and knowledge of the postal clerks employed at Caparra Heights for processing postage due and business reply mail, Spvr. Lopez decided to cross train several clerks in this area. Until that time, Mr. Morales was the only clerk in Caparra Heights with this knowledge. In the event Mr. Morales was absent from work there would be no employee available to process postage due and business reply mail transactions, which would result in the delay of these types of mail. **See Lopez Declaration, P. 4, attached hereto as Levine Decl. Exhibit J**.

14. Contrary to any assertions by Mr. Morales, these functions are not specific to any particular clerk or position. All clerks can be assigned to processing all types of mail, including postage due and business reply mail. The cross training was simply a means to create a more efficient postal operation. Clerks receiving this training would be assigned this responsibility on a rotating schedule. Mr. Morales was included on this rotation. **Id.**

15. Plaintiff has been an employee with the U.S. Postal Service since 1988; he has not worked since February 1997; his income comes from the office of Workmen Compensation Program (O.W.C.P.); it is equivalent to 66% of his salary and has not filed tax returns since 1997 because his income from OWCP is tax free (See Plaintiff's Answer to Interrogatories dated April 13th, 2005 at paragraphs 2(a) and 2(c) (Exhibit N) and Answers to Production of Documents of same date at paragraph 10(b) with attached **Benefit Statement** from O.W.C.P. – U.S. Department of Labor  (See Exhibit O).

WHEREFORE the Defendant submits his Statement of Uncontested Facts.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was filed with the Clerk of the Court using CM/ECF system, which will submit notification of such filing to: Miguel Miranda, Esq.

RESPECTFULLY SUBMITTED in San Juan, Puerto Rico, this 16th day of September 2005.

        **H.S. GARCIA**
        United States Attorney

        *S/Fidel A. Sevillano Del Río*
        Fidel A. Sevillano Del Rio
        U.S.D.C.-PR 117812
        Assistant U.S. Attorney
        District of Puerto Rico
        Torre Chardon Building, Suite 1201
        350 Carlos Chardon Street
        Hato Rey, Puerto Rico 00918
        Telephone: (787) 766-5656
        Telecopier: 787-766-6219