IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------- X
ANGEL DAVID MORALES VALLELLANES,

        Plaintiff,

    v.                                 CIVIL NO. 97-2459 (JAG/GAG)

JOHN E. POTTER, POSTMASTER GENERAL,
U.S. POSTAL SERVICE, et. als.

        Defendant.

Kenneth Levine, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

1.    I am an attorney with the United States Postal Service ("USPS). I respectfully submit this declaration to provide the following documents to the Court as part of the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.

2.    Attached to this declaration as Exhibits A through M are true and correct copy of the following documents:

| Exhibit | Description |
| --- | --- |
| A | Bid Listing for Job ID 2541417 |
| B | Counselor's Report, 'p._58 |
| C | Enrique Lopez Deposition Transcript Dated May 20, 2004, pgs. 51, 67 |
| D | Enrique Lopez Deposition Transcript Dated May 20, 2004, pgs. 23-25 |

| | |
|---|---|
| E | Angel David Morales Affidavit dated October 23, 1996, pg. 1 |
| F | Angel David Morales 1st Circuit Decision |
| G | Angel David Morales Affidavit dated October 23, 1996, pg 3 (Case No. 4A-006-0023-96) |
| H | Handbook EL-912, USPS/APWU National Agreement, 1994-1998, Article 3. |
| I | Jose E. Sepulveda Affidavit dated January 24, 1997, pg. 1. |
| J | Enrique Lopez Declaration dated June 24, 2005. |
| K | EEO Counselor's Inquiry Report, dated Aug. 20, 1996, pg. K. |
| L | Angel David Morales Affidavit dated October 23, 1996, pg. 2 (Case No. 4A-006-1034-96) |
| M | Angel David Morales Affidavit dated October 23, 1996, pg. 3. (Case No. 4A-006-1034-96) |

I, KENNETH A. LEVINE, do hereby declare, pursuant to 28 U.S.C. § 1746, on this the _____ day of July, 2005, under the penalties of perjury, that the above statements are true and correct to the best of my knowledge, information and belief.

Dated:  New York, New York
       July, ___ 2005


KENNETH A. LEVINE

```
A0130                              JOB SLOTS                        PDAM0356
                                    DISPLAY


          JOB SLOT:  2541417
                     NB42   SAN JUAN POST OFICE            PR
                     NB42 0127      CAPARRA HEIGHTS CAR STA OPRNS UNIT
                     2340-02XX    DISTRIBUTION AND WINDOW CLERK
                     SP2-1     PS   05


          POSITION CLASSIFICATION:  CLERK
                    POSITION TYPE:  FULL TIME
                         DES/ACT:  110
                             FON:  4800      TOUR:


          FACILITY:  CAPARRA HGTS. STATION
         WORK AREA:  CAPARRA HEIGHTS STA.
          SECTION:                          PAY LOCATION:  922


           STATUS:  OCCUPIED
        EFFECTIVE:  1994 02 05
        INCUMBENT:  IZQUIERDO        MARIO        L
```

**EXHIBIT  A**

A0130                              MAINTAIN JOB SLOT                    PDAM0245
                                DISPLAY STANDARD SCHEDULE

              NB42    SAN JUAN POST OFICE                    PR

          SCHEDULE NO:  01042

          START TIME:  04 30
            END TIME:  13 00
         LUNCH PERIOD:  030 (MINUTES)
          LUNCH START:  00 00
            DAYS OFF:  SUN / THU
    TOTAL WEEKLY HRS/MIN:  40  00



 REMARKS:
          FLEX TIME (Y/N): N (HQ/REGIONS ONLY)

          FLSA WORK WEEK STARTS AT   20 30  FRI

              ALL TIMES IN MILITARY TIME

 DC900123 DEPRESS ENTER TO REQUEST ANOTHER DISPLAY.

On April 9 1996 Supervisor Enrique Lopez made a meeting with employees at Caparra Heights Station regarding a new policy for breaks and lunch breaks. He said that every employee have to take a break each two hours, and no more than two breaks and one lunch break during an 8 hour tour of duty. This policy is applied to male employees but not to female co worker Mayra Irene for the following facts:

1) The tour of duty of Mayra Irene is from 8:00am to 5:00pm, She arrive late almost every day and is permitted by Supervisor Enrique Lopez to take a break as soon as she begins her tour.

2) A second break is permitted at about 9:40 am. This break last about 20 to 25 minutes. Usually, she takes this break at Supervisor Lopez office while they have fun.

3) She is permitted to take her lunch break at about 11:30 am when ever she wants, even though if this represents to take the lunch break before the lunch break of others employees wich begin their tours at 5:30 am or 6:00 am and leaving alone these employees at window area.

4) She takes two more breaks during afternoon, many times in presence of Supervisor Enrique Lopez

5) On April 20, 1996 Supervisor Enrique Lopez went to lunch at about 12:05 pm with Mayra Irene and Rita Maldonado, they came back at 1:25 an hour and twenty minutes later. Mayra Irene and Maldonado did not swipe their electronic time cards to lunch in. So it is assumed that Supervisor Enrique Lopez fixed and enter the lunch manually. If this is truth, it can be considered fraud.

**EXHIBIT B**

**CERTIFIED TRANSLATION**
18-Mar-05    T. #05-906 #3    Pg. 1 of 186

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANGEL DAVID MORALES
VALLELLANES

    Plaintiff

v.

UNITED STATES POSTAL
SERVICES, ET AL

    Defendants

CASE NO.: 97-2459
       (JAG) (GAG)

ORAL EXAMINATION DEPOSITION TRANSCRIPT

OF

MR. ENRIQUE LÓPEZ MOLINA

Date           :    Thursday, May 20, 2004

Time           :    9:00 a.m.

Place          :    OFFICE OF MIGUEL MIRANDA GUTIÉRREZ, ESQ.
                    #22 Mayagüez Street
                    Hato Rey, Puerto Rico

Taken by       :    Miguel E. Miranda Gutiérrez, Esq.

Notary Public  :    Miguel E. Miranda Gutiérrez, Esq.


This is the transcript of the proceedings related to the taking of deposition of the same and the testimony given.

