## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

ANGEL D. MORALES VALLELLANES
Plaintiff

Vs.

CIVIL NO.  97-2459 (GAG)

JOHN E. POTTER, Postmaster General
Defendant

### PROPOSED PRE-TRIAL ORDER

**TO THE HONORABLE COURT:**

**COMES NOW**, the parties represented by their counsel of record and, very respectfully, submit their proposed Pre-Trial Order:

**I.   THE PARTIES**

The plaintiff Angel David Morales Vallellanes, is represented by Attorney Miguel E. Miranda-Gutierrez, P.O. Box 192271, San Juan, PR 00919-2271, Telephone (787) 282-0022, Telecopier (787) 753-7655.

The Defendant is represented by Assistant United States Attorney, Fidel A. Sevillano Del Río Chardón Tower, Suite 1201, 350 Carlos E. Chardón Street, San Juan, Puerto Rico 00918; Telephone: (787) 766-5656, Telecopier: (787) 766-6219.

**II.   NATURE OF THE ACTION AND JURISDICTION**

**Plaintiff:**

This is a civil action brought pursuant to Title VII of the Civil Rights of 1964, Sec. 701, et seq. as amended, 42 U.S.C. 2000(e) et seq.; the Civil Rights Act of 1991, 42

U.S.C. sec. 1981, et seq.; Labor Management Relations Act, 1947, ' 301, 29 U.S.C. 185; National Labor Relations Act, ' 9, as amended, 29 U.S.C.A. ' 159; 39 U.S.C. '' 409 and 1208; the Collective Bargaining Agreement between the American Postal Workers Union and the United States U.S.P.S.; 5 U.S.C. ' 2302; and Law 100 of June 30, 1959, 29 L.P.R.A. '' 146 et seq., as amended. "Morales" were subjected to one of the most brutal and insane retaliation and discrimination practices because his involvement in a protected activity as is the complaints he filed with the Occupational Safety and Health Administration ("OSHA"), and the Equal Employment Opportunity (EEO) also he was a victim of sex discrimination by defendants "USPS" and Caparra Heights Station Manager Enrique López ("López").

The United States Court of Appeals for the First Circuit in August 4, 2003 decision limited plaintiff's amended complaint to Count I of the Amended Complaint and three allegations of the EEO claims:

## COUNT I. RETALIATION AND DISCRIMINATION

"101. Plaintiff alleges and incorporates by reference each and every preceding allegation.

102. The U.S.P.S., through its management, representatives and/or employees, has engaged in retaliatory activities against Plaintiff due to plaintiff's health and safety protection activities as alleged above, equal employment opportunity charges and filing of unfair labor practice charges.

103. As a direct and proximate result of the U.S.P.S.'s systematic, repeated and continuous harassment, as alleged above, the Plaintiff endured great mental suffering and emotional distress since his original notification to O.S.H.A. of the violations of

safety and health standards at Caparra Station until Plaintiffs constructive discharge from employment.

104. The U,S,P.S., and Enrique Lopez' conduct, as set forth above, constitutes unfair labor practices, prohibited personnel practices, retaliation, and discrimination against the Plaintiff for his willingness to engage in safety and health protecting activities and for attempting to vindicate his rights under applicable law.

105. The U.S.P.S. and Enrique Lopez violated Plaintiffs rights under Federal law when they unlawfully removed Plaintiff from the position granted to him as a reasonable accommodation for his arm condition, as alleged above. The duties imposed on Plaintiff were harmful to him and detrimental to his condition. Said codefendants retaliated against the Plaintiff for his safety and health protecting activities by taking away Plaintiffs reasonable accommodation.

106. Under Federal law, the employer is obliged to keep a disabled employee in the position granted to him as a reasonable accommodation.

107. The duties imposed upon the Plaintiff involved the constant use of his arms, which aggravated Plaintiffs employment related injury in both arms, as set forth above.

108. Plaintiff, as a direct consequence of the employment related injury to his arms, is now suffering and will continue to suffer a limitation of his life activities and the performance of manual tasks. Also, his ability to work has been significantly reduced. The damages suffered by Plaintiff are hereby estimated in the amount of $200,000.00.

109. As a result of said co-defendants intentional retaliatory and discriminatory acts, Plaintiff is entitled to monetary damages and such other relief, compensatory damages, damages for pain and suffering, out-of-pocket expenses, all of which are herein

estimated in the amount of $500,000.00.

110. Also, as a proximate result of co-defendants' conduct, Plaintiff has suffered and continues to suffer substantial losses in earnings, job experience, retirement benefits, and other employee benefits that he would have received absent codefendants' intentional acts against the Plaintiff is therefore entitled to front pay, back pay, severance pay and benefits. Such compensation is estimated in an amount no less than $2,000,000.

111. As a further proximate result of the above mentioned acts, Plaintiff has suffered humiliation, mental pain and anguish, and loss of the ability to enjoy life. These damages are estimated in the amount of $ 1,000,000.00.

The EEO claims:

1) Morales' allegation that Job Bid #2541417 was posted with Thursday/Sunday rest days rather than Saturday/Sunday rest days in retaliation for plaintiffs OSHA complaints;

2) Morales' allegation of sexual discrimination and retaliation arising from an April 9, 1996 incident in which plaintiff's duties and responsibilities were awarded to a female employee and he was given window clerk duties to perform;

3) Morales allegation that the coffee and lunch breaks policy was not applied in an equal and nondiscriminatory manner.

The above mentioned EEO allegation if taken individually does not tell the whole story of the retaliation and discriminatory persecution by "USPS" and "López" to "Morales". Said incidents should be taken in its entirety as a result of a long and tortuous persecution in which "Morales" was the target.

For instance, the following Uncontested Facts are very important in order to understand the actions taken by defendants against "Morales":

1) At all times during 1995 and 1996 Plaintiff "Morales" was the Caparra Heights Safety Captain until January 2, 1997 when he was removed from the position by "López".

2) On March 21, 1995 "Morales" as Safety Captain for Caparra Heights Station with other co-workers filed a Postal Service safety form 1767 as the procedure requested by "USPS" to report safety hazard in this case because the dust accumulation and unsanitary conditions at the Caparra Heights Station.

3) Due to the lack of action by "USPS" "Morales" filed on April 6, 1995 a formal complaint at OSHA.

4) The Occupational Safety and Health Administration ("OSHA") notified about the violations to "USPS" through the District Manager Odarit Tirado and Safety Manager Cándido López and gave them until June 19, 1995 to correct the violations without an inspection.

5) On June 21, 1995 District Manager Odarit Tirado sent a letter to OSHA in which he (Tirado) accepted the dust accumulation problem and the presence of rodents and roaches at the Caparra Heights Station, notwithstanding he said the situation was "under control". Obviously this confirms "Morales" complaint about the unhealthy and safety conditions at said station.

6) On June 8, 1995 a safety inspection was conducted at Caparra Heights Station by Ms. Elizabeth Rivera as USPS Collateral Duty Safety Officer of the Safety & Health Office, Enrique López as Acting Manager at Caparra Heights Station and "Morales" as the representative of the employees. The above mentioned employees noted as the

**Abatement Committee members**

**and recorded all deficiencies in a Safety and Health Deficiency Report. In accordance with the June 8, 1995 Safety and Health Deficiency Report codefendant Enrique López was well aware of all the deficiencies of safety and health at Caparra Heights Station, also he knew that "Morales" was the person behind the OSHA complaint as both of them were members of the Abatement Committee. In such meeting Supervisor Enrique López whispered in "Morales" ear "sooner or later I am going to take care of you and you are going to pay for this".**

**7) On July 20, 1995 District Manager John Malavé sent a MEMORANDUM to Caparra Heights Station Manager José Sepúlveda and requested the corrections of the safety hazards included in the Safety Inspection and Program Evaluation report within thirty (30) calendar days after completion of the inspection (June 8, 1995).**

**8) On August 1, 1995 "Morales" sent a letter to OSHA as he informed that the violations at Caparra Heights Station were not corrected and requested an inspection. It is very important to notice that as of this date both Caparra Heights Station manager José Sepúlveda and supervisor "López" were very angry at "Morales" because his OSHA complaints and also they knew about his ("Morales") involvement in the safety inspection at Caparra Heights Station on June 8, 1995 for whose report a memorandum from District Manager John Malavé was sent to Sepúlveda to correct the safety hazards.**

**9) On February 15, 1996 "Morales" filed an EEO Precomplaint based on retaliation for previous EEO activity because manager Jose Sepúlveda and supervisor "Lopez" changed the rest days of a position that Plaintiff was interested and had a good chance to get it.**

10) On February 23, 1996 OSHA sent a letter to manager José Sepúlveda notifying the unsanitary conditions maintained at Caparra Heights Station due to dust accumulation. In said letter OSHA set a deadline until March 4, 1996 to correct the violations in order to avoid an inspection. A copy of said letter was sent to "Morales" as it emphasized the protection provided by OSHA for employees against discrimination because their involvement in protected safety and health activity.

11) On February 27, 1996 Postmaster and District Manager John Malavé notified a memorandum to all employees regarding safety in which notifies the commitment to safety and encourages all employees to reduce the accidents in the Postal Service.

12) March 4, 1996 is the deadline given by OSHA to the Caparra Heights Station management to correct the violations which were not corrected USPS management did not respond to OSHA. 13) On March 5, 1996 Plaintiff went to a meeting of Safety Captains as a representative of the Caparra Heights Station where Postmaster and District Manager John Malavé and USPS Operations Manager Virginia Matías spoke in front of all people about the importance of safety in the workplace and how safety was priority number one in the Postal Service. In said meeting

"Morales " spoke in front of all people to John Malavé about the safety hazards at Caparra Station and how he had to file a complaint in OSHA who gave until the day before (March 4, 1996)) as a deadline to correct the violations which were not corrected. During the afternoon of that same day Postmaster and District Manager John Malavé went to Caparra Heights Station to meet employee Luis Ramos.

14) On March 7, 1996 Plaintiff was placed under an investigation by Postal Inspector Eliezer Julián for the third (3rd) time because an alleged death threat by "Morales" to

employee Luis Ramos.

15) On March 19, 1996 "Morales" sent a certified letter to OSHA Area Director José Carpena in which he informed him the discrimination he was subject of due to the safety and health complaints he filed.

16) On March 23, 1996 Plaintiff was notified by supervisor "López" a letter of warning in presence of Manager José Sepúlveda for unsatisfactory performance. Said letter of warning alleged that "Morales" abused his coffee breaks. On this same date Plaintiff sent a certified letter to Postmaster and District Manager John Malavé about the investigation against him by Postal

Inspector Eliezer Julián.

17) On March 26, 1996 Plaintiff sent a certified letter to OSHA Area Director José Carpena informing all the discrimination he was subject as of that date.

18) On March 27, 1996 the letter of warning was eliminated from Plaintiff record as it was proven that it was based on false facts. After supervisor "López" knew about said elimination he was very angry at "Morales".

