# United States Court of Appeals
## For the First Circuit

---

No. 02-2190

ANGEL DAVID MORALES-VALLELLANES,

Plaintiff, Appellant,

v.

JOHN E. POTTER, UNITED STATES POSTMASTER GENERAL;
AMERICAN POSTAL WORKERS UNION, PUERTO RICO AREA LOCAL (A.P.W.U. -
P.R.A.L.) A.F.L.-C.I.O.; DANIEL SOTO, PRESIDENT A.P.W.U.-
P.R.A.L.; ENRIQUE LOPEZ,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]
[Hon. J.A. Castellanos, U.S. Magistrate Judge]

---

Before

Torruella, Selya, and Lipez, Circuit Judges.

---

Miguel E. Miranda-Gutiérrez for appellant.
Arturo Luciano-Delgado for appellees American Postal Workers
Union and Daniel Soto.
David G. Karro, with whom Guillermo Gil, United States
Attorney, Fidel A. Sevillano Del Rio, Assistant United States
Attorney, Eric J. Scharf, and Stephan J. Boardman were on brief,
for appellee United States Postal Service.

---

August 4, 2003

---

LIPEZ, Circuit Judge.  Plaintiff Angel David Morales-Vallellanes ("Morales") brought this action against the United States Postal Service ("USPS" or "the Postal Service") alleging that he was the target of retaliatory and discriminatory acts provoked by complaints that he filed with the Occupational Safety and Health Administration ("OSHA").  Morales also sued the American Postal Workers Union ("APWU" or "the Union") and its president, Daniel Soto, in the same action, claiming that the Union breached its duty of fair representation by failing to submit and process his grievances against USPS.

The United States District Court for the District of Puerto Rico referred the case to a magistrate judge, who recommended that the court grant motions for summary judgment submitted by defendants USPS and the Union.  Morales filed a lengthy objection to the report and recommendation, essentially restating the allegations in his amended complaint, but also incorporating sixty-seven new exhibits that had not previously been brought to the magistrate judge's attention.  Concluding that "Plaintiff . . . failed to raise any material issue not adequately addressed by the magistrate judge in his Report," the district court adopted the magistrate judge's report and recommendation, and granted the defendants' motions for summary judgment.  After careful review, we affirm in part and reverse in part.

I.

We summarize the relevant facts from the summary judgment record, reciting them in the light most favorable to Morales. See Diaz v. City of Fitchburg, 176 F.3d 560, 561 (1st Cir. 1999). In 1988, Morales was hired to work as a distribution and window clerk at the Caparra Heights, Puerto Rico, Station of the United States Postal Service. On April 7, 1995, plaintiff filed a letter with OSHA complaining of dust accumulation, rodent infestation, and other unsanitary conditions at the Caparra Heights station. OSHA ordered the station manager to correct the violations by June 19, 1995, but to no avail. Morales renewed his OSHA complaint through certified letters to the OSHA Area Director on August 1, 1995, February 23, 1996, and April 6, 1996. Finally, on June 14, 1996, OSHA conducted a formal inspection of the Caparra Heights station and confirmed plaintiff's allegations. OSHA cited the Caparra Heights station for at least five violations, and directed the station to remedy the safety and health hazards by October 9, 1996.

At this point, we bifurcate our chronology of the subsequent events for purposes of clarity, turning first to the circumstances that spawned Morales's claims against the Postal Service, and concluding with an account of the events underlying plaintiff's claims against the Union.

A.  Events underlying the claims against USPS

Throughout the OSHA complaint process, the agency assured Morales that his identity as an OSHA complainant would be kept

-3-

confidential, and that federal law forbade USPS from retaliating or discriminating against him for whistle-blowing. Nevertheless, plaintiff's amended complaint alleges that by July 1995 other employees at the Caparra Heights station were aware that he had filed OSHA complaints, and were retaliating against him. That month, Morales alerted the Postal Inspection Service that he had received two threats from co-workers, but no remedial steps were taken.

In January 1996, plaintiff expressed interest in an available distribution and window clerk position with Saturdays and Sundays off.[1] USPS then allegedly re-classified the position to offer only Sundays and Thursdays off so as to decrease its desirability to plaintiff. On March 23, 1996, Enrique Lopez, the Caparra Heights station supervisor, issued a letter of warning to Morales for unsatisfactory performance, citing the plaintiff's "abuse of coffee breaks." Two months later, Lopez removed Morales from his position as a Business Reply Mail Clerk, Postage Due Clerk and Express Mail Clerk,[2] and replaced him with a female co-worker.

