**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 1**

**Discrimination in Employment - Nature of Claim - Burden of Proof**

As I instructed you at the beginning of this trial, the plaintiff has sued his employer, the U.S. Postal Service.

The plaintiff alleges that he suffered unlawful sex or gender discrimination and was subjected to adverse retaliation ("represalia").

It is unlawful for an employer to intentionally discriminate against any employee on any basis to include retaliation.

**Burden of Proof**

In a discrimination case brought under Title VII of the Civil Rights Act of 1964, as Amended, 42 U.S.C. §2000e-16 et seq., plaintiff must first prove his/her case of discrimination by a preponderance of the evidence.[1]

It is your responsibility to decide whether the plaintiff has proven his claim against the defendant by a preponderance of the evidence.

---

[1] Aikens v. United States Postal Service Bd. Of Governorns, 460 U.S. 711 (1983); Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248 (1981); McDonnell v. Douglass v. Green, 411 U.S. 792 (1973).

## PLAINTIFF'S PROPOSED SPECIAL INSTRUCTION NO. 2

### Legitimate Nondiscriminatory Reason

In this case, the plaintiff must prove by a preponderance of the evidence that sex discrimination and retaliation was the motivating factor in the actions taken by the defendant against plaintiff.

You must consider any legitimate, nondiscriminatory reason or explanation stated by the defendant for its decision. If you find the defendant has stated a valid reason, then you must decide in favor of the defendant unless the plaintiff proves by a preponderance of the evidence that the stated reason was not the true reason, but was only a pretext or excuse for discriminating against the plaintiff by retaliating against him.

The plaintiff can prove pretext directly by persuading you by a preponderance of the evidence that sex discrimination and discriminatory retaliation was more likely the reason for the defendant's actions than the reasons stated by the defendant.[2]

---

[2] McDonnell Douglas Corp. V. Green, 411 US  792 (1973)

**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 3**

**Ultimate Question of Discrimination**

After reviewing all of the evidence in this case, the ultimate question you must decide under Title VII of the Civil Rights Act of 1964, as amended in 1991, is whether the actions taken by the defendant against the plaintiff were intentionally motivated by unlawful sex discrimination and discriminatory retaliation. [3]

---

[3] <u>St. Mary's Honor v. Hicks</u>, 113 S.Ct. 2742 (1993).

**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 4**

**Adverse Actions**

The Courts have construed the employment discrimination prohibitions set forth at Title VII as being aimed at decisions that affect the terms, privileges, duration or conditions of employment.[4] Only "adverse actions" are cognizable in discrimination cases.[5] Examples of adverse actions are, but are not limited to: demotions, disadvantageous transfers or assignments where salary is affected, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees.[6] However, these types of actions, in and of themselves, do not qualify; discriminatory intent must accompany said actions.[7]

In *Burlington vs. White*, 126 S. Ct. 2405 (2006), Burlington does not question the jury's determination that the motivation for these acts was retaliatory. But it does question the statutory significance of the harm these acts caused. The District Court instructed the jury to determine whether respondent "suffered a materially adverse change in the terms or conditions of her employment," App. 63, and the Sixth Circuit upheld the jury's finding based on that same stringent interpretation of the anti-retaliation provision (the interpretation that limits § 704 to the same employment-related conduct forbidden by § 703). Our holding today makes clear that the jury was not required to find that the challenged actions were related to the terms or conditions of employment. And insofar as the jury also found that the actions were "materially adverse," its findings are adequately supported.

---

[4] Yerdon v. Henry, 91 F. 3d 370, 378 (2nd Cir. 1996).
[5] Cole v. Ruidoso Municipal Schools, 43 F.3d 1375, 1382 (10th Cir. 1994)
[6] Hernández Torres v. Intercontinental Trading, 158 F. 3d 43, 47 (1st Cir. 1998)
[7] Hill v. am. Gen. Fin., 218 F.3d 639, 645 (7th Cir. 2000)

**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 5**

**Hostile Environment**


A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the considered by a court for the purposes of determining liability.

