IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANGEL DAVID MORALES-VALLELLANES

        Plaintiff

            v.

UNITES STATES POSTAL SERVICE

        Defendant

CIVIL NO. 97-2459(GAG/CVR)

**DEFENDANT'S RESPONSE IN OPPOSITION**

TO THE HONORABLE COURT:

COMES NOW the defendant through the undersigned attorneys to respectfully submit the opposition to Plaintiff's Motion in Compliance, related at **D.E. 413,** as to his back and front pay requests.

## <u>Exclusion of the Constructive Discharge and Emotional Distress Claims</u>

The baseline for this case is set forth at <u>Morales-Vallellanes v. Potter</u>, 339 F.3d 9 (1st Cir. 2003).  The Court of Appeals ("COA")limited the controversies to three, namely, the change in rest days, the sexual discrimination allegation that involved Ms. Mayra Irene and the claim that the coffee break policy by Management was not being applied equally.

The "COA" ruled that "Morales is precluded on remand from seeking relief for a plethora of other acts of discrimination and retaliation alleged in his amended complaint, including the discrete acts of bullying, intimidation, and vandalism by his co-

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 2

workers, his seven-day suspension for violating the USPS uniform policy, his transfer from the Caparra Heights station, his day-long "expulsions" from work in February 1997, **his constructive discharge**, [1] and his internal grievances against APWU."

The "COA" further ruled that, "with regard to Morales' **emotional distress claim**, even assuming the truth of the <u>surviving Title VII allegations</u>, USPS's conduct does not rise to the level of "extreme and outrageous," "beyond all possible bounds of decency," or "utterly intolerable in a civilized community." <u>Santiago-Ramirez v. Sec'y of Dept. of Defense</u>, 62 F.3d 445, 448 (1st Cir. 1995). Consequently, plaintiff's intentional infliction of **emotional distress claim fails as a matter of law.**" (Emphasis added) This latter ruling will be addressed briefly here and more in detail later onward when defendant argues for the setting aside of the jury verdict under FRCP 50 and 59, respectively. For now,

---

[1]  In order to support any finding of retaliatory constructive discharge, the record must establish not only the plaintiff's exercise of protected activity, but also 'aggravating factors' under the  reasonable person standard that made the work so intolerable that [he] was driven to **quit**." <u>Thomas v. Nat'l Football League Players Ass'n</u>, 941 F. Supp. 156, 162 (D.D.C. 1996); <u>Carpenter v. Con-way Express, Inc.</u>, 481 F.3d 611 (8th Cir. 2007); <u>see also</u> <u>Dashnaw v. Pena</u>, 12 F.3d 1112, 1113 (D.C. Cir. 1994)  As a matter of law this is outside the scope of this case as set forth by the Court of Appeals. Therefore, any scenario that, directly or indirectly relates to those <u>two rulings</u> cannot be factored in the liability phase of this case and much less in the remedial phase, to include back and front pay equitable reliefs.  See also <u>Landgraf v. USI Films Prods.</u>, 968 F.2d 427, 430 (5th Cir. 1992).  "To prove **constructive discharge**, the plaintiff **must** demonstrate a **greater severity or pervasiveness** of harassment than the minimum required to prove a hostile work environment." (Emphasis added); See also <u>Nestor M. Torres-Hernandez v. General Electric Company, et als.</u>, Slip Opinion No. 07-1341 dated march 7, 2008 (1st Cir. 2008)

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 3

defendant will generally focus on those two rulings barring plaintiff from seeking <u>any</u> relief for <u>constructive discharge **and** emotional distress</u>; meaning that no damages or monetary remedy can be fashioned or factored in as a consequence thereof. As to constructive discharge, the evidence clearly showed that there was never any "termination" of plaintiff's employment. His employ with defendant, not having been severed, impedes any economic relief, to include back and front pay and damages, for "constructive discharge."

The evidence further showed that plaintiff, not only, has always been a postal employee; but also a participant of the Office of Workers' Compensation Program (OWCP), U.S. Department of Labor since 1977 to present; and, a postal employee on OWCP status being payed 66 2/3% of his salary, tax free, with no mandatory deductions as substituted wages and benefits for an aggravation of a pre-existing carpal tunnel and tennis elbow work-related condition dating back to 1992. (**See D.E. 421, Transcript of Jury Trial for December 11, 2007 at pages 31, 37-44**.)

