IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ANGEL DAVID MORALES VALLELLANES,**<br>**Plaintiff,**<br><br>v.<br><br>**JOHN POTTER, UNITED STATES POSTMASTER GENERAL, ET ALS.,**<br>**Defendants.** | CIVIL NO. 97-2459 (GAG)(CVR)<br><br>**DAMAGES BASED ON RETALIATION AND DISCRIMINATION; PROHIBITED PERSONNEL PRACTICES; UNFAIR LABOR PRACTICES; BREACH OF COLLECTIVE BARGAINING AGREEMENT** |

## PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION

**TO THE HONORABLE COURT:**

  **COMES NOW**, Plaintiff, Angel David Morales-Vallellanes, through the undersigned attorneys, very respectfully inform this Honorable Court:

### Clarification to the Exclusion of the Constructive Discharge and Emotional Distress Claims

  Once again plaintiff is obliged to clarify what has been defendant's trademark during their past eleven (11) years, to try to mislead this Honorable Court. The Court of Appeals decision is far more inclusive than the three (3) issues mentioned by defendant in it's response. As it was discussed previously to the commencement of the trial, the scope would be "those discrimination and retaliation allegations in his (Morales') amended complaint that were

1

previously the subject of a formal EEO complaint." In accordance to the above, this Honorable Court allowed evidence pertaining the discrimination and retaliation allegations included in the first and second EEO because both complaints reached the formal stage. Therefore, all facts regarding the discrimination and retaliation allegations in both EEO's formal complaints were admitted into evidence. Moreover, the Honorable Court had the opportunity to verify that the discrimination and retaliation allegations in both EEO's were far and beyond more than the three (3) issues summarized by the Court of Appeals in it's decision. As matter of fact, this Honorable Court verified that even the description of the three (3) issues were not accurate as to the allegations included in both EEO complaints.

It is also a matter of clarification that the OWCP benefits currently receiving by plaintiff is because of his mental condition as a result of the discrimination and retaliatory practices by defendant. Said OWCP benefits are not related in any event to plaintiff's right arm condition, which indeed was related to work, but has nothing to do with the OWCP's payments, which are related only to the plaintiff's mental condition due to defendant's discrimination and retaliatory practices. Defendant is trying to maliciously mislead the court regarding this issue. Defendant is well aware that Plaintiff is receiving O.W.C.P. payments due to his mental condition and not for his right arm condition as we will demonstrate in the following evidence presented at trial. On December 19, 2007, Defendant's expert witness Dr. Ramón Fortuño and also counsel Fidel Sevillano acknowledged that Plaintiff is receiving compensation due to his mental condition (see D.E. 428 Transcript for December 19, 2007 pages 64 and 65 from line 23 in page 64 thru line 20 on page 65 also see page 87 lines 9-14. Moreover, see D.E. 419 Transcript for December 20, 2007 page 229 lines 21-25. In addition, see D.E. 416 Transcript for December 12, 2007 Page 72 lines 17-24, Pages 93-95, Page 125 lines 22-25 thru Page 126 lines 1-13 also see Dr. Guillermo

2

Hoyos, Plaintiff Psychiatrist expert witness report, trial exhibit XC).

It is important to clarify that plaintiff has been a recipient of the OWCP payments since 1997 and not 1977. Also, again, said OWCP payments are because plaintiff mental condition caused by the US Postal Service discrimination and retaliation and not because his arm condition. Defendant has been very emphatic that OWCP payments to plaintiff are equivalent to *"66 2/3% of his salary, tax free, with no mandatory deductions as substituted wages and benefits for an aggravation of a pre-existing carpal tunnel and tennis elbow work –related condition dating back to 1992"*. Said assertion is wrong and misleading. For a start, the 66 2/3 % OWCP payment that plaintiff still receives today is based and stuck on his salary back in 1997. Plaintiff has not received any salary increase that his fellow workers have received during the past (11) years in the Collective Bargaining Agreements negotiations. In addition, Plaintiff can not make any contributions to the Thrift Saving Plan and the Social Security. As a matter of fact, the OWCP monthly payment ($2,100.00) that plaintiff is currently receiving is equivalent to almost 50% of the monthly salary that Morales would be receiving today with the salary increases negotiated in the Collective Bargaining Agreement (to be exact, as to February 16, 2008 $49,884.00 annually, see exhibit 1). Therefore, to assert that plaintiff today is receiving 66 2/3 % of his salary is misleading because said percent is applied to the 1997 plaintiff's salary.

