IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANGEL DAVID MORALES VALLELLANES,<br>Plaintiff,<br><br>v.<br><br>JOHN POTTER, UNITED STATES POSTMASTER GENERAL, ET ALS.,<br>Defendants. | CIVIL NO. 97-2459 (GAG)(CVR)<br><br>DAMAGES BASED ON RETALIATION AND DISCRIMINATION; PROHIBITED PERSONNEL PRACTICES; UNFAIR LABOR PRACTICES; BREACH OF COLLECTIVE BARGAINING AGREEMENT |

**MOTION TO PARTIALLY SET ASIDE OPINION AND ORDER**

**TO THE HONORABLE COURT:**

**COMES NOW**, Plaintiff, Angel David Morales-Vallellanes, through the undersigned attorneys, very respectfully submits its Motion to partially set aside Opinion and Order (D.E. 430 and 431):

## Calculations on Back Pay

It is **mathematically impossible** the figures given on back pay by this Honorable Court. The alleged amount of $39,389.00 in OWCP annual payments is the 75% of 52,518.00 and not 66 2/3% as this Honorable Court asserted in its Opinion and Order (D.E. 430 pages 3 and 6). Defendants' expert witness Dr. Bhatia acknowledged at trial that he made a mistake because he *"was under the impression that Morales was a married man"* and therefore wrongfully calculated OWCP benefits in 75% (Joint Exhibit XXIII pages 9 and 14); Dr. Bhatia

1

acknowledged that his report would require an adjustment because of said wrong calculation (D.E. 419 pages 72 line 23 thru page 73 line 11). Moreover, the total figure adopted by this Honorable Court in its Opinion and Order regarding the payments received by Morales from OWCP during 11 years is (according to Dr. Bhatia) $273,665.21 (D.E. 430 page 6). If this amount ($273,665.21) is divided by 11 years the total is $24,878.65 per year and not 39,389.00 as this Honorable Court asserted. The above calculations ratify the **impossibility** on the numbers reached by Dr. Bathia as adopted by this Honorable Court. Dr. Bhatia also accepted that:

1) The only fringe benefit that ought to be considered is the health insurance (see Joint Exhibit XXIII pages 5, 10 and 16). Dr. Bhatia did not consider the Thrift Savings Plan nor the Social Security that would impact Plaintiff pension when he asks for Social Security benefits.

2) He does not know if Plaintiff is healthy or unhealthy and has not seen any certification from Morales' physician notwithstanding that Dr. Bhatia included in his report that Morales is healthy and can return to his job according to Plaintiff physician (Joint Exhibit XXIII page 15, also D.E. 419 page 48, 50).

3) He does not know if Plaintiff makes contributions to the Social Security (D.E.419 page 54).

4) He does not know if Plaintiff was making any contributions to a pension plan (D.E. 419 page 55).

5) He does not know if Plaintiff made any contribution to a life insurance (D.E.419 pages 55 and 56).

6) He does not know if Plaintiff was making any contributions to his medical insurance (D.E. 419 page 56).

7) He does not know if Plaintiff has any Social Security contribution as a deduction from the OWCP payment (D.E. 419 page 57).

8) He does not know if Plaintiff is making any contribution to his pension plan since Plaintiff is receiving OWCP payments (D.E. 419 pages 57 and 58).

9) He does not know if Plaintiff is making any contribution to his life insurance since Plaintiff is receiving OWCP payments (D.E. 419 page 58).

10) He does not know if Plaintiff is making any contribution to his medical insurance as a deduction from Plaintiff OWCP payments (D.E. 419 page 58).

11) He does not know if Plaintiff OWCP payments are subject to any deductions (D.E. 419 page 62).

12) He has not seen any stub payment that Plaintiff receives from OWCP (D.E. 419 page 63 line 22).

13) He wrongfully calculated that OWCP payments are 75% of Morales' gross salary (Joint Exhibit XXIII pages 9 and 14) and not the 66 2/3% frozen to Morales 1997 salary.

