IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANGEL DAVID MORALES-VALLELLANES

    Plaintiff

          v.

UNITES STATES POSTAL SERVICE

    Defendant

CIVIL NO. 97-2459(CVR)

### DEFENDANT'S MOTION UNDER F.R.C.P. 50 and 59(a) and (e)

TO THE HONORABLE COURT:

COMES NOW the United States Postal Service (hereinafter "Postal Service" or "Agency" or "Defendant") to submit arguments in support of his renewed Motion for Judgment as a matter of law, under Federal Rule of Civil Procedure 50. In addition, defendant moves, under Federal Rule of Civil Procedure 59(a) and 59(e), to set aside the jury verdict or substantially reduce it.

### I. INTRODUCTION

Federal Rule 50 (a) (1) states that during a trial by jury if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against the party and may grant a motion for judgment as a matter of law against that party."

Defendant made a Rule 50(a) (1) motion at end of plaintiff's case and, again, before the case went to the jury and this Court denied that motion. Consequently, defendant is now renewing the motion pursuant to Rule 50(b). Defendant asks for the following

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 2

relief from this Court: 1) dismissal of the case. Plaintiff did not prove his gender discrimination nor retaliation claims. He did not prove adverse action nor the necessary causal link between the prior protected activity and the adverse action, as it relates to the retaliation claim; 2) either, a directed entry of judgment for defendant as a matter of law or, in the alternative, an order for a new trial or remittitur under Rule 59, for among others, the jury verdict is against the weight of the evidence, the verdict is excessive or inadequate ("remittitur") and the jury did not follow or disregarded the Court's jury instructions.

Based on the evidence, no reasonable jury could have found that defendant discriminated against plaintiff on the basis of sex or gender. In addition, no reasonable jury could have concluded that plaintiff was a victim of retaliation.

On December 21, 2007, the jury returned a verdict for plaintiff in the amount of $500,000.00 in compensatory damages, later reduced to $300,000.00 pursuant to 42 U.S.C. 1981a. Since the Jury Verdict referred to both, the gender discrimination and retaliation claims, if this Court were to find, either, that no reasonable jury could have found that plaintiff was discriminated on the basis of sex or gender or that no reasonable jury could have found that plaintiff was a victim of retaliation, then this Court must order a new trial. Since Questions 1 and 2 of the Jury Verdict

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 3

Form referred to, both, sex or gender discrimination <u>and</u> retaliation, if either claim were overturned by this Court, then there would be no way of determining the amount the jury would have awarded on the surviving legally valid claim, or even if the jury would have awarded any amount.

If this Court were to find that no reasonable jury could have found for plaintiff's sex or gender discrimination and that he was a victim of retaliation, then defendant respectfully submits that this Court must enter a directed verdict in favor of defendant on both claims and dismiss plaintiff's complaint with prejudice.

Beginning December 10, 2007, this Court presided over the jury trial. Plaintiff alleged that defendant discriminated on the basis of sex and retaliated against him for having previously filed for a protected activity, in violation of Title VII Civil Rights Act of1964 as amended (hereinafter "The Act"). At the close of plaintiff's case-in-chief, defendant moved for judgment as a matter of law pursuant to F.R.C.P. 50.

Defendant argued that there was no legally sufficient evidentiary basis for a reasonable jury to find discrimination motivated by sex or gender, nor that the defendant retaliated against plaintiff for having engaged in a prior protected activity at the administrative level; that plaintiff's OSHA complaints were not protected activity under the "Act"; that plaintiff never ceased

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 4

to be a postal employee while under the Office of Worksmen's
Compensation Program (OWCP), U.S. Department of Labor from 1997 to
present; that plaintiff did not suffer any adverse action; that
hisretaliation complaint lacked the required adverse action and
causation between the protected activity and the adverse action to
be actionable in law and that plaintiff's entry in 1997 into the
Office of Worksmen's Compensation Program ("OWCP"), under **5 USC**
§**8101, *et seq.*,** U.S. Department of Labor, was as a result of a
traumatic work-related injury under that program, unrelated to
plaintiff's allegations in the Complaint and of which the defendant
had no control over the decision made by the U.S. Department of
Labor to accept plaintiff into its injury compensation program.

The FECA, **5 U.S.C. § 8101 *et seq.* *is*** the workers' compensation
statute for federal employees. Enacted in 1916, the Federal
Employees Compensation Act ("FECA") establishes a comprehensive and
exclusive compensation scheme under which federal employees or
their survivors receive benefits, regardless of fault, for
employment-related injuries or deaths. The FECA provides that the
United States "shall pay compensation for disability or death of an
employee resulting from personal injury sustained while in the
performance of his duty." **5 U.S.C. §8102(a)**. A wide range of
benefits are provided for work-related injuries covered by FECA,
including payment of total or partial wage loss compensation,

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 5

schedule awards for permanent loss of loss of use of specified members of the body, related medical costs and vocational rehabilitation. **5 U.S.C. §§ 8103-8113.**

Central to the FECA statutory scheme is the role of the Secretary of Labor, (not the defendant), who has the authority to administer the payment of benefits, adjudicate claims, decide all questions arising under the FECA, and promulgate the regulations necessary for the administration and enforcement of the Act. **5 U.S.C. §§ 8145, 8124(a), 8149.** The Secretary has delegated this authority to the Director of the Office of Workmen's Compensation Programs (OWCP), who is responsible for the administration and implementation of the FECA. **20 C.F.R. §10.1.** In making claims determinations under the FECA statutory scheme, the OWCP may perform "such investigation as [the OWCP} deems necessary" prior to making an award for or against payment of compensation. **5 U.S.C. §8124(a).** Compensation includes, among other things, payments for medical treatment and wage-loss compensation. The OWCP accordingly undertakes factual and medical development in adjudicating a claim for FECA benefits. The employer, in this case the defendant, is not a party to the FECA claims process **(20 C.F.R. 10.700**), but assists in the development of the claim. The employer is responsible for submitting to OWCP all relevant and probative factual and medical evidence in its possession, or which it may acquire through

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 6

investigation or other means. Such evidence may be submitted at any time. **See 20 C.F.R. §10.118.**

The Court denied defendant's motion and, ultimately, the case was submitted to the jury, but, not before defendant renewed its Rule 50 Motion for Judgment as a Matter of Law.

The claims submitted to the jury were, whether plaintiff was subjected to sex or gender discrimination and retaliation. After more or less two weeks of jury trial and two hours of deliberations, the jury awarded the plaintiff compensatory damages in the amount of $500,000.00, later reduced to the legal cap of $300,000.00 pursuant to 42 U.S.C. 1981a of the Civil Rights Act of 1964, as amended in 1991.

Plaintiff did not prove his case by a preponderance of the evidence; meaning that there was no evidence from which to conclude that plaintiff was discriminated on the basis of sex or gender. As to the retaliation claim, there was no evidence from which to conclude that 1) plaintiff engaged in a prior protected activity; 2) suffered an actionable adverse action <u>and</u> 3) a causal connection between the prior protected activity and the adverse action existed.

As to protected activity, the basis of Title VII retaliation requires that a complainant has engaged in prior EEO activity. **<u>See</u> 29 C.F.R. §1614.101(b).** In this case, Plaintiff is alleging that

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 7

Job Bid #2541417 was posted with Thursday/Sunday rest days rather than Saturday/Sunday rest days in retaliation for plaintiff's OSHA complaints. Retaliation for making safety complaints to the Department of Labor, are clearly covered by a separate Congressionally mandated statutory framework, but not under the Civil Rights Act of 1964, as amended in 1991. Specifically, **29 USCS § 660** states,

( c) Discharge or discrimination against employee for exercise of rights under **29 USCS 651** *et seq.*; prohibition procedure for relief.

> (1)  No  person  shall  discharge  or  in  any  manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act or has  testified  or  is  about  to  testify  in  any  such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this Act.

> (2) **Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary of Labor alleging such discrimination.** Upon receipt of such complaint, the Secretary shall cause such investigation to be made, as he deems appropriate. If upon  such  investigation  to  be  made,  as  he  deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been  violated,  he  shall  bring  an  action  in  any appropriate United States district court against such person. In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 8

(3) Within 90 days of the receipt of a complaint filed under this subsection the Secretary shall notify the complainant of his determination under paragraph (2) of this subsection.

There is no evidence in the record that the plaintiff availed himself of the foregoing. He did not file any complaint with the U.S. Department of Labor and has therefore, waived any right to do so.

The Secretary of Labor is exclusively vested with the authority to file complaints in Federal District Court. <u>See</u> 29 USCS §660(2). There is no private right of action. <u>See</u> <u>Taylor v. Brighton Corp.,</u> 616 F.2d 256 (6<sup>th</sup>Cir. 1980). In <u>Creusere v. Bd. of Educ. Of the City Sch. Dist. Of Cincinnati,</u> 88 Fed. Appx. 813 (6th Cir. 2003), the 6th Circuit confirmed the above proposition, stating,

Creusere was clearly engaged in a protected activity by requesting religious accommodation, writing the 1994 letter regarding the Labor Day holiday, and writing the September 11, 1996 letter regarding his layoff. His subsequent OCRC complaint is also protected by title VII. The additional complaints raised in Creusere's brief such as his complaints about smoking, safety issues, and the CBA, however, are not protected activities under Title VII

88 Fed Appx. At 821.

In <u>Michael G. Ypsilantis v. Department of Labor,</u> Appeal No.01A05062 (March 27, 2001) the Equal Employment Opportunity Commission, which promulgates all regulations related to Title VII recently noted,

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 9

> Our ruling is limited to EEO-based protected activity. The Commission does not have jurisdiction consider whether the agency retaliated against complainant on non-EEO-based protected activity. The Commission therefore does not address complainant's allegations of retaliation involving his union, MSPB, and whistle blowing complaints to the Inspector General, Special Counsel, the Secretary of Labor, and one of Ohio's United States Senators. (See also 42 U.S.C. §2000e-3(a); 29 C.F.R. §1614.103(a); <u>McDonnell Douglas Corp. v. Green,</u> 411 U.S. 792 (1973); (Employee's participation in protest that violated state laws was not protected activity under Title VII; <u>Christopher v. Billington,</u> 43 F.Supp. 2d 39, 46 (D.DC 1999) (union activities are not protected activities under Title VII).

