IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANGEL DAVID MORALES VALLELLANES, **Plaintiff,** <br><br> v. <br><br> JOHN POTTER, UNITED STATES POSTMASTER GENERAL, ET ALS., **Defendants.** | CIVIL NO. 97-2459 (GAG)(CVR) <br><br> DAMAGES BASED ON RETALIATION AND DISCRIMINATION; PROHIBITED PERSONNEL PRACTICES; UNFAIR LABOR PRACTICES; BREACH OF COLLECTIVE BARGAINING AGREEMENT |

**REPLY TO DEFENDANT'S MOTION UNDER F.R.C.P. 50 AND 59(a) and (e)**

**TO THE HONORABLE COURT:**

**COMES NOW**, Plaintiff, Angel David Morales-Vallellanes, through the undersigned attorneys, very respectfully submits its Reply to Defendant's Motion (Docket 437) Under F.R.C.P. 50 and 59(a) and (e):

There is a maxim in logic that says: *If an argument begins with a wrong premise then the whole argument is wrong*. Defendant intentionally based his whole motion in a wrong premise to mislead this Honorable Court; therefore its whole motion is completely wrong as it will be shown. The Court of Appeal (COA) decision was that *"Morales cause of action is limited to those discrimination and retaliation allegations in his amended complaint that were previously the subject of a formal complaint"*. The COA then proceeded to incorrectly summarized Morales allegations in three issues that were supposedly in his two formal complaints (perhaps some kind

of typo or human error, we will never know). In addition there were other allegations in Morales's two EEO formal complaints that were not quoted by the COA. All of the above were shown and explained to this Honorable Court who acknowledged Plaintiff position before the beginning of trial and in presence of Defendant's counsel Fidel Sevillano who made no objection at that time or during all the trial. For instance and just to mention just one of the incorrect quotes; the COA incorrectly quoted that *"Morales's allegations that Job Bid #2541417 was posted with Thursday/Sunday rest days rather than Saturday/Sunday rest days in retaliation for* **plaintiff's OSHA complaints"**. As the first EEO complaint shows, Plaintiff never alleged that said position was changed for his OSHA complaints **but for his previous EEO complaints** (see Plaintiff trial exhibit 23 and joint exhibits VI, IX and XVIII). Incredibly, Defendant intentionally dedicates a great effort and a big part in his motion to allege why Plaintiff is not protected under the OSHA statutes trying in this way to mislead this Honorable Court. All allegations made by Defendant regarding OSHA are nonsense, useless and meritless since they are not part of Plaintiff EEO complaints. It is non-sense to defend for issues that are non-existent like the OSHA issue; Plaintiff is not going to spend time in this. Moreover, by the time of the COA decision, full discovery was not been allowed by the District Court. Discovery later helped Plaintiff to prove that all discriminatory and reprisal actions were directly related to Plaintiff two formal EEO complaints.

## Prima Facie Case for Retaliation

To prove retaliation, Plaintiff had to establish that (1) He engaged in protected conduct; (2) He experiences an adverse employment action; and (3) There is a causal connection between the protected conduct and the adverse employment action. The burden of making out a prima

facie case is "not onerous." Burdine, 450 U.S. at 253, 101 S.Ct. at 1094; see also Villanueva v. Wellesley College, 930 F.2d 124, 127 (1st Cir.) (the prima facie showing is "quite easy to meet"), cert. denied, --- U.S. ----, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991). There is no requirement for the Plaintiff to present such **"smoking gun"** evidence; circumstantial evidence can suffice. See Mesnick v. Gen Elect. Co. 950 F.2d 816, 828 (1st Cir.1991). Above all, courts will look at evidence of discrimination not in splendid isolation, but as part of an aggregate package of proof offered by the plaintiff. Olivera, 922 F.2d at 50. In this case, Plaintiff also have the "smoking gun" evidence. There was ample testimonial evidence that Plaintiff's supervisor Enrique López had no fear to hide his hate against Morales and was constantly announcing that he was very angry because Morales has filed EEO complaints against López; *(Plaintiff witness Alberto Ortíz testified that manager Enrique López was taking the position that Mr. Angel Morales was giving him too many problems with the EEO cases (D.E. 417 page 93 line 16-21); On August 24, 1996, Plaintiff manager Enrique López threatened Plaintiff and a Plaintiff witness's Raymond Ruiz because according to what Supervisor López said; Plaintiff has filed two E.E.O. complaints against manager Enrique López (D.E. 417 pages 66-69); Plaintiff witness Radamés Sierra testified that a position that Morales was interested was changed in reprisal against Plaintiff (D.E. 417 pages 11-13); Plaintiff's witness Raymond Ruiz testified that he was present when supervisor Enrique López said that from now on, because an EEO had been filed against him (López) everybody now has to be punching their time cards for the coffee breaks (D.E. 417 page 72 lines 9-24); "the truth is that Angel David Morales was being persecuted due to some complaints and…well complaints related to Mr. Enrique López" (D.E. 417 page 77 line 23 thru page 78 line 5).* There is also joint exhibits VI, IX and XVIII also Plaintiff trial exhibits 23, 25 and 33. With all the facts mentioned above, Plaintiff proves that

point number one and three of the prima facie case (that he engaged in protected conduct and there is a causal connection between the protected conduct and the adverse employment action) since it is recognized by Plaintiff's supervisor Enrique López that he was well aware of Plaintiff protected activities (EEO complaints) and said supervisor publicly announced that his actions against Plaintiff were due to Plaintiff EEO complaints.

Now lets go to the Prime Facie case number two, which is; whether Plaintiff experienced an adverse employment action. Before Plaintiff filing his EEO complaints, Plaintiff was a very good employee according to Defendant; in fact he was so good that the US Postal Service own counsel Fidel Sevillano acknowledged that in the trial; *"he was a good employee. He was a good employee. You are going to see Certificates of Appreciation of a job well done. Etcetera"* (see D.E. 421 page 20 lines 10-14). Plaintiff has several awards, recognition letters and certificates of appreciation (see trial joint exhibit I). Pedro Reyes, who was Plaintiff supervisor and manager for the years 1990-95 before the EEO complaints, acknowledged that Plaintiff was *"a very good employee, efficient"* (see D.E. 416 page 139 line 4-5), *"he was given an award or a letter of recognition, given to him, at least one time, for the work performed during the year and during the Christmas season"* (see D.E. 416 page 148 lines 7-10), *"This document is a recommendation letter made to him after he applied for a position as Postal Inspector. He passed the Postal Inspector test."* (see D.E. 416 page 150 lines 5-8). The above evidence, is Plaintiff performance and history **before** Plaintiff filed his EEO complaints, now lets go to actions made by the US Postal Service **after** Plaintiff filed his EEO complaints, also lets see Defendant's allegations that: *"V. NO REASONABLY JURY COULD FIND THAT MORALES WAS A VICTIM OF RETALIATION"* see Defendant's Motion D.E. 437 page 17 and that: *" VI. THERE IS NO LEGALLY SUFFICIENT BASIS FOR THE VEREDICT BECAUSE THERE WAS*

4

*INSUFFICIENT EVIDENCE OF A CAUSAL CONNECTION BETWEEN THE ADVERSE ACTIONS AND THE PROTECTED ACTIVITY"* see Defendant's motion D.E. 437 page 30:

1) On July 1995 an EEO settlement was reached in favor of Plaintiff for an EEO complaint that Plaintiff have filed against supervisors Juan Rodríguez and Manager José Sepúlveda (see joint exhibit VII item 9, joint exhibit IX and VI Plaintiff exhibit 23, also D.E. 421 page 62-64).