*ADVANCED COMPUTYPE BUSINESS SUPPORT SERVICES*
*#64 Ponce Street*
*Hato Rey, Puerto Rico 00917*
*(787) 758-7029*

**EXHIBIT C**

1

CERTIFIED TRANSLATION
18-Mar-05    T. #05-906 #3  Pg. 51 of 186

1           A   No, no, no.

2           Q   You don't recall that?

3           A   No, no. But now that you say that it was

4   against me, well, it must have occurred.

5           Q   You don't recall that. Well, then I'm

6   going to ask you to examine this, please.

7           Let's go off the record for a moment.

8                       [OFF THE RECORD]

9   ATTY. MIGUEL MIRANDA:

10          Q   My question, Mr. Enrique, is...

11          A   Yes.

12          Q   ...whether you are aware of that, that EEO

13  that Angel David Morales filed, in paragraph nine...

14          A   Yes.

15          Q   ...among the names together with José

16  Sepúlveda and Juan Rodríguez, he includes you.

17          A   If I knew about that?

18          Q   If you knew about that.

19          A   No, no.

20          Q   You did not know about that?

21          A   No.

22          Q   I ask you whether you, in relation to

23  that, you did not have any knowledge about what he is...

24  Before anything else, Mr. Enrique...

25          A   Yes.

CERTIFIED TRANSLATION
18-Mar-05    T. #05-906 #3   Pg. 67 of 186

1   had elapsed, at the time that you met with the people on

2   the floor to explain the alternatives, in fact what you

3   were telling me, and do correct me, was that it was

4   implemented for a few days, to punch the card in order to

5   go on coffee break, right?

6         A   Three days, I... something like that.

7         Q   It lasted three days. The question is if

8   at that time, to your recollection, Angel David, if you

9   had been notified about an EEO that Angel David had

10   filed.

11         A   No, I don't recall.

12         Q   N. You don't recall.

13         A   No.

14         Q   Could it have happened?

15         A   Well, it could have, because right now I

16   didn't remember this and my name is there.

17         Q   My question is, if someone were to say

18   that when you met with the people on the floor that you

19   made a statement on the floor to the other employees that

20   now when taking a coffee break, because someone had filed

21   an EEO they had to punch their cards, now they had to

22   punch their cards, if someone were to say that you had

23   stated that, would that be correct or would it be

24   incorrect?

25         A   Incorrect.

**CERTIFIED TRANSLATION**
<u>18-Mar-05    T. #05-906 #3    Pg. 1 of 186</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANGEL DAVID MORALES VALLELLANES | CASE NO.: 97-2459 (JAG) (GAG) |
| Plaintiff | |
| v. | |
| UNITED STATES POSTAL SERVICES, ET AL | |
| Defendants | |

ORAL EXAMINATION DEPOSITION TRANSCRIPT

OF

MR. ENRIQUE LÓPEZ MOLINA

Date        :    Thursday, May 20, 2004

Time        :    9:00 a.m.

Place       :    OFFICE OF MIGUEL MIRANDA GUTIÉRREZ, ESQ.
                 #22 Mayagüez Street
                 Hato Rey, Puerto Rico

Taken by    :    Miguel E. Miranda Gutiérrez, Esq.

Notary Public :  Miguel E. Miranda Gutiérrez, Esq.


This is the transcript of the proceedings related to the taking of deposition of the same and the testimony given.

*ADVANCED COMPUTYPE BUSINESS SUPPORT SERVICES*
*#64 Ponce Street*
*Hato Rey, Puerto Rico 00917*
*(787) 758-7029*

**EXHIBIT** L

1

**CERTIFIED TRANSLATION**

18-Mar-05    T. #05-906 #3   Pg. 23 of 186

1    it in that period of time, I would lose the game.

2        Q    Yes.

3        A    You know, if she came in at nine, and

4    came in, you know, there would be no way for me to know

5    that because I could not, with all the rush that I have

6    for everything to come out right, the operation, I cannot

7    be standing in front of a clock to see who clocks in and

8    at what time. Because my main thing was to see the Letter

9    Carriers that had reported in and that the work be done.

10        Q    But did you supervise María Irene at any

11   time?

12        A    Yes, as I told you, during those times

13   that I would go to provide support to my coworker, when he

14   went away on vacation.

15        Q    To your recollection, did you ever correct

16   María Irene's card manually because of the arrival time,

17   to your recollection?

18        A    Hum, I remember that on one specific

19   occasion...

20        Q    Yes.

21        A    ...Yes, it was corrected, it was Rita

22   Maldonado. Because it was during Secretary's Week and

23   I took three females that were around at that time,

24   she was there, Rita Maldonado was there. And for

25   Secretary's Week I took them to out to eat.

CERTIFIED TRANSLATION

18-Mar-05    T. #05-906 #3  Pg. 24 of 186

1    Q    You took them out to eat.

2    A    Yes.

3    Q    Okay. And on that occasion, then, but it

4  was Secretary's Week, but, were her duties those of a

5  secretary?

6    A    No, no, but since they were females so as

7  not to... If I took Rita Maldonado and left the other one

8  alone, well, it was going to seem, not right. And also I

9  don't tend to go out alone with anyone, that is, I always,

10  thank the Lord, I've known how to take care of myself,

11  well, it was going to seem a little bit out of place if I

12  took one and left the other. Well, so that everything

13  would come out right, I took both of them and that

14  wouldn't give rise to anything.

15    Q    Did the Caparra station have a secretary

16  position as such, whether as...?

17    A    Well, Rita, no she was... hum... not as

18  such, no.

19    Q    No?

20    A    No, she was General Clerk.

21    Q    General Clerk. So, and Office Clerk.

22    A    Office clerk, if you want to put it that way.

23    Q    And what was María Irene?

24    A    She was Window Distribution Clerk.

CERTIFIED TRANSLATION
18-Mar-05    T. #05-906 #3  Pg. 25 of 186

1          Q      Window Distribution Clerk.

2          A      Yes.

3          Q      And you were telling me that during that

4    Secretary's Week there could have been, or I believe you

5    remembered, some correction or whatever, some note from

6    you concerning her arrival time?

7          A      Yes, yes, because I think that Rita had

8    half an hour, and half an hour was not going to be long

9    enough to have lunch. And then it was not feasible, after

10    I invited them to lunch for Secretary's Week for me to

11    penalize them and say to her, "Well, you're going to have

12    to charge that half hour to vacation time."