19) On April 1, 1996 Plaintiff received a letter from OSHA to inform him that his new contact for discrimination and reprisal complaints was the Director of Office of Federal Agency Programs at OSHA John E Plummer.

20) On April 3, 1996 Plaintiff filed an EEO formal complaint based on retaliation for the changes made in the rest days for the position "Morales was interested. Said complaint was against Manager José Sepúlveda and supervisors "López" and Juan Rodríguez.

21) On April 6, 1996 Plaintiff sent a certified letter to Postmaster and District Manager

John Malavé explaining in chronological order the unsanitary conditions at Caparra Station, the reprisal and discrimination practices against him and the hostile work environment by the manager at the station especially by supervisor "López". "Morales" received no response to said

letter.

22) On April 9, 1996 supervisor "López" held a meeting with all employees at Caparra Station in order to establish a new policy of coffee and lunch breaks.

23) On April 10, 1996 Plaintiff gave to supervisor "López" a letter from his otolaryngology's who stated that the conditions at the station were affecting him and recommended a clean workplace environment.

24) On April 25, 1996 Plaintiff filed an informal EEO complaint based on reprisal and sex discrimination regarding the application of the new coffee and lunch breaks policy.

25) On March 18, 1996 supervisor "López" held a meeting with all the clerk employees at Caparra Station and said very angry that because somebody have filed an EEO against me now everybody must use their timecards each time an employee takes a break. Also as a reprisal supervisor "López" removed "Morales" from his assigned regular duties as a Business Reply, Postage Due and Express Mail clerk and placed female employee Mayra Irene.

Because a hostile work environment with discriminatory "intimidation, ridicule, and insult" permeated the workplace Plaintiff was a subject of a repeated conduct. Therefore, the third and fourth EEO complaints were timely filed as Plaintiff hostile work environment was composed of a series of separate acts that collectively constitute one unlawful employment practice. If an act, as in the instance case, contributing to the

claim occurs within the filing period, the entire of the hostile environment may be considered by a court for the purposes of determining liability.

Defendant:

The Plaintiff has filed this civil action against the United States Postal Service (Postal Service) claiming retaliatory discrimination and discrimination on the basis of gender in violation of Title VII, 42 U.S.C. § 2000 et seq. and 42 U.S.C. § 1981a. See Amended Complaint, Count One. Morales alleged that he was the target of retaliatory and discriminatory acts provoked by complaints that he filed with the Occupational Safety and Health Administration ("OSHA"). Angel David Morales Vallellanes ("Morales") also sued the American Postal Workers Union ("APWU" or "Union") and its president, Daniel Soto, in the same action, claiming that the Union breached its duty of fair representation by failing to submit and process his grievances against the Postal Service. As a housekeeping matter it is to be noted that Mr. Enrique López still appears as a co-defendant in this case. He is an improper party defendant and the Postmaster has always disputed this Court's subject matter jurisdiction over him. As a matter of law, the exclusive proper party defendant for this alleged employment discrimination case is the head of the agency or the Postmaster General and no one else, to include individual persons. (See 41 U.S.C. §2000e-16(c)). Courts have consistently interpreted that section to mean that in federal employment discrimination suits under Title VII, the only proper party defendant is the head of the agency against which discrimination is alleged. See Hall v. SBA, 695 F2d. 175. 180 (5th Cir. 1983); Soto v. U.S.P.S., 905 F2d. 537, 539 (1st Cir. 1990); Rys v. U.S.P.S., 886 F2d. 443, 445 (1st Cir. 1989).

The United States District Court for the District of Puerto Rico referred the case

to a magistrate judge, who recommended that the court grant motions for summary judgment submitted by defendants Postal Service and the Union. Concluding that "Plaintiff ... failed to raise any material issue not adequately addressed by the magistrate judge in his Report," the district court adopted the magistrate judge's report and recommendation, and granted the defendants' motions for summary judgment.

On August 4, 2003 the United States Court of Appeals for the First Circuit ("1St Circuit"), in COA Case No. 02-2190 (See Attachment 1) affirmed in part and reversed in part. Specifically, the 1st Circuit affirmed the dismissal of all claims against the union and many against the Postal Service, thus limiting plaintiff's claims against the Postmaster General to <u>exclusively</u> three allegations:

()Morales's allegation that Job Bid # 2541417 was posted with Thursday/Sunday rest days rather than Saturday/Sunday rest days in retaliation for plaintiffs OSHA complaints

()Morales's allegation of sexual discrimination and retaliation arising from an April 9, 1996 incident in which plaintiffs duties and responsibilities were awarded to a female employee and he was given window clerk duties to perform, and,

()Morales's allegation that the "coffee and lunch breaks" policy was not applied in an equal and nondiscriminatory matter

The defendant anticipates that plaintiff will try to offer testimony and documents <u>outside</u> the scope of the foregoing allegations, and therefore, petitions from this Honorable Court that, at the outset of Jury Trial, it limit plaintiff to <u>only</u> present evidence related to the above-stated exclusive controversies. This will simplify matters, avoid confusion to the Jury members as to the true nature of the issues herein, and streamline the case as ordered by the Court of Appeals. It will also avoid the Jury being barraged with irrelevant and inflammatory

evidence that bears no relation to the surviving issues to be tried as set forth by the 1st Circuit

Court of Appeals in COA-02-2190 (See Attachment 1.)

Plaintiff's allegation that a job bid was changed in retaliation for filing OSHA

complaints during the previous year is both factually and legally flawed. It is the Postal

Service's position that his retaliation claim must fail as a matter of law because retaliation

for making safety complaints to the Department of Labor, are clearly covered by a separate

Congressionally mandated statutory framework. *See 29 USCS § 660.*  It is not a protected

activity within the Civil Rights Act of 1964 as amended in 1991.

In addition, the job bid was changed due to the operational needs of the office (too many

positions existed with Saturday/Sunday rest days) and not for any discriminatory reason.

Second, Plaintiffs allegation that on April 9, 1996 his duties and responsibilities were

awarded to a female employee for discriminatory and retaliatory purposes is also not

supported by the evidence. As noted infra, the Plaintiff's job duties were rotated among a

number of employees so that he was not the only employee in the office who was experienced

in processing certain types of mail.

Lastly, Plaintiff's allegation that "coffee and lunch breaks" policy was not applied in an

equal and nondiscriminatory matter is also without merit and frivolous.  It is to be noted that

none of plaintiff's foregoing allegations rise to the level of an actionable adverse action

protected by the Civil Rights Act of 1991.  For an adverse action to be actionable the

retaliatory action must be material, thus producing a significant, not trivial harm.  Trivial

actions such as petty slights, minor annoyances and inconveniences are not adverse action.

(See, *Ada I. Carmona Rivera v. Commonwealth of Puerto Rico, et. al.*, COA Case No. 05-2500,

September 12, 2006.)

III.    **FACTUAL VERSION OF THE FACTS:**

    **Plaintiff:**

    At the time of events, "Morales" held a position as a window/distribution clerk, but since 1993 was assigned duties as Postage Due, Express Mail and Business Reply Mail Clerk ("Business Reply") due to his injured right arm.  It was not until "López" as part of his reprisal and retaliatory agenda began in May 1996 to rotate only the duties assigned to "Morales" in the past four (4) years.

    At the time of the events, "López" was in 1995 a supervisor for the letter carriers and held a position as "acting manager" at Caparra Heights Station, and José Sepúlveda was a Manager at Caparra Heights Station.

    Between April 1995 and April 1996, Plaintiff filed one (1) complaint with "OHSA" on April 7, 1995 and renewed said complaint through certified letters on August 1st, 1995; February 23, 1996; and April 6, 1996.

    On February 15, 1995, "Morales" filed an informal EEO complaint as he alleged that as a retaliatory action the rest days for Job Id #2541417 posting #96-007 that "Morales" was interested, were changed. This action was taken due to his "OSHA" complaints and his involvement in the safety and health problems at Caparra Heights Station.

    Defendant is used to take advantage of a legitimate mean as a pretext for an illegitimate purpose and the present case is not an exception. For instance, defendant alleges that the National Agreement empowers the USPS to determine the methods to maintain the efficiency of the operations. On behalf of the above, defendant alleges that the change of the rest days was due to the needs of the service because too many employees were having the entire

weekend as rest days. Also, defendant alleges that "Morales" was number 432 on the seniority

list. Both allegations are meritless because the first one is a pretext used previously in another

case of retaliation and reprisal by Manager José Sepúlveda and "López", and the last one gives

the false impression that "Morales" had a slim opportunity to be awarded the

position because he had to compete with four hundred thirty one (431) fellow employees in

front of him.

As an evidence that Manager Sepúlveda and López used to discriminate and retaliate

against any employee who complaint against them; plaintiff is submitting evidence where

Manager Sepúlveda and "López" harassed and retaliated against letter carrier employee

Carmelo Martínez who filed a complaint against Manager José Sepúlveda. In said Award, the

opinion of the arbitrator Roger E. Maher about Manager José Sepúlveda and "López" actions

using the National Agreement as a pretext to maintain the efficiency of the operation is a

follows in pages 8 and 9 of the Award:

> *"However, the NALC's direct testimony and indirect evidence clearly establish that the inspection of the Grievant's route was tainted by the station manager's animus towards the Grievant. This evidence strongly suggests that the station manager intended and deliberately sought to abolish the Grievant's route by using a route inspection as retaliation because the Grievant sought and was granted Saturdays off by Post Master Tirado over his objections, in maintaining the efficiency of the operation.*
>
> *The station manager's statements, as testified by the Grievant and Carmen Suárez, was that he, the station manager, took offense to the Grievant's going over his head to the Post Master, who granted his Saturdays off even though the station manager had repeatedly denied the Grievant this consideration. The Arbitration finds this was the sole grounds for abolishing the Grievant's full time route to that of auxiliary one.*
>
> *Given the direct testimony of the Grievant and Suarez and the USPS failure to call station manager's Sepúlveda as a witness to refute this damaging testimony, the Arbitrator adopts the NALC's version that the Grievant was singled our for a route inspection. The indirect testimony establishes that as no one else at this post office was subject to a route inspection. Furthermore even though the Grievant's route was more than eight hours, other carrier routes with less than eight hours were not inspected. This speaks to no more or no less than the station manager's intent to punish the Grievant for going over his head.*
>
> *The Arbitrator could expound further on the minutia of both route inspections and the inspectors failure to properly inspect the Grievants' route pursuant to the M-39 Handbook*

*regulations. However he believes it is unnecessary upon his findings that the USPS's grounds for a route inspection in this instant matter was arbitrary and capricious because the credible testimony established the station manager's personal animus towards the Grievant.*

*The mendacious position of the USPS on behalf of the station manager[sic], who did not appear at the hearing, that the route inspections of the Grievant were done in good faith, pursuant to the M-39 Handbook and that it's determination in this instance was a management's right guaranteed by the contract is simply incredulous and of no value, especially when it was established that management's used its right as a retaliatory weapon to inflict hardship upon the Grievant because of his temerity to ask and be granted Saturdays off.*