---

[1]At oral argument, plaintiff's counsel explained that the Caparra Heights station operates twenty-four hours a day, seven days a week. While employees at the post office typically work only five days a week, the allotted days off for many positions do not correspond with the weekend.

[2]Morales alleges that he was assigned to this position as a reasonable accommodation for a job-related injury. It appears that plaintiff suffered from a physical disability that limited the stress he could place on his right arm. This disability restricted the tasks that plaintiff could painlessly perform at work, and allegedly provided USPS with a pretext for excluding him from the

In July 1996, tires on Morales's car were punctured on two separate occasions while the car was parked in the secured Caparra Heights station parking lot.

On October 10, 1996, Morales's contact at OSHA informed him that the agency had no authority to protect postal employees from retaliation, and urged the plaintiff to request USPS to conduct an internal investigation. Without seeking Morales's consent, OSHA forwarded his file to the Postal Service, thereby confirming to USPS that plaintiff was in fact the whistle-blower. From that point on, the retaliation and discrimination directed at plaintiff worsened considerably. Morales alleged that in December 1996 he was victimized by episodes of name-calling and bullying, and later that month he was suspended one week for violating a new uniform policy instituted by Lopez. In January 1997, a postal employee poured sugar into the gas tank of plaintiff's car, nearly resulting in a traffic accident. On at least three occasions in February, plaintiff's supervisor dismissed him from work without pay because "there was no work available for him." Finally, on February 20, 1997, plaintiff was transferred from the Caparra Heights station to the General Post Office in San Juan. Morales alleges that he was removed from the Caparra Heights station because co-workers accused him of being "a safety hazard and a homosexual."

─────────────────────

workplace in February 1997. See infra.

These events prompted Morales to file four Equal Employment Opportunity (EEO) complaints with the USPS.[3] Plaintiff filed his first precomplaint on February 15, 1996, in the aftermath of USPS's decision to alter the allotted days off for the available distribution and window clerk position. His second EEO precomplaint, submitted April 25, 1996, alleged that a new coffee and lunch break policy instituted at the Caparra Heights station unfairly discriminated against male postal employees. After the USPS failed to respond to his first precomplaint, Morales filed a formal EEO complaint on April 3, 1996, alleging that USPS unlawfully retaliated against him by posting the available window clerk position with Thursday/Sunday rest days rather than Saturday/Sunday rest days. He subsequently filed a second formal EEO complaint on September 5, 1996, citing the discriminatory break policy and another episode of retaliation. Plaintiff finally left the employ of the USPS in early September 1997, allegedly as the result of a constructive discharge.

_____

[3]The EEO complaint process provides an administrative forum for postal employees to resolve discrimination claims against the USPS. Postal workers alleging discrimination are required to file a "precomplaint" and consult with an EEO counselor. If the matter raised in the precomplaint is not resolved within the established 30-day counseling period, the employee is authorized to file a formal EEO complaint. Once the formal complaint is filed, USPS is compelled to take action within a specified time period. After this period expires, the employee is permitted to file suit in United States District Court. What You Need to Know About EEO, Publication 133, November 1999, <http://www.postaleeo.com>.

**B.  Events underlying the claims against APWU**

In 1991, long before the events at issue here, Morales had been appointed shop steward of the Caparra Heights station by defendant Soto's predecessor, but was removed shortly thereafter for reasons that are unclear.  Six years later, the Union elected Soto as its new president, and Morales petitioned him repeatedly for a second tour as shop steward.  Soto capitulated, appointing Morales to the position on January 17, 1997.  However, plaintiff's tenure ended abruptly three weeks later after Soto received complaints that Morales was acting inappropriately toward co-workers, and abusing his union status to avenge himself on USPS management.

Morales alleges that his dismissal as union shop steward was motivated by a conspiracy between USPS and APWU to remove him from his job at the Caparra Heights station, in violation of the Union's bylaws.  Plaintiff also claims that the Union failed to process his grievances arising from two February 1997 dismissals from work, or take any action with respect to his constructive discharge.