*Morgan*, 122 S. Ct. at 1274.

The plaintiff has alleged that he was retaliated for having filed a previous case of discrimination and that defendant created a hostile work environment as retaliation. To prevail on such a theory, the plaintiff must prove by a preponderance of the evidence that the workplace was so permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment.

In evaluating hostile work environment, you must consider the following factors:

(1)     the total physical environment of the plaintiff's work area;

(2)     the degree and type of obscenity that filled the environment of the workplace both before and after the plaintiff arrived;

(3)     the reasonable expectations of the plaintiff upon entering the environment;

(4)     the nature of the unwelcome acts or word;

(5)    the frequency of the offensive encounters;

(6)    the severity of the conduct;

(7)    the context in which the harassment occurred;

(8)    whether the conduct was unwelcome;

(9)    the effect on the plaintiff's psychological well-being;

(10)    whether the conduct was physically threatening;

(11)    whether it was merely an offensive utterance; and

(12)    whether it unreasonably interfered with the plaintiff's

work performance.

As noted above, the harassment must be unwelcome and hostile. In determining whether the conduct was unwelcome, you should consider all the evidence and base your decision on it.  In determining whether the conduct is hostile, the harassment must be sufficiently severe or extensive to alter the conditions of the plaintiff's employment and to create an abusive work environment. The more severe the conduct, the less extensive it must be for you to find that it is hostile. In determining whether conduct is hostile, you should consider whether

(1) the conduct was verbal, physical, or both,

(2) the conduct occurred one time or repeatedly,

(3) the conduct was plainly offensive,

(4) the alleged harasser was a co-worker or supervisor,

(5) others joined in the harassment, and

(6) the harassment was directed at more than one person.

29 C.F.R. §1604.11. Harris v. Forklift Systems, 62 U.S.L.W. 4004, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); Meritor Savings Bank v. Vinson, 477 U.S. 57, 65 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). See also Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990); Carrero v. New York City Housing Authority, 890 F.2d 569, 577 (2d Cir. 1989) (to prevail on a hostile environment title VII Claim, the employee must prove that the harassment is sufficiently severe or pervasive to alter the conditions of

employment and create an abusive working environment-the incidents must be more than episodic, they must be sufficiently continuous and converted to be deemed pervasive); Paroline v. Unisys Corp., 879 F.2d 27 (4th Cir. 1990); Lipsett v. University of Puerto Rico, 864 F.2d 881, 897 (1st Cir. 1988) ("'hostile environment harassment occurs when one or more supervisors or coworkers create an atmosphere so infused with hostility that they alter the conditions of employment").

**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 6**

**Title VII Retaliation Claim**

To establish a prima facie case of retaliation under Title VII, a plaintiff must show the following:

      1.      partipation in a protected activity known to the employer;

      2.      adverse employment action taken against plaintiff; and

      3.      causal connection between the protected activity and the adverse employment action.

If a prima face case is established, the burden shifts and the defendant must articulate a legitimate, nondiscriminatory reason for the adverse action. Once the defendant has dispelled the inference of retaliation by establishing a legitimate, nondiscriminatory reason, the plaintiff can still prevail if the plaintiff demonstrates that the articulated reason was a mere pretext for discriminating and/or retaliating.

See Model Federal Jury Instructions Civil, & 88.04, Instruction No. 88-46.

**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 7**

**Award of Damages**

It is the duty of the Court to instruct you as to the measure of damages. However, by instructing you on damages, the Court does not mean to suggest that damages should be awarded. If you find that the defendant discriminated against the plaintiff, you may award her reasonable compensation for the following:

Emotional pain, suffering, inconvenience, mental anguish...