Regarding Plaintiff's emotional distress claim, the COA has ruled that, as a matter of law, and even assuming the truth of the three (3) claims that survived on remand, it is **settled** that defendant's conduct did not rise to the level of "extreme and outrageous", "beyond all possible bounds of decency" or "utterly

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 4

intolerable in a civilized community". **This is important**.  It is
a road map  for this Court's ruling, not only as to back and front
pay, but also to gauge damages.  It would be particularly relevant
when it reviews and calibrates any finding to the effect that the
defendant "caused" plaintiff's "mental downfall" and  eleven (11)
year participation in the OWCP Program.  If the "COA" dismissed,
among others, the **emotional distress** and **constructive discharge**
**claims** and, ruled, that no remedies could be obtained by the
plaintiff as a result thereof, it would follow then, that inherent
in such ruling, is that the three issues that were remanded to
District Court do not rise to the level of severe or abusive.  It
would also follow that this case is devoid of any aggravating
and/or intolerable circumstances under the reasonable person
standard. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101,
116-117 (2002); Marrero v. Goya of P.R., Inc., 304 F.3d 7, 28 (1st
Cir. 2002); Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir.
2000) (As to a constructive discharge claim, "it is not enough that
a plaintiff suffered the ordinary slings and arrows that workers
routinely encounter in a hard, cold world.")  With that backdrop,
any finding which factors in those eleven years for back/front pay
remedies and/or damages, would not be warranted of sustainable.

    As a matter of fact, there is no connection between
defendant's actions, as it related to the three issues on remand,

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 5

and the eleven year participation by Morales in the OWCP Program.
The two are completely different and separate scenarios.  Pursuant
to the evidence and Workers' Compensation law, it was the U.S.
Department of Labor and not the defendant who accepted plaintiff's
claim for traumatic injury at the workplace due to a pre-existing
condition dating back to 1992.  It is to be noted that the events
related to this case occurred from 1995-1997.  Thus, any causation
between defendant's conduct as to the three (3) issues on remand
and plaintiff's request for back and front pay as well as damages
is broken.

    After 1997 the Workers' Compensation Program substituted
plaintiff's earnings at a rate of 66 2/3% of his postal salary, tax
free and with no deductions.  As Dr. M. Bhatia testified, Mr.
Morales comes out even at the end of the day; there is no
meaningful difference between what plaintiff received from OWCP and
what he would have earned at the Postal Service had he continued to
work there. (**See D.E. 419, Jury trial transcript for December 20,
2007, pages 9-45**) OWCP has been paying the plaintiff benefits for
not working due to his medical condition.  Those benefits are tax
free, with no deductions and no end in sight.  This means that,
unless the OWCP program, U.S. Department of Labor, (**not the
defendant**), releases plaintiff from the program because he is
medically fit to return to duty, Morales will stay there for an

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 6

indefinite period.

Mr. Morales has not lost _any_ earnings, wages or benefits as a result of _any_ termination from his employment.  His participation during the past eleven (11) years in the OWCP Program was prompted by an aggravation of a preexisting 1992 condition.  It had nothing to do with any of defendant's decisions that could be attributed to the three (3) issues on remand by the "COA".  The OWCP Program is entirely separate from the Postal Service; it has its own rules and regulations, and operates under the Federal Employees Compensation Act ("FECA").

Therefore, the plaintiff is not entitled to any back and much less, front pay.

## Plaintiff's Request for Back/Front Pay

Plaintiff requests back pay totaling $834,462.00, plus interest.  He petitions for a promotion award to Postal Inspector, plus overtime, interest and back pay; fringe benefits, such as health insurance, life insurance, dental insurance, awards of bonuses, annual leave or vacation pay, retirement benefits, and employer matching contributions under the Thrift Savings Plan (TSP).

In addition, he petitions that OWCP benefits not be deducted from back pay under the Collateral Source Rule Doctrine.