On the other hand, said OWCP payment because it is tax free with no mandatory deductions does not provide plaintiff for fringe benefits as social security; thrift saving plan; life insurance; etc. All of the above benefits that plaintiff had before and should make him a "whole" now are absent in the last eleven (11) years. In other words, in spite of the OWCP payments that plaintiff receives, which as of today represents a 50% of what would be his actual salary, it is much less when we add to the equation the cost of living and the absence of the fringe benefits

3

he should enjoy and is entitled to.

Defendant is all wrong and misleading when he tries to connect plaintiff arm condition as the conditions of why OWCP is making the benefit payments. It is because the mental condition due to the discriminatory and retaliatory practices against him by defendant. Also, plaintiff has never been diagnosed a carpal tunnel syndrome nor tennis elbow.

## REPLY TO DEFENDANT'S POSITION
## THAT BACK PAY SHOULD NOT BE AWARDED

Defendant argues that the OWCP payments includes Plaintiff's fringe benefits. Said information is not true because according to the social security and thrift saving plan statements Plaintiff has not made any contributions. (See Exhibits 2 and 3) Therefore, in making Plaintiff a "whole" it is important to include the fringe benefits as a compensation for lost overtime, shift differentials, anticipated raises, as well as sick pay leave, annual leave, contributions by Plaintiff and the US Postal Service to the Thrift Saving Plan and compound interest accrued on the Thrift Saving Plan, etc.

Defendant alleges that Plaintiff particularly as to fringe benefits lacks the specificity required to sustain his claims as to be too general. To begin with Plaintiff during his testimony established that fringe benefits were lost. (See D.E. 416, Transcript of Jury Trial for December 12, 2007 at pages 60-63.)

Contrary to Defendant's argument that *"Plaintiff's petition for such benefits [fringe benefits] are too general to be considered sustainable under the law and as such should be denied…"* is the persuasive decision by the Tenth Circuit in <u>Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,</u> 39 F.3d 1482, 1493-94 (10th Cir. 1994) which held that an employee's

4

own testimony, based on information obtained by the employer is sufficient evidence to support an award of fringe benefits. In reversing the trial court's finding that the evidence lacked specifity, the court of appeals noted that, while back pay awards cannot be based on speculation, uncertainty should be resolved against the employer. The court noted that once an employee presents testimony about fringe benefits, the burden is on the employer to respond in kind. Therefore, it is incorrect Defendant's contention that Plaintiff "must still convince the trial court that he or she was harmed by the practice, since a loss is a prerequisite to being compensated by back pay." Defendant's argument also does not include a court decision in support of it, meanwhile the 10th Circuit decision in Metz, supra, allows an award based on Plaintiff testimony and shifts the burden of proof on the employer.

Plaintiff's testimony as well as his psychiatrist doctor Hoyos and his economic expert witness Vicente Feliciano testified about the economic loss because the discrimination and retaliatory practices by Defendant against Morales. Therefore, the existence and amount of loss and the causal link to the discrimination by defendant has been established at trial in order to award and compensate back pay. (See D.E. 416, Transcript of Jury Trial for December 12, 2007 at pages 1-63; D.E. 417, Transcript of Jury Trial for December 13, 2007 at pages 120-150; D.E. 418, Transcript of Jury Trial for December 14, 2007 at pages 97-119, 129-131)

Moreover, the testimony on trial by Radamés Sierra (D.E.417 Transcript for jury trial for December 13, 2007 pages 8-14), Raymond Ruiz (D.E. 417 Transcript for jury trial for December 13, 2007 pages 64-78); and Efigenio Rivera (D.E. 418 Transcript for jury trial for December 14, 2007 pages 27-39) rises no doubts about the discrimination and retaliation practices by Defendant against Plaintiff. Also, see the sworn statement by Samuel Cora (Exhibit LXXXIV) dated June 19th, 2000.