As this Honorable Court can verify, Defendants economic expert witness credibility is severely affected however and amazingly this Honorable Court took Dr. Bathia's numbers for good. This Honorable Court did not credit Plaintiff economic expert witness Vicente Feliciano just because he *"did not consider benefits received by Morales Vallellanes under OWCP"* (see D.E. 430 page 6 Opinion and Order). The reason given by Plaintiff expert witness Feliciano for not to offset OWCP benefits was that it is a legal issue to be resolved by the court (D.E. 418 page 115 line 1,2 and page 119 lines 4-6). This is exactly the same position adopted by this Honorable Court in his Opinion and Order (D.E. 430 pages 4-6). However and contradictorily this

Honorable Court did not credit Plaintiff expert witness notwithstanding that Feliciano's assumed the same position as this Honorable Court regarding whether or not to offset OWCP benefits is at the discretion of the court. Contrary to Dr. Bhatia, Plaintiff economic expert witness included Plaintiff Social Security and the Thrift Savings Plan as fringe benefits since those benefits are not included in the OWCP compensation. Supposing that Plaintiff decided to return to the Postal Service tomorrow, he would have lost 11 years of Social Security and Thrift Savings Plan contributions since the Postal Service nor OWCP has not contributed to his retirement during all this time (11 years).

It is well explained in the Federal Employees Compensation Act (F.E.C.A.) that if disability is total, the employee will receive 66 2/3% of his **basic salary at the time of disability** (without fringe benefits or any increment based on any salary increase the worker would receive afterward) 5USC8105 and 8114. The fact is that Morales is receiving 66 2/3% **frozen** on his **basic** salary of 1997 without C.O.L.A. and is not allowed to make any contributions to Social Security, Thrift Savings Plan etc. It is not true according to F.E.C.A. that fringe benefits are included in the payment of OWCP. To resolve this issue once and for all, Plaintiff is submitting a pay stub from OWCP and also the acceptance letter from OWCP for Plaintiff mental condition (Exhibit 1 and 2) to prove the real amount that Plaintiff is receiving and also to prove that Plaintiff is receiving compensation for his mental condition developed by discrimination and retaliation and not by his right arm condition as Defendant alleged as a new issue after the trial in his Response in Opposition D.E. 422. This Honorable Court can verify Exhibit 1 item 1 and Exhibit 2 item 1 and compare the case number in the pay stub and the case number in the acceptance letter by OWCP regarding Plaintiff mental condition and notice that it is the same case number. Plaintiff explained this during the trial (see D.E. 416 pages 93 and 94 also on

4

page 125 line 22 thru page 126 line 13). There was no evidence during the trial that Plaintiff OWCP compensation was related to his right arm condition. On the contrary, there was plenty evidence during the trial that Plaintiff is receiving compensation for his mental condition although Plaintiff acknowledged during the trial that his right arm condition was aggravated due to discrimination but not compensated for that (D.E. 416 pages 94, 95, 125 line 22 thru 126 line 13). On December 19, 2007, Defendant's expert witness Dr. Ramón Fortuño and also counsel Sevillano acknowledged that Plaintiff is receiving compensation due to his mental condition because of discrimination and retaliation (see D.E. 428 Transcript for December 19, 2007 pages 64 and 65 from line 23 in page 64 thru line 20 on page 65 also see page 87 lines 9-14). Also see D.E. 416 Transcript for December 12, 2007 Page 72 lines 17-24, Pages 93-95, Page 125 lines 22-25 thru Page 126 lines 1-13 also see Dr Guillermo Hoyos, Plaintiff Psychiatrist expert witness report at trial exhibit XC.

As this Honorable Court can verify in the pay stub from OWCP (Exhibit 1), Plaintiff has deductions for the medical insurance but not for Social Security or Thrift Savings Plan which means that Plaintiff retirement benefit has been and is being severely affected since Plaintiff is not contributing his 7.65% for Social Security neither the US Postal Service. Therefore Plaintiff has lost credits for Social Security retirement and also has lost the opportunity to contribute the 10% of his salary to the Thrift Savings Plan as Plaintiff used to do before discrimination (see Joint Exhibit 1). Also is lost the 5% matching contribution that the US Postal Service was obliged to contribute in his Thrift Saving Plan plus interest. In exhibit 1 item 2, it is shown that Plaintiff receives $2,227.02 as OWCP compensation each 28 days which divided by 365 days (one year) means that Plaintiff receives 13 payments during the year which is equal to $28,951.26 and not $39,389.00 as this Honorable Court asserted in his Opinion and Order (D.E.