Thus, based on the foregoing, it is clear that the plaintiff's allegation that he was retaliated against when rest days were changed on a particular bid position due to his complaint to OSHA has not stated a claim upon which relief can be granted under Title VII because it is not a protected activity under such statute for retaliation purposes. Additionally, since the plaintiff has no private right of action under 29 USCS § 660 and this case does not involve the Secretary of labor as a party, his action must be dismissed as a matter of law. [1]

## II. EXCLUSION OF THE CONSTRUCTIVE DISCHARGE AND EMOTIONAL DISTRESS CLAIMS

The baseline for this case is set forth at <u>Morales-Vallellanes v. Potter,</u> 339 F.3d 9 (1[st]Cir. 2003) The Court of Appeals ("COA")

---

[1] This matter was previously raised at D.E. 244 and 245, <u>Defendant's Motion for Summary Judgment;</u> D.E. 337, <u>Amended Proposed Pretrial Order</u> and D.E. 418, <u>Trial Transcripts</u> at pages 140 and 143-144, Rule 50 Motion.

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 10

limited the controversies to **three**, namely, retaliation for the change in rest days (claim 1), the sexual or gender discrimination allegation that involved Ms. Mayra Irene (claim 2)and the claim that the coffee break policy by defendant was not applied in an equal and nondiscriminatory manner (claim 3).

The "COA" ruled that "Morales is precluded on remand from seeking relief for a plethora of other acts of discrimination and retaliation alleged in his amended complaint, including the discrete acts of bullying, intimidation, and vandalism by his co-workers, his seven-day suspension for violating the USPS uniform policy, his transfer from the Caparra Heights station, his day-long "expulsions" from work in February 1997, **his constructive discharge**, [2] and his internal grievances against APWU."

---

[2] In order to support any finding of retaliatory constructive discharge, the record must establish not only the plaintiff's exercise of protected activity, but also 'aggravating factors' under the reasonable person standard that made the work so intolerable that [he] was driven to **quit**." Thomas v. Nat'l Football League Players Ass'n, 941 f.Supp. 156, 162 (D.D.C. 1996); Carpenter v. Con-say Express, Inc., 481 F.3d 611 (8th Cir. 2007); see also, Dashnaw v. Pena, 12 F.3d 1112, 1113 (D.C. Cir. 1994)  As a matter of law, this is outside the scope of this case as set forth by the Court of Appeals.  Therefore, any scenario that, directly or indirectly relates to those two rulings cannot be factored in the liability phase of this case and much less in the remedial phase, to include back and front pay equitable reliefs.  See also, Landgraf v. USI Films Prods., 968 F.2d 427, 430 (5th Cir. 1992).  "To prove **constructive discharge**, the plaintiff **must** demonstrate a **greater severity or pervasiveness** of harassment than the minimum required to prove a hostile work environment."  (Emphasis added); See also, Nestor M. Torres-Hernandez v. General Electric company, et als., Slip Opinion No. 07-1341 dated March 7, 2008 (1st Cir. 2008). In any event, this case is devoid of any evidence or jury instruction regarding constructive discharge or of its elements as to pervasiveness or severity.  So any jury verdict based on this would be against the evidence and the jury instructions.

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 11

The "COA" further ruled that, "with regard to Morales'
**emotional distress claim,** even assuming the truth of the surviving
Title VII allegations, LISPS' conduct does not rise to the level of
"extreme and outrageous," "beyond all possible bounds of
decency,"or "utterly intolerable in a civilized community."
Santiago-Ramirez v. Sec'y of Dept. Of Defense, 62 F.3d 445, 448
(1stCir.1995). Consequently, plaintiff's intentional infliction of
**emotional distress claim fails as a matter of law."**    (Emphasis
added)

Those two rulings bar plaintiff from seeking any relief for
constructive discharge and emotional distress; meaning that, as a
matter of law, no damages or monetary remedies, to include back and
front pay, can be fashioned or factored in by the Court of the jury
as a consequence thereof. As to constructive discharge, the
evidence clearly showed that there was never any "termination" of
plaintiff's employment. His employ with defendant, not having been
severed, impedes **any** economic relief from the Court and the jury
based on "constructive discharge."

Regarding plaintiff's emotional distress claim, the COA has
ruled that, as a matter of law, and even assuming the **truth** of the
three (3) claims that survived on remand, it is **settled** that
defendant's conduct did not rise to the level of "extreme and
outrageous", "beyond all possible bounds of decency" or "utterly

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 12

intolerable in a civilized community. **This is important**. It is a road map for this Court's final ruling, when it gauges the jury verdict for $500,000.00, later reduced to $300,000.00. It is particularly relevant when the Court reviews and calibrates the verdict as to damages, particularly as to defendant "causing plaintiff's mental downfall" and his eleven (11) year participation in the OWCP Program. If the "COA" dismissed, among others, the **emotional distress** and **constructive discharge claims** and, ruled that no remedies could be obtained by the plaintiff as a result thereof, it would follow then, that inherent in such ruling, is that the three issues that were remanded to District Court do not rise to the level of severe or abusive. It would also follow that this case is devoid of any aggravating and/or intolerable circumstances under the **reasonable person standard.** National R.R. Passenger Corp. V. Morgan, 536 U.S. 101, 116-117 (2002); Marrero v. Goya of P.R.,Inc., 304 F.3d 7, 28 (1$^{st}$cir. 2002); Suarez v. Pueblo Int'l,Inc., 229 F.3d 49, 54 (1$^{st}$Cir. 2000) (As to a constructive discharge claim, "it is not enough that a plaintiff suffered the ordinary slings and arrows that workers routinely encounter in a hard, cold world.")

With this backdrop, any finding which factors in those eleven years for back/front pay remedies from the Court and/or compensatory damages from the jury, would not only be against the

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 13

remand order, but not sustained by the evidence or in conformity
with the law. It is hard, if not impossible, to connect, within the
**reasonable person standard**, defendant's actions, as it relates to
the three claims on remand by the COA", and the eleven year
participation by Morales in the OWCP Program. The two are
completely different and separate scenarios. Even if one were to
find any connection, it would certainly have to be for a short
period of time (i.e. not to exceed 6 months) of causation between
defendant's actions and plaintiff's entry into the OWCP Program as
a result thereof. In this vein defendant moves the Court to adopt
the testimony of Dr. Ramon Fortuño, particularly as to Morales's
adjustment disorder not lasting more than six (6) <u>months</u> after the
stressor ("defendant's actions") had finished and, **in no instance**,
for eleven years (D.E. **428, pages 25-54, particularly pages 39, 40,
41, 48 and 49, respectively)**. The evidence showed that Morales went
into the OWCP Program in February 1997. Therefore, pursuant to Dr.
Fortuño's testimony, by August 1997, Morales should have left
behind whatever happened to him at his workplace in Caparra
Station. (D.E. **428, pages 48-50)**. This would be in line with the
remand order from the "COA".

### III. STANDARD FOR JUDGMENT AS A MATTER OF LAW UNDER FRCP 50

As previously stated, Federal Rule of Civil Procedure 50(b)
allows a party to renew its pre-verdict motion for judgment as a

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 14

matter of law. Rule 50 motions renewed after trial are decided on the same basis as their pre-verdict counterparts: whether there was a sufficient quantity and quality of evidence upon which the jury could properly base a verdict for the plaintiff. In other words, a motion for judgment as a matter of law, like a motion for summary judgment, questions whether a reasonable jury could reach the subject verdict based upon the evidence. Anderson v. Liberty Lobby,Inc., 477 U.S. 242, 251-52 (1986); Taber Partners I v Insurance Co. Of North America, Inc., 917 F.Supp. 112, 115 (D.P.R.1996).

Thus, the Court should disregard any jury finding for which there is no legally sufficient evidentiary basis enabling a reasonable jury to make that finding. See Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 22 (1$^{st}$Cir. 2002) (citing Lama v. Borras, 16 F.3d 473, 477 (1$^{st}$Cir. 1994)); Trull v. Volkswagen of America, Inc., 311 F.3d 58, 65 (1$^{st}$Cir. 2002); Acevedo Garcia v. Bera-Monroig, 213 F.Supp. 2d 42, 46-47 (D.P.R. 2002); Van Blargan v. Williams Hospitality Corp., 759 F. Supp. 940, 941 (D.P.R. 1991). In reviewing a judgment as a matter of law, the D.C. Circuit has concluded that:

> the question for us is not whether there was some evidence, but whether, in terms of the actual quantum and quality of proof necessary to support liability, there was sufficient evidence upon which a jury could properly base a verdict for the [plaintiff]... To survive a motion for judgment [as a matter of law], the

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 15

> evidence...introduced has to be more than merely
> colorable; <u>it must have been significantly probative if
> the jury's verdict is to stand.</u>

<u>McFarlane v. Caterpillar,Inc.,</u> 974 F.2d 176, 179 (D.C. Cir. 1992)

(emphasis added) <u>(citing, Siegel v. Mazda Motor Corp.,</u>878 F.2d

435,437 (D.C. Cir. 1989)).