2) During the following months Plaintiff began to receive threats from other employees and management (see D.E. 421 pages 62-64 *"He (Rodríguez) started to treat me differently" "The treatment he gave me was hostile by Juan Rodríguez" "Q. And before that, how was the treatment that you received from him… before the EEO? A. I didn't receive any mistreatment because I had not filed anything" p.63 lines 1-13*; *"But when it was settled in my favor, they got worse. And strange and weird things started to happen to me which, at that time, I did not have a clear picture of what going on. Q. How strange? Can you… A. Like, for example, I started receiving threats from other employees, for free (sic)" p.64 lines 2-22; "Things, then got higher in tone. They became quite violent" p.65 line 23 thru p.66 line 3.*

3) On February 15, 1996, Plaintiff filed an EEO pre-complaint against José Sepúlveda, Juan Rodríguez and later supervisor Enrique López based on retaliation for the previous EEO complaint. Said complaint was regarding a job position that had Saturday and Sunday as days off and was changed intentionally in reprisal for Plaintiff previous EEO complaint (see joint exhibit VI, IX and Plaintiff exhibit 23 and 83, also see Plaintiff witness testimony of

Radamés Sierra D.E. 417 pages 11-13; *"I, Radamés Sierra, employee at Caparra Heights, believe that the posting of position #2541417 was changed deliberately in reprisal towards Angel D. Morales." P.11 lines 5-9*)

At all times, Management had knowledge of Plaintiff filing his EEO complaints since the EEO office contacted them (see D.E. 421 page 88 line 19 thru page 89 line 4 *"Mr. Sevillano: Objection your honor. That calls for a conclusion. About management knowing" "The court: According to his testimony and the file sent by EEO, it was received by Mr. Enrique López and José Sepúlveda, who are management. So the objection is overruled"*)

4)     On March 6, 1996, all of a sudden and for the first time in Plaintiff Postal life, a letter appeared that began a defamatory campaign against Plaintiff (promoted by Supervisor Enrique López as later will be shown) alleging that Plaintiff was a homosexual that give kisses and massages to male employees. Most of the signatures in said letter are from employees that later were promoted to supervisors. Nobody ever filed a sexual harassment complaint against Plaintiff (joint exhibit X).

5)     On March 23, 1996 Plaintiff received a letter of warning by Supervisor Enrique López regarding Plaintiff's coffee breaks. Plaintiff never has had problems with his coffee breaks (see joint exhibit II; also see D.E. 421 page 100 line 15-18)

6)     On March 27, 1996 the Letter of Warning was eliminated by negotiations with the Union (see joint exhibit II page 2). **Supervisor Enrique López became very angry and said that he was after Plaintiff because of the EEO**

**complaints** (see D.E. 421 page 101 line 21 thru page 102 line 6)

7) On April 3, 1996 Plaintiff filed a formal EEO complaint based on retaliation regarding the same reasons (the change of days off for the job position) mentioned in the above item #2. Said complaint was against supervisor Enrique López, Juan Rodríguez and manager José Sepúlveda (see Plaintiff trial exhibit 23).

8) On April 9, 1996 supervisor Enrique López made a meeting to establish a new policy for the coffee and lunch breaks. This was pretext to apply the new policy only to Plaintiff (Plaintiff witness Raymond Ruiz testified that Plaintiff *"was always punished for the types of activities that everybody else used to do"* (D.E. 417 page 74 line 10, see also Plaintiff trial exhibit 25 and 33).

9) On April 25, 1996 Plaintiff filed another EEO pre-complaint (the second during 1996) regarding the application of the new break policy (see Plaintiff trial exhibit 25 and 33).

10) On May 18, 1996 Supervisor Enrique López, reunited all clerk employees of Caparra Station and said in an angry manner that because somebody has filed an EEO complaint now everybody must use the timecards and hit them each time an employee takes a break. With this action supervisor López tried to put employees against Plaintiff since it was an unpleasant action (see Plaintiff trial exhibit 33, see also Plaintiff's witness Raymond Ruiz testimony that he was present when supervisor Enrique López said very angry that from now on, because an EEO had been filed against him (López) everybody now has to be punching their time cards for the coffee breaks (D.E. 417 page 72 lines 9-24);

also see (D.E. 416 page 18 line 7-18)

11)     More or less on the same date (May 18, 1996) supervisor Enrique López removed Plaintiff from his regular duties as a Business Reply mail clerk, Postage Due clerk and Express Mail clerk that Plaintiff had as a reasonable accommodation due to a job related injury that Plaintiff has on his right arm. In that manner, Plaintiff right arm condition began to get worse (see Plaintiff trial exhibit 33, also Plaintiff witness Raymond Ruiz testimony at D.E. 417 page 76 lines 12-19; "*Well, several times Mr. Angel David Morales was relieved of his usual duties in his job and these duties were given to others. And, these were duties that he customarily performed." "at the same time Enrique López used to say that he had not work for him".*) Also contrary to Defendant's allegations as a pretext that the removal of Morales's job was to rotate employees, the evidence presented at trial was on the contrary; "*Normally they did not rotate"* (see D.E. 417 page 48 line 12, plaintiff witness Howard Hall); "*Q. And the business reply duties, as you mentioned before, were done by Mr. Angel David Morales? Is that correct? A. Yes"* (see D.E. 417 page 48 lines 21-24); "*Q. So, besides Angel David Morales and later Mayra Irene, do you know any other person, if you can recall from your co-workers as Window Clerks, who rotated or did any business reply at the Caparra Station? A. No, when I arrived there, Angel David Morales was doing that"* Plaintiff witness Howard Hall at D.E. 417 page 50 lines 1-8, also see D.E. 416 page 11-14)

12)     On July 6, 1996 Manager Enrique López and two coworkers punctured one tire of Plaintiff's car. Plaintiff reported this incident to US Postal Service General

Manager John Malavé and the Postal Inspection Service to no avail (see Plaintiff trial exhibit 33 and Plaintiff Exhibit LXXXIV *"That on two of such reunions I heard Manager Enrique López, employees William Morales and Eliezer Báez when they admitted to have punctured the tires of Mr. Angel David Morales automobile. Also I heard when they admitted they poured sugar into the fuel tank of Mr. Angel David Morales' car"* Samuel Cora Sworn Statement also see D.E. 416 pages 8, 9, 14, 15, 80, 81-84, 128-129).