13          Q      Yes.

14          A      Because that wouldn't be fair.

15          Q      Okay. I would like you to review this

16    document. Before anything else. Do you know Angel David

17    Morales?

18          A      Yes, yes.

19          Q      In what capacity?

20          A      As such, yes, he was, or is, but he was in

21    the Caparra Heights Station.

22          Q      I would like to know, I would like for you

23    to examine this first. Let's go off the record for a

24    moment, please.

25                        [OFF THE RECORD]

| U.S. Postal Service | | Page No. | o. Pages | Case No. |
|---|---|---|---|---|
| **EEO Investigative Affidavit** *(Complainant)* | | 1 | | 4A 006 103496 |

| 1. Affiant's Name *(First, Middle, Last)* | 2. Employing Postal Facility |
|---|---|
| Angel D Morales | Caparra Heights Station |

| 3. Position Title | 4. Grade Level | 5. Postal Address and ZIP + 4 | 6. Unit Assigned |
|---|---|---|---|
| Dist and Window Clerk | PS-5 | P.O. Box 10551 San Juan PR 00922 | |

## Privacy Act Notice / USPS Standards of Conduct

**Privacy Act Notice.** The collection of this information is authorized by Public Law 92-261, Equal Employment Act of 1972; 29 U.S.C., sections 621 et seq. and 701 et. seq.; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

**USPS Standards of Conduct.** Postal Service regulations require all postal employees to cooperate in any postal investigation. Failure to supply the requested information could result in disciplinary action (ELM 666).

7. Statement *(Continue on Form 2569 if additional space is required)*

See Attached statement. Refered Exhibits in this statement were already provided at prior stages of this case

| Affiant's Signature | Date |
|---|---|
| Angel David Morales | 10/23/96 |

PS Form 2568-A, December 1995

**EXHIBIT E**

Service: **Get by LEXSEE®**
Citation: **339 F3d 9**

*339 F.3d 9, \*; 2003 U.S. App. LEXIS 15513, \*\*;*
*172 L.R.R.M. 3207; 148 Lab. Cas. (CCH) P10,247*

ANGEL DAVID MORALES-VALLELLANES, Plaintiff, Appellant, v. JOHN E. POTTER, UNITED
STATES POSTMASTER GENERAL; AMERICAN POSTAL WORKERS UNION, PUERTO RICO AREA
LOCAL (A.P.W.U. - P.R.A.L.) A.F.L.-C.I.O.; DANIEL SOTO, PRESIDENT A.P.W.U.- P.R.A.L.;
ENRIQUE LOPEZ, Defendants, Appellees.

No. 02-2190

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

339 F.3d 9; 2003 U.S. App. LEXIS 15513; 172 L.R.R.M. 3207; 148 Lab. Cas. (CCH) P10,247;
84 Empl. Prac. Dec. (CCH) P41,536; 56 Fed. R. Serv. 3d (Callaghan) 529

August 4, 2003, Decided

**PRIOR HISTORY: [\*\*1]** APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO Hon. Jay A. Garcia-Gregory, U.S. District Judge; Hon. J.A.
Castellanos, U.S. Magistrate Judge.

**DISPOSITION:** Affirmed in part, reversed in part and remanded.

### CASE SUMMARY

**PROCEDURAL POSTURE:** In a suit by plaintiff former employee of defendant postal
service alleging that he was the target of retaliatory and discriminatory acts and alleging
that defendant union breached its duty of fair representation, the United States District
Court for the District of Puerto Rico adopted the magistrate judge's report and
recommendation and granted the postal service's and the union's motions for summary
judgment. The employee appealed.

**OVERVIEW:** The employee was hired to work as a distribution and window clerk for the
postal service. Subsequently, he filed a letter with the Occupational Safety and Health
Administration (OSHA). As a result of his OSHA complaint, the employee alleged that he
was the target of retaliatory and discriminatory acts. He finally left the employ of the
postal service, allegedly as the result of a constructive discharge. The appellate court
found that he failed to proffer sufficient evidence that the union breached its duty of fair
representation by acting arbitrarily, discriminatorily, or in bad faith. However, the trial
court erred in concluding that the collective bargaining agreement between the postal
service and the union furnished the employee's sole avenue of recourse for his retaliation
and discrimination claims. However, the employee's Title VII causes of action were
limited to those discrimination and retaliation allegations in his amended complaint that
were previously the subject of a formal Equal Employment Opportunity complaint. Those
causes were remanded to the trial court to determine whether the employee raised a
material dispute of fact that compelled a trial on those claims.

**OUTCOME:** The appellate court vacated the trial court's judgment granting summary
judgment to the postal service on the employee's retaliation and discrimination claims
against the postal service and remanded that portion of the case to the trial court. The
appellate court affirmed the remainder of the trial court's judgment entered for the union
and the postal services on the remaining counts in the employee's amended complaint.

**EXHIBIT F**

the report and recommendation, essentially restating the allegations in his amended complaint, but also incorporating sixty-seven new exhibits that had not previously been brought to the magistrate judge's attention. Concluding that "Plaintiff . . . failed to raise any material issue not adequately addressed by the magistrate judge in his Report," the district court adopted the magistrate judge's report and recommendation, and granted the defendants' motions for summary judgment. After careful review, we affirm in part and reverse in part.

I.

We summarize the relevant facts from the summary judgment record, reciting them in the light most favorable to Morales. See Diaz v. City of Fitchburg, 176 F.3d 560, 561 (1st Cir. 1999). In 1988, Morales was hired to work as a distribution and window clerk at the Caparra Heights, Puerto Rico, Station of the United States Postal Service. On April 7, 1995, plaintiff [**3] filed a letter with OSHA complaining of dust accumulation, rodent infestation, and other unsanitary conditions at the Caparra Heights station. OSHA ordered the station manager to correct the violations by June 19, 1995, but to no avail. Morales renewed his OSHA complaint through certified letters to the OSHA Area Director on August 1, 1995, February 23, 1996, and April 6, 1996. Finally, on June 14, 1996, OSHA conducted a formal inspection of the Caparra Heights station and confirmed plaintiff's allegations. OSHA cited the Caparra Heights station for at least five violations, and directed the station to remedy the safety and health hazards by October 9, 1996.

At this point, we bifurcate our chronology of the subsequent events for purposes of clarity, turning first to the circumstances that spawned Morales's claims against the Postal Service, and concluding with an account of the events underlying plaintiff's claims against the Union.