*The convincing testimony and evidence established that the decision to inspect the Grievant's route was intended for retaliatory purposes. The Arbitrator holds the USPS can not use the guise of maintaining efficiency, its contract right, when it has been shown by convincing testimony and evidence that the decision to inspect the Grievant's route was purposely for retaliatory purposes.*

Also, according to a sworn statement by Carmelo Montañez he declares that both "Sepúlveda" and "López" were capable as the above mentioned case shows to retaliate against employees who dare to file EEO complaints and/or grievances against them.  In the present case "Morales" was the subject of retaliation because his OSHA and EEO complaints and his involvement in health and safety issues at Caparra Heights Station.. The change in rest days was a pretext to retaliate against "Morales" as the same happened to Carmelo Montañez using the same justification of the National Agreement.  Also, there were other employees at the time who were assigned a position with

Saturday and Sunday days off who could be subject to change the rest days. The fact that "Morales" was number 432 on the seniority list did not made him unavailable to the position due to the fact that in the previous two (2) years he bided for said position finishing as the second runner-up the first time and the last time he was the first runner-up because said seniority list was for the positions available at USPS stations in the entire metropolitan area. Therefore, it is misleading the statement that "Plaintiff" was not the senior clerk but was No. 432 on the seniority list. Said statement alone gave the false impression that "Morales" did not have an opportunity to be awarded the position which was not the case. It is important to this

court to take notice that the position interested by "Morales" changed to Sunday and Thursday was bided and awarded to employee Antonio López who was a junior as of "Morales". It means that Antonio López was way back from "Morales" because he entered to the USPS many years after Plaintiff. Wherefore, it proves that said seniority list is not the main issue to get an specific position in any postal station as Antonio López who had at that time few years in the USPS was awarded with the position. As a matter of fact, at this date on the seniority list "Morales" is number 202 and Antonio López is number 402.

The allegations that the two (2) ten minutes breaks and either half-hour or hour lunch break were afforded to all employees in a fair and non-discriminatory manner, with consideration given to the needs of the postal operation is not true. Supervisor "López" did not requested said scheduling of break and lunch breaks to female employee Mayra Irene who began her tour of duty late almost every day and took long breaks while having fun at "López" office. Also, is not true when defendants allege that "Mayra Irene has breakfast in the break room before she begins her tour. As she has no yet punched in she was not in violation of the break policy ". However sworn statements of Raymond Ruiz, Howard Hall, and Angel David Morales allegations are on the contrary to defendants allegations.

The fact that Mayra Irene took a break as soon as she began her tour was so obvious that most employees at Caparra Heights Station noticed. "Morales" complaints that the break policy was not applied in an equal, non-discriminatory manner was based not as an obsession by Plaintiff toward said employee but by her open violation to said policy. The violation by female employee Mayra Irene affected negatively the postal operations at Caparra Heights Station and created a chaos to the break and lunch hour schedule in particular to those employees who began their tour of duty earlier like "Morales". The open violation to the break

and lunch policy by female employee Mayra Irene was known, allowed and permitted at all times by "López" as she abused the break policy daily.

The Secretary's week is not a special occasion to be celebrated according to USPS policy and standards. Said policy specifically prohibits said Secretary's week celebration as it forbids any use of postal service funds for such purpose.

When Supervisor "López" admitted taking female employees Rita Maldonado and Mayra Irene for lunch on April 20, 1996 to celebrate Secretary's Week he violated the postal service policy. Moreover, neither employees Rita Maldonado nor Mayra Irene held secretarial position at the Caparra Heights Station as supervisor "López" admitted Ms. Maldonado was a general clerk and Ms. Irene was as window/distribution clerk. Supervisor "López" violated the postal service policy when he manually adjusted both employees' time cards so they would not be penalized after they exceed the allotted time of their assigned lunch breaks. Said action by supervisor "López" violated the policy because it was an unlawful use of postal service funds as it was time paid by USPS used in a celebration specifically prohibited by its standards. Also, said action should be considered a fraud and/or an illegal appropriation of government funds.

On April 25, 1996 "Morales" filed an EEO pre-complaint based on the fact that the coffee and lunch breaks policy was not applied in an equal and nondiscriminatory manner. The procedure of EEO's complaints includes that once the precomplaint is filed the EEO officer immediately notifies the management. In this case the EEO officer Carmen Rosa in order to comply with said proceedings had to notify "López", therefore supervisor "López" at the time of his service talk on May 18, 1996 had full knowledge of the EEO complaint filed by "Morales". Also, at said service talk meeting "López" mentioned that because somebody

had filed an EEO complaint now everybody had to record the duration of their breaks and had to punch in their time cards.

It is very unusual that precisely the basis of "Morales" EEO complaints were exactly the topic of supervisor "López" service talk on May 18, 1995. The removal of "Morales" from his assigned regular duties since 1993 as Postage Due, Express Mail, and Business Reply Mail was ordered almost immediately the day of supervisor "López" service talk about the coffee breaks on May 18, 2005. The removal action by defendants is another pretext in order to retaliate against "Morales" using a legitimate mean for an illegitimate purpose.

For instance, "Morales" was assigned to do the Business Reply Mail, Express Mail and Postage Due Mail" duties because of his right arm condition since 1993. During the previous years to "Morales" removal employees Héctor Ortiz, Porfirio Aviles and/or Mario Izquierdo performed the "Business Reply" and other "Morales" duties while he was on vacation or in his rest days, therefore Plaintiff was not the only clerk in Caparra Heights with this knowledge. Also, "Morales" "Business Reply" and other duties were the only one subject to rotation in Caparra Heights Station as no other duties were rotated.

Defendant:

At the time of the events, which are the subject of the civil action, Plaintiff Angel David Morales Vallellanes was assigned as full time window/distribution clerk at the Caparra Heights Post Office ("Caparra Heights") in Caparra Heights, Puerto Rico. On or about the year 1996-1997, plaintiff was accepted under the Office of Workmen Compensation ("O.W.C.P."), U.S. Department of Labor, for a work related condition. Since 1997 to present, he has been on O.W.C.P. status collecting 66 2/3 of his salary, tax free. He is a postal employee under O.W.C.P. status and continues to this day to be a postal employee.

At the time of the events, Enrique Lopez was a Supervisor, Customer Services ("Spvr. Lopez") and Jose Sepulveda was Manager, Customer Services ("Mgr. Sepulveda") at Caparra Heights.

Between April 1995 and April 1996, Plaintiff filed four (4) complaints with the U.S. Department of Labor, Occupational Safety and Health Administration ("OSHA"), which were attended by the Postal Service.

On February 15, 1996, Plaintiff filed an informal complaint. Plaintiff alleged that Job ID No. 2541417, Posting No. 96-007, a Distribution and Window Clerk position with Saturdays and Sundays as the rest days, had been taken down from posting and reposted with Sunday and Thursday as the rest days. Plaintiff alleged this change was due to his interest in the position, and was a retaliatory action.  It was not.  It was a management decision based on operational and administrative reasons, which were legitimate and non-discriminatory.

The National Agreement between the United States Postal Service ("Postal Service") and the American Postal Workers Union ("APWU") states, in pertinent parts that the employer shall have the exclusive right to maintain the efficiency of the operations entrusted to and to determine the methods, means, and personnel by which such operations are conducted.

Mgr. Sepulveda changed the rest days for the aforementioned position due to the needs of the service. The operation was suffering as the result of too many employees having the entire weekend as rest days. The change was made in accordance with the National Agreement. At the time the change in rest days was made to this position, Plaintiff was not the senior clerk but

4

was No. 432 on the seniority list. Therefore, from a strictly seniority stand point, plaintiff was not entitled to bid for the position.

Supv. Lopez's supervisory duties also included the scheduling of employees assigned to Caparra Heights. Each employee was entitled to two (2) ten (10) minute breaks in addition to either a half-hour or hour lunch break. One ten-minute break would be taken in the first half of the employee's tour with the second break in the latter half of the tour. These breaks were afforded to all employees in a fair and non-discriminatory manner, with consideration given to the needs of the postal operation.

Plaintiff alleges that the break policy was not applied in an equal, non-discriminatory manner. Plaintiff bases this allegation on his observing a female employee, Maria Irene, taking a break as soon as she begins her tour.

Maria Irene has breakfast in the break room before she begins her tour. As she has not yet punched in she was not in violation of the break policy. Her assigned breaks are the only breaks she takes; she did not abuse the break policy.

On April 20, 1996, Supv. Lopez celebrated Secretary's Week with employees Rita Maldonado and Maria Irene by taking them to lunch. Ms. Maldonado was the Office Clerk; Supv. Lopez invited Ms. Irene to avoid any hint of impropriety. It was a special occasion they exceeded the allotted time of their assigned lunch breaks. When they returned from lunch, Supv. Lopez manually adjusted their time cards so they would not be penalized. Plaintiff alleges that Supv. Lopez conducted a service talk on April 9, 1996 regarding the Postal Service break policy. It is customary for supervisors to give service talks on a variety of subjects impacting Postal operations. These talks would be given on an "as needed basis" to all employees to ensure compliance with Postal Service policies.

Supv. Lopez actually conducted a service talk on May 18, 1996 with employees to emphasize they adhere to the time limitations concerning breaks, and to point out that abuses of the break policy were not to be tolerated. This talk was precipitated due to continued abuses of the break policy. At the time Supv. Lopez gave the service talk; he was unaware that Mr. Morales had named him as a Responsible Management Official in his EEO complaint. To exercise control over employee breaks, employees were asked to record the duration of their breaks by using a time clock. However, this soon proved to be a cumbersome process, and was discontinued after only a few days.

On September 9, 1996, Plaintiff filed a second Formal EEO Complaint alleging discrimination based on sex and retaliation for the EEO complaint filed in April 1996. He filed this complaint because of the alleged discriminatory break policy and another alleged episode of retaliation. Specifically, Plaintiff alleges that he was removed from his regular duties as Postage Due, Express Mail, and Business Reply Mail clerk and these responsibilities were assigned to Maria Irene. Several weeks later, Plaintiff discovered that other employees were being rotated into his position; he alleges this was done in retaliation for his previously filing an EEO complaint.

The responsibilities Plaintiff alleges were exclusively his are components of a Postal clerk position. After becoming aware of a lack of training and knowledge of the postal clerks employed at Caparra Heights for processing postage due and business reply mail, Spvr. Lopez decided to cross train several clerks in this area.   This was within his managerial discretion in pursuit of better service from the Postal Service.

Until that time, Mr. Morales was <u>the only clerk</u> in Caparra Heights with this knowledge. In the event Mr. Morales was absent from work there would be no employee available

to process postage due and business reply mail transactions, which would result in the delay of these types of mail.   This had to be corrected for the benefit of the service to customers.

Contrary to any assertions by Mr. Morales, these functions are not specific to any particular clerk or position. All clerks can be assigned to processing all types of mail, including postage due and business reply mail. The cross training was simply a means to create a more efficient postal operation. Clerks receiving this training would be assigned this responsibility on a rotating schedule. Mr. Morales was included on this rotation.