## II.

Morales filed an amended complaint consolidating his numerous allegations of wrongdoing into four counts.  Count I, entitled "Retaliation and Discrimination," alleges that USPS unlawfully retaliated against plaintiff for filing OSHA claims, EEO complaints, and unfair labor practice charges.  Count II, entitled

-7-

"Conspiracy," accuses the USPS and APWU of "conspir[ing] against Plaintiff to cause his removal as Caparra Heights Shop Steward and later on his removal from Caparra Heights Station." Count III alleges 1) that USPS violated the collective bargaining agreement ("CBA"), and 2) that APWU breached its duty of fair representation "by arbitrarily, capriciously, in bad faith and/or invidiously failing to process timely Plaintiff's grievances through [USPS's] grievance procedure." Finally, Count IV claims intentional infliction of emotional distress arising from the "outrageous acts and omissions, retaliatory conduct, and discrimination" perpetrated by USPS and APWU.

As a preliminary matter, plaintiff's failure to cite any statutory basis for relief in his amended complaint complicates our review of his claims. However, under the liberal "notice pleading" requirements of Rule 8 of the Federal Rules of Civil Procedure, this deficiency is not fatal to plaintiff's case:

> A complaint need not point to the appropriate statute or law in order to raise a claim for relief under Rule 8 . . . . [A] complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as relief is possible under any set of facts that could be established consistent with the allegations.

Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1134 (7th Cir. 1992) (internal quotation marks omitted); see Fitzgerald v. Codex Corp., 882 F.2d 586, 589 (1st Cir. 1989); see also Simonton v. Runyon, 232 F.3d 33, 36-37 (2d. Cir. 2000). These omissions do, however,

create an ambiguity as to whether Morales's claims arise solely under the anti-discrimination clause of the CBA,[4] or whether plaintiff also intended to plead a cause of action under Title VII of the Civil Rights Act of 1964.

This query is not academic -- while the protections built into the CBA parallel those of Title VII, the two remedial schemes contain discrete exhaustion requirements that may bar their availability to plaintiff as sources of relief. Appellees urge us to find that Morales's amended complaint relied entirely on the CBA, and failed to allege properly a Title VII claim. That contention ignores both the substance and structure of Morales's amended complaint. Not only is the complaint replete with references to plaintiff's EEO initiatives, see infra note 5, but the retaliation and discrimination claims are set forth in a separate count to distinguish them from Morales's claims for violations of the CBA. Moreover, Morales cited to Title VII both in his opposition to summary judgment and in his appellate brief.

_____

[4]Under Article 2, Section 1 of the CBA:

The Employer and the Union agree that there shall be no discrimination by the Employer or the Union against employees because of race, color, creed, national origin, sex, age, or marital status. In addition, consistent with other provisions of this agreement, there shall be no unlawful discrimination against handicapped employees, as prohibited by the Rehabilitation Act.

Collective Bargaining Agreement between American Postal Workers Union, AFL-CIO, and U.S. Postal Service; November 21, 1994 - November 20, 1998.

Therefore, we believe the more prudent course is to broadly construe the allegations in plaintiff's amended complaint as alleging a cause of action under both the CBA and Title VII. <u>See</u> Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."); <u>Foster Med. Corp. Employees' Pension Plan v. Healthco, Inc.</u>, 753 F.2d 194, 197 (1st Cir. 1985).[5] With this approach in mind, we turn to the counts of the amended complaint.

### III.

### A. Breach of Collective Bargaining Agreement

In accepting the recommendations of the magistrate judge, the district court properly characterized Count III of Morales's amended complaint as advancing a "hybrid breach of contract and fair representation claim." The Supreme Court has observed that

-------

[5]On facts similar to these, the Seventh Circuit broadly construed the plaintiff's complaint to invoke Title VII as a basis for relief:

> Although Brown's complaint does not invoke Title VII as a basis for her claim explicitly, it does indicate that an EEOC charge had been made and that the complaint was filed within ninety days after receiving an EEOC right to sue letter . . . The reference in Brown's complaint to EEOC procedures did give the defendants some notice that she was pursuing a federal Title VII action . . . Though inartfully drafted, we are hesitant to judge Brown's complaint so narrowly as to foreclose the full adjudication of her claim on the mere failure to cite Title VII explicitly.

<u>Brown</u> v. <u>Reliable Sheet Metal Works, Inc.</u>, 852 F.2d 932, 933 n.1 (7th Cir. 1988), overruled on other grounds, <u>Donnelly</u> v. <u>Yellow Freight System, Inc.</u>, 874 F.2d 402 (7th Cir. 1989).