You are required to determine the amount of money required to reasonably and fairly compensate him for the loss and damages he may have suffered as a result of the defendant's unlawful conduct. You should not include in the damages award an amount to compensate plaintiff for his attorney's fees. In the event that you find that defendant is liable, plaintiff will be entitled to reasonable attorney fees above and beyond any compensatory damages you allow him.[8] You should also not include in the damages award an amount to compensate the plaintiff for his lost wages. In the event that you find that defendant is liable, the plaintiff will be entitled to lost wages above and beyond any compensatory damages you allow him.

---

[8] Section 103 of the Civil Rights Act f 1991 amends 42 U.S.C. § 1988 to specifically provide for attorney fees separate and apart from compensatory damages.

**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 8**

**Discrimination in employment**

It is unlawful for an employer to intentionally refuse to hire or to intentionally discharge any person or to constructively discharge any person or otherwise discriminate against any person with respect to compensation, tenure, conditions, or privileges of employment because -among others- of such person=s sex. In this case, plaintiff claims that defendants United State Postal Service intentionally discriminated against him on the basis of sex. The defendant denies this charge. It is your responsibility to decide whether the plaintiff has proven his claim against the defendant by a preponderance of the evidence.

See: Federal Jury Practice and Instructions, ' 104.01.

**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 9**

**Proof of Intent**


Plaintiff is not required to produce direct evidence of intentional discrimination. Intentional discrimination may be inferred from the existence of other facts.


See: Federal Jury Practice and Instructions, ' 104.04.

## PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 10

### Damages-Reasonable; Not Speculative

Damages must be reasonable. If you should find that the plaintiff is entitled to a verdict, you may award him only such damages as will be reasonably compensate him for such injury and damage as you find, from a preponderance of the evidence in the case, that he has sustained as a proximate result of the facts alleged and proven.

You are not permitted to award speculative damages. So, you are not to include in any verdict compensation for any prospective loss which, although possible, is not reasonably certain to occur in the future.

See: Federal Jury Practice and Instructions, ' 85.14

**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 11**

**Damages Must Have Been Proximately Caused**


You are not to award damages for any injury or harm or condition from which the plaintiff may have suffered, or may now be suffering, unless it has been established by the preponderance of the evidence in the case that such injury, harm, or condition was proximately caused by the defendant=s decision not to promote him, to make unavailable a job position for which plaintiff was qualified, to remove him from the job position that was granted to him as a reasonable accommodation because of the conditions of his arms, and to create, allow and maintain an adverse working environment against the plaintiff that lead him to leave his job at the United States Postal Service.


See: Federal Jury Practice and Instructions, ' 85.15.

**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 12**

**Damages – Back Pay**


If you determine that [the defendant] discriminated against [the plaintiff] then you must determine the amount of damages that [the defendant] has caused [the plaintiff].

You may award as actual damages an amount that reasonably compensates [the plaintiff] for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that the [the plaintiff] would have received had he/she not been discriminated against. Basically, you have the ability to make [the plaintiff] whole for any wages or other benefits that he/she has lost as a result of his/her [discharge/demotion/failure to be hired/failure to be promoted].

**AUTHORITIES**

42 U.S.C. 2000e-5g (Title VII of the 1994 Civil Rights Act); 29 USC 626 )b) (ADEA); 29 USC 216(b) (Fair Labor Standards Act); *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S.C. 843, 847-848, 121 S. Ct. 1946, 150 L. Ed. 2d 62 (2001); *Lorillard v. Pos*, 434 U.S. 575, 98 S. Ct. 866, 55 L. Ed. 2d  40 (19878); *Albermarle Paper Co. v. Moody,* 422 US 405, 421-422 L. Ed. 2d 2080, 95 S. Ct 2362 (1975)

**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 13**

**Interest on Back Pay**


Prejudgment interest may be awarded in appropriate circumstances to ensure that the victim receives the full value of an award of damages.  In United States v. City of Warren, 138 F.3d 1083, 1096 (6th Cir. 1998), the court noted that:

"…victims of discrimination should not be penalized for delays in judicial process, and discriminating employers should not benefit form such delays.  The purpose of awarding prejudgment interest under Title VII, however, is to compensate victims both for the time value of the effects of inflation."