Plaintiff finally requests front pay for $521,705.00, which

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 7

includes 22 years of future earnings up to retirement date.
Plaintiff's request is speculative, at best, particularly as to his
promotion to Postal Inspector.  There was no evidence as to the
qualifications standards set for such position; if plaintiff met
the same or even applied for it or whether it was posted for
filling.  In addition, the plaintiff, having had a work-related
carpal tunnel and tennis elbow condition dating to 1992, as a
covered traumatic injury on the workplace, it would have been very
doubtful if he would have qualified **at all** for such a law
enforcement position within the Postal Service.  As to fringe
benefits, he is not entitled to any; it would be speculative to
grant the same and was not sustained by the evidence presented by
the plaintiff at trial.

The Court, in its discretion, should rule that, neither back
nor front pay, is collectable by the plaintiff.  However, if back
pay is to be awarded, the Court should deduct it by the amount
Morales received from the OWCP Program, U.S. Department of Labor.
Defendant moves the Court to adopt Dr. M. Bhatia's expert economic
testimony as to that practically nothing is owed to the plaintiff
because, at the end of the day Morales comes out even.  There is no
meaningful difference between the amounts plaintiff received from
OWCP, tax free and with no deductions and what he would have earned
at Postal absent the filing of his complaint.

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 8

## <u>Back Pay Should not be Awarded</u>

The scope of relief the courts may award under Title VII is intended to accomplish an express Congressional purpose:

> to make the victims of unlawful discrimination whole, and...the attainment of this objective rests not only upon the elimination of the particular unlawful employment practice complained of, but also requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination.[2]

Back pay thus serves the remedial purposes of Title VII as one part of the process of restoring the plaintiff to his or her proper and unlawful position, both in terms of employment status and economic benefits. It is an integral part of that equitable relief. Back pay is not a punitive remedy under Title VII; it is a restitutionary, equitable remedy.

The framing of a remedial decree is within the discretionary authority of the trial judge. The judge's assessment of the needs of the situation is a factual determination reviewable only for clear error. <u>See</u> <u>Pullman-Standard v. Swint</u>, 456 U.S. 273. But the court's discretion should be guided by the goals of Title VII. When awarded, "[b]ack pay liability shall not accrue from a date

---

[2] "[T]he court may...order...reinstatement or hiring of employees, with or without back pay..." 42 U.S.C. §2000e-5(g)(1)(as amended 1991). However, and as previously stated, reinstatement, as applied to the facts of this case, is a non-issue because plaintiff has never been terminated from employment.

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 9

more than two years prior to the filing of a charge with the
Commission. **42 U.S.C. §2000e-5(g)** Interim earnings or amounts
earnable with reasonable diligence by the person or persons
discriminated against shall operate to reduce the back pay
otherwise allowable." **42 U.S.C.A. §2000e-5(g)(1).**

Retroactive relief places the victim of discrimination in the
position he or she would have occupied *but for* the discrimination.

Individuals who suffer Title VII violations are entitled to be
made whole "for injuries suffered on account of unlawful employment
discrimination." <u>Albemarle Paper Co. v. Moody</u>, 422 U.S. 405, 418
(1975). Because the "make whole" and deterrent purposes is at the
core of Title VII, a finding of a Title VII violation presumptively
entitles the victim of the discrimination to back pay and
retroactive promotion or reinstatement, 422 U.S. at 422. However,
in our case that presumption quickly disappears or fades away as
discussed here. Back pay may be denied only if denial "would not
frustrate the central statutory purposes of eradicating
discrimination throughout the economy and making persons whole for
injuries suffered through past discrimination." <u>Albemarle Paper
Co. v. Moody</u>, 422 U.S. at 421. In this case, to adopt plaintiff's
contention of back and front pay would frustrate the purposes of
the law because it would make the plaintiff more than whole and
place him in a much better position than before his claim was

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 10

filed.