5

It is incorrect Defendant's argument that Plaintiff's participation in the OWCP program for the last eleven (11) years is completely independent from the decision remanded by the Court of Appeals to District Court. As the testimonies from Plaintiff expert witness doctor Guillermo Hoyos; and Defendants expert witness doctor Ramón Fortuño including their expert report all make reference to the discriminatory and retaliatory practices by Defendant for the past eleven (11) years. As a matter of fact, the evidence showed as it is referred in the expert witness report of doctor Hoyos the long list of psychiatrists that during the last eleven (11) years OWCP has referred Plaintiff for evaluation due to his mental condition. Also it is wrong to conclude that Plaintiff's earnings or wages were not affected as he began collecting from 1997 a 66 2/3% of his salary at that time with no increases and said percent would be 50% percent to the salary that Plaintiff otherwise would be receiving today. Also, it should be noted that he has not fringe benefits as vacations; sick leave; retirement plan (thrift savings plan); social security; etc. It has been discussed by expert economic witness Vicente Feliciano and doctor Bhatia. (See D.E. 418 Transcript of December 14, 2007 pages 129-131 also see exhibits LXXIV and CII, see D.E. 419 Transcript of December 20, 2007 pages 62-63).

Defendant's argument that any back pay award should be reduced because Plaintiff was not fit to work is wrong. As Plaintiff, according to Defendant, could not have worked for the postal service or anybody else during the last eleven (11) years as testified by doctor Hoyos. The testimony of doctor Hoyos, contrary to the assertion of Defendant, was that Plaintiff should work in a stress-free work environment as the music. (See D.E. 417, Jury Trial Proceedings for December 13, 2007, page 179). Moreover, the mental condition of Plaintiff was provoked by Defendant due to the discriminatory and retaliatory practices against him. Thus, it would be a contradiction that the reason for Plaintiff inability to work (mental condition provoked by

6

Defendant) be the same obstacle for not being entitled to back pay. It has been held that when the employer's misconduct caused the disability that prevented the individual for seeking alternative work, then the inability to work does not bar an award of back pay. *Lathem v. Dept. of Children & Youth Servs.*, 172 F.3d 786, 794 (11th Cir. 1999); also *Sowers v. Kemira, Inc.*, 701 F. Supp. 809, 826 (S.D. Ga. 1988)

In terms of the applicability of the Collateral Source Rule is not correct that it does not apply to the Federal Government as it is generally within the discretion of the court. See *Lussier v. Runyon*, 50 F. 3d 1103, 1105 (1st Cir. 1995); *McLean v. Runyon*, 222 F.3d 1150, 1155-56 (9th Cir. 2000). Also, when it is regarding the OWCP payments it should not be deducted from an award of back pay because it would negate one of the purposes of the law, i.e., to deter an employer from unlawfully discharging an employee. *Moysis v. DTGDatanet,* 278 F.3d 819 (8th Cir. 2002). It is incorrect that Plaintiff's economist never mentioned the OWCP payments, as he did testify that the same are not be deducted from back pay (D.E. 417, Transcript of Jury Trial December 14, 2007 pages 114-116; 125)

## REPLY TO THE ARGUMENT THAT PLAINTIFF PRESENTED NO EVIDENCE REGARDING POSTAL INSPECTOR POSITION

Defendant argues regarding Plaintiff Postal Inspector position that: *"Plaintiff request is speculative, at best particularly as to his promotion to Postal Inspector. There was no evidence as to the qualifications standards set for such position; if Plaintiff met the same or even applied for it or whether it was posted for filing"* Plaintiff tried on trial to present evidence and documentation pertaining his application and affirmative actions for the Postal Inspector's position, however this Honorable Court did not allow Plaintiff to present said evidence. On the

7

trial, it was presented ample testimonial evidence regarding Plaintiff real opportunity to get a Postal Inspector's position (D.E. 421 Transcript for December 11, 2007 pages 58 line 18 thru page 60 line 17, D.E. 416 Transcript for December 12, 2007 pages 150 line 4 thru page 151 line 24, D.E. 418 Transcript for December 14, 2007 pages 101 line 16 thru page 102 line 12.