430 page 6). Moreover, this amount that Plaintiff receives ($28,951.26) is the 55% and not 66 2/3% of $52,518.00 which is the salary that this Honorable Court adopted. This means that Plaintiff compensation is based and frozen on the 66 2/3% of his basic salary of 1997 and now becomes the 55% of the salary Plaintiff would be receiving today absent discrimination.

### Front Pay vs. Reinstatement

The following are just some of the facts for hostile work environment presented at trial:

1) On July 6, 1996 Manager Enrique López and two coworkers punctured one tire of Plaintiff's car. Plaintiff reported this incident to US Postal Service General Manager John Malavé and the Postal Inspection Service to no avail (see Samuel Cora Sworn Statement Plaintiff Exhibit LXXXIV also D.E. 416 pages 8, 9, 14, 15, 80, 81-84, 128-129).

2) On July 10, 1996 again Manager Enrique López and two coworkers punctured two tires of Plaintiff's car. Again, Plaintiff reported said incident to US Postal Service General Manager John Malavé and the Postal Inspection Service to no avail (see Samuel Cora Sworn Statement Plaintiff Exhibit LXXXIV also D.E. 416 pages 8, 9, 14, 15, 80. 81-84, 128-129).

3) On January 4, 1997 Manager Enrique López and two coworkers poured sugar in the fuel tank of Plaintiff's car. Again, Plaintiff reported this incident to the US Postal Service General Manager John Malavé and the Postal Inspection Service to no avail (see Samuel Cora sworn statement Plaintiff Exhibit LXXXIV also D.E. 416 page 57, 128-129).

4) Plaintiff private mail was unlawfully opened and inspected by Manager

6

       Enrique López and acting supervisor Antonio López. Again, Plaintiff reported this federal offense to the US Postal Service General Manager John Malavé and the Postal Inspection Service to no avail (see Samuel Cora sworn statement Plaintiff Exhibit LXXXIV also D.E. 416 128-129).

5) Manager Enrique López wanted to know where Plaintiff was living (Plaintiff exhibit LXXXIV).

6) Manager Enrique López moved Plaintiff desk to watch him constantly also Manager López spoke in a negative way about Morales in order to influence other supervisors (Plaintiff exhibit LXXXIV).

7) Plaintiff was falsely accused as a homosexual and a safety hazard by his Manager Enrique López, acting supervisor Antonio López (D.E. 416 page 51 also D.E. 419 pages 191, 192, 95-97).

8) On August 24, 1996, Plaintiff manager Enrique López threatened Plaintiff and a Plaintiff witness because Plaintiff had filed two E.E.O. complaints against manager Enrique López (D.E. 417 pages 66-69).

9) Plaintiff witness Raymond Ruiz testified that Plaintiff *"was always punished for the types of activities that everybody else used to do"* (D.E. 417 page 74 line 10), *"Angel David Morales was relieved of his usual duties in his job and this duties were given to others"* *"at the same time Enrique López used to say that he had not work for him"* (D.E. 417 page 76 lines 12-19), *"the truth is that Angel David Morales was being persecuted due to some complaints and…well complaints related to Mr. Enrique López"* (D.E. 417 page 77 line 23 thru page 78 line 5).

10) Plaintiff witness Alberto Ortíz testified that manager Enrique López was taking the position that Mr. Angel Morales was giving him too many problems with the OSHA

and EEO cases (D.E. 417 page 93 line 16).

11) Plaintiff witness Radamés Sierra testified that a position that Morales was interested was changed in reprisal against Plaintiff (D.E. 417 pages 11-13).

12) Plaintiff witness Efigenio Rivera (a former OSHA inspector) testified that the inspection he made on December 1996 in Caparra Heights Station was the most painful and controversial in his life due to the hostile and bullying attitude of Plaintiff Manager Enrique López. Rivera testified that manager Enrique López just wanted to know who was the one that filed an OSHA complaint because López was going to take drastic measures against the employee who filed it (D.E. 418 pages 27-30).