Judgment as a matter of law should be granted when "(1) there

is such a complete absence of evidence supporting the verdict that

the jury's findings could only have been the result of sheer

surmise and conjecture, or (2) there is such an overwhelming amount

of evidence in favor of the movant that reasonable and fair-minded

[persons] could not arrive at a verdict against it." <u>Eagleston v.

Guido,</u>41 F.3d 865, 875 (2d Cir. 1994)(citations omitted).

The Supreme Court has ruled that "[w]hether judgment as a

matter of law is appropriate in a particular case will depend on a

number of factors. Those include the strength of the plaintiff's

*prima facie* case, the probative value of the proof that the

employer's explanation is false, and any other evidence that

supports the employer's case and that properly may be considered on

a motion for judgment as a matter of law." <u>Reeves v. Sanderson

Plumbing Products, Inc.,</u> 530 U.S. 133, 148-49 (2000).

A plaintiff is not, however, "entitled to the benefit of

unreasonable inferences, or inferences at war with undisputed

facts." <u>County of Suffolk v. LILCO,</u> 907 F.2d 1295, 1318 (2d Cir.

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 16

1990) (citation omitted). A plaintiff must provide a factual basis for a verdict that discrimination or retaliation occurred; the plaintiff "cannot create an issue for the jury's resolution by relying solely on the hope that the jury will not trust the credibility of the witness." Flynn v. Goldman, Sachs & Co., 836 F.Supp. 152, 154 (S.D.N.Y. 1993). Thus, "if all the witnesses deny that an event essential to plaintiff's case occurred, she cannot get to the jury simply because the jury might disbelieve these denials. There must be some affirmative evidence that the event occurred." Id., citing, Martin v. Citibank, 762 F.2d 212, 217-18 (2d cir. 1985).

## IV. THE STANDARD FOR A NEW TRIAL UNDER RULE 59

The standard for a new trial pursuant to Fed.R.Civ.P. 59 is also well settled: a new trial is warranted if the jury's verdict "was against the weight of the evidence" or the jury reached a "seriously erroneous result." U.S. East Telecom, Inc. V. U.S. West Commun. Servs.,Inc., 38 F.3d 1289, 1301 (2d Cir. 1994).

The standard requires the court to consider whether the verdict was "a miscarriage of justice." Smith v. Lightning Bolt Products, Inc., 861 F.2d 363, 370 (2d Cir. 1988). Under the Rule 59 test, the court is "free to weigh evidence and need not view it in the light most favorable to the verdict winner." Song v. Ives Labs.,Inc., 957 F.2d 1041 at 1047 (2nd Cir. 1992). Unlike the

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 17

standard for a judgment as a matter of law, under Rule 59 a new trial may be granted by the court "even if there is substantial evidence to support the jury's verdict." Id. (Affirming grant of new trial after jury finding for plaintiff in discrimination case)

## V. NO REASONABLE JURY COULD FIND THAT MORALES WAS A VICTIM OF RETALIATION

No reasonable jury could find that Morales was a victim of retaliation. Under First Circuit law, an essential element for the *prima facie* case of any retaliation claim is that the plaintiff be subjected to an adverse personnel action (as opposed to merely a hostile work environment.)

In Benoit v. Technical Manufacturing Corp., 331 F.3d 166; 2003 U.S. App. LEXIS 11460; 92 Fair Empl. Prac. Cas. (BNA) 9; 84 Empl. Prac. Dec. (CCH) P41, 467 (1[st]Cir. 2003), the First Circuit held that an adverse personnel action is an essential element of a plaintiff's *prima facie* retaliation claim. Plaintiff-appellant Joseph Benoit ("Benoit") appealed an award of summary judgment to defendant Technical Manufacturing Corporation ("ATMC") on his claims of discrimination and retaliation on account of disability, race, color, and national origin in violation of a number of federal and Massachusetts statutes. The First Circuit agreed with the district court that no genuine issue of material fact existed and therefore affirmed the judgment of the district court. (331

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 18

F.3d 166, 169)

To establish his *prima facie* case of retaliation, Benoit must show that (1) he engaged in protected activity; (2) he suffered an adverse employment action after or contemporaneous with such activity; and (3) there existed a causal link between the protected activity and the adverse job action. <u>Wyatt v. City of Boston,</u> 35 F.3d 13, 15 (1<sup>st</sup>Cir. 1994). Benoit failed to establish a trial worthy issue as to the last of these three elements. (331 F.3d 166, 175).

Here, plaintiff Morales was not fired, suspended, demoted, or otherwise suffered any adverse personnel action. Therefore, as a matter of law, his retaliation claim must fail on this ground alone. As to claim 1, the evidence showed that Morales continuously enjoyed having Sundays and Mondays off as rest days although he would have preferred to have Saturdays and Sundays off. Preference cannot equate to a materially adverse action. Morales did not lose anything of substance as to his rest days, particularly when the evidence showed that the rest days were changed due to business reasons or operational needs because there had been too many persons who had previously enjoyed Saturdays and Sundays off as rest days. In addition, it was shown that Morales would not have qualified anyway because there were more senior employees than him on the qualifying list for the San Juan Region.

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 19

Expectations, especially those which are without a reasonable basis, cannot beget an adverse action. To do so would fly in the face of Title VII since there has to be some tangible harm and loss to prevail. Having your dream deferred when the opportunity does not even present itself cannot lead to liability. That is the case presented for Claim No. 1.

The evidence presented by plaintiff was vague at best and basically consisted of the following-- there was an upcoming vacancy of a position held by a Mr. Luis Rivera which had Saturdays and Sundays as the rest days; plaintiff's own bid was Sundays and Mondays as the rest days; for the last two times when vacancies had occurred for Window Clerk in Caparra Heights, Distribution and Window Clerks who desired the position ended up receiving the position based on their Seniority.

The evidence also showed through the uncontested testimony of Enrique Lopez, and even the plaintiff himself, that the individuals on the Seniority list came from all of the stations, the plant, Air Mail Facility which comprised the San Juan area and could bid on this position that were higher than him on the list. Plaintiff's retort was that these others had never bid into Caparra Heights before and those in the station who may be above him were perfectly happy with their bids and would not bid for it. Two years passed since the last time this position was bid on. There are many

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 20

unknown variables to say that plaintiff would have been the most senior to apply for this position. Just one more senior employee who bid would have been enough and sufficient to award the position to him/her. Therefore, the verdict of liability for Claim No. 1 is based on a mountain of pure speculation.

This is not a case where the plaintiff already had the job and had his days off changed. Plaintiff lost nothing. It is true tha the would have gained a different day off (Saturday instead of Thursday), but again this as farfetched hope only. This case contrasts with McDonough v. City of Quincy, 452 F.3d 8 (1[st]Cir.2006) where the plaintiff's shift was changed from night to day with a corresponding loss of pay. In that case the plaintiff held the job when the changes in hour were made and as such suffered an actual harm. This is not the case with the plaintiff here. The plaintiff could not even prove that he was the most qualified for the position through the senior bidding process. There was no objective evidence that he would have gotten the job. Therefore, no adverse action ensued as a consequence thereof that is actionable under Title VII of the Civil Rights Act.

Additionally, plaintiff admitted that this action of the Postal Service in deciding that Saturday would no longer be the day off for this position led to no lost pay; only dealt with one day in contest (Saturday, since plaintiff already had Sunday off); and

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 21

that he had two consecutive days off already. The only detriment that plaintiff could claim was that if he had the opportunity to be off on Saturday, he could have played in a "cuatro" band. But apparently he had never played in the "cuatro" band on Saturday since plaintiff had always worked Saturdays in Caparra Heights. So he lost nothing. For all of these reasons, Claim Number 1 does not meet the definition of an adverse action.

As to retaliation, Title VII provides that it is "an unlawful employment practice for an employer to discriminate against any of [its] employees . . because [s]he has opposed any practice made an unlawful employment practice by this title or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." **42 U.S.C. §2000e-3(a)**. Plaintiff's OSHA claims were not protected activity under the Civil Rights Law as previously discussed.

As to adverse action to be considered as such for purposes of retaliation, an employment action need only be "harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe R.R. Co. V. White, 548 U.S. 53, 126 S.Ct. 2405, 2409 (2006). The evidence at trial, not only showed that plaintiff did not engage in a protected conduct or activity under the Act, but that he did not suffer an adverse employment action of the type required

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 22

by Burlington.

As recently explained by the Supreme Court, this "anti-retaliation provision protects an individual not from all retaliation, **but from retaliation that produces an injury or harm.**" Burlington N. & Santa Fe Ry. V. White, 126 S. Ct. 2405, 2414 (2006) ("Burlington"). Instead, to prevail on a claim of retaliation in violation of Title VII, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. At 2415 (internal quotation marks omitted.) Accord Dixon v. Int'l Bhd. Of Police Officers, 504 F.3d 73, 81 (1st Cir. 2007). Adverse action is lacking here.