13) On July 10, 1996 again Manager Enrique López and two coworkers punctured two tires of Plaintiff's car. While Plaintiff change the tires some employees were laughing and making fun of Plaintiff. Again, Plaintiff reported said incident to US Postal Service General Manager John Malavé and the Postal Inspection Service to no avail (see Plaintiff trial exhibit 33 and Samuel Cora Sworn Statement Plaintiff Exhibit LXXXIV also D.E. 416 pages 8, 9, 14, 15, 80. 81-84, 128-129).

14) On August 21, 1996 Plaintiff began to see a psychologist from the Employee Assistance Program of the US Postal Service (see D.E. 416 page 57 line 18 thru page 58 line 3).

15) On August 24, 1996 Supervisor Enrique López reunited Plaintiff and co worker Raymond Ruiz in order to warn them that he is going to watch over them very close but especially to Plaintiff. López said that he was going to check their coffee breaks. Also he said to Plaintiff in an angry manner *" **You think you are very smart because you filed an E.E.O. against me."*** (see Raymond Ruiz testimony at D.E. 417 page 67 line 14 thru page 69 line 25,

*"Supervisor Enrique López reunited me and co-worker Angel D. Morales at the Caparra Station Manager's Office, in order to warn us that he was going to watch over us very closely, and especially to co-worker Angel D. Morales. He said that he was going to check our coffee breaks. However, he doesn't do that with other employees. Also, he said, in a very bothered and angry manner to employee Morales, 'You think you are very smart because you filed an EEO against me'. Employee Morales told him several times that 'Please, do not mention the EEO issue in this meeting because that only shows that you make your decisions against me because of the EEO issue" p.67 lines17 thru p.68 line 8; "Q. And what happened? A. Well, he yelled at us, he threatened us, and he said that he was going to be watching us really closely from now on. And, he repeated, time and time again, that Angel David Morales felt he was so smart because he has filed an EEO against him" p.69 lines13-19,* also see D.E. 416 page 16 line 6 thru page 17 line 17)

16) On August 29, 1996 Plaintiff began to receive medical treatment due to his right arm condition that has worsened since the removal of Plaintiff regular duties as Business Reply Mail clerk in retaliation for Plaintiff EEO complaints (D.E. 416 page 32 line 17 thru page 33 line 2)

17) On September 5, 1996 Plaintiff filed his formal EEO complaint (the second in 1996) for discrimination and retaliation (see Plaintiff trial exhibit 33, also D.E. 416 page 4-19 line 21)

18) On October 26, 1996 supervisor Enrique López continued to harass Plaintiff asking private medical evidence for Plaintiff right arm condition, however

Supervisor López did not ask medical evidence to other employees that has reasonable accommodation in Caparra Station (see D.E. 416 page 23 line 20 thru page 24 line 11 also see trial joint exhibit III)

19)     On November 7, 1996, Supervisor Enrique López continued to harass Plaintiff asking for medical evidence that Supervisor López did not requested to other employees in Caparra Station (see trial joint exhibit III)

20)     On December 6, 1996 OSHA Inspectors Efigenio Rivera and Madeline Medina went to Caparra Station to make an inspection due to unsanitary conditions existent in Caparra Station due to a complaint Plaintiff made before OSHA. Inspector Efigenio Rivera testified at trial the bullying and intimidating behavior of Supervisor Enrique López and that Supervisor López just wanted to know who was the one that made the complaint to OSHA in order to take drastic measures against the employee. In addition, OSHA inspector Rivera verified that Supervisor López was not telling the truth regarding the corrections allegedly made by the US Postal Service in Caparra (see D.E. 418 pages 25-30)

21)     On December 7, 1996 Supervisor Enrique López and Manager José Sepúlveda received from the EEO office a letter requesting to fill affidavits regarding Plaintiff second EEO formal complaint filed on September 5, 1996. This unleashed a storm of discrimination against Plaintiff during this month (December 1996) and the next two months; January 1997 and February 1997 (see D.E. 416 page 32 line 4-6; D.E. 419 page 123 line 23 thru page 127 Supervisor Enrique López making reference to joint exhibit V; also trial joint

exhibit V)

22)    On December 10, 1996, employee Antonio López later promoted to acting
supervisor continued the defamatory campaign against Plaintiff alleging that
Plaintiff was a homosexual that give kisses and massages to male employees.
However, Antonio López was discredited or impeached during the trial since
he accepted that he never saw Plaintiff touching or massaging any employee
notwithstanding that he has signed several letters telling that Plaintiff did it
(see D.E. 419 page 87-97)

23)    On December 13, 1996 Plaintiff received a letter of Warning from Supervisor
Enrique López regarding the medical evidence requested to Plaintiff (see trial
joint exhibit III; also see Plaintiff witness Alberto Ortíz testimony; D.E. 417
page 93 line 16-21; *Mr. Ortíz was requesting Mr. López why he was doing
that. And, Mr. López was taking the position that Mr. Angel Morales was
giving him too many problems with cases in the EEO and all type of cases.
"He (López) received the EEO papers on December 7, and this letter is dated
December 13"* plaintiff testimony at D.E. 416 lines 4-6)

24)    On December 20, 1996, Plaintiff received a letter of suspension for 7 days
from Supervisor Enrique López because Plaintiff had been wearing for several
years a jacket with the US Postal Service official logo. Plaintiff was the only
employee that used an official postal jacket. All of a sudden, Supervisor
Enrique López did not find Plaintiff postal jacket a proper one to use.
However, during the trial testimonial evidence showed that there were other
employees that used to wear jackets with logos of private companies not

related to the US Postal Service and did not received any discipline; *(see trial joint exhibit IV; also see D.E. 417 pages 70-72 where Plaintiff witness Raymond Ruiz testify that he used to wear a jacket from a company called Frito Lay which has its logo but never received any disciplinary action notwithstanding Supervisor Enrique López saw him wearing it on a daily basis; also see Plaintiff witness Howard Hall testimony where he testify that there were other employees wearing military jackets or any other kind of jacket, see D.E. 417 page 51 line 17 thru page 53 line 24; also se D.E. 416 pages35-39)*

25)    On December 26, 1996 Supervisor Enrique López filled out the EEO investigative affidavit regarding Plaintiff second EEO complaint filed on September 5, 1996 which was sent by the EEO office and received by López on December 7, 1996 (see D.E. 416 page 32 line 4-6; D.E. 419 page 123 line 23 thru page 127 Supervisor Enrique López making reference to joint exhibit V; also trial joint exhibit V)

26)    On January 4, 1997 Manager Enrique López and two coworkers poured sugar in the fuel tank of Plaintiff's car. Again, Plaintiff reported this incident to the US Postal Service General Manager John Malavé and the Postal Inspection Service to no avail (see Samuel Cora sworn statement Plaintiff Exhibit LXXXIV *"Also I heard when they admitted they poured sugar into the fuel tank of Mr. Angel David Morales' car"* also D.E. 416 page 57 lines 4-6 and pages 128-129).