**A. Events underlying the claims against USPS**

Throughout the OSHA complaint process, the agency assured Morales that his identity as an OSHA complainant would be kept confidential, and that federal law forbade USPS from retaliating or discriminating [**4] against him for whistle-blowing. Nevertheless, plaintiff's amended complaint alleges that by July 1995 other employees at the Caparra Heights station were aware that he had filed OSHA complaints, and were retaliating against him. That month, Morales alerted the Postal Inspection Service that he had received two threats from co-workers, but no remedial steps were taken.

In January 1996, plaintiff expressed interest in an available distribution and window clerk position with Saturdays and Sundays off. n1 USPS then allegedly re-classified the position to offer only Sundays and Thursdays off so as to decrease its desirability to plaintiff. On March 23, 1996, Enrique Lopez, the Caparra Heights station supervisor, issued a letter of warning to Morales for unsatisfactory performance, citing the plaintiff's "abuse of coffee breaks." Two months later, Lopez removed Morales from his position as a Business Reply Mail Clerk, Postage Due [*13] Clerk and Express Mail Clerk, n2 and replaced him with a female co-worker. In July 1996, tires on Morales's car were punctured on two separate occasions while the car was parked in the secured Caparra Heights station parking lot.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 At oral argument, plaintiff's counsel explained that the Caparra Heights station operates twenty-four hours a day, seven days a week. While employees at the post office typically work only five days a week, the allotted days off for many positions do not correspond with the weekend. [**5]

Supervisor Juán Rodríguez and Manager José Sepúlveda changed days off in position posted for bidding with job ID 2541417 and posting number 96-007 from Saturday and Sunday to Thursday and Sunday. Such change was made in Retaliation against me because of two previous E.E.O. complaints that I filed against Supervisor Rodríguez and Manager Sepúlveda.

Supervisor Rodríguez knew that I was very interested and that I am waiting for several years a position with Sunday and ~~Monday~~ days off. In addition, he knew that I had a good chance to get this position because I was the second succeful bidder last time this position was posted for bidding at about six month ago.

Supervisor Rodriguez alleges that he change days off because there are so much people with Saturday and Sunday at Caparra. If that were the truth, why he did not change the position when it was posted for bidding about six month ago and employee Luis Rivera was the succeful bidder or when employee Ivette Fajardo was the succeful bidder about 7 months ago or when employee Mario Izquierdo was succeful bidder one year ago or Laura Torres at about 2 years ago. In addition there were 3 employees at Caparra that were assigned to Caparra with Saturday and Sunday and does not have a bidded position. Such employees are; Antonio Hernandez, Julia Collado and Ivan Pagán.

Why Rodríguez and Sepúlveda does not change days off to these employees that don't have a bidded position if he need employees to work on Saturdays ?

Why they wait until I have a good chance to get this position with Saturday and Sunday to change Days off ?

Why they didn't change this position before, when employees like Laura Torres, Mario Izquierdo, Ivette Fajardo and Luis Rivera bid this position before ?

I wish to put in record that on March 23,1996 ( *three days after I received my E.E.O. formal complaint aplications*) I received a Letter of warning from supervisor Enrique López and in presence of Manager José Sepúlveda ( **see letter of Warning included**). This is another action of reprisal trying to intimidate me and to send me a message that I should not continue with this E.E.O. complaint. On March 27,1996  I won this

AD/M
10/23/96

**EXHIBIT G**

# AGREEMENT

BETWEEN THE

UNITED STATES POSTAL SERVICE

AND

AMERICAN POSTAL WORKERS UNION
AFL–CIO

1994-1998

HANDBOOK EL-912

**Article 3**

(The preceding Article, Article 2, shall apply to Transitional Employees)

## ARTICLE 3
## MANAGEMENT RIGHTS

The Employer shall have the exclusive right, subject to the provisions of this Agreement and consistent with applicable laws and regulations:

    A.  To direct employees of the Employer in the performance of official duties;

    B.  To hire, promote, transfer, assign, and retain employees in positions within the Postal Service and to suspend, demote, discharge, or take other disciplinary action against such employees;

    C.  To maintain the efficiency of the operations entrusted to it;

    D.  To determine the methods, means, and personnel by which such operations are to be conducted;

    E.  To prescribe a uniform dress to be worn by designated employees; and

    F.  To take whatever actions may be necessary to carry out its mission in emergency situations, i.e., an unforeseen circumstance or a combination of circumstances which calls for immediate action in a situation which is not expected to be of a recurring nature.

(The preceding Article, Article 3, shall apply to Transitional Employees)

U.S. Postal Service

# EEO Investigative Affidavit *(Witness)*

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | 1 | 1 | 4A006102396 |

| 1. Affiant's Name *(First, Middle, Last)* | 2. Employing Postal Facility |
|---|---|
| Jose E. Sepulveda | USPS-Caribbean District |

| 3. Position Title | 4. Grade Level | 5. Postal Address and ZIP + 4 | 6. Unit Assigned |
|---|---|---|---|
| Manager, Customer Services | EAS-21 | 585 Ave FD Roosevelt San Juan PR 00936-9333 | Operation Prog Support |

## Privacy Act Notice / USPS Standards of Conduct

**Privacy Act Notice.** The collection of this information is authorized by Public Law 92-261, Equal Employment Act of 1972; 29 U.S.C., sections 621 et seq. and 701 et. seq.; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center

for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

**USPS Standards of Conduct.** Postal Service regulations require all postal employees to cooperate in any postal investigation. Failure to supply the requested information could result in disciplinary action (ELM 666).

**7. Statement** *(Continue on Form 2569 if additional space is required)*

① Schedule for position #1541417 was change because of operational needs. We were having problems with our operation on Saturdays because we had to many positions with Saturday and Sunday off. The change was made in compliance with our "National Agreement" signed by the American Postal Workers Union and the USPS. Another point is that Mr Morales is not the senior clerk in the San Juan Installation. Out of 742 full time clerks in the seniority list, he is number 432. So 431 employees have more seniority than him and a lot of them waiting for positions with Saturday and Sunday off to bid for them.

② No retaliation was intended nor the reason for this change of schedule. It was for the benefit of the service.

③ Mr. Morales had one or more EEO complaints filed before but since I never had to filled an affidavit, I don't know what his complain was or were.