None of plaintiff Morales' contentions add-up to anything and much less discriminatory retaliation.  The actions taken by management were well within its discretion and certainly were not discriminatory.  In any event, such actions do not constitute an adverse employment action taken against the plaintiff of the kind prohibited by the Civil Rights Act of 1964 as amended in 1991.

. LEGAL THEORY

Plaintiff:

A. Standards of a Prima Facie case

In an action against and employer for alleged unlawful retaliation to an employee, plaintiff must initially establish a prima facie case of retaliation. See <u>Johnson v. Allyn & Bacon, Inc.</u>, 731 F.2d 1012 64, 70 (1st Cir. 1984); <u>Parker v. Baltimore & O.R.R. Co.</u>, 209 U.S. App. D.C. 215, 652 F. 2d 1012, 1019 (D.C. Cir 1981); <u>Sims v, MME Paulette Dry Cleaners</u>, 580 F. Supp. 593 (S.D.N.Y. 1984); <u>Toscano v. Nimmo</u>, 570 F. Supp. 1197, 1204 (D. Del. 1983).

In order to establish a prima facie case plaintiff has the burden of proof. As it was stated in <u>Castillo Morales v. Best Finance Corporation</u>, 652 F. Supp. 412 (1987). "This requirement establishes upon a plaintiff an initial threshold burden of establishing that (a) he

engaged in a protective activity (those mentioned in Title VII and OSHA Regulations); (b) because of that activity he was subjected by his employer to adverse employment action, and (c) a nexus, causal link exists between (a) and (b)."

In the above captioned case "Morales" complies with the initial threshold burden of a prima facie case as it shows as follows:

(a) "Morales" engaged in a protected activity.

Since March, 1995 "Morales" filed an USPS 1767 form to complain about the safety and healthy problems at the Caparra Heights Station and in April, 1995 he filed a formal complaint at "OSHA". Since the very beginning "OSHA" notified "Morales" the fact that he was engaged in a protected activity and can not be retaliated because his activity. Also, on August 1995; February 1996 and April 1996 "Morales" renewed his "OSHA" complaint. "Morales" filed two (2) EEO complaints on February 15, 1996 and April 25, 1996 and he ("Morales") was retaliated because of them also which are defined as a protected activity.

(b) because of that activity he was subjected by his employer to adverse employment action.

Plaintiff was subjected to a vicious and insane harassment and retaliation as the vandalism of his car when supervisor "López" and two other employees poured sugar in the fuel tank of "Morales" car and punctured the tires of "Morales" car in several occasions (see sworn statement of Samuel Cora, exhibit 10). When supervisor "López" opened and inspect the private mail of "Morales"(see exhibit 10). When the job bid position with Saturday and Sunday rest days offs he was interested was suddenly changed the rest days. On March 7, 1996 "Morales" was investigated by postal inspector Eliezer Julián for the third time because allegedly he made a threat of death to employee Luis Ramos. On March 23, 1996 "Morales" received a letter of warning from supervisor "López" for unsatisfactory performance. On May

18, 1996 supervisor "López" removed "Morales" from his regular duties as "Business Reply" clerk after he found that "Morales" filed an EEO against him.  On December 13, 1996 "Morales" received another letter of warning from supervisor Enrique Lopez for failure to follow instructions. On December 20, 2006 "Morales" received a 7 days suspension letter for "Morales" wearing a Postal jacket with his postal uniform. On January 10, 2006, supervisor Enrique Lopez expulsed "Morales" from Caparra Station alleging that he do not have work for "Morales".

(c) a nexus, causal link exists between (a) and (b).

"Morales" was not subjected to that pattern of disciplinary actions by "USPS" before he filed his "OSHA and EEO complaints. On the contrary, "Morales" received (before his OSHA and EEO complaints) several letters of recognition by supervisors and management including José Sepúlveda and Juan Rodríguez (the sames that retaliate and discriminate "Morales" after he filed the OSHA and EEO complaints). One of such recommendations was given by Manager Pedro Reyes supporting "Morales" for the position of US Postal Inspector agent which is a position that require great responsibility and security clearance since it is a federal law enforcement position.  It was not until his involvement in the health and safety issues at Caparra Heights Station and filing the "OSHA" and EEO complaints as protected activities that his problems began with the management. Also as another nexus between the protected activity engaged by "Morales" and the adverse employment action he was subjected of, are the statements made by supervisor "López" to OSHA inspectors Efigenio Rivera and Madeline Medina during an inspection. On December 6, 1996 said inspectors went to Caparra Heights Station to perform a second inspection as they found that the violations remained but also had to deal with a very hostile and aggressive behavior from supervisor "López". In a

very revealing narrative report made by said inspectors (See Exhibit 17) they quote supervisor "López" when he said the employee who was reporting conditions to OSHA will be severely punished. After this statement by supervisor "López", "Morales" received the most brutal discrimination when Plaintiff received suspensions, expulsions from Caparra Station; criminal acts like pouring sugar in the fuel tank of his car; death threats; phone calls threatening him; the unlawful opening of his private mail and the list goes on and on.  In the above mentioned sworn statements, the common factor is that all witnesses testified the harassment and animosity of supervisor "López" towards "Morales" for his OSHA and EEO complaints and that all the adverse action taken against "Morales" was in reprisal for his EEO and OSHA complaints which are protected activities under that law. A nexus between (a) and (b) has been established beyond any doubt, therefore a prima facie case by Plaintiff is sustained. Defendant's Motion for Summary Judgment should be denied as held by the following cases:

*"Summary judgment was not appropriate in a case where an employee was allegedly fired because he filed a complaint for age discrimination against his employer. Since the plaintiff proved his prima facie case of discriminatory intent in this Title VII case, he met his burden of proving the factual question of intentional discrimination." Hairston v. Gainesville Sun Publishing Co, 9 F 3d 913 (11th Cir Fla 1993).*

"To prevail on a claim in respect to retaliation a plaintiff must show that he brought charges of some type against the employer alleging race or sex discrimination, that he subsequently suffered from an adverse employment decision, and that the adverse decision by the employer was because the plaintiff had brought the charges in question. White v. McDonnell Douglas Corp. 985 F 2d 434 (8th Cir Mo 1993)

*"Former employee's allegations that she had filed charge of discrimination with Equal Employment Opportunity Commission (EEOC) and that she thereafter suffered harsher treatment, threats and harassment were sufficient to state Title VII retaliation claim".* <u>Yaba v. Roosevelt</u>, 961 F Supp 611 (SD NY 1997).

Title VII makes it unlawful for an employer to discriminate against an employee on the basis of either the employee's participation in EEO or other similar proceedings or opposition to unlawful practices by the employer. <u>Graham v. Texasgulf, Inc.</u>, 662 F. Supp. 1451 (D Conn 1987) affd without op 842 f.2d 1287 (2nd Cir Conn 1988); <u>Holden v. Owens-Illinois</u>, 793 F 2d 745 (6th Cir Ohio 1986) cer den 479 US 1008 (1987); <u>Architectural v. ColoradoDepartment of Institutions</u>, 936 F 2d 483 (10th Cir Colo 1991); <u>Morgan v. Jasper</u>, 959 F 2d 1542 (11th Cir Ala 1992).

**B. Plaintiff Opposition to Defendants Position that the Federal District Court has No Jurisdiction of Plaintiffs Retaliation Claim**

Defendants allege that plaintiff retaliation claim had to be filed under 29 USCS § 660. According to Defendants the above mentioned statute covers retaliation claims for making safety complaints to the Department of Labor. Said argument is not correct and is leading the court to error.

First of all, Defendant does not recall that on December 21st, 1998 said party filed as docket numbers 21 and 22 a "Memorandum of Law in Support of Codefendant U.S. Department of Labor's Motion to Dismiss and/or for Summary Judgment" in which contends to the contrary of what is now alleging. "Memorandum of Law in Support of Codefendant U.S. Department of Labor's Motion to Dismiss and/or for Summary Judgment?? pages 14, 15 and footnote 4). In said memorandum defendant argues after citing precisely 29 U.S.C. sec.

660 (c) (1) that the act "does not contain a similar provision for federal employees'. Moreover, Defendants in said memorandum allege that "the procedures which the USPS has instituted pursuant to 29 C.F.R. § 1960.46 are the only protections available to its employees who believe they are being retaliated against as a result of safety activities at the workplace. Therefore, Defendant can not allege now at his convenience that 29 USCS § 660 applies when it is clear that it does not by its own argument. Defendant is leading the court to error.

On October 1996 OSHA Director from the Office of Federal Agency Programs John Plummer informed "Morales" that the remedial action on behalf of federal employees who have suffered reprisals for reporting unsafe or unhealthy working conditions is vested with their employing agency. As it shows, OSHA nor the U.S. Department of Labor did not have jurisdiction for reprisal under 29 USCS § 660 therefore is not correct to allege in the contrary.

This action by Defendant should be considered as to lead into error this Honorable Court. It has been clearly established that Defendants did know that said statute 29 USCA § 660 did not apply for this case. Additionally, it as been well established that "Morales" complied and exhausted all administrative steps requested by OSHA.

C. Plaintiff Opposition To Defendants Position That Plaintiff Cannot Prove Retaliation With Regard To His Claim That Certain Job Duties Were Rotated Among Other Employees.

"Morales" was subject to an adverse employment action by USPS. Defendants very conveniently cited a limited portion of Marrero v. Goya of P.R., Inc., 304 F.3d 7 (1st Cir. 2002) as the definition of "adverse action". In citing the Marrero case, supra, Defendant gives the false impression that only demotions, transfers or separation from job are truly adverse actions or as said party own definition ??something of real consequence has been taken from him (ie. wages

etc.). The above mentioned case states a broad and subtle definition of adverse employment action and not Defendants own definition of something of real consequence has been taken from him (ie. wages etc.) as the Court defines said term as follows:

"At the same time, however, Title VII does not limit adverse job action to strictly monetary considerations. <u>Collins v. Illinois</u>, 830 F. 2d 692, 703 (7th Cir. 1987). Congress recognized that job discrimination can take many forms, and does not always manifest itself in easily documentable sanctions such as salary cuts or demotions. Accordingly, Congress "cast the prohibitions of Title VII broadly" to encompass changes in working conditions that are somewhat more subtle, but equally adverse. *24 <u>Rodríguez v. Bd. Of Educ.</u>, 620 F.2d 362, 364 (2d Cir. 1980). Consistent with that broad statutory mandate, courts have rejected any bright line rule that a transfer cannot qualify as an "adverse employment action unless it results in a diminution in salary or a loss of benefits." Id.

Therefore, according to Marrero, supra, adverse employment action includes changes in working conditions more subtle but equally adverse. In the instant case, Plaintiff was removed from his "Business Reply Clerk, Express Mail and Postage Due" duties assigned to him since 1993 as a reasonable accommodation because his right arm condition. Said removal action to rotate and cross train employees for a good management practice was a pretext that affected "Morales" health as he was requested to perform other clerk duties that worsened his arm condition.