[s]uch a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301 [of the Labor Management Relations Act], since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. <u>Yet the two claims are inextricably interdependent. To prevail against either the company or the Union, employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.</u>

<u>DelCostello</u> v. <u>Int'l Broth. of Teamsters</u>, 462 U.S. 151, 164-65 (1983) (internal citations and quotation marks omitted) (emphasis added); <u>see also</u> <u>Local No. 391</u> v. <u>Terry</u>, 494 U.S. 558, 563-64 (1990); <u>Fant</u> v. <u>New Eng. Power Serv. Co.</u>, 239 F.3d 8, 14 (1st Cir. 2001). The dual requirements for alleging a "hybrid claim" are predicated on the theory that an employee working under a CBA is ordinarily required to exhaust the grievance procedures provided in that agreement before bringing suit. <u>DelCostello</u>, 426 U.S. at 163. A rigid exhaustion requirement, however, works an injustice to the employee "when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary or perfunctory fashion as to breach its duty of fair representation." <u>Id.</u> at 164. Under these circumstances, an employee who has not exhausted the grievance procedures outlined in the CBA may nonetheless file suit against the employer if he can demonstrate that the union breached its duty of fair

representation, such that the grievance procedures mandated by the CBA provided no meaningful recourse. Id.

Courts conduct a tripartite inquiry to determine whether a union breached its duty of fair representation so materially as to render the CBA's grievance procedures inadequate. "The three separate levels of inquiry . . . are as follows: (1) did the union act arbitrarily; (2) did the union act discriminatorily; or (3) did the union act in bad faith." Ooley v. Schwitzer Div., Household Mfg. Inc., 961 F.2d 1293, 1302 (7th Cir. 1992) (citing Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 71-76 (1991)). "In order to successfully defend against a motion for summary judgment on a duty of fair representation claim, the plaintiff must point the court to record evidence supporting any one or all of these elements." Griffin v. Air Line Pilots Ass'n, Int'l, 32 F.3d 1079, 1083 (7th Cir. 1994). The Supreme Court has stressed that our evaluation of any such evidence must be "highly deferential" to the union. O'Neill, 499 U.S. at 78 (quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953)).

The deference accorded unions defending hybrid claims imposes a heavy burden on employees like Morales alleging a breach of the duty of fair representation. Against this backdrop, the district court did not err in its determination that Morales's submissions failed to provide the requisite record evidence of "irrational" union activity falling "outside a wide range of reasonableness." Id. Plaintiff's amended complaint and opposition

to summary judgment instead raise bare allegations that APWU 1) violated its bylaws by perfunctorily dismissing him from his position as shop steward, and 2) unduly delayed or failed to process "several of plaintiff's grievances." In response, APWU's motion for summary judgment references specific provisions in the Union's bylaws authorizing the Union president to dismiss a shop steward without providing any prior process.[6] The exhibits appended to APWU's summary judgment motion also include letters to Morales meticulously documenting the progression of his various grievances against USPS, and reflect that APWU had previously sought and obtained time extensions from USPS to ensure that any grievances that were delayed were not defaulted.

In short, after reviewing the summary judgment record, we conclude that Morales failed to proffer sufficient evidence that the Union breached its duty of fair representation by acting arbitrarily, discriminatorily, or in bad faith. O'Neill, 499 U.S. at 76-77. Consequently, plaintiff fails to satisfy the first of the dual hybrid claim requirements, see DelCostello, 426 U.S. at 163, and we need not separately assess Morales's allegations that USPS violated the CBA.

---

[6]APWU's bylaws do permit deposed shop stewards to file a written appeal within fifteen days of their removal, and provide that "The Board of Directors will make a full investigation on the work place or Installation and render a written decision within 15 days" of receiving the appeal. There is no indication that Morales ever availed himself of this option.

B. **Retaliation and Discrimination under Title VII**

Adopting the recommendation of the magistrate judge, the district court concluded that Morales's retaliation and discrimination claims were only actionable under the collective bargaining agreement. However, it is well settled that Title VII of the Civil Rights Act of 1964 provides relief independent of the remedial scheme outlined in the CBA. In <u>Alexander</u> v. <u>Gardner-Denver Co.</u>, 415 U.S. 36 (1974), the Supreme Court concluded that

> the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement rather than supplant, existing laws and institutions relating to employment discrimination.