**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 14**

**Damages-Loss of Earnings-Past and Future**


If you find that the plaintiff is entitled to a verdict, in arriving at the amount of the award, you should include:

First, the reasonable valued of the time, if any, shown by the evidence in the case to have been necessarily lost up to the date by the plaintiff since the injury, because of being unable to pursue his occupation, as a proximate result of the wrongful acts or conduct of the defendants. In determining this amount, you should consider any evidence of plaintiff=s earning capacity, his earnings, and the manner in which he ordinarily occupied his time before suffering the damage caused in this case, and find what he was reasonably certain to have earned during the time so lost, had he not been constructively discharged from his employment with the defendant United States Postal Service; and

Second, also such sum as will reasonably compensate the plaintiff for any loss of future earning poser, proximately caused by the injury in question, which you find from the evidence in the case that plaintiff is reasonably certain to suffer in the future. In determining this amount, you should consider what plaintiff=s health, physical ability and earning power were before the facts alleged and proven and what they are now; the nature and extent of the damages suffered and the extent of their duration; all to the end of determining (1) the effect of the damages suffered in his future earning capacity or the possibility of having received such earning but for the constructive discharge from employment and (2) the present value of any loss of future earnings that would have been received but for the constructive discharge.


See: Federal Jury Practice and Instructions, ' 85.07.

**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 15**

**Subsequent Promotions in an Award of Back Pay**


In order for a subsequent promotion to be included within the scope of an award of back pay, there must be more than mere speculation that the employee would have been promoted. While an award of back pay should consider interim increases of pay and promotions that would likely have occurred absent the discriminatory conduct, subsequent promotions may not be awarded without some degree of certainty. In Winbush v. State of Iowa By Glenwood State Hospital, 66 F.3d 1471, 1486 (8th Cir. 1995), the Eight Circuit reversed an award of back pay that included a promotion where the employees never sought promotion and testified that at the time she was not interested in the promotion.

**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 16**

**WHEN FRONT PAY IS APPROPRIATE**

Title VII explicitly authorizes reinstatement as an equitable remedy; front pay is the functional equivalent of reinstatement because it is a substitute remedy that affords the plaintiff the same benefit (or as close an approximation as possible) as the plaintiff would have received had she been reinstated. As the equivalent of reinstatement, front pay falls squarely within the statutory language authorizing "any other equitable relief." Thus, the district court did not err in awarding front pay after it concluded that Williams could not be reinstated to her old position.[9]

---

[9] *Williams v. Pharmacia, Inc.,* 137 F.3d 944, 951 –52 (7th Cir. 1999)

## PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 17

### Damages – Front Pay

You shall also calculate separately, as future damages, a monetary amount equal to the present value of the wages and benefits that the plaintiff would have earned had he/she not been discriminated against for that period from the date of your verdict until the date when the plaintiff would have voluntarily resigned or obtained other employment.

**AUTHORITY**

See 42 U.S.C. 2000e-5g (Title VII of the 1964 Civil Rights Act); 29 U.S.C. 626 (b) (ADEA); 29 U.S.C. 216(b).

**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 18**

**OTHER CONSIDERATION IN AWARDING FRONT PAY**

An award of front pay can be substantial, especially in those circumstances when the employee may be unable to work for an extended time or may never be able to find comparable work. In *Kelley v. Airborne Freight Corporation d/b/a Airborne Express,* 140 F.3d 335 (1st Cir. 1998), discussed elsewhere in this chapter regarding the court's decision not to reinstate plaintiff, the front–pay award under the ADEA and State law was $1,000,000. The First Circuit refused to order a remittitur, finding that the award was supported by the evidence presented at trial.