Back pay includes not only loss, but also compensation for lost overtime, shift differentials, anticipated raises, and fringe benefits (e.g., sick pay, annual leave, and vacation pay). <u>See</u>, e.g., <u>Walker v. Dalton</u>, 89 F. Supp. 2d 20 (D.D.C. 2000); 4 F.3d 134. In this case, however, fringe benefits are factored in the OWCP payments; the same are also tax free and with no deductions. (**D.E. 419, ANTE.**)

With respect to establishing monetary loss for purposes of equitable relief, plaintiff bears the burden of proof. <u>Gotthardt v. National Railroad Passenger, Corp.</u>, 191 F.3d 1148, 1158 (9th Cir. 1999) Here the plaintiff has not sustained his burden of proof. He has not presented evidence from which the Court can gauge his petition for remedies, particularly as to fringe benefits. Plaintiff's shot-gun approach is contrary to the specificity required to sustain his claim for fringe benefits. Plaintiff's petition for such benefits are too general to be considered sustainable under the law and as such should be denied by the Court.

The process of determining whether or not to award back pay to a plaintiff is a process separate from, and one which occurs subsequent to, the process of determining the claim on the merits. If the plaintiff loses on the merits, the back pay issue never

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 11

arises.  A plaintiff who wins, however, must still convince the
trial court that he or she was harmed by the practice, since a loss
is a prerequisite to being compensated by back pay.  If the
plaintiff is successful, the defendant has the opportunity to
oppose the award.  And once the burden shifts to the defendant on
a back pay claim, the burden is one of proof or persuasion rather
than one of simply coming forward with evidence.  As such, it
should be distinguished from the defendant's burden with respect to
the merits of the discrimination claim itself, in which the
ultimate burden of persuasion always rests with the plaintiff.

The plaintiff's burden at this stage is to show that he, as a
result of the defendant's discrimination, suffered economic loss.
This showing has two elements:  the existence and amount of a loss
and a causal link to the defendant's discrimination.

As to causation, we have stated before that it is non-
existent.  For back pay purposes, plaintiff's participation in the
OWCP Program for eleven (11) years is completely independent of the
three (3) scenarios that were remanded by the Court of Appeals to
the District Court.  For the period before 1997, Morales worked at
the Caparra Postal Station.  There was no evidence at trial to show
that his earnings or wages were affected in any way, form or
fashion.  After 1997, those wages and benefits were substituted for
the ones set under the Workers' Compensation Law and its

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 12

regulations as a result of Morales' participation in the OWCP
Program.

Workers' compensation benefits under FECA are in lieu of
salary and related benefits.  It is calculated based on salary (2/3
in the case of a male with no dependents such as plaintiff).  It is
non-taxable and not subject to mandatory deductions.  The same are
part of a comprehensive program affording such benefits such as
health and Cost of Living Allowance ("COLA") on a yearly basis.
Employees on OWCP do not use annual or sick leave since they are
being paid while they are not capable of working due to a medical
condition.  Employees on injury compensation remain on the rolls of
their federal employer.  They return to work on a full or part-time
basis when they are medically able to do so when determined by the
OWCP Program.

Therefore, Morales has not suffered any loss of earnings,
wages, or benefits.

Any back pay award for Morales should be reduced during the
time he has been unavailable for employment for not being fit to
work.  Under such circumstances, that would include the eleven (11)
years he has been under OWCP during which time he could not have
worked for defendant or anybody else, as testified by Dr. Guillermo
Hoyos, plaintiff's psychiatrist. (**See D.E. #417, Jury Trial
Proceedings for December 13, 2007, pages 172, 173, 175, 178-181.**)

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 13

(See Sullivan v. Raytheon co., 262 F.3d 41, 47 (1st Cir. 2001)
(time plaintiff was disabled excluded from back pay award); See
also Acevedo Martínez v. Coatings and Co., 286 F. Supp. 2d 107
(D.P.R. 2003)  If Morales was unable to work while under the OWCP
Program and his psychiatrist, Dr. Guillermo Hoyos, testified that
he could not work and, at present, still cannot work, then it would
not make any sense to pay him back pay for eleven (11) years in
addition to his OWCP wages.  He would be collecting twice for being
unable to work for medical reasons.  Saul Paugh v. Monroe Community
Hospital, 4 F.3d 134, 144-145 (2nd Cir. 1993)(period of disability
excluded from back pay).  Since the Federal Government is the
source of such payments, the collateral source rule doctrine does
not apply to it.  Such payments would be deducted from any back
pay award. (E.E.O.C. v. Enterprise Association Steam Fitters Local
No. 368, 542 F.2d 579, 591 (2nd cir. 1976); Olivas v. U.S.A., 506
F.2d 1158, 1163-64 (9th Cir. 1974); Orzel v. City of Wauwatosa Fire
Dept., 697 F.2d 743 (7th Cir. 1983); Naton v. Bank of California,
649 F.2d 691, 699-700 (9th Cir. 1981)

     Because back pay is an equitable remedy, it is intended to
place the plaintiff in the same economic place he would have been
in, but for the discrimination.  Plaintiff argues for compensation
equal to double recovery since he is collecting workers'
compensation benefits under the FECA for the same time he alleges

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 14

damages due to "defendant's conduct."