The record at trial according to the testimony of Plaintiff and witness Pedro Reyes shows that the appointment of plaintiff as a postal inspector was imminent. At the time of discrimination plaintiff already passed the test for a postal inspector position in which only two (2) candidates (one of them plaintiff) did it. Plaintiff already went for three (3) days to Washington, D.C. at USPS headquarters at L'enfant Plaza for an assessment. Plaintiff passed a background check and was waiting for his appointment to go training at the FBI Academy at Quantico, Virginia. Needless to say that the appointment and/or promotion of plaintiff as a postal inspector was much more "than a mere speculation that the employee would have been promoted". It is evident not only that plaintiff was very interested to pursue a career within the postal service but also a promotion as postal inspector.

Plaintiff was not finally appointed and/or promoted as part of the discrimination and retaliation practices he was subject of. That it so, because otherwise he would likely be appointed and/or promoted to postal inspector. In view of the above an award of back pay in favor of plaintiff should include earnings as an appointed and/or a promoted postal inspector.

## REPLY TO THE ARGUMENT THAT
## FRONT PAY SHOULD ALSO NOT BE AWARDED

Defendant alleges that there is no evidence of such an antagonistic workplace that he could not return. That is not the truth, moreover it is a simplistic way to argue. For instance, the

8

evidence showed that Defendant rather than reprimand all discriminators for their actions they are officially promoted as an awarded prize. Such is the case of Mayra Irene who is currently a supervisor at the Bayamón Postal Office and Enrique López who currently is the Postmaster at Gurabo. Also, contrary to the assertion of Defendant, coworker Antonio López is at Caparra Heights Station occupying the position of "acting supervisor" which is a managerial position. In addition, coworker José Padró is still at Caparra Heights Station and he signed several letters against Plaintiff.

The Postal Service can make all the managerial moves it deems necessary, therefore no one can preclude Defendant to award Mayra Irene as Manager or as a supervisor at Caparra or any other station Plaintiff may work. As no one can impede Defendant to appoint Antonio López as Manager or supervisor in Caparra Station or any other station that Morales may work. As a matter of fact, after this Jury Trial Defendant would have all the right motives to continue its hostile work environment and retaliation against Plaintiff if he return to his position.

The history of discrimination and retaliatory practices against Plaintiff is long and known as the evidence showed. When Plaintiff sent to the Postal Inspectors copy of the sworn statement of witness Samuel Cora (See Exhibit LXXXIV) that narrates the entire criminal acts committed against Plaintiff by Manager Enrique López and other workers, Plaintiff requested an investigation but nothing was done. With this inaction, the Postal Service can not guaranteed Plaintiff personal safety as it violate its own policy of zero tolerance regarding violence in the workplace, on the contrary with its inaction the Postal Service promote violence in the workplace against Plaintiff. (See D.E. 416 Transcript of Jury Trial on December 12, 2007, pages 83-84). In addition, Plaintiff Psychiatric expert witness Dr. Hoyos and five Psychiatrist from O.W.C.P. have coincided that Plaintiff should not return to the Postal Service due to the emotional

9

conditions caused by the retaliation and discrimination.

Defendant did not make any reference to the expert witness report and/or testimony of doctor Ramón Fortuño, therefore Plaintiff moves this Honorable Court to consider only the testimony and the report of doctor Guillermo Hoyos in reference to the back pay and front pay awards.

**WHEREFORE**, it is respectfully requested from this Honorable Court to award Plaintiff back pay and front pay, which is $834,462.00 plus interest (back pay) and $521,705.00 (front pay) according to economic expert Vicente Feliciano.

**RESPECTFULLY SUBMITTED.**

**I HEREBY CERTIFY** that on April 11, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: **Fidel A. Sevillano-Del Río, Esq.**, Assistant U.S. Attorney, Federico Degetau Federal Build., 150 Carlos Chardón Av., Hato Rey, Puerto Rico 00918.

> S/MIGUEL E. MIRANDA-GUTIERREZ
> **MIGUEL E. MIRANDA-GUTIERREZ, ESQ.**
> ATTORNEY FOR PLAINTIFF
> PO Box 192271
> San Juan, Puerto Rico 00919-2271
> TEL: (787) 282-0022
> FAX: (787) 753-7655