13) During the trial it was presented that Plaintiff received suspensions, expulsions, Letter of Warnings, dead threats in retaliation for Plaintiff EEO complaints and the list goes on and on.

14) The US Postal Service did not investigated Plaintiff allegations notwithstanding that Plaintiff submitted evidence and sworn statement that criminal and federal offenses were committed; violating in this way its own policy of zero tolerance to violence in the workplace (D.E. 416 pages 128-129). On the contrary, the US Postal Service promoted Manager Enrique López, Mayra Irene and Antonio López to management positions.

15) By the time of all discrimination against Plaintiff (11 years ago), Mayra Irene, Antonio López and were not in supervisory or management positions however they did a lot of harm to Plaintiff; now that almost all of them are in supervisory positions, it is unimaginable the harm they can do against Plaintiff specially now that they were all promoted and not disciplined.

16) The US Postal Service Equal Employment Opportunity office did not

> investigate any of Plaintiff allegations nor Plaintiff witnesses (D.E. 418 page 77-78).

17) The US Postal Inspection Service did not investigate the federal and criminal offenses against Plaintiff notwithstanding that Plaintiff reported and submitted evidence to them (D.E. 416, pages 128-129).

18) Plaintiff is receiving OWCP compensation for psychological injuries suffered as a result of discrimination and retaliation and has visited about five OWCP psychiatrists in order to keep receiving compensation besides Plaintiffs own psychiatrist Dr. Guillermo Hoyos. All of them have reached the same conclusion: that Plaintiff cannot return to the US Postal Service due to his mental condition.

According to all of the above, Plaintiff has proven that the Postal Service its an extremely hostile work environment not to mention its temerity to violate the law with impunity. Lets suppose that Plaintiff return tomorrow to the Postal Service; who is going to protect Plaintiff in case that he receives again discrimination actions or criminal acts against him? It would be the Postal Inspection service? The USPS EEO Office? The US Postal Service? None of them protected Plaintiff and have proven historically that cannot guarantee Plaintiff personal safety. On the contrary, they have historically promoted discrimination against Plaintiff. Moreover the Postal Service can place Plaintiff under any of the above-mentioned supervisors with the worst consequences to Plaintiff since they are all now with more authority and power to discriminate against Plaintiff.

This Honorable Court in its opinion and order asserted that *"Front pay may be awarded to a Title VII plaintiff who cannot work because of "psychological injuries suffered… as a result*

*of the discrimination" in suit, or "[i]n cases in which reinstatement is not viable because of continuing hostility between the plaintiff and the employer or its workers." Pollard v. E.I. du Pont de Nemours & Co.,532 US 843, 846, 121 S.Ct 1946 (2001)"* Plaintiff case comply with the above decision in its entirety since Plaintiff is receiving OWCP compensation for psychological injuries suffered as a result of discrimination and retaliation.

### To Offset or not to OffsetDisability Payments

The US Postal Service:

1) Has a statutory cap of $300,000 on compensatory damages in title VII cases contrary to private employers.

2) Cannot receive punitive damages on title VII cases contrary to private sector.

3) Did not contribute to Plaintiff Social Security during 11 years.

4) Did not contribute to Plaintiff retirement plan 401k known as Thrift Savings Plan during 11 years.

5) Did not pay cost of living allowance (C.O.L.A.) to Plaintiff during the last 11 years.

6) Did not pay annual leave and sick leave to Plaintiff during the last 11 years.

7) Has not pay Plaintiff for the salary increases settled in the Collective Bargaining Agreement that other postal employees has received during the last 11 years.

8) Did not pay for Plaintiff life insurance during the last 11 years.

9) Did not have to pay for the overtime hours Plaintiff used to do.

As this Honorable Court can verify, it is already very inexpensive for the Postal Service to discriminate. To offset Plaintiff mental disability payments, is a mockery to the title VII act, also a reward and an invitation for the Postal Service to keep discriminating.