The plaintiff in Burlington worked as a track laborer for a railroad, but, because she had been assigned to operate a forklift soon after her hiring, had a "less arduous and cleaner job" than other employees of the same rank. **126 S. Ct. at 2409.** After complaining about some sexist remarks by her supervisor, however, the plaintiff was reassigned to standard track laborer tasks. **Id.** When she claimed that this had been done in retaliation for her previous complaint, the plaintiff was suspended without pay --though she ultimately received those wages. when the railroad reversed the suspension 37 days later. **Id.** The plaintiff then

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 23

fall within the same job description," reasoning that "[c]ommon sense suggests that one good way to discourage an employee . from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable." **Id.** The Court cautioned, however, that "reassignment of job duties is not automatically actionable. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and `should be judged from the perspective of a reasonable person in the plaintiff's position, considering `all the circumstances'.'" **Id. At 2417**

Noting "considerable evidence that the track laborer duties were by all accounts more arduous and dirtier; that the forklift operator position required more qualifications, which is an indication of prestige; and that the forklift operator position was objectively considered a better job and the male employees resented [the plaintiff] for occupying it," the Court ruled that a jury could have reasonably found the reassignment "materially adverse toa reasonable employee." **Id.** (internal quotation marks omitted). The Court also ruled that the jury could have reasonably found that the plaintiff's suspension was materially adverse, despite her reinstatement with back pay 37 days later. **Id.** In support of this conclusion, the Court observed that "[m]any employees would find a

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 24

month without a paycheck to be a serious hardship" and cited the
plaintiff's testimony that she, in fact, did. **Id**. Thus, the court
reasoned, "an indefinite suspension without pay could well act as
a deterrent" to filing an employment discrimination claim, "even if
the suspended employee eventually received back pay." **Id. At 2417**.

However, an employee's displeasure at a personnel action
cannot, standing alone, render it materially adverse. See, e.g.,
Blackie v. Maine, 75 F.3d 716, 725 (1$^{st}$Cir. 1996). (See, Nancy M.
Billings v. Town of Grafton, et als., Slip. Opinion # 06-2145, 1st
Circuit, Feb. 7, 2008)

In Billings, a jury found that, as a result of the transfer,
Billings occupied an objectively less prestigious job, reporting
toa lower ranked supervisor, enjoying much less contact with the
Board, the Town, and members of the public, and requiring less
experience and fewer qualifications. See Burlington, 126 S. Ct. At
2417. The 1st Circuit saw those facts as evidence of reduced
prestige in the objective sense, not merely in Billings' subjective
opinion. Cf. Alvarado v. Tex. Rangers, 492 F.3d 605, 613 n.7 (5th
Cir. 2007) (drawing distinction between "loss of subjective
prestige," which cannot itself show an adverse employment action,
and "loss of objective prestige," which can) (internal quotation
marks omitted). In addition, it also found that the recreation
department position likely required Billings to pay union dues and

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 25

subjected her to union-associated mechanisms like grievance procedures, collective bargaining (which threatens to cap her earning capacity), and punching a time card. Under those circumstances, the Court decided that, as a matter of law, the transfer to the recreation department could not "well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington, 126 S. Ct. At 2409.

The district court in Billings ruled that, aside from the transfer to the recreation department and the Board of Selectmen's subsequent refusal to give Billings her old job back after Connor retired, the other actions she cited in support of her retaliation claim were also not materially adverse. The First Circuit agreed that some of Connor's behavior--upbraiding Billings for her question at the Board of Selectmen meeting, criticizing her by written memoranda, and allegedly becoming aloof toward her--amounts to the kind of "petty slights or minor annoyances that often take place at work and that all employees experience" and that, consequently, fall outside the scope of the anti-discrimination laws. Burlington, 126 S. Ct. At 2415; see also Marrero, 304 F.3d at 25 (ruling that supervisors' "extreme supervision" and "snubb[ing]" of plaintiff was not adverse) (internal quotation marks omitted); Hernandez-Torres v. Intercont. Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998) (ruling that increased criticism was not adverse).

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 26

Applying the foregoing to the case at bar, Morales does not qualify as passing the adverse action test and therefore he does not qualify for the type of adverse action that <u>Burlington</u> protects and requires.

Plaintiff failed at trial to adduce any evidence that he was subjected to any adverse employment action by defendant in retaliation for a "protected" EEO activity. The only employment actions taken against Morales were the letter of warning ("L.O.W.") dated March 23, 1996, later expunged (J.E. III) and the seven day suspension dated December 20, 1996 from E. Lopez (J.E. **#IV)**, for plaintiff's failure to follow instructions after two (2) previous letters of warnings were given for the same reasons. These actions are not, as a matter of law, sufficient adverse employment actions to support a verdict of retaliation in violation of the law.

"A plaintiff sustains an adverse employment action if he or she endures a `materially adverse change' in the terms and conditions of employment." <u>Galabya v. New York City Bd. Of Educ.,</u> 202 F.3d 636, 640 (2d Cir. 2000) (citation omitted). Such a material change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." <u>Weeks v. New York State</u> <u>Div. Of Parole,</u> 273 F.3d 76, 85 (2d Cir. 2001) (citation omitted), <u>abrogated on</u> <u>other grounds by National R.R. Passenger Corp. v. Morgan,</u> 536 U.S. 101 (2002). Actions that have been deemed sufficiently

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 27

disadvantageous to constitute an adverse employment action include

"a termination of employment, a demotion evidencedby a decrease in

wage or salary, a less distinguished title, a material loss of

benefits, significantly diminished material responsibilities, or

other indices ... unique to a particular situation. "Galabya, 202

F.3d at 640(ellipsis in original) (citations omitted).

The LOWs received by plaintiff did not rise or meet the

adverse employment actions threshold under Burlington. Generally,

verbal and written warnings fail to rise to the level of an adverse

action. See Flaherty v. Metromail Corp., 293 F.Supp. 2d 355, 359

n.2 (S.D.N.Y. 2003) (warning letter does not constitute adverse

employment action; Satterfield v. United Parcel Serv., 00 Civ.

7190, 2003 WL 22251314, at *10 (S.D.N.Y. Sept. 30, 2003) (same);

Hill v. The Children's Village,196 F. Supp. 2d 389, 400 (S.D.N.Y.

2002) (warning letter insufficient to constitute adverse employment

action because plaintiff suffered no adverse action as a result).

In the context of suits against the Postal Service, several courts

have held that Postal Service LOWs do not rise to the level of

actionable adverse employment actions.  See, e.g., Griffin v.

Potter, 356 F.3d 824, 829 (8$^{t}$'' Cir. 2004)(Postal Service LOW

"trivial" and not an actionable adverse employment action); Harris

v. Potter, 310 F. Supp. 2d 18, 21 (D.D.C. 2004) (Postal Service LOW

not adverse employment action where plaintiff failed to allege it

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 28

affected his job title, duties, salary, benefits or work hours
inmaterial matter and LOW was rescinded.) As to the seven day
suspension, if it were to be considered an adverse action, under
the reasonable person standard, it could never equate or justify a
$500,000.00 jury verdict as a result thereof. An adverse occurs
when an employer either takes something of consequence from the
employee or withholds from him/her some benefit of the employment
relationship. Simas v. First Citizens' Fed. Credit Union, 170 F.3d
37, 49 (1stCir. 1999) ; Blackie v. State of Maine, 75 F.3d 716,
725-726 (1stCir. 1996). Not every instance of workplace friction
will constitute an adverse action. Simas, 170 F.3d at 50; Welsh v.
Derwinki, 14 F.3d 85, 86 (1stCir. 1994). Here, there is no
allegation at Plaintiff's complaint nor has the evidence produced
that somehow the "adverse action" affected Morales' position at the
Postal Service. Nor has there been evidence of his supervisor's
alleged discriminatory conduct depriving him of anything of
consequence. Moreover, there is no evidence that defendant's
conduct and actions were not in conformity with agency's policies
and its personnel management regulations.

    Not everything that makes an employee unhappy is an actionable
adverse action under Title VII of the Act. Smart v. Ball State
University, 89 F.3d 437, 444 (7thCir. 1996). To hold otherwise would
not only tax judicial resources, but involve judges in making

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 29

decisions best left to others. "Courts," the Supreme Court noted in

another employment discrimination case, "are generally less

competent than employers to restructure business practices, and

unless mandated to do so by Congress they should not attempt it."

Wards Cove Packing Co. V. Antonio, 490 U.S. 642, 661 (1989). Thus,

the courts have construed the employment discrimination prohibition

set forth in Title VII and the Act as being aimed at decisions that

affect the terms, privileges, duration or conditions or employment.

Yerdon v. Henry, 91 F.3d 370, 378 (2ndCir. 1996). Meredith v. Beech

Aircraft Corp., 18 F.3d 890, 895 (10thCir. 1994)(plaintiff could not

litigate allegedly discriminatory evaluation because she"has

presented no evidence of adverse action relating to her

evaluation.") See also, Dollis v. Rubin, 77 F.3d 777, 781-782 (5th

Cir. 1995)("Title VII was designed to address ultimate employment

decisions, not to address every decision made by employees that

arguably might have some tangential affect upon those ultimate

decisions.")

    "A tangible employment action constitutes a significant change

in employment status, such as hiring, firing, failing to promote,

reassignment with significantly different responsibilities, or a

decision causing a significant change in benefits." Burlington

Indus. Inc. V. Ellert, 524 US 742, 761 (1998).

    Morales did not suffer a tangible adverse employment action at

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 30

the hands of defendant. His employment status did not change after the incidents alleged in the complaint. He was, and is an employeefor defendant in OWCP status since 1997 to present.

Again, in this case, there is the opportunity to address _Burlington,_ and apply the Court's reformulation of the retaliation _prima facie_ case. Applying the new standard, plaintiff has not met his burden. Unlike the plaintiff, in _Burlington_, it was shown that defendant's actions were retaliatory and materially adverse such that a reasonable employee in their situation would have been dissuaded from complaining about discrimination. .The fact remains that in this case plaintiff Morales did file his complaint of discrimination and nothing stopped him from doing so and later onward he was not subjected to any materially adverse action by the defendant.