27)    On January 10, 1997 Supervisor Enrique López expelled Plaintiff from

Caparra Station alleging that he did not have work for Plaintiff (see Raymond Ruiz testimony; *" Well, several times Mr. Angel David Morales was relieved of his usual duties in his job and these duties were given to others. And, these were duties that he customarily performed." "at the same time Enrique López used to say that he had not work for him"* (D.E. 417 page 76 lines 12-19); also see D.E. 419 page 185 line 25 thru page 186 line 4) , Supervisor Enrique lópez testimony; *"Q. When you sent Mr. Angel David Morales, on January 10, 1997, to go home, it was because you didn't have any work for him? Is that correct "Yes" or "No"? A. Yes"* also see D.E. 419 page 176 line 3-11)

28)     On January 18, 1997, Plaintiff began his seven days suspension regarding the postal jacket issue (see trial joint exhibit IV)

29)     On January 21, 1997, Plaintiff came to work due to a letter sent by Supervisor Enrique López to Plaintiff telling that Plaintiff should report to Caparra Station, notwithstanding that letter, Supervisor López expelled again Plaintiff from Caparra Station (see trial joint exhibit XIII, also D.E. 416 pages 40-42 line 17)

30)     On January 28, 1997, Supervisor Enrique López called the Union office to object Plaintiff certification as a Union Shop Steward (see Plaintiff trial exhibit 56; also Plaintiff witness testimony Frank Trinidad at D.E. 417 pages 187-192 *"Oh, the call was… he was infuriated as to being named the shop steward for the Caparra Heights Station. And he started saying things about Mr. Morales" "Q. Okay, do you receive, in the local, in the Union, calls from management? A. No, that's the first time in the amount of years that I've as an official of the*

*Union, that type of call from anyone in management making that type of remarks, derogatory remarks, about any shop steward"*

31) On February 1, 1997 acting Supervisor William Morales who also was involved in the vandalism of Plaintiff car and a subordinate of Supervisor Enrique López expelled Plaintiff from Caparra Station alleging that did not have work for Plaintiff, (see Plaintiff exhibit LXXXIV *"That on two of such reunions I heard Manager Enrique López, employees William Morales and Eliezer Báez when they admitted to have punctured the tires of Mr. Angel David Morales automobile. Also I heard when they admitted they poured sugar into the fuel tank of Mr. Angel David Morales' car"* also D.E. 416 page 56 line 3-11 and pages 128-129).

32) On February 4, 1997 acting Supervisor William Morales again expelled Plaintiff from Caparra Heights Station alleging that did not have work for Plaintiff (see Plaintiff exhibit LXXXIV also D.E. 416 page 56 line 3-11 and pages 128-129)

33) On February 20, 1997, Plaintiff was removed from Caparra Heights Station alleging that he was a Safety Hazard and allegedly a Homosexual (see D.E. 416 page 51 lines 21-24; *"Mr. López said that he was a homosexual. Q. A homosexual A. A homosexual?"* D.E. 417 page 94 lines 17-20; also see D.E. 419 pages 95-97 and 191-192 and Plaintiff trial exhibit 61)

34) Thereafter February 20, 1997, Plaintiff could not take it anymore and got sick for his **mental condition** caused by discrimination and hostile work environment. Plaintiff is under O.W.C.P. since then.

35)     Plaintiff private mail was unlawfully opened and inspected by Manager Enrique López and acting supervisor Antonio López. Again, Plaintiff reported this federal offense to the US Postal Service General Manager John Malavé and the Postal Inspection Service to no avail (see Samuel Cora sworn statement Plaintiff Exhibit LXXXIV also D.E. 416 128-129).

36)     Manager Enrique López wanted to know where Plaintiff was living (Plaintiff exhibit LXXXIV).

37)     Manager Enrique López moved Plaintiff desk to watch him constantly also Manager López spoke in a negative way about Morales in order to influence other supervisors (Plaintiff exhibit LXXXIV).

38)     Plaintiff was falsely accused as a homosexual and a safety hazard by his Manager Enrique López and acting supervisor Antonio López (D.E. 416 page 51 also D.E. 419 pages 191, 192, 95-97).

39)     Plaintiff witness Raymond Ruiz testified that Plaintiff *"was always punished for the types of activities that everybody else used to do"* (D.E. 417 page 74 line 10), *"The same year, 96. Well, several times Mr. Angel David Morales was relieved of his usual duties in his job and these duties were given to others. And, these were duties that he customarily performed." "at the same time Enrique López used to say that he had not work for him"* (D.E. 417 page 76 lines 12-19), *"the truth is that Angel David Morales was being persecuted due to some complaints and…well complaints related to Mr. Enrique López"* (D.E. 417 page 77 line 23 thru page 78 line 5).

40)     Plaintiff witness Efigenio Rivera (a former OSHA inspector) testified that the

inspection he made on December 1996 in Caparra Heights Station was **the most painful and controversial in his life due to the hostile and bullying attitude of Plaintiff Manager Enrique López.** Rivera testified that manager Enrique López just wanted to know who was the one that filed an OSHA complaint because López was going to take drastic measures against the employee who filed it (D.E. 418 pages 27-30).

41)    The US Postal Service did not investigated Plaintiff allegations notwithstanding that Plaintiff submitted evidence and sworn statement that criminal and federal offenses were committed; violating in this way its own policy of zero tolerance to violence in the workplace (D.E. 416 pages 128-129). On the contrary, the US Postal Service promoted Manager Enrique López, Mayra Irene and Antonio López to management positions.

42)    The US Postal Inspection Service did not investigate the federal and criminal offenses against Plaintiff notwithstanding that Plaintiff reported and submitted evidence to them (D.E. 416, pages 128-129).

43)    During all of the above-described incidents, the US Postal Service Equal Employment Opportunity office left Plaintiff defenseless. The USPS EEO counselors and director, did not investigate any of Plaintiff allegations nor interviewed Plaintiff witnesses (see EEO investigator testimony Carmen Rosa at D.E. 418 p.75 line 16 thru p.76 line 5 *"Q. Okay, and I ask for if, at any time, you interviewed Mr. Raymond Ruiz, Howard Hall and/or Ms. Julia Collado? A. No, I did not. Q. You did not? A. I just… I initiated the affidavits for Angel David Morales. I don't believe I initiated any other affidavits with this*

17

*particular case. Q. Okay, so, in this case in particular, even though up to October 9, 1996 that you were still the person in charge of this investigation, you did not interview those witnesses? Is that correct? A. No, I didn't interview anybody. Q. You didn't interview anybody? A. No.*).