④ Most of the time I'm out of the daily operation of the Caparra Hts. Sta. Most of the time I'm assigned to special project at the Main office (GPO) in San Juan for months. While I'm out, an acting manager is assigned to the unit.

| Affiant's Signature | Date |
|---|---|
| Jose E. Sepulveda | Jan 24, 1997 |

PS Form 2568-B, December 1995

**EXHIBIT I**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------X
ANGEL DAVID MORALES VALLELLANES,

                                        Plaintiff,

v.                                                          CIVIL ACTION
                                                            NO. 97-2459 (HL)


JOHN E. POTTER, POSTMASTER GENERAL,
U.S. POSTAL SERVICE, et. al.

                                        Defendant.
------------------------------------------------------------------------X

## DECLARATION OF ENRIQUE LOPEZ

I, ENRIQUE LOPEZ, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I have been employed by the United States Postal Service ("Postal
Service") since May 26, 1984.  I began my postal career as a mail handler in
Chicago Illinois, and after several promotions, I currently hold the position of
Postmaster of Las Piedras Puerto Rico.  My promotion to Postmaster was
effective on August 25, 2001.

2.      On May 15, 1993 I was assigned to Caparra Heights Station, San Juan,
Puerto Rico, as Supervisor, Customer Service.  My duties and responsibilities
included supervising clerks and letter carriers to ensure the efficient operation of
the post office.  I held this position until my promotion to Customer Service
Analyst in the General Post Office on April 24, 1999.

3.      As per the National Agreement between the Postal Service and its Unions,
Management has the right to maintain the efficiency of the operations entrusted

**EXHIBIT J**

to it.  This includes but is not limited to assigning employees, modifying schedules, and posting the appropriate bid positions that are required to properly utilize resources.

4.      I was present when Jose Sepulveda, Manager, Customer Services, and Juan Rodriguez, Clerk Area Supervisor, made the decision to change the rest days for Job ID No. 2541417, Posting No. 96-007.  This position was originally posted with Saturday and Sunday as the rest days.  Supervisors Sepulveda and Rodriguez determined there were too many positions with Saturday and Sunday as the rest days, so due to operational needs they reposted the bid with Thursday and Sunday as the rest days.

5.      The rest days for Job ID No. 2541417 have historically alternated between Saturday and Sunday or Thursday and Sunday, depending on the needs of the service.  <u>See</u> Declaration of Kenneth A. Levine ("Levine Decl."), Exhibit A.

6.      It is customary for supervisors to give service talks on a variety of subjects impacting Postal operations.  These talks would be given on an "as needed basis" to all employees to ensure compliance with Postal Service policies.

7.      It is alleged by the plaintiff that I conducted a service talk on April 9, 1996 regarding the Postal Service break policy.  <u>See</u> Morales Affidavit, attached hereto as Levine Decl. Exhibit B.

8.      I conducted a service talk on May 18, 1996 with employees to emphasize the importance to adhere to the time limitations concerning breaks, and to point out that abuses of the break policy were not to be tolerated.  This talk was precipitated due to continued abuses of the break policy.  It was in no way

caused by my awareness of Mr. Morales' EEO complaint against me; in fact, at the time I gave this service talk, I was unaware that Mr. Morales had named me as a Responsible Management Official in his EEO complaint. See Lopez Deposition Pages 51 and 67, attached hereto as Levine Decl. Exhibit C. To exercise control over employee breaks, employees were asked to record the duration of their breaks by using a time clock. However, this soon proved to be a cumbersome process, and was discontinued after only a few days.

9.     My supervisory duties also included the scheduling of employees assigned to Caparra Heights. Each employee was entitled to two (2) ten (10) minute breaks in addition to either a half-hour or hour lunch break. One ten-minute break would be taken in the first half of the employee's tour with the second break in the latter half of the tour. These breaks were afforded to all employees in a fair and non-discriminatory manner, with consideration given to the needs of the postal operation.

10.    Mr. Morales alleges that the break policy was not applied in an equal, non-discriminatory manner. He bases this allegation on his observing a female employee, Maria Irene, taking a break as soon as she begins her tour. See Morales Affidavit, attached hereto as Levine Decl. Exhibit B.

11.    Maria Irene has breakfast in the break room before she begins her tour. As she has not yet punched in she is not in violation of the break policy. Her assigned breaks are the only breaks she takes; she does not abuse the break policy.

12.     On April 20, 1996, I celebrated Secretary's Week with employees Rita Maldonado and Maria Irene by taking them to lunch.  Ms. Maldonado was the Office Clerk; I invited Ms. Irene to avoid any hint of impropriety.  As this was a special occasion they naturally exceeded the allotted time of their assigned lunch breaks.  When we returned from lunch, I manually adjusted their time cards so they would not be penalized.  See Deposition of Enrique´ Lopez, p. 23 – 25, attached hereto as Levine Decl. Exhibit D.

13.     The responsibilities Plaintiff alleges were exclusively his are components of the clerk position.  After becoming aware of a lack of training and knowledge of the postal clerks employed at Caparra Heights for processing postage due and business reply mail, I decided to cross train several clerks in this area.  Until that time, Mr. Morales was the only clerk in Caparra Heights with this knowledge.  Contrary to any assertions by Mr. Morales, these functions are not specific to any particular clerk or position.  All clerks can be assigned to processing all types of mail, including postage due and business reply mail.  Before the cross training, in the event Mr. Morales was absent from work there would be no employee available to process postage due and business reply mail transactions, which would result in the delay of these types of mail.

14.     This cross training was simply a means to create a more efficient postal operation.  Clerks receiving this training would be assigned this responsibility on a rotating schedule.  Mr. Morales was included on this rotation.

I declare under penalty of perjury of the laws of the United States that the foregoing statements are true and correct.


_____          Executed On: _6\24\2005_

Enrique Lopez

This statement is divided in two parts, one for sex discrimination, the other one for reprisal.

**Facts for sex discrimination:**

1. The tour of duty of Mayra Irene is from 8:00am to 5:00pm. She arrives late almost every day and is permitted by supervisor Enrique López to take a break as soon as she begins her tour.

2. A second break is permitted at about 9:40am. This break lasts about 20 minutes. Usually, she takes this break at supervisor López office while they have fun.