It is very important to take notice that "Morales" duties as "Business Reply clerk" was the only one subject to rotation at Caparra Heights Station. Plaintiff removal action perfectly fit in Marrero case, supra, definition of a more subtle change in working conditions but equally adverse.

Previously we have discussed that the removal action by Defendant was a pretext also because other employees like Porfirio Avilés, Héctor Ortiz and Mario Izquierdo had the training and knowledge for processing Plaintiff's postage due and business reply mail duties. Said employees performed Plaintiff's duties on his rest days (Monday) and also when "Morales" was on vacation. "Morales" contrary to Defendants assertion was not included in the rotation.

As evidence that "Morales" was excluded from the rotation of his duties of postage due and business reply mail is evident that when he finally provided supervisor "López" for the second time of medical evidence related to his right arm condition in order to request said duties then "López" replied that he did not have work for him ("Morales"). It is when supervisor "López" sent "Morales" home.

Defendants sustain that Plaintiff does not allege that his salary has been affected in any way, nor then he was demoted, transfer or separated from the Postal Service. Also said party allege that because "Morales" is still an employee from the postal service and is a beneficiary of the Office of Workers Compensation Program (O.W.C.P.) under the U.S. Department of Labor receiving an equivalent to sixty six percent (66%) of his salary since 1997 there is not an adverse action from USPS. That is not correct.

Previously we have referred to the Marrero case, supra, in which the 1st Circuit defined the "adverse employment action" from the employer as a broad term which included changes in working conditions more subtle but equally adverse. Moreover, said case stated that a mere loss of wages and/or income cannot be considered only an adverse action, in summary there is no "real consequence taken from him" theory of Defendant. Notwithstanding, "Morales" salary was indeed affected, he was in a way demoted, also Plaintiff was transferred from

Caparra Heights Station to the General Post Office (G.P.O.) in Hato Rey and finally constructively separated from his job at USPS. Therefore, arguendo even if we acknowledge Defendant's ??real consequence taken from him definition the evidence shows that "Morales" was subjected to an adverse employment action.

For instance, since 1997 due to the continuous harassment and reprisals against "Morales" which included such criminal acts made by supervisor Enrique Lopez as: pouring sugar into his vehicle gas tank; unlawful opening of "Morales" mail; puncturing his vehicle tires; life threats and other administrative unlawful actions, an emotional condition developed and for the first time in his career after two years of struggle. Plaintiff had to seek medical help and submitted his case to the "O.W.C.P." who approved his case.

As a consequence of "Morales" appeal to O.W.C.P. benefits due to the reprisals from defendant because his OSHA and EEO complaints he suffered in addition to his emotional distress a substantial loss in his income equivalent to thirty-three percent (33%) annually since 1997. Moreover, since 1997 "Morales" economic loss included the end of benefit payments for his thrift savings plan (retirement plan or 401k) in addition to the exhaustion of all his savings and investments. Therefore, Plaintiff's income and/or salary were affected due to Defendants reprisals as a consequence of an adverse employment action.

Worse than been demoted, Plaintiff was unlawfully removed from his "Business Reply, Express Mail and Postage Due" clerk duties, where he was assigned since 1993 as a reasonable accommodation to perform other duties in detriment of "Morales" legitimate medical arm condition. Said action of removal by Defendant is worse than a demotion because the former is detrimental to "Morales" health.

Defendant on February 20, 1997 was transferred from Caparra Heights Station to

General Post Office (G.P.O.) in Hato Rey. The transfer of "Morales" was ordered by USPS Operation Manager Virginia Matías who based her decision that Plaintiff was allegedly a safety hazard and a homosexual.

On February 1997 as a direct result of Defendant systematic, repeated and continuous reprisal and harassment against Plaintiff a constructive discharge from employment took place as "Morales" endured a great mental suffering and emotional distress since his original notification of OSHA and EEO complaints after two years ago of struggle. Plaintiff had to leave because he had no choice; therefore he was forced to be separated from the Postal Service.

Defendants try in a very subtly way to justify that because "Morales" is a beneficiary of the "O.W.C.P." he is not subject to an adverse employment action and/or that said benefits preclude "Morales" from pursuing Title VII remedies for discrimination. First of all, it should be noted by this Honorable Court that the 1st Circuit in the Morales-Vallellanes vs. Potter, et. als., 339 F.3d 9 (2003) decided to vacate the judgment entered on count I Retaliation and Discrimination. Therefore, "Morales" claims for retaliation and discrimination remains. Therefore, said claim of Count I Retaliation and Discrimination of the Amended Complaint as it was remanded is also subject to trial.

Also in Miller vs. Bolger, 802 F.2d 660, (1986) the 3rd Circuit in regard to preclude from pursuing Title VII remedies for discrimination the court concluded:

"We reject the Postmaster General's argument that allowing Miller to pursue Title VII remedies will usurp the Secretary of Labor's power under 5 U.S.C. § 8128 (b) to make final and unreviewable determinations of FECA benefits. Quite simply, this court is in no way impinging on the Secretary's authority. The Secretary has determined that Miller should

receive FECA benefits and has determined that amount. Those determinations are not at issue

here. They cannot affect the federal courts jurisdiction, granted by Congress under Title VII,

to consider Miller's claim for additional and different relief. We thus agree with the district

court's holding that Miller's recovery of FECA benefits does not preclude his resort to the

federal court under Title VII."

Therefore, it has been clarified that both FECA and Title VII remedies are different

and apart so that their coexistence claims are supported by Law.

D. Opposition to Defendant's claim that Plaintiff cannot prove a Prima Facie Case of Gender

Discrimination with Regard to His Claims that certain Job Duties were Rotated Among Other

Employees or with Regard to the Coffee and Lunch Breaks Policy

Rotation of Job Duties

It should be noted that supervisor "López" showed a preference in terms of gender

toward female employees. In particular, supervisor "López" as admitted in his declaration

went to lunch with female employees and manually fixed their time card when they exceed the

allotted time of their assigned lunch breaks so they would not be penalized. Supervisor

"López" claim this was a special occasion but the policy of the USPS does not recognize

Secretary's week as a special occasion.  Also, supervisor "López" permitted, even when he does

not admit it, to female employee to start their tour of duty late and abuse the coffee and lunch

break.  The first substitute of "Morales" duties as "Business Reply" clerk was female employee

Mayra Irene and when supervisor "López" was alerted then started to rotate men in said

duties.

The alleged legitimate reason for rotating is a pretext which has been discussed before.

Evidently in view of all of the above circumstances in which supervisor "López" consistently

gives special preference to female employees it is without doubt that a prima facie case of gender discrimination has been proven and the pretext of Defendant has been unveiled.

**Coffee Breaks**

Once again Defendant interpretation of the Marrero case, supra, is misleading in terms that it does not request that an adverse employment action must be one "of significant consequence that has a material effect on the terms and conditions of employment (ie. termination, demotion, refusal to promote, etc.)" To the contrary, the Marrero case established a broad definition of adverse employment action and recognizes changing conditions of employment more subtle but equally adverse.

As noted before, supervisor "López" conduct evidenced a consistent preference toward females employees and the abuse of the coffee and lunch breaks policy is evidence of the same. The abuse of the breaks policy by females employee with the permission of "López" affected adversely in particular male employees which were the one's who started their tour of duty earlier at 6:00 a.m. or 5:30 a.m. who were entitled to get earlier coffee and lunch breaks and could not do so because the abuse permitted by "López" as stated above.

The implication that supervisor "López" had a favorable treatment or some alleged implied intimate relationship with female employee Mayra Irene is not sustain by any evidence and, thus, said argument should not considered at all.

Because a hostile work environment with discriminatory "intimidation, ridicule, and insult" permeated the workplace Plaintiff was a subject of a repeated conduct. Therefore, the third and fourth grievances were timely filed as Plaintiff hostile work environment was composed of a series of separate acts that collectively constitute one unlawful employment practice. If an act, as in the instance case, contributing to the claim occurs within the filing period, the

entire of the hostile environment may be considered by a court for the purposes of determining liability <u>National Railroad Passenger Corpo. V. Morgan</u>, 536 U.S. 101 (2002).

Defendant:

The basis of Title VII retaliation requires that a complainant have engaged in prior EEO activity. <u>See</u> 29 C.F.R. § 1614.101(b). In this case, Plaintiff here is alleging that Job Bid # 2541417 was posted with Thursday/Sunday rest days rather than Saturday/Sunday rest days in retaliation for plaintiff's OSHA *complaints*. Retaliation for making safety complaints to the Department of Labor, are clearly covered by a separate Congressionally mandated statutory framework, but not under the Civil Rights Act of 1964, as amended in 1991. Specifically, 29 USCS § 660 states,

(c) Discharge or discrimination against employee for exercise of rights under 29 USCS §§ 651 et seq.; prohibition; procedure for relief.

()No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this Act.

()Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary of Labor alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made, as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

()Within 90 days of the receipt of a complaint filed under this subsection the Secretary shall notify the complainant of his determination under paragraph (2) of this subsection.

There is no evidence in the record that the plaintiff availed himself of the foregoing. He did not file any complaint with the U.S. Department of Labor and has therefore, waived any right to do so.

As noted above, the Secretary of Labor is exclusively vested with the authority to file complaints in Federal District Court. See 29 USCS § 660 (2). There is no private right of action. *See Taylor v. Brighton Corp.,* 616 F.2d 256 (6th Cir. 1980). In *Creusere v. Bd. of Educ. of the City Sch. Dist. of Cincinnati,* 88 Fed. Appx. 813 (6th Cir. 2003), the 6th Circuit confirmed the above proposition, stating,

> Creusere was clearly engaged in a protected activity by requesting religious accommodation, writing the 1994 letter regarding the Labor Day holiday, and writing the September 11, 1996, letter regarding his layoff. His subsequent OCRC complaint is also protected by Title VII. The additional complaints raised in Creusere's brief such as his complaints about smoking, safety issues, and the CBA, however, are not protected activities under Title VII.

88 Fed Appx. at 821.

In *Michael G. Ypsilantis, v. Department of Labor,* Appeal No. 01A05062 (March 27, 2001) the Equal Employment Opportunity Commission, which promulgates all regulations related to Title VII recently noted,

> Our ruling is limited to EEO-based protected activity. *The Commission does not have jurisdiction to consider whether the agency retaliated against complainant on non-EEO-based protected activity.* The Commission therefore does not address complainant's allegations of retaliation involving his union, MSPB, and whistle blowing complaints to the Inspector General, Special Counsel, the Secretary of Labor, and one of Ohio's United States Senators. (See also 42 U.S.C.§2000e-3(a); 29 C.F.R. §1614.103(a); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); (Employee's participation in protest that violated

state laws was not protected activity under Title VII; *Christopher v. Billington,* 43 F.Supp. 2d. 39, 46 (D.DC 1999) (union activities are not protected activities under Title VII).

Thus, based on the foregoing, it is clear that the Plaintiff's allegation that he was retaliated against when rest days were changed on a particular bid position due to his complaint to OSHA has not stated a claim upon which relief can be granted under Title VII because it is not a protected activity under such statute for retaliation purposes. Additionally, since the Plaintiff has no private right of action under 29 USCS § 660 and this case does not involve the Secretary of Labor as a party, his action must be dismissed as a matter of law.