<u>Id.</u> at 48-49. The <u>Alexander</u> Court accordingly ruled that plaintiffs who invoke the grievance procedures of the collective bargaining agreement do not thereby forfeit their private right of action under Title VII. <u>Id.</u> at 49. Hence, <u>Alexander</u> and its progeny, <u>see</u> <u>Wright</u> v. <u>Universal Mar. Serv. Corp.</u>, 525 U.S. 70, 78-79 (1998), support the proposition that the presence of an anti-discrimination provision in a collective bargaining agreement does not foreclose a postal employee's private right of action under Title VII.

The Seventh Circuit's decision in <u>Roman</u> v. <u>U.S. Postal Service</u>, 821 F.2d 382 (7th Cir. 1987), relied upon by the district court, is not to the contrary. In <u>Roman</u>, the Postmaster of the

post office where Roman worked accused him of falsifying his employment application form, and allegedly promised him a position at another postal facility if he chose to resign from his current job rather than be fired. After the Postmaster failed to deliver on this promise, Roman filed suit in federal district court alleging that USPS violated his procedural due process rights by "fraudulently inducing him to resign from his employment." Id. at 384. The Seventh Circuit rejected the plaintiff's argument that the Constitution itself furnished a right of action for his procedural due process claim, observing that "Congress has expressly authorized the adoption of final and binding grievance procedures in the Postal Service collective bargaining agreements." Id. at 386 (quoting Ellis v. U.S. Postal Service, 784 F.2d 835, 839-40 (7th Cir. 1980)). Accordingly, Roman's recourse was limited to the procedural rights enshrined in that agreement:

> Roman's allegation that the Postal Service violated his due process rights in threatening him and forcing him to resign does not provide jurisdiction. Where Congress has created an elaborate, remedial scheme which adequately and comprehensively addresses the protection of constitutional rights in the employment context, an employee whose rights are protected through that scheme cannot bring a new, non-statutory action.

Id. at 385-86 (emphasis added).

However, just as Congress may limit an employee's avenues of redress for certain constitutional claims by establishing "an elaborate remedial scheme" that adequately addresses such claims,

-15-

it also has the power to create multiple rights of action to redress other types of employment injuries. Thus, as the Supreme Court ruled in Alexander, the legislative history of Title VII reflects Congress's intent to provide employees victimized by retaliation or discrimination with an additional statutory right of action wholly independent of the CBA. Alexander, 415 U.S. at 48-49. The district court therefore erred in concluding that the collective bargaining agreement between USPS and APWU furnished Morales's sole avenue of recourse for his retaliation and discrimination claims.

Judicial recourse under Title VII, however, is not a remedy of first resort. See Jensen v. Frank, 912 F.2d 517, 520 (1st Cir. 1990) ("Title VII requires exhaustion of administrative remedies as a condition precedent to suit in federal district court."). USPS's EEO Guidelines, promulgated pursuant to 42 U.S.C. § 2000e-5, prescribe a lengthy administrative process that plaintiffs must exhaust prior to filing a Title VII action in district court. Here, Morales argues that USPS failed to provide any formal disposition of his two formal EEO complaints within the established 180-day window, see 29 C.F.R. § 1614.107(c), thereby entitling him to pursue his claims in district court. Plaintiff buttresses his assertions with two letters from USPS formally dismissing his EEO complaints. Each letter informed Morales that "[i]f you are dissatisfied with the Postal Service's final decision

in this case, you may file a civil action in an appropriate U.S. District Court . . ."

USPS argues on appeal that even if plaintiff may theoretically look outside the collective bargaining agreement to an alternative source of relief under Title VII, he forfeited his right of action by neglecting to file any EEO complaints addressing the vast majority of the discriminatory and retaliatory incidents described in the amended complaint.