**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 19**

**WORKER'S COMPENSATION BENEFITS**

We then applied the "collateral source rule" and refused to deduct unemployment benefits from a back pay award in an age discrimination action, noting the rule "gains in significance in the context of employment discrimination claims." *Id.* We explained this is so because back pay awards not only serve to make a victim whole, they also "deter future discrimination." 17 F.3d at 1113. If the unemployment benefits were deducted, this court reasoned that it would be "less costly for the employer to wrongfully terminate a protected employee." *Id.* Put another way, deduction of the benefits would constitute "a windfall to the employer who committed the illegal discrimination." *Id.* The same reasoning applies in the circumstances of this case. *See Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1171 (6th Cir. 1996) ("Like unemployment benefits, worker's compensation benefits are a collateral source that should not be deducted from back pay."), amended on other grounds, 97 F.3d 833 (6th Cir. 1996).

Also in Miller vs. Bolger, 802 F.2d 660, (1986) the 3rd Circuit in regard topreclude from pursuing Title VII remedies for discrimination the court concluded:

"*We reject the Postmaster General..s argument that allowing Miller to pursue Title VII remedies will usurp the Secretary of Labor..s power under 5 U.S.C. § 8128 (b) to make final and unreviewable determinations of FECA benefits. Quite simply, this court is in no way impinging on the Secretary..s authority. The Secretary has determined that Miller should receive FECA benefits and has determined that amount. Those determinations are not at issue here. They cannot affect the federal courts.. jurisdiction, granted by Congress under Title VII, to consider Miller..s claim for*

*additional and different relief. We thus agree with the district court..s holding that Miller..s recovery*

*of FECA benefits does not preclude his resort to the federal court under Title VII."*

Therefore, it has been clarified that both FECA and Title VII remedies are different and apart

so that their coexistence claims are supported by Law.

**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 20**

**DISABILITY BENEFITS UNDER FECA[10]**

The Postal Service argues that Nichols is barred from receiving additional back pay by the exclusivity provisions of FECA. *See* 5 USC § 8116. We reject this argument. Although FECA's exclusivity provisions prevent a court from awarding Nichols additional payments for her work–related "injury" within the meaning of the act (i.e., her post-traumatic stress disorder), the provisions do not prevent an award of additional payments for harms that fall outside of FECA's definition of "injury." Because the district court's award compensated Nichols solely for the harm she suffered from sex discrimination—which is not an "injury" within the meaning of FECA— the exclusivity provisions are not applicable to this case. FECA's exclusivity provisions apply only to additional payments for work–related injuries…

By contrast, the harm that Nichols suffered from sex discrimination is not an "injury" within the meaning of FECA. First, such harm is not an "injury by accident." The harm arose from Francisco's sex discrimination, which was an intentional—not an accidental—act. Second, the harm is not "a disease proximately caused by the employment." By contrast with post–traumatic stress disorder (which is a disease classified by DSM–III–R), the impact that sex discrimination has on a victim is not a "disease." Third, the harm is not "damage to or destruction of medical braces, artificial limbs, and other prosthetic devices." Accordingly, the harm does not qualify as an "injury" on that ground either. Therefore, the exclusivity provisions of FECA do not apply to the district court's award.

---

[10] Nichols v. Frank, 42 F.3d 503, 514-16 (9th Cir. 1994)

Our conclusion is not only compelled by the plain language of FECA and Title VII, but also by common sense. Under the Postal Service's argument, a victim of sex discrimination who does not suffer from post–traumatic stress disorder would be entitled to receive 100% of her back pay under Title VII. However, a victim of sex discrimination who also happens to suffer from a disease such as stress would be entitled to only 75% of her pay under FECA. Congress could not have intended such an unjust result. Under Title VII, victims of sex discrimination—regardless of whether that discrimination results in a work–related "injury" or not—are entitled to a maximum of 100% of their back pay, as long as that sum does not lead to double recovery.

**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 21**

**Attorney Fees**


A prevailing plaintiff in a Title VII complaint is entitled to an award of reasonable attorney fees. The attorney fees provision of Title VII, 42 U.S.C. 200e-5 (k) provides, in pertinent part.

"In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the cost."