The cases relied upon by plaintiff are not relevant to the issue of the amount of back pay to which he is entitled. Plaintiff relies upon the collateral source rule for his argument. The law is well settled that FECA benefits are not subject to the collateral source rule. Federal Workers' compensation benefits are ultimately paid by the federal employer. See <u>McLean v. Runyon, United States Postmaster General</u>, 222 F.3d 1150, 1156 (9th Cir. 1000). FECA benefits are paid from the Employees' Compensation Fund ("ECF"), which is ultimately reimbursed entirely by the appropriate federal agency for each payment made for an injury to one of its employees. See <u>id</u>. (citing 5 USC Sec. 8147).

The collateral source rule is not at play here because the employer is the source of the benefits. Quite simply, FECA payments are not paid by a third party. They are paid by the defendant and therefore not a collateral source. See <u>EEOC v. Yellow Freight System, Inc.</u>, 2001 US Dist. Lexis 20240 at 3-4 (SDNY, 2001)(citing <u>Stratton v. Dep't for the Aging for the City of New York</u>, 922 F. Supp. 857, 866 (SDNY, 1996); <u>Williams v. Sec'y of the Navy</u>, 853 F. Supp. 66, 72 (EDNY 1994).

In addition, such double recovery would essentially be punitive in nature and prohibited against the Federal Government (**42 U.S.C. §1981a(b)(1)**) It would make Morales more than whole,

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 15

which is not the intent of Title VII. <u>Fong v. Lawn</u>, 851 F.2d 1559,
1561 (9th Cir. 1988); <u>Ford v. Lawn</u>, 866 F.2d 865, 876-77 (6th Cir.
1989) It would also be at odds with the clear **mandate** of **42 U.S.S.
2000e-5(g)**, which states that "interim earnings or amounts earnable
with reasonable diligence by the person...discriminated against
**shall** operate to reduce the back pay otherwise allowable."
(Emphasis added) <u>See Mclean v. Runyon</u>, 222 F.3d 1150, 1156 (9th
Cir. 2000)(because agency pays FECA benefits, collateral source
rule does not apply; offset to back pay award upheld); <u>Lussier v.
Runyon</u>, 50 F.3d 1103, 111-12 (1st Cir.)(court upheld reduction to
front pay award by amount paid in retirement benefits by OPM and
increased disability benefits by the VA), <u>cert.</u> <u>denied</u>, 516 U.S.
815 (1995); <u>Nichols v. Frank</u>, 42 F.3d 503, 514-15 (9th Cir.
1994)(court allowed offset to back pay of amount paid to plaintiff
as FECA benefits); <u>Miller v. Bolger</u>, 802 F.2d 660, 666 n.5 (3d Cir.
1986) (although reserving decision as to what back pay relief is
appropriate when plaintiff received FECA benefits, court observed
that there could not be a double recovery if relief under Title VII
and FECA overlapped); <u>Smith v. Office of Personnel Management</u>, 778
F.2d 258, 263 (5th Cir. 1985)(court upheld offset to back pay based
on plaintiff's receipt of disability benefits), <u>cert.</u> <u>denied</u>, 476
U.S. 1105 (1986); <u>Dillon v. Coles</u>, 746 F.2d 998 (3rd Cir. 1984).

    The plaintiff has placed great emphasis in the case of <u>Nichols</u>

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 16

v. Frank, 42 F.3d 503 (9th Cir. 1994).  However, his argument is
misplaced.  Plaintiff has misread Nichols.  Defendant is not
arguing, as the plaintiff, that an employee on OWCP status under
the Federal Employees Compensation Act (FECA) is not precluded from
filing a discrimination complaint for the same injury because
recovery under FECA does not bar a subsequent claim for
discrimination.  That is not the point.  The point is that based
on Nichols and other cases, the amounts recovered by a claimant
under FECA are to be deducted, as **interim earnings**, under 42 U.S.C.
2000e-5(g)(1), to reduce any back pay award.