It has been held that:

"Some courts have held that worker's compensation benefits may not be deducted from an award of back pay because it would negate one of the purposes of the law, i.e., to deter an employer from unlawfully discharging an employee. *Moysis v. DTG Datanet*, 278 F.3d 819 (8th Cir. 2002).
We also reject Datanet's argument that the district court erred in failing to deduct worker's compensation benefits paid by an insurance company from Moysis' back pay award. In *Gaworskiv. ITT Comm. Fin.Corp.*, 17 F.3d 1104, 1112 (8th Cir.), *cert. denied*, 513 U.S. 946, 130 L. Ed. 2d310, 115 S. Ct. 355 (1994), this court stated that "'an employer can not set up in mitigation of damages in a tort action by an injured employee indemnity from a collateral source, such as insurance or compensation or benefits under a Workmen's Compensation Act, even where the defendant has contributed to the fund.'" (quoting*Chicago Great W. Ry. v. Peeler*, 140 F.2d 865, 868(8th Cir. 1944)). We then applied the "collateral source rule" and refused to deduct unemployment benefits from a back pay award in an age discrimination action, noting the rule "gains in significance in the context of employment discrimination claims." *Id.* We explained this is so because back pay awards not only serve to make a victim whole, they also "deter future discrimination." 17 F.3d at 1113. If the unemployment benefits were deducted, this court reasoned that it would be **"less costly for the employer to wrongfully terminate a protected employee." *Id.* Put another way, deduction of the benefits would constitute "a windfall to the employer who committed the illegal discrimination."***Id.* The same reasoning applies in the circumstances of this case. *SeeThurman v. Yellow Freight Sys. Inc.*, 90 F.3d 1160, 1171 (6th Cir. 1996) **("Like unemployment benefits, worker's compensation benefits are a collateral source that should not be deducted from back pay.")**, *amended on other grounds*, 97 F.3d 833 (6th Cir. 1996)."

### Allegations regarding Postal Inspection Promotion

It is a contradiction that this Honorable Court asserted in its Opinion and Order that Plaintiff did not presented credible evidence regarding Plaintiff promotion as a US Postal Inspector (Opinion and Order D.E. 430 page 9) when it was this same Honorable Court who prevented Plaintiff to present it.

Each time Plaintiff tried to raise this issue during the trial he found a strong opposition from this Honorable Court (see D.E. 418 pages 110-111 also trial recording for December 14, 2007 at 2:37:23pm and 2:56:25pm, D.E. 421 pages 58, 59 and D.E. 416 pages 150 and 151). Plaintiff was willing to present at trial as Plaintiff exhibit 75, all his documentary and

11

factual evidence; his application, Postal Inspector test results, his travel to Washington paid by Postal Inspection service for an assessment, his background check made by Postal Inspection Service etc. Plaintiff did not submit it upon the strong opposition by this Honorable Court. However, Plaintiff indeed presented vast testimonial evidence regarding his affirmative actions to get a promotion as a Postal Inspector and was confirmed in the testimony of his former supervisor and manager Pedro Reyes (D.E. 416 page 150-151) also in testimony of Plaintiff economist Vicente Feliciano (D.E. 418 page 101 line 16 thru page 102 line 9 also page 110 line 17) and Plaintiff own testimony (D.E. 421 pages 49 line 17, also pages 58-60).

**WHEREFORE,** it is respectfully requested from this Honorable court to partially set aside Opinion and Order D.E. 430 and 431 and to award Plaintiff back pay and front pay according with Plaintiff expert economic report; $834,462.00 plus interest for back pay and $521,705.00 for front pay.

**RESPECTFULLY SUBMITTED.**

**I HEREBY CERTIFY** that on April 28, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: **Fidel A. Sevillano-Del Río, Esq.**, Assistant U.S. Attorney, Federico Degetau Federal Build., 150 Carlos Chardón Av., Hato Rey, Puerto Rico 00918.

S/MIGUEL E. MIRANDA-GUTIERREZ
**MIGUEL E. MIRANDA-GUTIERREZ, ESQ.**
ATTORNEY FOR PLAINTIFF
PO Box 192271
San Juan, Puerto Rico 00919-2271
TEL: (787) 282-0022
FAX: (787) 753-7655