As the Supreme Court explained in _Burlington,_ as to adverse action, the employer's action against plaintiff must be _real_ and _significant._ "The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an _injury_ or _harm._" **Burlington**at 2414 (Emphasis added)

**VI. THERE IS NO LEGALLY SUFFICIENT BASIS FOR THE VERDICT BECAUSE THERE WAS INSUFFICIENT EVIDENCE OF A CAUSAL CONNECTION BETWEEN THE ADVERSE ACTIONS AND THE PROTECTED ACTIVITY**

The Postal Service is entitled to judgment as a matter of

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 31

law,or at a minimum a new trial or remittitur, because the trial evidence did not show a causal connection between defendant's actions and plaintiff's prior protected activity.

When the mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action is the only evidence presented to establish *a prima facie* case, the temporal proximity must be very close. <u>Clark County Sch. Dist. V. Breeden,</u> 532 U.S. 268, 273-74 (2001).

Here the plaintiff has failed to prove that he was suspended from employment for seven days or that the rest days were changed *because of* his "protected activity"; or to rebut the Postal Service's proffered legitimate, nondiscriminatory explanations for its actions, as a result of plaintiff's repeated failures to follow instructions and orders. Plaintiff also failed to present any evidence that defendant's explanations were pretextual.

As to the gender discrimination claim, Ms. M. Irene' s rotation into Morales' position was part of a rotation policy to cross train employees at the Caparra Station and the coffee break policy at Caparra was implemented to protect the workplace from coffee break abuse by <u>any</u> employee, Morales included. These were all legitimate business reasons and not aimed at Morales and, much less, was part of a discrimination pattern against him based on sex or gender.

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 32

Morales' allegation of sexual discrimination and retaliation
arising on an isolated April 9, 1996 incident in which Plaintiff's
duties and responsibilities were awarded to a female employee, and
he was given Window Clerk duties to perform, fails as matter of law
because no discrimination can be derived from it.

Claim Number 2 was worded in a way which disguises what
actually transpired. Even from plaintiff's own testimony it is
clear that he was not stripped of the Business Reply Mail component
of the job. In fact, in the past when the plaintiff was on
vacation, two other male employees had handled that type of mail.
Neither Ms. Irene nor any of the other employees who were trained
and rotated were "awarded" these duties.

In addition, plaintiff was a Window and Distribution Clerk. By
the very name and nature of such position it included duties at the
window. Although the plaintiff may not have wished to work at the
window and may have enjoyed not being assigned to the window on a
frequent basis, his official job still entailed those duties. In
fact, plaintiff admitted that even before this "change", once in a
while when there was an emergency, he would go and work the window
and fill in the hole.  There was no testimony that Mayra was
"awarded" the business Reply Mail duties. These minor changes did
not impact job advancement, hours, pay or prestige and there is not
testimony as to such. Minor changes in duties that do not cause

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 33

materially significant disadvantage do not constitute adverse employment actions for purposes of Title VII. <u>Kerns v. Capital Graphics,</u> 178 F.3d 1011 (8[th]Cir. 1999).

Plaintiff also failed to prove *a prima facie* case of gender discrimination. Although plaintiff, as usual, seemed to be obsessed about Mayra Irene, he conceded that she wasn't the only one who was trained and rotated on Business Reply Mail. In fact, other males were specifically tasked with such duties and had been tasked with such duties in the past as such his gender discrimination claim must fall since there was simply no evidence that the rotation of the duties and the cross training management policies were instituted because of his gender.

Morales' allegation that the coffee and lunch breaks policy was not applied in an equal and non-discriminatory manner also fails.

Plaintiff's third claim appears to be as follows as per his own testimony -- that Coworker Mayra Irene came to work and within a few minutes took a coffee break, that she sometimes took coffee breaks in the supervisor's office and that on occasion she took a 1-1/2 hour lunch break with Supervisor Lopez and another employee. Plaintiff did not specify what period of time this covered or how many occurrences there were. Except arguably for the one occasion when Ms. Irene lunched for an extra half hour with Supervisor

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 34

Lopez, there is no evidence whatsoever as to management condoning any abuse of coffee and lunch breaks. In fact, plaintiff alleged that when Mr. Lopez found out about these actions, he called everyone together to direct that from now on all such breaks would be monitored by clocking in and out. At that point any possible abuse of coffee or lunch breaks would have ceased.

In the best light to plaintiff, this would be a case of, at most, one employee not following the rules of the coffee and lunchbreak policy. But without evidence that the Agency created or condoned the acts of Ms. Irene, there can be no liability. Once the agency became aware of the concerns of an anonymous employee who complained, they acted. Plaintiff suffered no harm and therefore there was no adverse action on the part of the employer. In fact, Supervisor Lopez' action cured the complained of acts by creating a monitoring system to ensure that employees during that window of time they could take these breaks they were not abusing the policy.

Before the change in the policy to make the employees clock in and out for breaks, there was simply no evidence that the policy was applied disparately. There was no evidence that plaintiff was monitored and others were not; there was no evidence that employees were not to take equal coffee breaks within the window of time twice a day; and there was no evidence that she was given privileges by Supervisor Lopez other than on one occasion when she

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 35

allegedly returned from lunch with him and a coworker ⅚ hour late.

Taking the Court of Appeals' admonition as to what Claim 3 encompassed, there is no adverse action. Plaintiff did not testify as to any harm or tangible benefit taken from him as a result of Ms. Irene taking more frequent coffee breaks on her own without the Agency's imprimatur or a lunch hour of ½ hour longer on one occasion. Therefore, the evidence is devoid of any discrimination animus and/or pretext.

Even if one were to argue that Morales was affected by such policies, defendant's actions did not produce any material adverse action against Morales as a result thereof. From a reasonable person standard point of view, and, even assuming adverse action, there is no way that defendant's actions could produce a jury verdict for $500,000.00. There was no evidence from where to conclude that defendant's rotation of employees, the coffee break policy actions and the change in rest days, of which Morales kept as Sundays and Mondays, caused Morales $500,000.00 in compensatory damages.

The protected activity and the adverse employment action must follow each other very closely to establish causation. Bishop v. Bell, 299 F.3d 53, 60 (1$^{st}$Cir. 2002).

Seven months elapsed between plaintiff's "protected activity" (July 1995) and the alleged adverse action in February 1996 as to

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 36

the change in rest days **(See D.E. 418, pages 91-95 and pages 142-143.)** Seven months is too long to establish causation. Eaton v. Kindred Nursing Centers West, No. 04-131-B-W, 2005 U.S. Dist. LEXIS 9545, at *28 (D. Me. May 19, 2005) (finding a ten week lapse between the protected activity and plaintiff's termination too great to establish a causal connection. (See also Gladys Paz v. John E. Potter, Civil No. 05-1791(JAF) USCD-P.Rico, Dec. 12, 2006. **(Slip Copy 2006WL3702653).**

In Clark County School Districtv.Breeden, 532 US 268 (2001) (per curiam) the Supreme Court held that cases which accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish *a prima facie* case, uniformly hold that temporal proximity must be "very close" **(Id. At 273).** Accordingly, the Court cited Neal v. Furguson Construction Co., 237 F.3d 1248, 1253 (10$^{th}$Cir. 2001) and Richmond v. Oneal,   Inc., 120 F.3d 205, 209 (10th Cir. 1997) that held that a three month period is insufficient, as well as Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7$^{th}$Cir. 1992) also holding a four month period to be insufficient. The rule is that although courts have not established the maximum time lapse between protected Title VII activity and alleged retaliatory actions for establishing a causal connection, courts generally have accepted time periods of a few days up to a

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 37

few months and seldom have accepted time lapses outside of a year in length. In <u>Devora v. Adams,</u> 874 F. Supp. 17,21 (D.D.C. 1995) it was held that "an eight month interval between the two events is not strongly suggestive of a causal link" and <u>Garret v. Lujan,</u> 799 F. Supp. 198, 202 (D.D.C. 1992) holding that almost a year between plaintiff's EEO activity and the adverse employment action is too great a length of time to support an inference of reprisal.

Here, the record cannot sustain a jury verdict for gender discrimination and retaliation for $500,000.00. Not only is there a lack of a prior protected activity under the "Act" but, adverse action and causal relation is lacking as well. As discussed above, "the party bearing the burden of proof cannot create an issue for the jury's resolution by relying solely on the hope that the jury will not trust the credibility of the witnesses."**Flynn,** **836 F.Supp. At 154.** Rather, to prove pretext or retaliation, a plaintiff must "offer affirmative evidence of such invidious discrimination." **Flynn,**836 **F. Supp. At 161.**

Plaintiff presented no affirmative evidence of retaliation or pretext - there is nothing proving that defendant applied the Postal Service disciplinary procedures inconsistently as to plaintiff and his similarly situated coworkers, or that defendant disciplined plaintiff because of plaintiff's prior "protected activity." Rather, the evidence showed that defendant issued the

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 38

seven-day suspension to plaintiff for the entirely valid reason
that plaintiff repeatedly failed to follow instructions, all of
which violated Postal Service policies.

Furthermore, the Postal Service's proffered legitimate,
nondiscriminatory reason for the disciplinary actions is entirely
valid, because "'[a]n employer does not violate Title VII when it
takes employment action against an employee to preserve a workplace
environment that is governed by rules, subject to a chain of
command, free of commotion, and conducive to the work of the
enterprise."'Estrada v. Lehman Bros.,Inc., 99 Civ. 8559, 2001 WL
43605, at *5 (S.D.N.Y. Jan 18, 2001) (citing Matima v. Celli, 228
F.3d 68, 79 (2d Cir. 2000) ; see Eisenhauer v. Great Lakes
Plastics, 99 Civ. 0129, 2001 WL 209904, at *7 (W.D.N.Y. Feb. 23,
2001) (excessive absences are sufficient legitimate
nondiscriminatory reason).