As all of the above itemized facts shown, all of the adverse employment actions against Plaintiff were directly related to the two formal EEO complaints accepted by the Court of Appeals; *"We agree with USPS that Morales's Title VII cause of action is limited to those discrimination and retaliation allegations in his amended complaint that were previously the subject of a formal EEO complaint"* 339 F.3d 9. Also, the second requirement of the Prime Facie case, which is; whether Plaintiff experiences an adverse employment action, is fully proven. Defendant in its motion intentionally omitted all of the above facts that happened in trial. Of course, if you intentionally omit all of the above facts then nothing happened to Plaintiff and no reasonable jury would find that Plaintiff was a victim of retaliation. In fact, in his sixty (60) pages motion, Defendant made no reference to any of the exhibits presented at trial, not even the joint exhibits. In addition, Defendant only has five quotes or cites of the trial; in page 13 a quote from Defendant's psychiatrist Dr. Fortuño, in page 36 a self served quote from Defendant's counsel Fidel Sevillano, in page 45 a quote from Plaintiff psychiatrist and finally in pages 47 and 53, two quotes from this Honorable Court during the jury instructions. It seems that it is not convenient for Defendant to quote many of the trial facts and decided to "forget" the twelve (12) witnesses and all the exhibits that were presented at trial as if they never existed. Moreover, Defendant never could impeach or discredit **any** of Plaintiff witnesses not even Plaintiff. How come Plaintiff was a good employee **before** he filed the EEO complaints with awards and recognitions and all of a sudden becomes such a "bad" employee **after** he filed the complaints? The only

answer is precisely that, the EEO complaints. As shown in all of the above facts, Plaintiff has proven that any reasonable jury could find that Plaintiff was victim of retaliation and that there are legally sufficient basis for the verdict because there was more than sufficient evidence of a causal connection between the adverse actions and the protected activities.

### Plaintiff right to a De Novo case

Federal employee, in trial de novo, must have opportunity to fully develop factual background of case. Blondo v Bailar (1977, CA 10 Colo) 548 F2d 301. Title VII of Civil Rights Act of 1964, as amended by Equal Employment Opportunity Act of 1972 (42 USCS §§ 2000e et seq.), extending protection of Title VII to employees of Federal Government, gives federal employees in their actions in United States District Court against employing agency under§ 707© of Civil Rights Act (§ 2000e-16(c)), same right to trial de novo of employment discrimination claims as private employees enjoy under § 706 of Act (42 USCS § 2000e-5); this precludes United States District Court from mere fragmentary de novo considerations of his claims where court considers such consideration appropriate, and requires trial de novo, even if absence of discrimination is affirmatively established by clear weight of evidence contained in administrative record. Chandler v Roudebush (1976) 425 US 840, 48 L. Ed 2d 416, 96 S Ct 1949, 12 BNA FEP Cas 1368, 11 CCH EPD ¶ 10957. In deciding public sector Title VII action, court may consider administrative record as part of evidence before it; however, if they can establish prima facie case, complainants are entitled to a trial de novo notwithstanding results of prior administrative proceedings. Oldham v West (1995, CA8 Mo) 47 F3d 985, 67 BNA FEP Cas 77, 66 CCH EPD 43433. District Court erred in limiting its review of claim under 42 USCS 2000e-16 to administrative record, since federal employees have the same right to trial de novo

as private sector employees enjoy. Eastland v Tennessee Valley Authority (1977, CA5 Ala) 553

F2d 364, 14 BNA FEP Cas 787, 15 BNA FEP Cas 1115, 14 CCH EPD ¶ 7617, cert den (1977)

434 US 985, 54 L Ed 2d 479, 98 S Ct 611, 16 BNA FEP Cas 146, 15 CCH EPD 7951 and

(superseded by statute on other grounds as stated in McIntosh v Weinberger (1987, CA8 Mo)

810 F2d 1411, 45 BNA FEP Cas 398, 42 CCH EPD  36927) and (superseded by statute on other

grounds as stated in Drummond v Stone (1993, ED La) 1993 US Dist LEXIS 593.

## It is not necessary for Plaintiff to claim in the complaint the Hostile Work Environment cause of action

It is Plaintiff respectfully position that this Honorable Court erred when precluded Plaintiff

and Defendant to mention the Hostile Work Environment as a jury instruction just because

Plaintiff did not mention it in the complaint. Both, Defendant and Plaintiff mentioned hostile

work environment in their jury instructions (see D.E. 386 Defendant's jury instruction #9 and

D.E. 399 Plaintiff's jury instruction #5). Moreover, the Court of Appeal regarding this case

decided this issue; *"As a preliminary matter, plaintiff's failure to cite any statutory basis for*

*relief in his amended complaint complicates our review of his claims. However, under the liberal*

*"notice pleading" requirements of Rule 8 of the Federal Rules of Civil Procedure, this deficiency*

*is not fatal to plaintiff's case:*

*A complaint need not point to the appropriate statute or law in order to raise a claim for*
*relief under Rule 8.... [A] complaint sufficiently raises a claim even if it points to no legal theory*
*or even if it points to the wrong legal theory as a basis for that claim, as long as relief is possible*
*under any set of facts that could be established consistent with the allegations.*

*Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1134 (7th Cir.1992) (internal quotation marks*

*omitted); see Fitzgerald v. Codex Corp., 882 F.2d 586, 589 (1st Cir.1989); see also Simonton v.*

*Runyon, 232 F.3d 33, 36-37 (2d. Cir.2000).* In Quiles v. Potter  439 F.3d 1, the First Circuit held

that: *"Subject to some policing at the outer bounds, [the hostile environment question] is . . . to be resolved by the trier of fact on the basis of inferences drawn from a broad array of circumstantial and often conflicting evidence." Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 474 (1st Cir.2002) (quotation marks omitted); see also Marrero, 304 F.3d at 19."* 439 F.3d 1. In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed.2d 106 (2002), the Supreme Court clearly distinguished between the relief available in claims concerning discrete acts of employment discrimination and in claims concerning a hostile work environment.

The Supreme Court noted that Morgan's claim for hostile work environment was different, however, because claims of a hostile work environment generally focus on non-economic or intangible harm and "[t]heir very nature involves repeated conduct." *Id.* at 2075. The Court went on to hold that because a hostile work environment presents a single claim that the workplace is permeated with discriminatory "intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," if a single act occurs within the applicable filing period, the entire claim is timely filed.