3. She is permitted to take her lunch break at about 11:30am or whenever she wants, even though if this represents to take the lunch break before the lunch break of other employees which begin their tours at 5:30am or 6:00am and leaving alone these employees at window area.

4. She takes two more breaks during afternoon, many times in presence of supervisor Enrique López.

5. On April 20, 1996, supervisor Enrique López went to lunch at about 12:05pm with Mayra Irene and Rita Maldonado, they came back at 1:25pm an hour and twenty minutes later. Mayra Irene and Rita Maldonado did not swipe their electronic time cards to lunch in so it is assumed that supervisor Enrique López fixed and entered the in lunch time manually. If this is true, it can be considered fraud.

6. As witness of this facts, employees José Colón, Héctor Ortíz, Howard Hall and Raymond Ruíz may be interviewed.

This discriminatory situation from supervisor Enrique López is affecting several male employees.

**Facts for reprisal:**

As soon as management at Caparra Station but specially supervisor Enrique López was notified by E.E.O. officer Carmen Rosa about my E.E.O. grievance, he got very angry and began to take actions against me in reprisal for my E.E.O. grievance. The following facts are going to prove the above statement:

1. On Saturday May 18,1996 at about 12:15pm supervisor López reunited all clerks employees at Caparra Station and said in an angry manner that : "because somebody have filed an E.E.O. complaint against me, now

A 2

**EXHIBIT L**

ADM
10/23/96

9

everybody have to use timecards an hit them each time an employee takes a break". With this action he tried to put employees against me because that was a very unpleasant action to employees. So they blame me for this action.

2. Almost immediately, supervisor López and later his subordinate Edward Miranda remove me from my regular duties as a Postage Due and Express Mail Clerk that I had been performing excellently for several years and placed me to perform window clerk duties. Instead an incredibly he placed female worker Mayra Irene, the one which I am complaining to perform my duties. I think this was a provocation because how can be possible that he place the same person which I am complaining about sex preferences, it was obvious that supervisor López was trying to create an incident between me and Mayra Irene. Several weeks later he placed other non trained employees to do my duties even though that caused severe delays of mail affecting in this manner Postal Service operations and customers. (See exhibit 1). Supervisor López, Miranda and later manager Sepúlveda alleged that they are doing this in order to "rotate" employees. Why this sudden need to "rotate" employees to perform only my duties after I filed an E.E.O.? In addition, they do not do this rotation with other employees duties like Anselmo Alvarez, Luis Ramos, Iván Pagán, Howard Hall, Antonio López, etc. This rotation is only done with my assigned duties in order to discriminate.

Another allegation from supervisors López, Sepúlveda and Miranda is that I am a window clerk so they can send me to perform window duties. However they did not place to perform window duties other employees which are also window clerks like Antonio López, Luis Ramos, Anselmo Alvarez and Howard Hall.

Also I want to inform that when management place me sometimes to do the postage due and express mail duties, they don't give me enough time to do those duties in order to blame me if the work is delayed. However they give plenty time to female worker Mayra Irene and other employees to do this duties.

3. On Saturday July 6, 1996 somebody puncture the front left tire of my car. The car controlled entrance. On Wednesday July 10 again somebody puncture the two front tires of my car, both tires remained useless and they cost me about $135 each. Again my car was parked at the same parking lot. I reported this incident to Postal Inspection Service. I took this as a warning.

4. Supervisor Enrique López harass employees that speak to me and keep a friendly relationship with me. Trying in this manner to create the image that I am a trouble maker and nobody want to talk to me. In this manner he tries to isolate me and put employees against me. ( see exhibit 2, statement from co-worker Angel Baerga ).

A 3

EXHIBIT M

ADM 10/23/96

10

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| **To:** Fidel Sevillano Del Río | **From:** Miranda |
| **FAX NUMBER:** 787-766-6219 | **Date:** July 6, 2005 |
| **COMPANY:** Assistant US Attorney | **TOTAL NO. OF PAGES INCLUDING COVER:** 2 |
| **PHONE NUMBER:** | **SENDER'S REFERENCE NUMBER:** [Click here and type reference number] |
| **Re:** [Click here and type subject of fax] | **YOUR REFERENCE NUMBER:** [Click here and type reference number] |

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☑ PLEASE REPLY    ☐ PLEASE RECYCLE

**NOTES/COMMENTS:**

See letter attach.

# MIGUEL E. MIRANDA GUTIÉRREZ
### ATTORNEY AT LAW

PMB 132, 255 AVE. PONCE DE LEÓN, SUITE 75, SAN JUAN, PR 00917-1919
TEL. (787) 282-0022    FAX. (787) 751-0683

July 6, 2005

**VIA FAX:  (787) 766-6219**

Fidel Sevillano Del Río
Assistant U.S. Attorney

Re:  Deposition of Efigenio Rivera

Dear Fidel:

According to my agenda the deposition of Mr. Efigenio Rivera can be taken any of the following dates at the end of July: 26 to 29.

Please let me know if you are available to any of those dates.

Regards,

**Miguel E. Miranda-Gutierrez**

**Rodriguez, Luis**

*notified USPS by email* (handwritten)

| | |
|---|---|
| **From:** | prd_docketing@prd.uscourts.gov |
| **Sent:** | Wednesday, July 06, 2005 4:14 PM |
| **To:** | prd_docketing@prd.uscourts.gov |
| **Subject:** | Activity in Case 3:97-cv-02459-JAG-GAG Morales-Vallellanes v. US Postal Service, et al "Informative Motion regarding" |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

## United States District Court

## District of Puerto Rico

Notice of Electronic Filing

The following transaction was received from Miranda-Gutierrez, Miguel E. entered on 7/6/2005 at 4:13 PM AST and filed on 7/6/2005

| | |
|---|---|
| **Case Name:** | Morales-Vallellanes v. US Postal Service, et al |
| **Case Number:** | 3:97-cv-2459 |
| **Filer:** | Angel David Morales-Vallellanes |
| **Document Number:** | 242 |

**Docket Text:**
INFORMATIVE Motion regarding Vacations filed byMiguel E. Miranda-Gutierrez on behalf of Angel David Morales-Vallellanes (Miranda-Gutierrez, Miguel)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1051795991 [Date=7/6/2005] [FileNumber=589034-0]
[68d533de265df58344faa7e97690bb86b372c5b1d9df4e2b1e142a974e64084acefe0
96351cfade2fe7ad6997ca8876aeeddaaa108ceba8d8f9f8c6b696751a5]]