As set forth by the 1st Circuit, (See Attachment 1), the Plaintiff's second claim is that he was the victim of retaliation and sexual discrimination arising from an April 9, 1996 incident in which plaintiff's duties and responsibilities were awarded to a female employee and he was given window clerk duties to perform.

Plaintiff's claim of retaliation must meet the familiar McDonnell Douglas test. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, (1973). First, Plaintiff must come forward with a prima facie showing of retaliation. <u>See</u> id. at 802; *Mesnick v. General Electric Co.,* 950 F. 2d 816, 827 (1st Cir. 1991). In order to state a prima facie case, the Plaintiff must show (1) that he engaged in an activity of the kind protected under Title VII or engaged in protected opposition to such an activity, which participation or opposition was known by the employer; (2) claimant suffered a non-trivial adverse employment action that caused harm to employee's terms of employment, <u>and</u> (3) there has to be a timelike causal relation or connection between the protected activity and the adverse employment action. <u>Che v. Mass. Bay Transp. Auth.</u>, 342 F.3d 31, 38 (1st Cir. 2003); <u>Benoit v. Technical Mfg. Corp.</u>, 331 F.3d 166, 175 (1st Cir.

2003); <u>Wyatt v. City of Boston,</u> 35 F.3d 13, 15 (1st Cir. 1994). Once the Plaintiff is able to

satisfy a prima facie case, the burden of production then shifts to the defendant, who must

articulate a legitimate, nondiscriminatory reason for the adverse employment action. The

production of such a nondiscriminatory reason dispels the presumption of improper

discrimination generated by the prima facie showing of discrimination. Id. The Plaintiff then

must show that the proffered reason is actually a pretext for retaliation Id. at 823.

    With regard to the second prong of a prima facie case of retaliation, in <u>Marrero v.</u> <u>Goya</u>

<u>of P.R., Inc.,</u> 304 F.3d 7 (1st Cir. 2002) the 1st Circuit defined an adverse action as follows:

> We have explained that adverse employment actions include 'demotions,
> disadvantageous transfers or assignments, refusals to promote, unwarranted
> negative job evaluations, and toleration of harassment by other employees."'
> <u>White,</u> 221 F.3d at 262 (quoting <u>Hernandez-Torres,</u> 158 F.3d at 47)i accord
> <u>Graham v. State Farm Mut. Ins. Co.,</u> 193 F.3d 1274, 1283 (11th Cir. 1999).
> Whether an employment action is "adverse" -- and therefore actionable under
> Title VII -- is gauged by an objective standard. <u>Blackie v. Maine,</u> 75 F.3d 716, 725
> (1st Cir. 1996). "Work places are rarely idyllic retreats, and the mere fact that an
> employee is displeased by an employer's act or omission does not elevate that act
> or omission to the level of a materially adverse employment action." Id.

    In the instant case, Plaintiff was <u>not</u> subject to any adverse employment action. As noted

in Defendant's Motion for Summary Judgment and Memorandum of Law in Support thereof with

in the Statement of Undisputed Facts (Docket Entries No. 224 and 245), the responsibilities Plaintiff

alleges were exclusively his are components of a Postal clerk position. After becoming aware

of a lack of training and knowledge of the postal clerks employed at Caparra Heights for

processing postage due and business reply mail, Spvr. Lopez decided to cross train several

clerks in this area. Until that time, Plaintiff was the only clerk in Caparra Heights with this

knowledge. In the event Plaintiff was absent from work there would be no employee available

to process postage due and business reply mail transactions, which would result in the delay

of these types of mail.

Contrary to any assertions by Plaintiff, these functions are not specific to any particular clerk or position. All clerks can be assigned to processing all types of mail, including postage due and business reply mail. The cross training was simply a means  To create a more efficient postal operation. Clerks receiving this training would be assigned this responsibility on a rotating schedule. Mr. Morales was included on this rotation.

As noted above, the 1st Circuit requires that a Plaintiff show that something of <u>real consequence</u> has been taken from him (ie. wages etc.). In this case, the Agency simply exercised good management practices by cross training other clerks to perform certain duties, which other clerks should have been performing on a rotating basis but had not been trained for. Thus, as a result, his claim should be dismissed for lack of an adverse employment action. Plaintiff continued to perform clerk duties, but was rotated along with other employees to handle postage due, and business reply mail.

In this case, there is no allegation whatsoever by the plaintiff that his salary was affected in any way, nor than he was demoted, transferred or separated from the Postal Service.  As a matter of fact, the Plaintiff is still an employee for the U.S.P.S.; he is on the Office of Worksmen Compensation Program (O.W.C.P.) under the U.S. Department of Labor netting income tax free compensation benefits equivalent to 66% of his salary since 1997.  Hardly an adverse action from the Defendant.

However, arguendo, if the court were to find that Plaintiff has been subjected to an adverse action, he cannot satisfy the last element of a prima facie case by providing any evidence of a causal time link between a true protected activity under the law and the adverse job action. In <u>Mesnick</u> the First Circuit described the evidence that may be relevant for

determining whether causation exists: (1) differential treatment in the workplace; (2) temporal proximity; (3) statistical evidence; and, (4) comments by the employer that intimate a retaliatory windset. n11 *Meznick,* 950 F.2d. at 828.

In the instant case, although Plaintiff filed a series of EEO complaints regarding his many complaints in the workplace in 1996 he can provide no evidence of differential treatment, statistical evidence or comments that allude to discriminatory animus. Temporal proximity in this case is easily created by Plaintiff since he filed so many complaints in a short period of time but he has no evidence that the Agency's legitimate business reasons for rotating clerks with regard to certain duties. (that in Plaintiff's absence many clerks could not perform some of the duties performed by Plaintiff) was a pretext for discrimination. Thus, his retaliation claim should be dismissed.  The long litany  of events that plaintiff relates as basis for his claim not only are unrelated to any protected activity under the Civil Rights Act of 1964, as amended in 1991, but simply do not rise to a level that could alter the terms and conditions of plaintiff's employment with the Postal Service for a reasonable person in today's society in Industrial America. Rather, those kinds of incidents are part of the "ordinary tribulations of the workplace. *Faragher v. City of Boca Ratón,* 524 U.S. 775, 788 (1998); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *Wright v. CompUSA, Inc.,* 352 F.3d. 472 (1st Cir. 2003), *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 752 (1988); *Oncale v. Sundowner Offshore Service, Inc.*, 523 U.S. 75, 81 (1998).   Thus, plaintiff's retaliation claim should be dismissed.

### *Rotation of Job Duties*

Plaintiff has also alleged that when certain of his duties were rotated that the Agency did so due to discrimination based on gender. The First circuit follows the standard

McDonnell-Douglass shifting burden analysis when deciding claims of disparate treatment under Title VII. Under the McDonnell Douglas analysis, a plaintiff must establish a prima facie case, which in turn gives rise to an inference of discrimination. See Dichner v. Liberty Travel, 141 F.3d 24, 29-30 (1st Cir. 1998). The employer then must state a legitimate, nondiscriminatory reason for its decision. See Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 44 (1st Cir. 2002). If the employer can state such a reason, the inference of discrimination disappears and the plaintiff is required to show that the employer's stated reason is a pretext for discrimination.

With regard to proving pretext, the First Circuit noted in Straughn v. Delta Air Lines, Inc., 250 F.3d 23 (1st Cir. 2001),

> In order to sustain her burden of persuasion on pretext, Straughn needed to demonstrate either that her dismissal was (i) "more likely motivated" by discrimination than by the explanation proffered by Delta, or (ii) the proffered "explanation [was] unworthy of credence" in circumstances where the suspect denial, taken together with other facts, suggests such a motivation. Burdine, 450 U.S. at 256. (citing McDonnell Douqlas, 411 U.S. at 804-05)i see also Fite v. Digital Equipment Corp., 232 F.3d 3, 6-7 (1st Cir. 2000)

The court continued,

Although pretext may be established with evidence of "differential treatment in the workplace[,]" id. (quoting Mesnick v. General Elec. Co., 950 F.2d 816, 824 L1 st Cir. 1991), cert. denied, 504 U.S. 985, 119 L. Ed. 2d 586, 112 S. Ct. 2965 (1992)) (internal quotation marks omitted), Straughn failed to sustain her evidentiary burden in relation to the claim that she was singled out for inferior work assignments. The record discloses that the Vermont and Western New Hampshire sales territory, to which Straughn initially was assigned, historically has generated lower revenues than all but one other sales territory within the Boston Marketing Office area and accordingly has been selected in the past as a training

territory for relatively inexperienced sales representatives.

Nor did Straughn tender evidence that there was any normal time frame within which sales representatives in training customarily were transferred to more lucrative sales territories. Similarly, she proffered no evidence regarding any criteria utilized by Delta in determining when newer sales representatives were considered eligible for transfer to more desirable sales territories.

On the other hand, the record plainly discloses that a white male sales representative drew the Maine sales territory, which is comparable to the Vermont-Western New Hampshire sales territory in terms of the driving distances and relatively low sales revenues. Yet Straughn proffered no evidence regarding the tenure of her counterpart in the Maine sales territory. Finally, there is no record evidence that Straughn's experience or tenure differed in any material respect from that of her predecessors in the Vermont-Western New Hampshire sales territory.

Since Straughn tendered no competent evidence that her initial assignment as a sales representative differed materially from that of other relatively new sales representatives in the Boston Marketing Office, summary judgment was appropriate. See id.; Conward, 171 F.3d at 20 ("Where . . . the plaintiff in a disparate treatment race [or gender] discrimination case offers comparative evidence . . . to raise an inference of racial [or gender-based] discrimination, [she] must provide a suitable provenance for the evidence by showing that others similarly situated . . . in all relevant respects were treated differently by the employer.") (emphasis added).

**250 F.3d at 35-36.**

In the instant case, the Agency has proffered a legitimate reason for rotating certain of Plaintiff's clerk duties. As noted in the Statement of Facts and the attached Declaration of Supv. Lopez, (Docket Entry No. 245) a rotation was created which included both men and women. Thus, any claim that his duties were rotated among others to favor one gender (women) is simply not true. Thus, his claim of gender discrimination should be dismissed as well.

**Coffee and Lunch Breaks Policy Claim**

Lastly, as noted by the First Circuit, Plaintiff has alleged that the "coffee and lunch breaks" policy was not applied in an equal and nondiscriminatory matter. As noted above, the First Circuit follows the standard McDonnell-Douglass shifting burden analysis when deciding claims of disparate treatment under Title VII. See Dichner v. Liberty Travel, 141 F.3d 24, 29-30 (1st Cir. 1998). As with retaliation claims discussed earlier herein, the Plaintiff must prove a prima facie case of discrimination which includes proffering evidence of an adverse employment action. As the 1st Circuit has held in Marrero v. Goya of P.R., Inc., 304 F.3d 7 (1St Cir. 2002) an adverse action must an action of significant consequence that has a material effect on the terms and conditions of employment (ie. termination, demotion, refusal to promote etc.). Here, it is clear that Plaintiff's claim of sex discrimination related to the break policy must fail as it clearly does not rise to the level of an adverse action.