We agree with USPS that Morales's Title VII cause of action is limited to those discrimination and retaliation allegations in his amended complaint that were previously the subject of a formal EEO complaint. As we read the EEO dismissal letters, this universe is limited to the following three allegations:

> (1)    Morales's allegation that Job Bid #2541417 was posted with Thursday/Sunday rest days rather than Saturday/Sunday rest days in retaliation for plaintiff's OSHA complaints
>
> (2)    Morales's allegation of sexual discrimination and retaliation arising from an April 9, 1996 incident in which plaintiff's duties and responsibilities were awarded to a female employee and he was given window clerk duties to perform
>
> (3)    Morales's allegation that the "coffee and lunch breaks" policy was not applied in an equal and nondiscriminatory matter

We reject USPS's insinuation on appeal that summary disposition of these surviving claims is appropriate at this time. While it is within our discretion to affirm the district court's

-17-

entry of summary judgment on any ground revealed by the record, Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999), any determination of whether Morales's Title VII claims can survive summary judgment is premature. As a consequence of the district court's erroneous presumption that Morales's claims were solely actionable under the CBA, no court has analyzed the record to determine whether Morales has raised a material dispute of fact that compels a trial on his surviving Title VII claims. Under these circumstances, we believe the preferable practice is to remand to the district court. See United States v. Gell-Iren, 146 F.3d 827, 831 (10th Cir. 199) ("A factual record must be developed in and addressed by the district court in the first instance for effective review."). However, Morales is precluded on remand from seeking relief for a plethora of other acts of discrimination and retaliation alleged in his amended complaint, including the discrete acts of bullying, intimidation, and vandalism by his co-workers, his seven-day suspension for violating the USPS uniform policy, his transfer from the Caparra Heights station, his day-long "expulsions" from work in February 1997, his constructive discharge, and his internal grievances against APWU.[7]

---

[7]Plaintiff's internal grievances against APWU are theoretically actionable under Title VII, which provides that "[i]t shall be an unlawful employment practice for a labor organization to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(c)(1); see, e.g., Thorn v. Amalgamated Transit Union, 305 F.3d 826, 831-32 (8th Cir. 2002). However, the district court correctly adopted the

## C. Residual Claims

Our resolution of Morales's CBA and Title VII claims
disposes of his conspiracy claim.  "A civil conspiracy is a
combination of two or more persons to do an unlawful or criminal
act or to do a lawful act by unlawful means for an unlawful
purpose." Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir.
1974); see also Maryland Casualty Co. v. Hosmer, 93 F.2d 365, 366
(1st Cir. 1937).  The only predicate acts cited in the amended
complaint that possibly establish a basis for conspiracy liability
are 1) APWU's removal of plaintiff as shop steward, 2) USPS's
decision to transfer plaintiff out of the Caparra Heights station,

---

magistrate judge's determination that Morales failed to exhaust the
administrative remedies provided by the Union's bylaws:

> Plaintiff should have exhausted the contractual remedies
> provided to him as to any claim against the Union and/or
> its agents which is not established as a breach of its
> duty of fair representation, such as his removal from
> shop steward position.  He failed to exhaust internal
> union appeal process.

Consequently, Morales has forfeited any Title VII claim arising
from his internal union grievances.  In reaching this conclusion,
we reject as untenable Morales's complaint that he was unfairly
surprised by the magistrate judge's partial reliance on an
exhaustion rationale for disposing of his claims against APWU.  The
record conclusively demonstrates that APWU put the exhaustion point
at issue throughout the litigation before the magistrate judge.
For this reason, the exhaustion arguments and supporting exhibits
raised for the first time before the district court were
inadmissible due to Morales's failure to present these materials to
the magistrate judge.  See Paterson-Leitch Co. v. Mass. Mun.
Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic
efficiencies would be frustrated and the magistrate's role reduced
to that a mere dress rehearser if a party were allowed to feint and
weave at the initial hearing, and save its knockout punch for the
second round.").

and 3) plaintiff's alleged constructive discharge. We have concluded, however, that Morales failed to preserve a right of action for any of these three alleged offenses. Morales's surviving Title VII claims, see supra, implicate only unilateral decisions or policies of USPS that cannot form the gravamen of a civil conspiracy claim. See Ammlung, 494 F.2d at 814.

With regard to Morales's emotional distress claim, even assuming the truth of the surviving Title VII allegations, USPS's conduct does not rise to the level of "extreme and outrageous," "beyond all possible bounds of decency," or "utterly intolerable in a civilized community." Santiago-Ramirez v. Sec'y of Dept. of Defense, 62 F.3d 445, 448 (1st Cir. 1995). Consequently, plaintiff's intentional infliction of emotional distress claim fails as a matter of law.

## IV.

We affirm the judgment entered for defendants on counts II, III, and IV of Morales's amended complaint. We vacate the judgment entered on count I and remand for proceedings not inconsistent with this decision. All parties shall bear their own costs.

**So ordered.**