**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 22**

**Protected Activity under Title VII**

Is intended to provide 'exceptionally broad protection' for protestors of discriminatory employment practices"), with 2 EEOC Compliance Manual §8, p. 8–13 (1998) (hereinafter EEOC 1998 Manual), available at http://www.eeoc.gov/policy/docs/ retal.html (as visited June 20, 2006, and available in clerk of Court's case file) (§704(a) "prohibits] any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity"). And the EEOC 1998 Manual, which offers the Commission's only direct statement on the question of whether the anti retaliation pro vision is limited to the same employment-related activity covered by the anti-discrimination provision, answers that question in the negative—directly contrary to petitioner's reading of the Act.

Finally, we do not accept the petitioner's and Solicitor General's view that it is "anomalous" to read the statute to provide broader protection for victims of retaliation than for those whom Title VII primarily seeks to protect, namely, victims of race-based, ethnic-based, religion-based, or gender-based discrimination. Brief for Petitioner 17; Brief for United States as Amicus Curiae 14–15. Congress has provided similar kinds of protection from retaliation in comparable statutes without any judicial suggestion that those provisions are limited to the conduct prohibited by the primary substantive provisions. The National Labor Relations Act, to which this Court has "drawn analogies . . . in other Title VII contexts," Hishon v. King & Spalding, 467 U. S. 69, 76, n. 8 (1984), provides an illustrative example. Compare 29 U. S. C. §158(a)(3) (substantive provision prohibiting employer "discrimination in regard to . . . any term or condition of employment to encourage or discourage membership in any labor organization") with §158(a)(4) (retaliation provision making

it unlawful for an employer to "discharge or otherwise discriminate against an employee because he

has filed charges or given testimony under this subchapter"); see 12 BURLINGTON N. & S. F. R.

CO. v. WHITE  also Bill Johnson's Restaurants, Inc. v. NLRB, 461 U. S. 731, 740 (1983)

(construing anti-retaliation provision to "prohibit] a wide variety of employer conduct that is

intended to restrain, or that has the likely effect of restraining, employees in the exercise of protected

activities," including the retaliatory filing of a lawsuit against an employee); NLRB v. Scrivener, 405

U. S. 117, 121–122 (1972) (purpose of the anti-retaliation provision is to ensure that employees are

"'completely free from coercion against reporting'" unlawful practices).

*Burlington vs. White* 126 S. Ct. 2405 (2006)

**PLAINTIFF'S PROPOSED SPECIAL JURY INSTRUCTION NO. 23**

**Adverse Action under Reassignment of Job Duties**

In Burlington vs. White, 126 S. Ct. 2405 (2006), first, Burlington argues that a reassignment of duties cannot constitute retaliatory discrimination where, as here, both the former and present duties fall within the same job description. Brief for Petitioner 24–25. We do not see why that is so. Almost every job category involves some responsibilities and duties that are less desirable than others. Common sense suggests that one good way to discourage an employee such as White from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable. That is presumably why the EEOC has consistently found "[r]etaliatory work assignments" to be a classic and "widely recognized" example of "forbidden retaliation." 2 EEOC 1991 Manual §614.7, pp. 614–31 to 614–32; see also 1972 Reference Manual §495.2 (noting Commission decision involving an employer's ordering an employee "to do an unpleasant work assignment in retaliation" for filing racial discrimination complaint); EEOC Dec. No. 74–77, 1974 WL 3847, *4 (Jan. 18, 1974) ("Employers have been enjoined" under Title VII "from imposing unpleasant work assignments upon an employee for filing charges").

To be sure, reassignment of job duties is not automatically actionable. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale*, 523 U. S., at 81. But here, the jury had before it considerable evidence that the track labor duties were "by all accounts more arduous and dirtier"; that the "forklift operator position required more qualifications, which is an indication of prestige"; and that "the forklift operator position was objectively considered a better job and the male employees resented White for occupying it." 364 F. 3d, at 803 (internal quotation marks

omitted). Based on this record, a jury could reasonably conclude that the reassignment of responsibilities would have been materially adverse to a reasonable employee.