All of plaintiff's references to Nichols pertain to the
court's discussion of the nonexclusivity of FECA benefits in a
Title VII case.  Plaintiff appears to incorrectly read that to mean
that he can recover his full FECA benefits plus the salary he would
have made if he were working.  For example, at trial, plaintiff's
economist never mentioned the applicability to FECA to his
calculations of bad pay.  In stark opposition, the defendant's
economist deducted the FECA benefits from his calculations.  This
is because the most plaintiff is entitled to is the difference
between the salary he would have earned and his FECA benefits.  See
Nichols v. Frank, 42 F.3d 503, 514-16 (9th Cir. 1994).  Because
plaintiff does not pay taxes on his FECA benefits, and the same are
not subject to mandatory deductions while he does on his salary,

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 17

the difference between the two calculations is very small, if any. The Postal Service's economist testified as to those calculations. (**See D.E. #419, ANTE**)

In summation, the Court should not award any back pay. If it does, it should deduct from back pay the amounts that Morales has received under the OWCP Program. The defendant moves the Court to adopt Dr. M. Bhatia's expert testimony that no amounts are owed to Morales. His study showed no meaningful difference between what plaintiff would have earned in the postal service had this case never happened and what he has earned, tax free with no deductions under the OWCP Program during the past eleven (11) years.

### **Front Pay Should Also Not Be Awarded**

As to plaintiff's front pay claim, it fares no better than his back pay claim.

"Front pay" is a monetary award that compensates victims of discrimination for lost employment[3] extending beyond the date of the remedial order. The award should be for the period of time necessary to make the plaintiff whole in keeping with the "make whole" purpose of Title VII. It is considered the equitable equivalent of reinstatement and it is awarded in two situations: first, when reinstatement cannot occur immediately because of the

---

[3] Here there is no lost employment or lost earnings.

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 18

temporary unavailability of a position or the undesirability of
"bumping" another employee; and second, when the remedy of
reinstatement is simply not appropriate, usually because of the
hostility that has developed between the parties.

Plaintiff's own argument begins with citation to cases which
hold that front pay may be awarded under title VII in cases where
reinstatement is unavailable. **See plaintiff's brief at p. 30**.
However, Plaintiff's request for front pay is inapplicable to this
case because he has never been discharged from his employment with
the Postal Service. His status is of a full-time employee
receiving FECA benefits. Under the injury compensation program it
is anticipated that he will, at some point, be able to physically
return to work in his position. Plaintiff's status as a workers
compensation beneficiary therefore precludes any consideration of
front pay.

Furthermore, even if plaintiff was discharged from the Postal
Service, he would not meet the requirements for front pay.
Although plaintiff argues otherwise, there is no evidence of such
an antagonistic workplace that he could not return. The testimony
was that the alleged discriminator, Enrique López, has been
promoted to another post office. Antonio López is still at Caparra
Heights, but was not a management employee at that time but rather
a coworker who alleged inappropriate conduct by plaintiff. Mayra

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 19

Irene likewise was a coworker and never alleged to have discriminated against plaintiff. After eleven (11) years out of that workplace, the actors have changed and there is no reason why plaintiff could not return. He is expected to return to his position whenever the Department of Labor so rules that he is no longer entitled to FECA benefits. If that day will ever come is unknown at this time.