Plaintiff failed to rebut the Postal Service's legitimate
nondiscriminatory reason, because he presented no evidence that the
disciplinary acts were pretextual, "falsely issued, or that
[plaintiff's] documented history of reprimands was otherwise
manufactured." Estrada, 2001 WL 43605, at *5. Plaintiff's evidence
is also devoid of defendant's discrimination animus as to the change
in rest days, Ms. Mayra Irene's rotation or cross-training into
Morales' position and the application of the coffee break policy to

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 39

all Caparra employees.

In short, the facts of this case cannot support an inference of a causal connection between plaintiff's "protected activity" and any adverse action by defendant. It cannot support any inference that the Postal Service's state reasons for his actions of change in rest days, rotation of employees and the coffee break policy were pretextual. Without such evidence, the jury had no "legally sufficient evidentiary basis" for its $500,000.00 verdict, see Fed.R.Civ.P. 50(a), and its verdict was "seriously erroneous," U.S. East Telecom, 38 F.3d at 1301. Accordingly, the Court should reverse the verdict and enter judgment as a matter of law for the defendants.

**VII. THE JURY AWARD OF $500,000 WAS SHOCKINGLY EXCESSIVE AND SHOULD BE REDUCED TO AN AMOUNT NO GREATER THAN $42,000.00**

Even were the Court to uphold the jury's verdict regarding the plaintiff's claims, it should grant the Postal Service a remittitur pursuant to Rule 59(e), and, either eliminate the damages award entirely or reduce the award from $300,000.00 to $42,000.00.

Remittitur is "the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." Earl v. Bouchard Trans. Co., 917 F.2d 1320, 1328 (2d Cir. 1990) (citation omitted). A court facing a motion for a new

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 40

trial may order that trial, or may condition denial of the motion for a new trial on the plaintiff's acceptance of reduced damages, also known as remittitur. See Reiter v.Metropolotan Transportation Authority of New York, 01 Civ. 2762, 2003 WL 22271223, at *2, 11 (S.D.N.Y. Sept. 30, 2003) (citation omitted; reducing $140,000 award to $10,000). Remittitur is warranted when a jury award is "grossly excessive" or so high as to "shock the judicial conscience." Petramale v. Local No. 17, 847 F.2d 1009, 1012-13 (2d Cir. 1988) (citation omitted(after verdict of $200,000,remanding for new trial unless plaintiff agrees to remit compensatory damages over $100,000, where plaintiff and sons described plaintiff's sleeplessness and moodiness causing marital separation).

Remittitur is necessary in some cases, because a jury "may not abandon analysis for sympathy for a suffering plaintiff and treatan injury as though it were a winning lottery ticket." Scala v. Moore McCormack Lines, 985 F.2d 680, 684 (2d Cir. 1993) (citation omitted)(reducing $1.5 million verdict in personal injury case to $750,000); see Binder v. Long Island Lighting Co., 57 F.3d 193 (2d Cir. 1995) (affirming district court's remittitur of jury award ofnearly $498,000 to $5,000 given absence of concrete evidence of injury). To guard against speculation by the jury, a trial court should reduce an award where, as here, there is "sparse evidence with respect to the magnitude and duration of emotional injury or

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 41

mental distress." <u>McIntosh v. Irving Trust Co.,</u> 887 F.Supp. 662
(S.D.N.Y. 1995) (reducing $219,428 verdict to $20,000 where
plaintiff made only one visit to a doctor). And whereas it is the
jury's role to calculate damages, those damages must lie below "an
upper limit, and whether that has been surpassed is not a question
of fact with respect to which reasonable [persons] may differ, but
a question of law."<u>Trivedi v. Cooper,</u> 95 Civ. 2075, 1996 WL
724743, at *6 (S.D.N.Y. Dec. 17, 1996) (citation omitted).
Comparison to awards in similar cases is the proper way to assess
whether an award is reasonable. Id.

Plaintiff did not prove that he suffered anything other than
minimal damages. The three issues that were remanded by the Court
of Appeals, by itself, and assuming defendant's liability, is not
of the nature that could equate $500,000.00 in a jury verdict. Even
assuming the best case scenario for plaintiff in the sense that
there is liability on the part of defendant, it is not reasonable
to conclude that the evidence showed that the change in rest days,
the coffee break policy and Ms. M. Irene's rotation into Morales
position caused plaintiff's "permanent mental downfall" andhis 11
year participation in the O.W.C.P. Program and, that the extent of
plaintiff's damages expanded or was spread out throughout those
eleven years, to equate $500,000.00. To so conclude would not only
be against this Court's jury instructions, but not in proportion

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 42

with the Court of Appeal's remand order, and against the evidence presented at trial. More importantly, it would be an assault on the reasonable person standard that applies to this case.

There was no evidence of serious economic damages as to the three claims. The jury could not have believed that his suffering was real or severe, or if it did, it was in complete disregard for this Court's jury instructions.

The First Circuit focuses its review of damage awards on the evidence presented at trial, although a comparison of actual monetary amounts of other awards is relevant. The First Circuit does not look to guidelines courts have used in evaluating whether damage awards are proportionate to the injury. It has found that it is valid to take into account whether the emotional or mental problems predated the litigated event. Bonn v. Puerto Rico International Airlines, Inc., 518 F.2d 89, 94 (1st Cir. 1975), whether there is an expectation of continuing harm into the future, Havinga, 24 F.3d at 1488, and the relative proportionality of economic to non-economic damages, Anthony v. G.M.D. Airline Services, Inc., 17 F.3d 490, 495 (1$^{st}$Cir. 1994) ; Selgas v. American Airlines, Inc., 858 F. Supp. 316 (1$^{st}$Cir. 1994).

Two recent First Circuit cases are persuasive as to the issue of excessive damages. McDonough v. City of Quincy, 452 F.3d 8 (1$^{st}$Cir. 2006) is one such case. In McDonough v. City of Quincy, 452

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 43

F.3d 8 (1$^{st}$Cir. 2006), a 30 year veteran police officer was found
to have been retaliated against because he assisted a female
coworker in her employment discrimination claim. The trial court
had rendered a directed verdict at the end of the case finding no
adverse employment action when he was denied use of a department
car, did not have his supervisory responsibility reinstated when he
was returned to his original night shift and was denied to sign
court slips. The surviving claims - that, his shift was changed
from night to day with a corresponding loss of pay of 15% because
of the shift differential; that by moving to the day he was
essentially stripped of his supervisory duties because the
employees he supervised were on a different shift and another
person assumed most of those responsibilities; that on the day
shift he had no one to supervise and essentially nothing to do;
that he was also placed on paid administrative leave and had his
weapon taken from him pending a fitness for duty examination by a
mental health provider on specious grounds - were much more
substantial, adverse, material and tangible than those in the
caseat bar. The jury returned a verdict of $300,000 in compensatory
damages for Mr. McDonough. His testimony was that he had been
humiliated, that his reputation had been damaged and that this was
particularly hurtful because he loved his 30 years of service as a
police officer. He also testified as to how his relationship with

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 44

his family suffered. He became so easily enraged at his grandchildren that he could no longer see them. He described causing his wife and sisters to cry as well as crying himself on occasion. The severity of these harms and their direct impact on Mr. McDonough was evident.

Another case is <u>Rodriguez Torres v. Caribbean Forms Manufacturer, Inc.</u>, 399 F.3d 52 (1st Cir. 2005). Plaintiff was found to have been wrongfully terminated. She testified as to the deterioration of her marriage, her deep depression which lasted for quite some time, and its effect on her finding subsequent employment. The court found that the evidence supported a $250,000 award for compensatory damages. The evidence showed that before she was fired she was frequently verbally harassed based on her age and gender. Again in this case, there was a tangible harm with a clear nexus between the materially significant detrimental employment acts and the emotional anguish which it caused. This is in sharp contrast to Mr. Morales.

The fact alone that Mr. Morales had his psychiatrist testify does not compel a finding of mental distress to the extent he argues. The court still must look at the actual harm and if it has a nexus to the alleged injuries. This is sorely lacking in this case. It is easy to see how the emotional distress of both McDonough and Rodriguez were specifically linked to those

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 45

plaintiffs' suffering of adverse employment actions.

Our plaintiff, on the other hand, cannot point to any injury, let alone any as severe as those suffered by the plaintiffs in McDonough and Rodriguez. His own testimony as to mental anguish was brief, general and conclusory. He never separated these three claims from all of the other claims testified to which were dismissed by the Court of Appeals and which were directed not to betaken into consideration. Likewise his psychiatrist never explained how these three claims could affect a person so profoundly except to say that there were at least ten distinct stressors, of which Claims Two and Three appear to be only one. (**See D.E. 417 December 13, 2007 Transcript, p. 129-130, Testimony of Dr. Guillermo Hoyos-Precssas**). But all that was to be considered by the jury were the three claims not the accumulation of all of plaintiff's alleged stressors. The Court of Appeals admonished that these were not part of the case. With a verdict of $300,000 no reasonable person could believe that they were not factored prominently into the compensatory damage verdict.

Defendant posits that the fundamental problem in this case is that the alleged employment actions could not have caused the harm alleged by the plaintiff, first and foremost because they are not even adverse actions actionable by the court as a matter of law and also because there was no conceivable injuries. Having suffered no

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 46

harm there can be no damages. However, assuming arguendo there could be some harm suffered on these three claims only, plaintiff never specifically linked Claims One, Two and Three to his emotional distress. His testimony as to damages was purposely inextricably intertwined with the other alleged actions taken by the defendant, which although ruled not part of this case by the court of Appeals were testified to and included in open ended testimony of a number of varied wrongs over a period of time. Likewise, Dr. Hoyos' testimony was based on the accumulation of the many acts alleged by plaintiff, including those dismissed by the Court of Appeals. There is no way any rational jury could find that having one day off changed for a job for which you may not even have been selected, one of your duties subject to rotation and cross training of others in your same position description; and an expunged Letter of Warning could support an award of $300,000 in compensatory damages. It is patiently absurd and this Court cannot allow such a verdict, which makes a mockery of Title VII, to stand.