> "In determining whether an actionable hostile work environment claim exists, we look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id., at 23, 114 S.Ct. 367. To assess whether a court may, for the purposes of determining liability, review all such conduct, including those acts that occur outside the filing period, we again look to the statute. It provides that a charge must be filed within 180 or 300 days "after the alleged unlawful employment practice occurred." A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some

of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile work environment may be considered by a court for the purposes of determining liability." *National Railroad Passenger Corp. v.Morgan*, 122 S. Ct. at 1274.

According to the Supreme Court above to determine whether an actionable hostile work environment exist, the court must look: The frequency of discriminatory conduct, its severity, whether it is physically threatening or humiliating etc. Plaintiff fully complies with said definition. Discrimination and retaliation acts by Plaintiff's Supervisor Enrique López were by all means very frequent, threatening and they unreasonably interfered with Plaintiff work performance.

## Sex or Gender Discrimination

Defendant alleges on his motion that *"As to gender discrimination claim, Ms M. Irene's rotation into Morales' position was part of a rotation policy to cross train employees at the Caparra Station" "In addition, Plaintiff was a Window and Distribution clerk. By the very name and nature of such position it included duties at the window." also that "There was no testimony that Mayra Irene was awarded the business reply mail duties"* see Defendant's motion D.E. 437 page 31 and 32. Again, Defendant is hiding the truth. Contrary to Defendant's allegations there was ample testimony that rotation was a pretext to discriminate Plaintiff: *"Q. It has been brought to the… do you know if, regarding the duties of business reply mail that were made by Angel David, people rotated to do those duties? A. Normally they did not rotate"* (see D.E. 417 page 48 lines 8-12, plaintiff witness Howard Hall); *" Q. And the business reply duties, as you mentioned before, were done by Mr. Angel David Morales? Is that correct? A. Yes"* (see D.E. 417 page 48 lines 21-24); *"Q. And, do you know, for a fact, if you received… if you know… a directive from the management in order to rotate the business reply duties? A. At least in my case, they did not order me to rotate. Q. So, besides Angel*

*David Morales and later Mayra Irene, do you know any other person, if you can recall from your co-workers as Window Clerks, who rotated or did any business reply at the Caparra Station? A. No, when I arrived there, Angel David Morales was doing that. And, then, when Angel David would go on vacation, Hector Ortíz would work the vacation for him"* Plaintiff's witness Howard Hall at D.E. 417 page 49 line 21 thru page 50 line 10; *"Q. Okay, now you have…according to your testimony, Mr. Hall, you say that Ms. Irene arrived late. Is that correct? A. Yes, most of the time."* Howard Hall at D.E. 417 p. 47 lines 18-21; *"Q. So, Mr. Hall, according to your testimony, you say that Ms. Irene usually came late to work. Now, you're saying that the coffee breaks that she was taking were taken at the Supervisor's office? Is that correct? A. Yes Q. And, that Supervisor is Mr. Enrique López? A. Yes Q. Do you think that management at Caparra Heights Station, specifically Mr. López, had any preference with Ms. Mayra Irene, according to your standpoint of view, your opinion? A. Well, he did allow her all that. I don't know if he ever took any disciplinary measures against her. But, I would say yes."* Howard Hall at D.E. 417 p.56 line19 thru p.57 line 10. *"Q. Ms. Irene, at any time during your stay in Caparra, I ask you if you had problems of tardiness. A. That is correct. Q. Okay. So, I ask you if the problems that you had in – in – regarding the time, if those tardiness were frequent. A. Yes. There was a period of time in which I had frequently arrived late."* Defendants witness Mayra Irene at D.E. 428 p.14 lines 15-21. *"Q. Yes. Ms. Mayra Irene yesterday told us that she had personal problems and that she came frequently… that she had problems with tardiness. And, that that tardiness was frequently. Do you recall that? A. No, I don't.* Defendant's witness Supervisor Enrique López at D.E. 419 p. 179 lines 7-12. Plaintiff's Witness Howard Hall also testified that there were other employees in Caparra Station like Anselmo Alvarez, Luis Ramos, Luis Calderón and Antonio Hernández that were also Distribution and Window clerks same as Plaintiff but never were sent or rotated to do duties at the window (see D.E. 417 page 45 line10 thru page 46 line 12) also see D.E. 416 page 11-14. Plaintiff witness Raymond Ruiz testimony at D.E. 417 page 76 lines 12-19 say that; *"Well, several times Mr. Angel David Morales was relieved of his usual duties in his job and these duties were given to others. And, these were duties that he customarily*

*performed." "at the same time Enrique López used to say that he had not work for him".).*

But lets not lose the perspective here. Plaintiff was removed on May 18, 1996 from his duties as business reply mail clerk that Plaintiff had as a reasonable accommodation **in reprisal** for the filing of his EEO a few days before on April 25, 1996. Even assuming that Plaintiff duties were assigned to a male employee that does not change the fact that the removal was in reprisal for Plaintiff previous EEO activities. The fact that those duties were assigned to a female employee who has the preference of Supervisor Enrique López does not change the fact that this was retaliation.

## Defendant allegation that the jury award should be arbitrarily reduced to $42,000.00

Defendant's allegations here were never alleged during all the trial. This Honorable Court can verify this checking Defendants' allegations under the rule 50 during the trial. Moreover, Defendants' allegations are completely contradictory. First he alleges that Plaintiff did not suffer any mental anguish or emotional distress in consequence Plaintiff should not receive any compensation for this. On the other hand Defendant propose that Plaintiff should receive six months of pay at $7,000 for his mental anguish (see Defendant's motion pages 45-47) Defendant based his allegation in Defendant's psychiatrist Dr. Ramón Fortuño's testimony (see Defendant's motion D.E. 437 at page 46 and 47).

Lets examine the credibility of Defendant's expert witness Dr. Ramón Fortuño:

1) Dr. Fotuño accepted that he did not know what happened to Plaintiff from February 1997 thru June 2006 and to know that, it would be important (D.E. 428 page 59, lines 3-14)

2) He acknowledged that never saw the medical records of Plaintiff psychiatrist Dr. Guillermo Hoyos and that it would be important (D.E. 428 page 59 line 16 thru page 60 line 10)

3) Dr. Fortuño acknowledged that he doesn't know that Plaintiff was examined by other psychiatrists like Dr. Michael Woodbury, Dr. Ileana Fumero, Dr. Nestor Galarza and Dr. Ricardo Fumero and that it would be important to have the opinions of those Doctors (D.E. 428 page 60 line 19 thru page 63 line 4)

4) He acknowledged that not to know the procedures of the Office of Workers Compensation (O.W.C.P.) (D.E. 428 page 63 line 6-10)

5) Dr. Fortuño did not know if OWCP has other Doctors that have interviewed Plaintiff (D.E. 428 page 64 line 6-9)