**3:97-cv-2459 Notice will be electronically mailed to:**

Miguel E. Miranda-Gutierrez    mirandalawfirm@aol.com,

Fidel A. Sevillano-Del-Rio    fidel.sevillano@usdoj.gov,
luis.rodriguez3@usdoj.gov;Civil.ECFPR@usdoj.gov

**3:97-cv-2459 Notice will be delivered by other means to:**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ANGEL DAVID MORALES VALLELLANES,**<br>**Plaintiff,**<br><br>v.<br><br>**JOHN POTTER, UNITED STATES POSTMASTER GENERAL, ET ALS.,**<br>**Defendants.** | **CIVIL NO. 97-2459 (JAG)**<br><br>**DAMAGES BASED ON RETALIATION AND DISCRIMINATION; PROHIBITED PERSONNEL PRACTICES; UNFAIR LABOR PRACTICES; BREACH OF COLLECTIVE BARGAINING AGREEMENT**<br><br>**TRIAL BY JURY IS HEREBY REQUESTED** |

### INFORMATIVE MOTION

**COMES NOW**, plaintiff Angel David Morales-Vallellanes through his legal counsel and very respectfully inform this Honorable Court:

1.    The undersigned attorney might take his vacations from August 1st to August 5, 2005.

2.    It is respectfully requested from this Honorable Court to refrain from scheduling any hearing and/or issue any order during said period.

**WHEREFORE**, it is respectfully requested from this Honorable Court to take notice of the above information.

**RESPECTFULLY SUBMITTED.**

**I HEREBY CERTIFY** that on July 6, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: **Fidel A. Sevillano-Del Río, Esq.**, Assistant U.S. Attorney, Federico Degetau Federal Build., 150 Carlos Chardón Av., Hato Rey, Puerto Rico 00918.

S/MIGUEL E. MIRANDA-GUTIERREZ
**MIGUEL E. MIRANDA-GUTIERREZ, ESQ.**
ATTORNEY FOR PLAINTIFF
PMB 132, 255 Ponce de León Ave. Suite 75
San Juan, Puerto Rico 00917-1919
TEL: (787) 282-0022

**Rodriguez, Luis**

---

**From:**     prd_docketing@prd.uscourts.gov
**Sent:**     Wednesday, July 06, 2005 6:22 PM
**To:**       prd_docketing@prd.uscourts.gov
**Subject:**  Activity in Case 3:97-cv-02459-JAG-GAG Morales-Vallellanes v. US Postal Service, et al "Order on Informative Motion"

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### United States District Court

### District of Puerto Rico

Notice of Electronic Filing

The following transaction was received from sm, entered on 7/6/2005 at 6:22 PM AST and filed on 7/6/2005
**Case Name:**        Morales-Vallellanes v. US Postal Service, et al
**Case Number:**      3:97-cv-2459
**Filer:**
**Document Number:** 243

**Docket Text:**
ORDER noted [242] INFORMATIVE motion . Signed by Judge Gustavo A. Gelpi on 7/6/05. (sm, )

The following document(s) are associated with this transaction:

**3:97-cv-2459 Notice will be electronically mailed to:**

Miguel E. Miranda-Gutierrez      mirandalawfirm@aol.com,

Fidel A. Sevillano-Del-Rio      fidel.sevillano@usdoj.gov,
luis.rodriguez3@usdoj.gov;Civil.ECFPR@usdoj.gov

**3:97-cv-2459 Notice will be delivered by other means to:**

**Rodriguez, Luis**

| | |
|---|---|
| **From:** | Rodriguez, Luis |
| **Sent:** | Friday, July 08, 2005 10:04 AM |
| **To:** | 'klevine@mail.usps.gov' |
| **Cc:** | Sevillano, Fidel |
| **Subject:** | Angel David Morales Valladares v. United States Postal Services |

Activity in Case 3:    Activity in Case 3:
97-cv-02459...    97-cv-02459...    For your information and records.

Luis M. Rodriguez
Legal Assistant

1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

RECEIVED

2005 APR 13 P 4:09

| | |
|---|---|
| ANGEL DAVID MORALES VALLELLANES, **Plaintiff,** | CIVIL NO. 97-2459 (JAG) |
| v. | DAMAGES BASED ON RETALIATION AND DISCRIMINATION; PROHIBITED PERSONNEL PRACTICES; UNFAIR LABOR PRACTICES; BREACH OF COLLECTIVE BARGAINING AGREEMENT |
| JOHN POTTER, UNITED STATES POSTMASTER GENERAL, ET. ALS., **Defendants.** | TRIAL BY JURY IS HEREBY REQUESTED |

### ANSWER TO INTERROGATORY

1.    Angel David Morales - Vallellanes
      Calle Betania #28
      Urb. Muñoz Rivera
      Guaynabo, P.R. 00969.

      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
      June 23, 1960
      San Juan, P.R.

2.    a)    Since 1988 I have been working with the United States Postal Service.

      b)    Yes

      c)    Not working since February 1997, because harassment and discrimination in the place of work at USPS. My income comes from the office of Worker's Compensation Program (OWCP) and is equivalent to a 66% of my salary at the rate of 1997 since I stop working.

3.    a)    Margarita Janer High School in Guaynabo since 1975 to 1978.

      b)    UPR - Mayaguez campus 1978-1980



    c)     UPR - Rio Piedras campus 1980-1985

           Bachelor in Art.

4.    See Exhibit # 168 as marked for Trial and preciously submitted.

5.    I have only been suspended and/or disciplined by the USPS at work. The circumstances recording the suspensions are included in the paragraphs 18 to 90 of the Amended Complaint.

6.    See paragraphs 18 to 90 of the Amended Complaint.

7.    See the list of witnesses of plaintiff previously provided.

8.    See paragraph 18 to 90 of the Amended Complaint.

9.    See paragraph 18 to 90 of the Amended Complaint. The evidence recording of the area covering paragraph are the two (2) EEO'S already provided during the depositions taken by plaintiff , And the exhibits included for trial previously provided.

10.    No, I have never had and accident covered by the Federal Employees Compensation Act ("FECA").

11.    See the Amended Complaint.



12.    I)     Guillermo Hoyos, psychiatrist since Feb. 1997

       ii)    Vicente Feliciano, economic advisor.