Arguendo, even if everything Plaintiff alleges herein is true (that one woman received longer breaks for some period of time) he has not and cannot show that his own

conditions of employment were adversely affected in any manner. He has not alleged that he was not allowed his regular breaks nor has he alleged that he sought longer breaks but was denied same. There is simply no evidence that he was adversely affected through this alleged conduct.

Arguendo, even if Plaintiff were to be able to prove a prima facie case of discrimination, Plaintiff's allegation is solely based on his observing one woman (Maria Irene) taking a break as soon as she begins her tour.   As noted by Supv. Lopez, s. Irene was having breakfast in the break room before beginning her tour. Ms. Irene had not yet punched in, so she was not in violation of the break policy. As noted by Supv. Lopez, Ms. Irene's assigned breaks are the only breaks she takes and she did not abuse the break policy.

 However, even it were true that Supv. Lopez, due to some alleged implied intimate relationship with Ms. Irene, treated her more favorably than other employees (male and female) the favorable treatment would not be gender discrimination under Title VII, but merely favoritism motivated by friendship or romance which is not cognizable under Title VII. Title VII prohibits discrimination based on gender; it does not prohibit favoritism between a supervisor or subordinate whether that favorable treatment is motivated by a male superior mentoring a male subordinate or a male superior's romantic interest in a female subordinate. See DeCintio v. Westchester County Medical, 807 F.2d 304, 307-8 (2nd Cir. 19861 (supervisor's preference of candidate for position over other candidate because of a romantic affair with the selected candidate was not discrimination based on sex). The holding of DeCintio has been cited with approval in the District of Puerto Rico. See Lipsett v. Rive-Mora, 669 F. Supp. 1188, 1200 (D. P. R. 1987).

Thus, Plaintiff's claim with regard to the break policy should be dismissed as it does

not constitute an adverse employment action and, even if all of Plaintiff's allegations were true, would not violate Title VII.

## V. ISSUE OF LAW:

1. Whether defendant subjected plaintiff to gender and retaliatory discrimination in violation of the Civil Rights Act of 1964, as amended in 1991.

2. Remedies under Title VII, Civil Rights Act of 1964, as amended in 1991, if applicable.

## .EXHIBITS AND/OR DOCUMENTARY EVIDENCE:

Plaintiff:

1. Letter to Mr. Pedro Reyes

2. Forms 1767 submitted on 1991

3. Letter by David Parks to Plaintiff (12/9/98)

4. Forms 1767 submitted on 1995

5. Forms OSHA-7 (Notice 4/7/95)

6. Letter to plaintiff by José Carpena

7. Letter from Odarit Tirado to J. Carpena 6/21/95

8. Statement by plaintiff 6/29/95

9. Statement by plaintiff 6/3/95

10. OCWP Form CA-1  7/3/95

11. Letter from José Carpena 7/5/95

12. Letter from José Carpena  8/1/95

13. Letter by Dimitri Padilla to Raul Sierra 8/7/95

14. PS Form 2564-A Precomplaint 2/20/96

15.    Letter from José Carpena to plaintiff 2/23/96

16.    Memorandum Feb. 27,1996

17.    Statement by plaintiff March 7,1996

18.    Certified letter of plaintiff to J. Carpena 3/19/96

19.    Letter of Warning to Plaintiff March 26,1996

20.    Certified letter to John Malavé March 23, 1996

21.    Certified letter from plaintiff March 26, 1996

22.    Letter to plaintiff K. Clark dated April 1, 1996

23.    PS Form 2565 EEO dated April 2, 1996

24.    Certified letter to John Malavé dated April 6, 1996

25.    PS Form 2564-A dated April 25, 1996

26.    Certified letter sent to plaintiff by Bruce A. Dubay 4/29/96

27.    Letter sent to plaintiff by Jose Carpena 10/1/96

28.    Certified letter sent to APWU Pres. Héctor Torres 6/14/96

29.    Letter sent by fax to John Malavé on June 27,1996

30.    Statement and Claim for Damage by plaintiff dated 7/10/96

31.    Certified letter sent to John E. Plummer by plaintiff 8/4/96

32.    Statement by Raymond Ruiz on September 3, 1996

33.    PS Form 2565 dated September 4, 1996

34.    Certified letter by Burce A. Dubay to plaintiff 9/30/96

35.    Letter by Plaintiff to Bruce A. Dubay 10/12/96

36.    Letter to plaintiff by John E. Plummer 10/6/96

37.    Letter by José Carpena to plaintiff on 11/1/96

38.  Certified letter from plaintiff to José Carpena dated 11/11/96

39.  Letter from José Carpena to plaintiff on 1/10/97

40.  Written communication by plaintiff on 12/7/96

41.   Letter of Warning to plaintiff dated 12/13/96

42.  Certified letter by plaintiff to John Malavé 12/16/96

43.  Letter from plaintiff to USPS Caparra Heights Station

44.  Notice of Suspension of seven days to plaintiff 12/20/96

45.  Letter by OWCP Claim Examiner to plaintiff 1/15/97

46.  PS Form Information for Precomplaint Counseling 12/16/96

47.  Statement signed by plaintiff to the Caparra Heights 12/28/96

48.  Certified letter by plaintiff to John Malavé 12/30/96

49.  Certified letter by plaintiff to EEO 12/30/96

50.  Written communication from Enrique Lopez to Plaintiff 1/10/97

51.  Notification to APWU Daniel Soto by employees of the Caparra Station

52.  Letter by APWU Vice-Pres. Luz Z. Calendar dated 1/14/97

53.  Letter by Carmen Rosa 1/15/97

54.  Certified letter by plaintiff to the Postal Inspection 1/16/97

55.  Letter APWU Pres. Daniel Soto to Luis Hernández 1/17/97

56.  Letter by Enrique López to plaintiff 1/17/99

57.  Letter by plaintiff to the Office of the Special Coun. 1/22/97

58.  PS Form 2564-A dated January 23,1997

59.  Letter by José Carpena to Plaintiff dated 1/22/97

60.  Letter by plaintiff to OWCP 1/28/97

61.     Communication written by Frank A.Trinidad 1/28/97

62.     Documents relative to grievance as request dated 1/30/97

63.     Letter by plaintiff to José Carpena 2/1/97

64.     Group grievance #97-156, 97-157, 97-158, 97-159

65.     OWCP Form CA-1 dated 2/5/97

66.     Certified letter by plaintiff to Virginia Matías 2/6/97

67.     Certified letter by Daniel Soto to plaintiff to Gail Sonneberg 2/7/97

68.     Statement by coworker Howard Hall 2/10/97

69.     Certified letter by plaintiff to John Malavé 2/10/97

70.     Assignment Order Transfer Form PS Form 1723 2/14/97

71.     Letter by Alice Womarck to plaintiff 2/18/97

72.     Certified letter to M. Chap Claims Examiner 2/28/97

73.     Step 2 Grievance Appeal Form #97-280  3/10/97

74.     Letter by Enrique López to Alberto Ortiz 3/7/97

75.     Certified letter by plaintiff to John Malavé 3/11/97

76.     Statement for authorization by plaintiff 3/31/97

77.     Step 2 Decision APWU #97-280 by Rafael De Jesús 4/7/97

78.     OWCP Form CA-20 dated 3/27/97

79.     OWCP Form CA-8 dated 4/16/97

80.     Certified letter by plaintiff to José Carpena 4/22/97

81.     Certified letter by plaintiff to Rafael De Jesús 4/22/97

82.     Certified letter by plaintiff to John Malavé  4/23/97

83.     Certified letter by plaintiff to José Carpena 4/23/97

84.    Letter by plaintiff to Daniel Soto 4/30/97

85.    Letter by Francisco Girau to plaintiff dated 4/21/97

86.    OWCP Form CA-8 dated 5/6/97

87.    Letter by John Vlachos to plaintiff 4/28/97

88.    Certified letter by plaintiff to Harry Romney 5/7/97

89.    Certified letter by plaintiff to Frank Girau  5/10/97

90.    Letter by plaintiff to Daniel Soto 5/20/97

91.    Certified letter by plaintiff to John Malavé 5/20/97

92.    OWCP Form CA-8 dated 5/23/97

93.    Certified letter by plaintiff to Frankie Hernández 5/30/97

94.    Statement from Dr. Guillermo Hoyos 1/15/98

95.    Two medicals certifications from Dr. Hoyos and Dr. Rodriguez 2/21/97

96.    OWCP form CA-20 dated 4/10/97

97.    Certified letter by plaintiff to Harry Romney 7/24/97

98.    OCWP          form CA-8 dated 8/25/97

99.    Letter by plaintiff to Daniel Soto 9/8/97

100.    OWCP form CA-8 dated ( 11/97)

101.    EEO file case number 4A-006-1034096

102.    Letter from plaintiff to Millie Burgos 10/2/97

103.    Step 2 Decision APWU #97-1179 signed by Rafael De Jesus 10/3/97

104.    Certified letter from plaintiff to Robert H. Cohen 10/6/97

105.    Letter by plaintiff to Terry Friend 10/21/97

106.    OWCP Form CA-8 10/24/97

107.    Certified letter by Daniel Soto to plaintiff 10/26/97

108.    OWCP Form CA-7  10/28/97

109.    Letter by plaintiff to Terri Friend 10/28/97

110.    Step 2 Grievance Appeal Form #97-1291 10/29/97

111.    Letter by plaintiff to Tery Friend 11/13/97

112.    Letter by plaintiff to Daniel Soto 11/18/97

113.    Letter by plaintiff to Officer Millie Burgos 11/25/97

114.    Certified letter by plaintiff to John Malavé 11/25/97

115.    Letter by plaintiff to John Malavé 12/5/97

116.    Letter by Shelley Lipton to Plaintiff 12/8/97

117.    Several letters sent by USPS to plaintiff 1/3/97

118.    Letter by plaintiff to Carlos Rodríguez 8/31/98

119.    Certified letter by plaintiff to John Malavé 11/24/97

120.    Certified letter by plaintiff to John Malavé 2/24/98

121.    Letter by John Malavé to plaintiff March 23, 1998

122.    Letter by plaintiff to Carlos Rodriguez 5/28/98

123.    Several medical evaluations Dr. Guillermo Hoyos

124.    Plaintiff tax returns form 1993-1997

125.    Economic report and curriculum vitae of Vicente Feliciano

126.    Plaintiff personal data at USPS

127.    Letter by Plaintiff to John Malavé 3/19/98

128.    Letter by Robert H. Roder to plaintiff 4/6/98

129.    Letter by Robert H. Roder to plaintiff 4/6/98

130.    Letter by Carlos Rodriguez to plaintiff 12/9/98

131.    EEO complaint file

132.    EEO complaint file

133.    USPS Employee Labor Relation Manual

134.    Letter by plaintiff to Inspection Service 6/21/00

135.    Letter by plaintiff to Inspection Service 11/7/01

136.    Letter by plaintiff to Inspection Service 11/16/01

137.    What you need to know about EEO publication

138.    Statement by Radamés Sierra 7/22/96

139.    Sworn Statement by Samuel Cora 6/19/00

140.    Sworn Statement by Jonathan Cruz Class 6/26/02

141.    Report from OSHA Inspection 6/13/96

142.    Oral Examination deposition transcript of Carmen Rosa Perales I 5/6/04

143.    Oral Examination deposition transcript of Carmen Rosa Perales II 5/19/06

144.    USPS Management Instruction FM-640

145.    Dr. Hoyos Psychiatric Report 6/29/06

146.    1994-1998 collective bargaining agreement between USPS and APWU

147.    United States Postal Service seniority list for the metropolitan area

148.    Equal Employment Opportunity Commission Management Directive

149.    29 C.F.R. 1614

150.    A CD-ROM USPS Employee Labor Relations Manual


**Defendant:**

**United States Court of Appeals Opinion, Case No. 01-2190 dated August 4, 2003**

1. **BID listing for Job Id. No. 2541417 – U.S.P.S.; Notice to Report to Job ID 2533698 for A. Morales**