Front pay, like back pay, is an equitable remedy. Like back pay, whether to make an award of front pay is within the court's discretion. The standard for front pay is a very stringent one, inasmuch as reinstatement "should be the norm" and "[f]ront pay is an exceptional award." Lussier v. Runyon, 50 F.3d 1103, 1108-1109 (1st Cir. 1995); Wildman v. Lerner Stores Corp., 771 F.2d 605, 616 (1st Cir. 1985); Kucia v. Southeast Arkansas community Action Corp., 284 F.3d 944, 949 (8th Cir. 2002)l See also Pollard v. E.I. duPont de Nemours & Co., 532 U.S. 843 (2001)(noting that front pay normally is appropriate where impracticality of reinstatement is not plaintiff's fault); James v. Sears, Roebuck & Co., 21 F.3d 989, 996 (10th cir. 1994)(front pay will not be awarded merely because plaintiff prefers that remedy where reinstatement is not impracticable); Smith v. World Ins. Co., 38 F.3d 1456, 1466 (8th Cir. 1994)(front pay is not available to a plaintiff who "unreasonably" refuses an offer or reinstatement). A victim of

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 20

discrimination must show either an actual or constructive discharge in order to receive the equitable remedy of reinstatement or front pay in lieu of reinstatement. <u>Hertzberg v. SRAM Corp.</u>, 261 F.3d 651, 659 (7th Cir. 2001), <u>cert.</u> <u>denied</u>, 534 U.S. 1130 (2002) Courts in its discretion will not award lengthy front pay awards because they are too speculative, <u>see</u>, e.g., <u>Peyton v. DiMario</u>, 287 F.3d 1121, 1128-29 (D.C. Cir. 2002); <u>Selgas v. American Airlines, Inc.</u>, 104 F.3d 9, 12 (1st Cir. 1997) and 14 N.6

Front pay awards are not intended to guarantee a plaintiff income until retirement. <u>See</u> <u>McKnight v. General Motors Corp.</u>, 973 F.2d 1366, 1371 (7th Cir. 1992); <u>cert.</u> <u>denied</u>, 507 U.S. 915 (1993)(damages are "not intended to insure a plaintiff's future financial success"); <u>Vance v. Southern Bell Tel. and Tel. Co.</u>, 672 F. Supp. 1408, 1415-16 (M.D. Fla. 1987), *reversed in part on other grounds*, 863 F.2d 1503 (11th Cir. 1989)(front pay is a short-term alternative; front pay award computed for plaintiff's remaining working life was unreasonable).

An award of front pay which is excessive under the circumstances could constitute punitive damages (which are not allowed against the federal government in these types of actions). <u>See</u> <u>Sowers v. Kemira, Inc.</u>, 701 F. Supp. 809 (S.D. Ga. 1988).

In summary, plaintiff has never ceased from being a postal employee. He cannot be subject to reinstatement. Front pay, thus,

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 21

is a non-issue. Morales can return to work whenever he is medically cured and found fit to return to duty by the OWCP Program, U.S. Dept. of Labor, acting under FECA. It would be an anomaly for this Court to order reinstatement and/or front pay, when the U.S. Dept. of Labor has yet to find Morales medically fit to return to duty. A reinstatement order or front pay remedy would clash with FECA, the Workers' Compensation Program, and the U.S. Department of Labor. It would be an awkward scenario. Simply put, it would make no sense whatsoever.

<u>CONCLUSION</u>

Plaintiff is not entitled to back or front pay. Morales is a postal employee on Workers' Compensation since 1997 and he has never been terminated from his employment. If back pay is to be awarded it should be reduced by the interim earnings paid to Morales under OWCP and reduced for the time he has been unable to work due to his medical condition. As a result thereof, Morales is not owed any back or front pay. The OWCP Program has paid benefits in lieu of Morales' wages, earnings and benefits during the eleven (11) years he has been its participant.

WHEREFORE, the defendant respectfully requests from this Honorable Court that plaintiff's petition for back and front pay remedies be denied.

I HEREBY CERTIFY that on this date, I electronically filed the

Angel David Morales-Vallellanes v. USPS
Civil No. 97-2459(GAG)
Page 22

foregoing with the Clerk of the Court using the CM/ECF system which

will send notification of such filing to the following: Miguel

Miranda, Esq.

RESPECTFULLY SUBMITTED in San Juan, Puerto Rico this 13th day

of March, 2008.

ROSA EMILIA RODRIGUEZ-VELEZ
United States Attorney


*S/Fidel A. Sevillano Del Río*
Fidel A. Sevillano Del Río
Assistant United States Attorney
U.S.D.C.-P.R. No. 117812
Torre Chardón, Suite 1201
350 Chardón Street
San Juan, Puerto Rico 00918
Telephone:  (787) 766-5656
Fax      :  (787)-766-6219