The injury must have some proportionality to the mental anguish suffered. Neither plaintiff nor Dr. Hoyos testified as tothe extent, magnitude, duration or severity of the alleged emotional distress arising out of these three claims. There is no support for an award of $300,000 in compensatory damages.

The defendant, again, moves this Court to adopt Dr. Ramon

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 47

Fortuno's testimony that six months is a reasonable standard for
Morales to have recovered from "defendant's actions." Six months,
at a generous rate of $7,000.00 per month, nets $42,000.00 for
plaintiff. It is what the evidence showed, particularly where there
was a specific instruction from this Court as to that **"stress
caused by litigation is not recoverable. "Therefore, your
deliberations in damages should not include <u>any</u> notion of
compensation for <u>any</u> stress or mental anguish that can be
attributed to this litigation."** (Emphasis added) **<u>(See</u> D.E. 419 at
page 254, lines 9-13.)** Furthermore, there was no jury instruction
as to hostile work environment and very detailed jury instructions
as to the exclusivity of the three claims on remand, adverse action
and the setting of damages to be non speculative and unreasonable,
all of which were completely ignored by the jury.

The jury, pursuant to this Court's instructions, could **<u>only</u>**
consider the three claims remanded by the "COA". As such, this was
**all** that the jury **should** have considered. The jury did not follow
the Court's instructions to limit itself to these claims. If it had
done so, as a matter of law, it could not have found for the
plaintiff. Rather what happened was that the jury heard days of
testimony as to plaintiff's other claims which the Court of Appeals
specifically had dismissed as compared to little time spent on the
three claims herein. In this atmosphere, either the jury was so

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 48

overwhelmed and confused that they could not render a verdict based on the law and facts or, they did not understand or disregarded the Court's instructions. What this turned into was really a compilation of grievances and list of workplace slights, most of which were specifically decreed by the Court of Appeals to be dismissed from this case.

Comparisons to discrimination or civil rights suits in which plaintiffs claim minimal emotional damage demonstrate that a proper award in this case, if any, should be very small. In Miner v. City of Glens Falls, 999 F.2d 655 (2d Cir. 1993), the Court of Appeals affirmed an award $12,000 for a police officer who suffered embarrassment and feelings of inadequacy after being forced to sell his home and go onto public assistance, experienced deterioration in his family relations and considered suicide. Plaintiff did not allege harm rising to that level here. Rather, on minimal facts such as those alleged by plaintiff, awards lie in the range of $5,000-$10,000. The following cases are instructive:

*    In Reiter, the plaintiff testified to a loss of self-esteem, stress, anxiety, and physical manifestations such as his body feeling "clammy," as well as distress caused by demeaning office conditions, isolation and exclusion from office peers. **2003 WL 22271223, at \*5, 8.** In the absence of evidence detailing the severity, duration or consequences of this mental suffering, or of any disruption of plaintiff's family or personal life, the court held that the $140,000 jury award was shocking excessive and ordered a remittitur reducing the award to $10,000. Id. At \*11.

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 49

*   In  Borja-Fierrov.GirozentraleViennaBank,  plaintiff
    testified only briefly about his mental anguish and made
    a single visit to a psychologist. 81 Civ. 8743, **1994 WL
    240360, at \*3 (S.D.N.Y. May 27, 1994)**. The court held
    that in the "vast majority" of similar cases, courts
    found awards of $5,000 to $10,000 to be appropriate, and
    ordered the parties to retry the case unless plaintiff
    agreed to a remittitur of $15,000. **Id. At #3-4.**

*   In Fowler v. New York Transit Authority,the court
    surveyed numerous damages awards, and noted that the
    range for basic mental anguish claims in discrimination
    and retaliation suits ranges from $5,000 to $30,000. 96
    Civ. 6796, **2001 WL 83228, at \*13 (S.D.N.Y. Jan. 31,
    2001)**. Fowler suffered emotional distress, anxiety,
    stress, tension headaches and vomiting; these injuries
    were corroborated by numerous visits to doctors and a social
    worker psychotherapist. **Id. At \*10-12**. In light of these
    injuries, the Court ordered the parties to retry the case
    unless plaintiff agreed to a remittitur reducing the jury
    award from $50,000 to $25,000. **Id. At \*15.**

Even the minimal injuries described in the cases listed above
exceed plaintiff's injuries in this matter. Plaintiff did not
consider suicide, or visit a psychotherapist, or suffer the other
problems noted in the cases above. Accordingly, a proper award in
this case should be within the $42,000.00 range of the "vast
majority" of cases. See Borja-Fierro, 1994 WL 240360, at \*3-4. An
analysis of cases in which plaintiffs presented evidence of more
significant injuries reinforces this conclusion, for those cases
involve much more serious harm than plaintiff suffered in this
case, yet resulted in awards much lower than $200,000. See, e.g.,
Bick v. City of New York, 95 Civ. 8781, 1998 WL 190283, at \*23-27
(S.D.N.Y. Apr. 21, 1998) (court directed remittitur of award from

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 50

$750,000 to $100,000 where plaintiff presented evidence of mental anguish and despair, mental counseling by the police department "Early Intervention Unit," and 45 sessions with a social work psychotherapist who prescribed anti-anxiety medication); Trivedi, 1996 WL 724743 at *9 (reducing $700,000 award to "generous" $50,000, where no evidence of psychological counseling but plaintiff testified he felt insulted, indignant, unhappy and upset); Marfia v. T.C. Ziraat Bankasi New York Branch, 903 F. Supp. 463, 467, 471 (S.D.N.Y. 1995) (letting stand $100,000 jury award for plaintiff who tried to commit suicide after workplace harassment), rev'd on other grounds, 100 F.3d 243 (2d Cir. 1996); Hill v. Airborne Freight Corp., 212 F. Supp. 2d 59, 73-74 (E.D.N.Y. 2002)(reducing verdicts to between $20,000 and $75,000 where evidence proved plaintiffs lost their homes, divorced, sought psychological counseling, began drinking more).

Given plaintiff's absolutely minimal damages, if any, the jury's $500,000 verdict was so grossly excessive and outside the range of verdicts for comparable facts as to "shock the judicial conscience." See Petramale, 847 F.2d at 1012-13. If plaintiff's injuries warrant a damages award at all, it should be no more than in the neighborhood of $42,000.00, and the Court should order a remittitur in no more than that amount. (See Shea v. Icelandair, 925 F. Supp. 1014, 1022-25 (S.D.N.Y. 1996)), in which the district

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 51

court remitted a $250,000 jury award to $175,000. In that case, the plaintiff proved that he had suffered serious physical injuries, including hospitalization for a heart condition and aggravation of the symptoms of Parkinson's disease. <u>See</u> <u>Shea,</u> 925F. Supp. At 1019, 1022-24. Shea' doctor testified that both of these physical conditions were "definitely" linked to work-related stress. Id. In addition, the court found that Shea suffered "profound and lasting" mental anguish and humiliation. Id. At 1028. Even in those circumstances, the court reduced Shea's damages to $175,000, much less than the jury verdict awarded to plaintiff in this case. The facts of <u>Shea,</u> when compared to those in this case, should instruct the Court to order a remittitur of the award to no more than $42,000.00, considering that <u>Shea</u> is a 1996 case.

In <u>New York City Transit Auth. V. State Div. Of Human Rights,</u> 581 N.Y.S. 2d 426, 428-29 (App. Div. 2d Dept. 1992), the court sustained a $450,000 compensatory damages award for plaintiff's mental anguish after "the most shocking instance of abuse" including four intentional acts of sex discrimination, one of which involved failure to accommodate a pregnancy that may have led to miscarriage, and where the court found sufficient evidence that plaintiff's mental anguish would last her entire life.

The dramatic circumstances and injuries suffered in the foregoing cases have nothing in common with the minimal, harm

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 52

claimed by plaintiff here. Indeed, the damages awards in those
cases confirm that Morales should receive only the most minimal
award, if any. Accordingly, Postal seeks a remittitur in the
neighborhood of $42,000.00.

Plaintiff's evidence did not rise to the legal level required
by case law from which a reasonable person in the same
circumstances would net $500,000.00 as a result of defendant's
actions. Plaintiff's evidence showed him to be a seasoned window
clerk who was a fighting union steward for many years with ample
experience in union matters and as a postal federal employee. This
strongly suggests that, by his training and experience, he was well
equipped with an above average thick skin to tolerate remarks,
innuendos, ridicule, teasing, offhand comments and incidents, to
include strong labor disputes in the workplace. (Suarez v. Pueblo
International, Inc., 229 F.3d 49, 54 (l$^{st}$ Cir. 2000)). "Workplaces
are rarely idyllic retreats, and the mere fact that an employee is
displeased by an employer's act or omission does not elevate that
act or omission to the level of a materially adverse employment
action." (Blackie *v.* State of Maine, 75 F.3d 716, 725 (l$^{st}$ Cir.
1996)).

In Machesney v. Bruni, 905 F. Supp. 1122, 1130 (D.D.C. 1995),
the district court observed that

> Motions for a new trial are addressed to the sound
> discretion of the trial court. Rule 59 recognizes that it

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 53

> is the duty of the trial judge to set aside a verdict and
> grant a new trial where the verdict does not comport with
> the interests of justice.
>
> In ruling on a motion for a new trial, the trial judge
> has a greater degree of discretion than when ruling on
> amotion for a judgment as a matter of law. Even if the
> evidence in support of the verdict is substantial, the
> trial judge may order a new trial if the verdict is
> against the clear weight of the evidence, if the damages
> awarded are excessive, or substantial errors occurred
> during the proceeding.