6) Dr. Fortuño acknowledged that the most important information that he has from the answer to interrogatories is that Plaintiff was being compensated for an emotional condition (D.E. 428 page 65 line 7-20)

7) Dr. Fortuño incredibly did not know if he is the psychiatrist with the best knowledge of Plaintiff mental condition (D.E. 428 page 69 line 5-16)

8) Dr. Fortuño partially acknowledged that Plaintiff psychiatrist Dr. Hoyos has the most information regarding Plaintiff (D.E. 428 line 17 thru page 70 line 5)

9) Dr. Fortuño acknowledged that he do not know when Plaintiff problems in Caparra Heights Station began (D.E. 428 page 71 lines 4-21)

10) Dr. Fortuño accepted that beside Dr. Hoyos psychiatric report and Dr. Hoyos deposition, he doesn't have any more documents in relation to Plaintiff mental condition (D.E. 428 page 72 lines 2-11)

11) Dr. Fortuño accepted that he did not verify the information given by Plaintiff regarding the hostile work environment against Plaintiff that began in 1995. Also he acknowledged that it would be important for his report (D.E. 428 page 74 line 11 thru page 76 line 4)

12) Dr. Fortuño acknowledged that he did not verify any of the seven circumstances written in his report and supposedly alleged by Plaintiff (D.E. 428 page 76 line 6 thru page 77 line 18)

13) Dr. Fortuño acknowledged that he did not verify **any** of the information he included in his report (D.E. 428 page 77 line 19 thru page 78 line 10)

14) Dr. Fortuño accepted that he interviewed Plaintiff for just two hours (D.E. 428 page 78 line 19-21)

As this Honorable Court can verify, Defendants psychiatric expert witness credibility was discredited and impeached. This Honorable Court should disqualified Dr. Fortuño's testimony and therefore disregards Defendants' allegations.

## The Jury Verdict

This Honorable Court adopted Defendants' jury verdict form ad verbatim and not Plaintiff's (compare D.E. 388 and D.E. 405). In fact they are identical. It is a contradiction that Defendant is now complaining that the jury erred in his unanimous decision, when it was Defendant's verdict form the chosen one. The verdict form for the jury was very easy to understand as it is described, 1. Has plaintiff proven by a preponderance of the evidence that he was intentionally discriminated against by defendant on the basis of sex or gender? YES ____ NO ____ 2. Has plaintiff proven by a preponderance of the evidence that he was subjected by defendant to intentional discriminatory retaliation? YES____ NO____. It is impossible that the jury unanimously erred before those easy understandable questions.

## The Temporal Proximity to prove causal connection for retaliation

Defendant is alleging that seven months between Plaintiff's settlement of his EEO complaint on July 1995 and Plaintiff's EEO complaint on February 1996 are a long time to prove a causal connection for retaliation. As if there was a vacuum during the seven months where nothing happened to Plaintiff. One more time, Defendant is conveniently forgetting that there were several retaliation actions during those seven months that were presented at trial. During those seven months Plaintiff began to receive threats from other employees and management (see D.E. 421 pages 62-64 *"He (Rodríguez) started to treat me differently" "The treatment he gave me was hostile by Juan Rodríguez" "Q. And before that, how was the treatment that you received from him… before the EEO? A. I didn't receive any mistreatment because I had not filed anything" p.63 lines 1-13*; *"But when it was settled in my favor, they got worse. And strange and weird things started to happen to me which, at that time, I did not have a clear picture of what going on. Q. How strange? Can you… A. Like, for example, I started receiving threats from other employees, for free (sic)" p.64 lines 2-22; "Things, then got higher in tone. They became quite violent" p.65 line 23 thru p.66 line 3.* Moreover, the supervisors involved in Plaintiff EEO complaint during the settlement in 1995 were the same involved in Plaintiff's EEO complaint on February 1996; Supervisor Juan Rodríguez, Manager José Sepúlveda and later Supervisor Enrique López. In addition, Plaintiff witness uncontested testimony of Radamés Sierra testified that the changing of days off for the position where Plaintiff was interested was done **in reprisal** against Plaintiff (see joint exhibit VI, IX and Plaintiff exhibit 23 and 83, also see Plaintiff witness testimony of Radamés Sierra D.E. 417 pages 11-13; *"I, Radamés Sierra, employee at Caparra Heights, believe that the posting of position #2541417 was changed deliberately in reprisal towards Angel D. Morales." P.11 lines 5-9*). At all times, Management had knowledge of Plaintiff filing his EEO complaints since the EEO office contacted them (see

D.E. 421 page 88 line 19 thru page 89 line 4 *"Mr. Sevillano: Objection your honor. That calls for a conclusion. About management knowing" "The court: According to his testimony and the file sent by EEO, it was received by Mr. Enrique López and José Sepúlveda, who are management. So the objection is overruled"*). But above all, there was ample uncontested testimony from witnesses Raymond Ruiz, Alberto Otíz, Howard Hall, Efigenio Rivera and Plaintiff himself that testified that Supervisor Enrique López publicly announced that he was taking actions against Plaintiff for his EEO complaints. This means that Plaintiff not only have circumstantial evidence but direct evidence or the "smoking gun" to prove the causal connection.

Seven months elapsed between Plaintiff's protected activity (July 1995) and the adverse action in February 1996. Defendants' Motion states that the necessary causal link between the prior protected activity and the adverse action, as needed for the retaliation claim, did not occur due to this 7-month gap between both. They bring some cases to illustrate how the courts have reacted towards different time frames in retaliation cases. Most, if not all of the cases, presented the temporal proximity between the employer's knowledge of the protected activity and the adverse action as their ONLY evidence to establish a prima facie case. In these cases only has the court SUGGESTED the temporal proximity to be close. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (20 months suggested no causality at all).

The courts have ruled however that chronological proximity will not by itself establish causality where the "larger picture undercuts any claim of causation". Eaton v. Kindred Nursing Centers West, No. 04-131-B-W, 2005 U.S. Dist. Lexis 9545, at *28 (D. Me. May 19, 2005). They have well established that a narrow focus on these temporal proximities and causal links ignores the larger sequence of events and also the larger truth. Again they state, "the larger picture undercuts any claim of causation." Soileau v. Guilford of Maine, 105 F.3d 12, 16 (1st

Cir. 1997).