13.    I)     See Amended Complaint.

       ii)    According to plaintiff's physician doctor Hoyos and all of the psychiatrists of OWCP plaintiff is unable to work, notwith standing plaintiff took a course to become a paralegal three (3) years ago and now took the test to enter to law school in order to seek an income and mitigate the damages.

14.    No, I do not claim medical expenses.

15.    Medical expenses have been paid by Triple S and OWCP. The information regarding the amount and date of payment is the same prescription by doctor Hoyos in the last eight (8) years. (See Exhibit I)

16. See list of witness provided by plaintiff.

17. See list of witnesses provided by plaintiff.

18. All evidence and exhibits have already been provided and marked.

19. N/A

20. N/A

21. See answer #18.


## VERIFICATION

I, Angel David Morales-Vallellanes, of legal age, single, resident of Guaynabo, Puerto Rico, being duly sworn, depose and state:

1. That the above are my personal circumstances.

2. That I have read the foregoing the answer to interrogatories that the allegations contained are true to my best information and by personal knowledge.

In San Juan, Puerto Rico, this 13 day of abril, 2005.


**ANGEL DAVID MORALES-VALLELLANES**


**AFFIDAVIT NO.** _547_

Sworn and subscribed before me by Angel David Morales-Vallellanes, of the above stated personal circumstances, whom I personally know, this 13 day of abril, 2005, in San Juan, Puerto Rico.

**NOTARY PUBLIC**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RECEIVED
DISTRICT
PUERTO RICO

2005 APR 13  P 4: 09

| | |
|---|---|
| ANGEL DAVID MORALES VALLELLANES, **Plaintiff,** | CIVIL NO. 97-2459 (JAG) |
| | **DAMAGES BASED ON RETALIATION AND DISCRIMINATION; PROHIBITED PERSONNEL PRACTICES; UNFAIR LABOR PRACTICES; BREACH OF COLLECTIVE BARGAINING AGREEMENT** |
| v. | |
| JOHN POTTER, UNITED STATES POSTMASTER GENERAL, ET. ALS., **Defendants.** | |
| | **TRIAL BY JURY IS HEREBY REQUESTED** |

### ANSWER TO PRODUCTION OF DOCUMENTS

1.  Statement are already been provided.

2.  All documents are already been provided.

3.  Already provided.

4.  Already provided, but the psychiatrist has not prepared any report.

5.  Provided

6.  Provided

7.  Provided

8.  Provided

9.  Provided

10.  a)  The state and federal income tax returns of plaintiff were provided before;

    tax returns of plaintiff were provided;

    b)  Plaintiff has not filed his tax returns since 1997 because his income is

ATTACHMENT 2

from OWCP.

c)    Please find herewith a Benifit Statement from OWCP, Said benefit has

been more or less the same since plaintiff began his compensation.


S/MIGUEL E. MIRANDA-GUTIERREZ
MIGUEL E. MIRANDA-GUTIERREZ, ESQ.
ATTORNEY FOR PLAINTIFF
PMB 132, 255 AVE. PONCE DE LEON,
SUITE 75
SAN JUAN, PUERTO RICO 00917-1919
TEL: (787) 282-0022
FAX: (787) 751-0883

By: _____
Miguel E. Miranda Gutiérrez
USDC 203110

US DEPT OF LABOR, OWCP
PO BOX 8300 - DISTRICT 2
LONDON, KY 40742-8300

# United States Department of Labor
### Division of Federal Employees' Compensation

# BENEFIT STATEMENT



ANGEL D MORALES
BETANIA 28 ST  URB MUNOZ RIVERA
GUAYNABO        PR 00969

US DEPT OF LABOR, OWCP
PO BOX 8300 - DISTRICT 2
LONDON, KY 40742-8300

| | | | | |
|---|---|---|---|---|
| Case Number: | | 02-0726438 | Gross Compensation: | 2,109.00 |
| Social Security Number: | | 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 | Less Deductions: | 71.98 |
| Date of Injury: | | 96/08/21 | Intermittent Hours Lost: | .00 |
| Pay Type: | | 1 | Overpayments: | .00 |
| Check Date: | | 05/02/19 | Other Payees: | .00 |
| Period Paid: | 05/01/23 | To: 05/02/19 | Net Check Amount: | 2,036.74 |
| Pay Rate: | | 685.12 | Agency Health Insurance Cost: | 177.86 |
| Comp Rate: | | .6666 | Health Insurance Code: | 891 |
| Life Insurance | | 12.70 | From: 05/01/23  To: 05/02/19 | |

# NOTICE TO RECIPIENTS

**METHOD OF PAYMENT**  If you are receiving payment by electronic fund transfer (EFT), the payment shown above has already been made to your financial institution. Otherwise, the check is enclosed.

**ADDRESS CHANGE**  If you move or otherwise change your mailing address or your check mailing address (such as a bank or credit union), advise OWCP right away in writing of the new address.

**CORRESPONDENCE**  Include your OWCP file number on all letters you send to OWCP.

**DEPENDENTS**  For recipients of payments for disability or schedule award (pay type 1 or 9, as shown above):  If you have one or more dependents, you are entitled to compensation at the augmented rate of 75%, rather than 66 2/3 percent, of your pay rate.  (Questions as to who qualifies as a dependent should be directed to the OWCP District Office handling your claim.) Events such as birth, death, marriage, divorce, separation,  or youngest child reaching age 18 may affect your compensation and should be reported to OWCP right away.

**EMPLOYMENT**  For recipients of payments for disability (pay type 1 , as shown above): To avoid an overpayment of compensation,  advise  OWCP right away when you return to full-time or part-time  work with either a government or private employer  (including self-employment.)  Return to OWCP any compensation checks received after you go back to work. State the full name  and address  of your employer; the date employment began; the rate of pay and number of hours worked per week; and a description of the employment.

**SURVIVORS**  For recipients of payments for death benefits (pay type 7, as shown above):  If it has not already done so, OWCP  will advise you in detail of each survivor for whom death benefits are payable,  and the percentage of salary  payable for each.  (Questions as to  who qualifies  as a survivor should be directed to the OWCP District Office handling your claim.) Events such as birth of a posthumous child, death, remarriage,  or youngest child reaching age 18 may affect your compensation and should be reported to OWCP right away.