2. **Letter dated January 17, 1997 from Mr. Enrique López to Mr. Morales,**

3. **Routing Slip dated January 10, 1997 from Mr. Enrique López to Mr. Morales**

4. **Letter dated December 18, 1996 from Mr. Morales to Ms. Virginia Matias and Mr. Ruben Lugo.**

5. **Notice of Suspension of seven days dated December 20, 1996 to Mr. Angel Morales from Mr. Enrique López; Letter of Warning dated March 23, 1996 expunged afterwards by Stipulation dated March 27, 1996,**

6. **Letter of Warning dated December 13, 1996 from Mr. Enrique López to Mr. Frank Girau,**

7. **PS Form 2568-B  (USPS EEO Investigative Affidavit) dated January 24, 1997 executed by Mr. José E. Sepúlveda,**

8. **PS Form 2568-B  (USPS EEO Investigative Affidavit) dated April 2, 1996 executed by Mr. Angel D. Morales Vallellanes,**

9. **PS Form 2570 (EEO Counselor Inquiry) dated February 20, 1996, by Carmen Rosa with prior protected EEO activity.**

10. **PS Form 2564-A (Information for Pre Complaint Counseling) dated February 20, 1996, signed by Angel Morales Vallellanes.**

11. **Letter dated March 6, 1996 addressed to Mr. Juan Rodriguez,**

12. **Letter dated January 22, 1997 addressed to Mr. Enrique López**

13. **Letter dated January 16, 1997 addressed to Mr. José A. Carpena,**

14. **Letter dated October 8, 1996 addressed to Mr. José A. Carpena**

15. **Letter dated January 9, 1997 from Mr. Enrique López to Mr. Frank Girau relative to work incident**

16. **Memo to Whom it May Concern dated February 4, 1997 from Mr. Enrique López**

17. **EEO Administrative Affidavit dated September 24, 1997 from Mr. Enrique López,**

18. **Declaration of Mr. Enrique López dated June 24, 2005,**

19. **EEO Investigative Affidavit dated December 26, 1996 from Mr. Enrique López**

20. **Economical Expert Report prepared by Mohinder Bhatia, Ph.D.**

21. **Dr. Mohinder Bhatia's curriculum vitae,**

22. **Psychiatric Forensic Evaluation prepared by Dr. Ramón O. Fortuño,**

23. **Dr. Ramón Fortuño's curriculum vitae,**

24. **Official Personnel Folder ("OPF") for Mr. Angel Morales Vallellanes with the Postal Service.**

25. **Affirmations of Postal Employees in Caparra Heights Station – Interview conducted by Mr. Rafael Gomila.**

26. **Memo "To Whom It May Concern" dated 1/9/97 from Angel L. Baerga as to incident occurring on Saturday 28, 1996.**

27. **E-mail from Cándido López dated 1/31/97 as to OSHA citations and meeting with Mr. José Carpena.**

28. **Letter dated Dec. 16, 1996 from Antonio López and Declaration from Antonio López dated Jan. 29, 1997 as to A. Morales.**

29. **Letter from various employees at Caparra Heights Station to Héctor Torres as to A. Morales' conduct.**

30. **Letter dated August 22, 1995 from Rafael Gomila as to incident between Mr. Luis Ramos and Angel Morales.**

31. **Letter to Enrique López from Mayra Irene (undated).**

32. **Declaration from José A. Padró dated 1/31/97 as to working conditions.**

33. **Defendant reserves the right to Supplement his Exhibit List up to marking of the evidence session and prior to trial.  It is to be noted that the parties had previously prepared a Joint Pre-Trial Order on March 23, 1999 and it was accepted by the Court on March 26, 1999 at D.E. #34.  In that Pre-Trial Order the plaintiff, Angel Morales, submitted a list of proposed exhibits (See pages 72-82) which consisted of 168 proposed exhibits.  Many, if not all, of those proposed exhibits had evidentiary objections to the same by the defendant, among others, as to FRE 901-902, authentication; FRE 801-802 as to hearsay; FRE 401-402 as to relevancy, not probative and inmaterial.; FRE 403 misleading or confusing to jury; FRE 702, scientific evidence not helpful or admissible, nor expert witness qualified; FRE 703, expert opinion not reasonably relied upon.  It is anticipated that for the instant pre-trial order the plaintiff will try, once again, to submit the same and additional documentary evidence.  The defendant specifically objects to plaintiff's proposed exhibits and documentary evidence grounded on the foregoing Federal Rules of Evidence.**

## VII.  WITNESSES:

A. **Plaintiff:**

1.  **Frank Trinidad will testify as to his personal knowledge in this case.**

2.  **Pedro Reyes will testify as to his personal knowledge in this case.**

3.  **Radames Sierra will testify as to his personal knowledge in this case.**

4.  **Carmelo Montañez will testify as to his personal knowledge in this case.**

5.  **Frank Silva will testify as to his personal knowledge in this case.**

6.  **Ronald Baraga will testify as to his personal knowledge in this case.**

7.  **Jonathan Cruz Class will testify as to his personal knowledge in this case.**

8.  **Samuel Carlo will testify as to his personal knowledge in this case.**

9.  **Raymond Ruiz will testify as to his personal knowledge in this case.**

10. **Howard Hal will testify as to his personal knowledge in this case.**

11. **Efigenio Rivera will testify as to his personal knowledge in this case.**

12. **Samuel Cora will testify as to his personal knowledge in this case.**

13. **Alberto Ortiz will testify as to his personal knowledge in this case.**

14. **Vicente Feliciano, Economist, expert witness, will testify as to his Economic**
    **Report prepared for this case.**

15. **Guillermo Hoyos, Psychiatrist, Expert Witness, will testify as to his findings**
    **and       psychiatric report related to plaintiff Angel David Morales.**

16. **John Malavé will testify as to his personal knowledge in this case.**

17. **Carmen Rosa will testify as to his personal knowledge in this case.**

18. **Frank Girau will testify as to his personal knowledge in this case.**

19. **Cándido López will testify as to his personal knowledge in this case.**

**T.  Defendant:**

1.  **Mr. Enrique López – Supervisor, U.S.P.S. – He will testify as to his personal knowledge of the facts for this case.**

2.  **Mr. Antonio López-Martínez, U.S.P.S. employee – He will testify as to his knowledge of certain facts relative to plaintiff,**

3.  **Carmen Rosa Perales,**

4.  **José Sepúlveda, Mayra Irene, José Padró González and Mr. Juan Rodríguez. They all are current and former postal employees. They will testify regarding their knowledge of the facts and their intervention with the plaintiff in this case.**

5.  **Dr. Mohinder Bhatia, Ph.D. Economist, Expert witness -  He will testify as to the Economic Report prepared for this case.**

6.  **Dr. Ramón O. Fortuño, Psychiatrist , Expert Witness - He will testify as to his professional and psychiatric findings in this case for plaintiff Angel Morales Vallellanes.**

7.  **Carmen Rosa – She will testify as to her knowledge of certain facts as to this case**

8.  **Defendant reserves the right to present the testimony of the witnesses announced by plaintiffs.**

9.  **Defendant reserves the right to supplement the instant witness list up to marking of the evidence session.**

10.  **Defendant objects to plaintiff's belated announcement of witnesses**

**VIII. PENDING MATTERS:**

1. **Defendant requests an Order from the Court limiting testimonial and documentary evidence to the three outstanding issues set forth by the Court of Appeals in COA Case No. 02-2190 (See Attachment 1).**

2. **Defendant will use the deposition taken in this case for the purposes allowed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence.**

## IX. LENGTH OF TRIAL

**B. Defendant:  Two (2) weeks.**

## X.  LIMITATIONS AND RESERVATIONS:

**Plaintiff:**

1. **Plaintiff objects Defendants request to reserve the right to supplement said party instant witness list.**

2. **Plaintiff objects Defendants expert witness Dr. Mohinder Bhatia and his Economic Report as said expert witness nor his report was not announced by Defendant, and therefore Plaintiff did not deposed him.**

3. **Plaintiff objects Defendant witness Juan Rodríguez and Jose Sepulveda as they never announced them before.**

4. **Plaintiff objects Defendant request to call rebuttal witness as may be necessary without prior notice to the other party.**

5. **Plaintiff reserves the right to use the deposition taken in this case as a testimony for any witness not available as in the case of Carmen Rosa who moved to the states.**

**Defendant:**

1.  There is reserved to each of the parties the right to further supplement the list of witnesses upon application to the Court and for good cause shown.

2.  There is reserved to each of the parties the right, however, to offer rebuttal testimony of other witnesses, if necessary.

3.  There is reserved to each of the parties the right to  call such rebuttal witnesses as may be necessary without prior notice thereof to the other party.

4.  The probable extension of this trial will be approximately two (2) weeks.  This case is to be tried before a jury.

RESPECTFULLY SUBMITTED in San Juan, Puerto Rico, this 29[h] day of December, 2006.


**S/MIGUEL E. MIRANDA GUTIERREZ**          **ROSA EMILIA RODRIGUEZ-VELEZ**
**MIGUEL E. MIRANDA GUTIERREZ**            **United States Attorney**
**USDC 203110**
**Attorney for plaintiff**                 *S/Fidel A. Sevillano Del Río*
**Angel David Morales Vallellanes**
**P.O. BOX 192271**                        **Fidel A. Sevillano Del Río**
**San Juan, PR 00919-2271**                **Assistant United States Attorney**
**Telephone: (787) 282-0022**              **U.S.D.C.-P.R. No. 117812**
**Telecopier: (787) 753-7655**             **Chardón Tower, Suite 1201**
                                           **350 Chardón Avenue**
                                           **San Juan, Puerto Rico 00918**
                                           **Telephone:  (787) 766-5656**
                                           **Telecopier:  (787)-766-6219**