(Citations omitted.)

For the reasons set forth above, the jury's verdict in favor of plaintiff's claims is against the clear weight of the evidence. If the Court decides not to enter judgment as a matter of law on one or more of plaintiff's claims, defendant respectfully moves for entry of an order for a new trial on liability with respect to such claims. This request is based upon the lack of a sufficient evidentiary basis for the jury's finding.

The jury completely disregarded the Court's Jury Instructions, particularly the ones as to the exclusivity of the three claims, adverse actions and damages not being set based on speculation and unreasonableness. (**D.E. 419, pages 254-261**).

Further, the $500,000 in compensatory damages awarded by the jury is excessive and a new trial on damages relating to that claim is also warranted.

> In assessing whether an award is excessive, the Court
> should determine if the size of the verdict is beyond
> reason, if it "shocks the conscience" of the court, or if it

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 54

> represents a "miscarriage of justice." The Court should
> determine if the verdict is beyond that which a
> reasonable jury could have properly awarded and not
> simply whether the judge would have awarded less.

Machesney v. Bruni, supra, 905 F. Supp. At 1131 (citations

omitted). In this case, plaintiff's claim of compensatory damages

stems from the alleged humiliation, anxiety, and depression, that

he reported as a result of the actions complained of. However,

there was no evidentiary basis for any reasonable jury to award

$500,000 in compensatory damages to this plaintiff.

On its face, the $500,000 figure chosen by the jury also

strongly suggests that the jury used some sort of inappropriate

mathematical formula which was not in evidence in this case. In the

case of Binder v. Long Island Lighting Co., 847 F. Supp. 1007

(E.D.N.Y. 1994), aff'd in part and rev'd in part, 57 F. 3d 193 (2nd

Cir. 1995), the district court set aside a $497,738 jury award in

an age discrimination case not only on the ground that it was

"grossly excessive," but also because

> The fact that the jury reached the very precise amount of
> $497,738 calls the basis of the award into question. The
> number looks to be the result of specific calculation;
> yet the jury had no evidence upon which to base such a
> calculation. This award ... must be set aside, and a new
> trial is awarded on the issue of compensatory damages for
> pain and suffering.

847 F. Supp. At 1028.[3]

--------

[3] Though the Second Circuit ultimately reversed the district court's j.n.o.v., it found that
the remittitur of the pain and suffering award to 45,000 was "supported by the evidence" and

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 55

Where a new trial is warranted because the amount of damages awarded by the jury was excessive, "the usual practice is to require the plaintiff to consent to a remittitur as a condition for a denial of a motion for a new trial." Thomas v. Potomac Electric Power Co., 266 F. Supp. 687, 694 (D.D.C. 1967). A jury verdict so excessive as to justify the remedy of remittitur occurs when (1) the verdict is beyond all reason, or . . is so great as to shock the conscience" or (2) the verdict "is so inordinately large as to obviously exceed the maximum limit of a reasonable range within which the jury may properly operate."Jeffries v. Potomac Development Corp., 822 F.2d 87, 96 (D. C. Cir. 1987). Further,

> In fixing the remittitur amount, the court is to reduce the damages to the maximum amount that the jury could have properly awarded.

Machesney v. Bruni, *supra,* 905 F. Supp. At 1133.

Though each case must be decided on its own merits, it may be instructive to continue reviewing other compensatory damages awards in Title VII cases in addition to the ones previously mentioned, and compare the fact patterns in those cases to this one. As additional comparison, in Carter v. Duncan-Higgins Ltd., 727 F.2d 1225, 1238 (D.C. Cir. 1984), a Section 1981 case, the Court of Appeals upheld a $10,000 award based upon a showing that plaintiff

---

upheld that portion of the district court's decision.  57 F.3d at 202.

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 56

in that case suffered 17 months of "incessant humiliation,
harassment, and feelings of isolation."In Hunter v.allis-Chalmers
Corp. Engine Div., 797 F.2d 1417, 1425 (7th Cir. 1986), a $25,000
award in a race discrimination and retaliation case was held not to
be "grossly excessive" given that plaintiff's co-workers glued his
tool box shut, sabotaged engines he was supposed to test, and wrote
racial graffiti on the bathroom walls and in a company bulletin.
The female plaintiffs in Hal v. Gus Const. Co., Inc., 842 F.2d 1010
(8th Cir. 1988) received damages ranging from$15,000 to $20,000
apiece after suffering verbal sexual abuse, offensive pornographic
materials, and having male co-workers urinate in drinking water. A
$50,000 award to a plaintiff dying of cancer was upheld when he was
fired because of his disability in U.S.E.E.O.C. v. AIC Security
Investigations, Ltd., 55 F.3d 1276 (7th Cir. 1995). Given the facts
of this case, and the evidence supporting any award of compensatory
damages, defendant respectfully submits that any denial of his
request for a new trial should be conditioned upon plaintiff's
acceptance of a remittitur reducing compensatory damages in this
case to no more than a sum in the neighborhood of $42,000.00.

The reduced damage award for $300,000 is still excessive, not
supported by the evidence, speculative, and still results in a
miscarriage of justice. Further, such an award would lead to a
punitive award -- a result precluded by the 1991 Act. **See 42 U.S.C.**

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 57

**§1981a(b)(1).** As noted above, in establishing the caps on compensatory damages, Congress sought to control excessive damage awards by juries. As the Seventh Circuit observed in <u>Hennessy v. Penril Datacomm Networks, Inc.,</u> 69 F.3d 1344 at 1355 (1995), "[i]t would seem logical, therefore, that the maximum permissible award [under the caps] .. *should be reserved for egregious cases.*" (Emphasis supplied). <u>See also,</u> <u>Hogan v. Bangor and Aroostook R.R.,</u> 61 F.3d 1034 at 1037 (1st Cir. 1995) ("An award of compensatory damages is excessive if it exceeds a rational appraisal of the damages actually incurred").

In the event that only that part of plaintiff's harm properly attributable to defendant's actions is recoverable, it should not exceed the six(6) month period as testified by Dr. Ramon Fortuno, defendant's expert witness. As the Fourth Circuit noted in <u>Hetzel v. County of Prince William,</u> 89 F.3d 169, 172 (4thCir. 1996), <u>cert. denied.,</u> 117 S. Ct. 584, 136 L. Ed. 2d 514 (quoting <u>Rodgers v. Fisher Body Div.,</u> 739 F.2d 1102 (6thCir. 1984)), the jury was presented with insufficient evidence "to place a high dollar value on plaintiff's emotional harm." . The <u>Hetzel</u> Court noted that in a variety of cases in which substantial awards for $25,000 or more were awarded for intangible injuries such as emotional distress, "involved plaintiffs that either were the victim of invidious discrimination, suffered serious -- often permanent physical

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 58

injuries, or were discharged and had difficulty finding alternative employment." **Id**. Far from this mean is this case and the evidence. An award of over $100,000.00, even after remittitur, would still result in a serious miscarriage of justice. An award of substantial compensatory damages must be proportional to the actual injury incurred. Hetzel at 173. In this case it is no more than a sum in the neighborhood of $42,000.00.

## VIII. BACK AND FRONT PAY

There is no entitlement to the **equitable** remedy of back pay. The evidence in the light most favorable to plaintiff only covered three claims causing minimal injury at best. To award back pay the Court would have to find that these three acts caused plaintiff to be constructively discharged.  The Court does not have any evidence before it as to constructive discharge and the "COA" expressly excluded it from the scope of its remand order.

If the Court relies on the fact that there was an OWCP award for 11 years to grant backpay, it would be in error. The OWCP award covered the plethora of actions alleged by plaintiff. Dr. Hoyos explained that plaintiff's Adjustment Disorder. was caused by at least ten stressors. His testimony was that, at most, two of the claims were involved and furthermore equated them as one stressor. There is simply not enough to even consider back pay in this case and any award of the difference between the back pay and the OWCP

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 59

payments should be overturned.

The defendant reaffirms the arguments set forth at **D.E. 422** in opposition to plaintiff's requests for back pay, front pay and reinstatement. In addition, it is respectfully requested from this Court that its Opinion and Order, at **D.E. 430,** be modified to be in line with the arguments previously set forth as to the setting aside of the jury verdict. If this Court is to grant any back pay, it should be for only six months. This is consonant with the evidence and the reasonable person standard previously discussed. Back pay for eleven years would not only be against the evidence, but against the Court of Appeals Remand Order and the case law relative to back and front pay. Defendant's liability, if any, should be restricted to the six (6) months previously mentioned.

WHEREFORE, the defendant respectfully requests from this Court that it set aside the jury verdict as herein above set forth and grant defendant's motions with costs and expenses to plaintiff.

I HEREBY CERTIFY that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Miguel Miranda, Esq.

Angel David Morales-Vallellanes v USPS
Civil No. 97-2459(GAG)
Page 60

RESPECTFULLY SUBMITTED in San Juan, Puerto Rico this 30[th]day

of May, 2008.

                              ROSA EMILIA RODRIGUEZ-VELEZ
                              United States Attorney

                              *S/Fidel A. Sevillano Del Rio*
                              Fidel A. Sevillano Del Rio
                              Assistant United States Attorney
                              U.S.D.C.-P.R. No. 117812
                              Torre Chardon, Suite 1201
                              350 Chardon Street
                              San Juan, Puerto Rico 00918
                              Telephone:    (787) 766-5656
                              Fax  (787)-766-6219