As stated by the Defendant's Motion, courts have established a causal connection in cases over a year of the time period between both actions. Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 377 n.4 (6th Cir. 1984) (Reversing judgment for defendant and remanding for further consideration of Title VII retaliation claim where discharge occurred nearly one and one-half years after complaint but pattern of retaliation allegedly began soon after complaint was filed.) It can't be clearer that whatever the time lapse between a plaintiff's participation in the protected activity and an employer's adverse action, and what raises an inference of reprisal, it all depends on the particular situation. Batson v. Powell, 912 F.Supp. 565. In O'Neal v. Furguson Construction Co., 237 F.3d 1248, 1253 (10th Cir. 2001), as stated by the Defendant's Motion in p.36: "3 months period insufficient". However Defendants' did not mention that in the same case: "Because O'Neal presented additional evidence from which a reasonable jury could find causation, this court need not to address whether two months and three weeks, by itself, is sufficient to support a prima facie case of retaliation." P. 1253. In Batson v. Powell, 912 F.Supp. 565 "However, the time lapse between a plaintiff's participation in the protected activity and an employer's adverse action, and what raises an inference of reprisal, depends on the particular situation." P. 576 fn 15. Harrison v. Metropolitan Government of Nashville and Davisdosn County, Tenn., 80 F.3d 1107, 1118-1119, 1996 FED App. 0113P (6th Cir. 1996). Plaintiff established causal connection between his discharge and his filing of discrimination charges with EEOC where discharge occurred one year and three months after filing EEOC charge, record revealed that three co employees feared retaliation because they had testified at plaintiff's hearing and that plaintiff's activities were scrutinized more closely than those of comparably situated employees and that defendants took every opportunity to make plaintiff's life as

employee unpleasant.

## Reply to Defendant Comparing Plaintiff case with other cases

Defendant in his motion compares Plaintiff case with other cases where the courts or the jury allegedly awarded less compensation to Plaintiffs who have suffered "allegedly more" than Morales. This is a futile exercise. We can quote to this Honorable Court several if not hundreds of cases where the jury or the courts has awarded bigger compensations to Plaintiffs that have suffered "less". This only proves that each jury makes their decisions based on their own values and the particular evidence presented in each trial. However, in this particular case it is almost impossible that the jury unanimously erred. They were people with different values, different social status and education that did not knew each other. All of them shared, reached and agreed unanimously to the same decision; that Plaintiff was discriminated and retaliated for Plaintiff EEO complaints. Notwithstanding this, Plaintiff is going to mention just two cases very related with Defendant within hundreds that could be mentioned to prove Plaintiff's point. There was a case where counsel Fidel Sevillano was directly involved; In Quiles v. US Postal Service 439 F. 3d 1, the jury awarded almost one million dollars ($1,000,000) due to Defendants' discrimination and retaliation. The US District Court reduced that amount to zero. The Court of Appeals Reversed and remanded the District Court (see 439 F. 3d 1). There was a very recent case (July 14, 2008) where the US Attorney in Puerto Rico represented Defendant, the US Marshall. The jury awarded one million three hundred and fifty thousand dollars ($1,350,000) for discrimination and retaliation when Defendant did not awarded a higher lever position to Michael W. Orr because of his national origin (see Puerto Rico District court case number 06-1775 Michael W. Orr v. Michael Mukasey). We can go on and on quoting hundreds of cases

very convenient to Plaintiff as the cases above shown and trying to decide whether they compare to Plaintiff case and why in a futile exercise. Defendant based his allegations here in that: *"Plaintiff did not consider suicide, or visit a psychotherapist, or suffer problems noted above"* see page 49 of Defendants' motion. Defendant does not lose time in trying to mislead this Honorable Court. It seems that Defendant was absent at the trial when Plaintiff brought his expert witness psychiatrist Guillermo Hoyos who testified that Plaintiff was under psychotherapy since February 5, 1997 for the last 11 years and that Plaintiff is under OWCP for his **mental condition** developed due to retaliation and discrimination. Also that Plaintiff has fleeting ideas of suicide (see Plaintiff psychiatrist Dr. Guillermo Hoyos **uncontested** testimony D.E. 417 p. 116-169).

## Consequences against Plaintiff for a new trial or Remittitur

This case has lasted more than 11 years of litigation and has passed between the hands of five judges due to the dilatory practices of Defendants'. Now that a jury finally has found by unanimous decision that Plaintiff was subject of discrimination and retaliation, Defendant request to this Honorable Court a new trial and/or Remittitur. Although Plaintiff recognize Defendant's right to make allegations under F.R.C.P. 50 and 59(a) and (e), Plaintiff want to point out a fact. During these eleven years some of Plaintiff witnesses have retired and have developed serious health conditions due to their age. A new trial will have a great risk to leave Plaintiff defenseless since exist a big possibility that Plaintiff would lose some of his witnesses due to illness's or death.

## Back pay, Front Pay and OWCP

Defendant's allegations regarding Back pay, Front Pay and OWCP are a rehashed version of

Defendants' docket 422. They are the same allegations alleged in D.E. 422 almost ad verbatim. Plaintiff reaffirms the arguments set forth at D.E. 413, D.E. 429 and D.E. 436 (the latter D.E. 436 was never replied by Defendant).

## Postal Inspector Position

It is Plaintiff's respectfully position that this Honorable Court erred when precluded Plaintiff to present at trial all the evidence regarding Plaintiff's affirmative steps to get a US Postal Inspector position.

## Summary

Defendant based his whole motion in the three issues that the Court of Appeals wrongfully quote from Plaintiff two EEO formal complaints and not from the correct decision made by the COA; that *"We agree with USPS that Morales's Title VII cause of action is limited to those discrimination and retaliation allegations in his amended complaint that were previously the subject of a formal EEO complaint"* 339 F.3d 9. Therefore Defendant motion is all wrong since it started with the wrong premise. As stated in the beginning of this reply, Defendant never opposed or made any objection during all the trial when this was explained to this Honorable Court. Therefore this Honorable Court made the ruling to allow Plaintiff to present almost all the factual background regarding Plaintiff formal EEO complaints without the objection of Defendants'.

**WHEREFORE,** it is respectfully requested from this Honorable court to deny Defendant's motion D.E. 437 under F.R.C.P. 50 and 59(a)(e). To partially set aside Opinion and Order D.E. 430 and 431 and to award Plaintiff back pay and front pay according with Plaintiff expert economic report; $834,462.00 plus interest for back pay and $521,705.00 for front pay as

alleged in Plaintiff uncontested motion D.E. 436 which was never replied by Defendant.

**RESPECTFULLY SUBMITTED.**

    **I HEREBY CERTIFY** that on July 23, 2008, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF System which will send notification of such filing to the

following: **Fidel A. Sevillano-Del Río, Esq.**, Assistant U.S. Attorney, Federico Degetau Federal

Build., 150 Carlos Chardón Av., Hato Rey, Puerto Rico 00918.

                        S/MIGUEL E. MIRANDA-GUTIERREZ
                        **MIGUEL E. MIRANDA-GUTIERREZ, ESQ.**
                        ATTORNEY FOR PLAINTIFF
                        PO Box 192271
                        San Juan, Puerto Rico 00919-2271
                        TEL: (787) 282-0022
                        FAX: (787) 753-7655