IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANGEL DAVID MORALES-VALLELLANES,

Plaintiff,

v.

CIVIL NO. 97-2459(GAG/CVR)

UNITED STATES POSTAL SERVICE,

Defendant.

## OPINION AND ORDER

## INTRODUCTION

On December 21, 2007, plaintiff Angel David Morales-Vallellanes ("Morales-Vallellanes") was favored after a jury trial with a Title VII discrimination verdict against defendant United States Postal Service ("USPS") in the amount of $500,000.00.[1]

On April 16, 2008, this Court issued an Opinion and Order ruling on plaintiff Morales-Vallellanes' post-trial motion as to back and front pay. In said Opinion, we considered plaintiff Morales-Vallellanes' earnings for the last eleven (11) years, and that he may be finally discharged from disability under the Workers' Compensation Program ("OWCP") which is 66 2/3% of his salary, tax free, with no mandatory deductions, as well as a set-off of benefits already received,[2] for which back pay was awarded from 1997 through 2008 for a total of $64,504.00, plus interest. Front pay was not awarded. As such, the equitable relief allowed

---

[1] The jury determined plaintiff proved he was intentionally discriminated by defendant on the basis of sex or gender and he was also subject of intentional discriminatory retaliation. (Docket No. 405). Upon request from the government, the amount of damages was reduced to $300,000.00, since recoup against the government is capped. (Docket No. 403).

[2] Considering the testimony and calculations of the expert witness' opinion, the estimated yearly gross income of $46,654.00 was the value amount of the disability payments received by plaintiff, before taxes.

<u>Angel David Morales Vallellanes v. U.S. Postal Service</u>
Civil No. 97-2459 (GAG-CVR)
Opinion and Order
Page No. 2

in the post-trial judgment requests was for a total of $64,504.00, plus interest.  (Docket No. 430).

The government thereafter filed a Motion to Set Aside the Verdict and under Rule 50 and 59(a) and (e).  (Docket Nos. 436 and 437).  After several extensions of time, plaintiff filed its Supplemental Motion to Partially Set Aside and a Response in Opposition to Set Aside Verdict (Dockets Nos. 440, 441).

Upon careful consideration of the submissions of the parties and the applicable law, defendant USPS's "Motion to Partially Set Aside" and under Rule 50 and 59(a) and (e) (Docket Nos. 436 and 437) are DENIED and plaintiff's Motion to Set Aside Judgment (Docket No. 440) is GRANTED IN PART AND DENIED IN PART, solely as to the amount of back pay that is amended to conform with the evidence as modified by the government's expert witness in considering plaintiff's civil status incorrectly.  We shall briefly explain.

## ANALYSIS

Defendant USPS is requesting a determination that no reasonable jury could have found for plaintiff Morales-Vallellanes as to the gender and retaliation claims and to set aside the jury award in the amount of $500,000.00, later reduced to the legal cap of $300,000.00.  Defendant USPS argues plaintiff Morales-Vallellanes did not prove his case of sex or gender discrimination and for retaliation by preponderance of the evidence and that, although its Rule 50 motion for judgment as a matter of law was denied initially and once it was renewed, the verdict should now be set aside or new trial be granted.

Defendant USPS also avers the verdict in favor of plaintiff Morales-Vallellanes should be subject of remittitur because the jury verdict is excessive and against the weight of the evidence.

Angel David Morales Vallellanes v. U.S. Postal Service
Civil No. 97-2459 (GAG-CVR)
Opinion and Order
Page No. 3

Defendant also considers the alleged retaliation, for making safety complaints to the Department of Labor, is not covered under the Civil Rights Act of 1964, as amended in 1991 and for which reason there is no actionable cause of action as to plaintiff Morales-Vallellanes' discrimination claim.[3]

**A.  Judgment as a Matter of Law - Rule 50 (b)**.

Defendant requests to set aside the jury verdict and to enter judgment as a matter of law.

Rule 50(b) states:

(b) Renewing Motion for Judgment After Trial; Alternative Motion for New Trial. If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment-and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:
(1) if a verdict was returned:
(A) allow the judgment to stand,
(B) order a new trial, or
(C) direct entry of judgment as a matter of law; or ...

In ruling upon this motion for judgment as a matter of law it has been held that "[a] court is without authority to set aside a jury verdict and direct the entry of a contrary verdict unless the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." Keisling v. SER-Jobs for Progress, Inc., 19 F.3d 755, 759-60 (1st Cir. 1994). Moreover, in determining if the standard

---

[3] In support of this proposition, defendant USPS submits the ruling in Michael G. Ypsilantis v. Department of Labor, Appeal No. 01A05062 (March 27, 2001), where the Equal Employment Opportunity Commission construes Title VII regulation as not covering non-EEOC based protected activity.

has been met, the court is required to examine the evidence in the light most favorable to the

non-moving party, and the non-moving party is entitled to "the benefit of all inferences which

the evidence fairly supports, even though contrary inferences might reasonably be drawn." *Id.*

at 760 (*quoting* Cochrane v. Quattrocchi, 949 F.2d 11 (1st Cir. 1991)).

The standard for setting aside a jury verdict pursuant to Fed.R.Civ.P. 50(b) is a stringent

one: the Court must deny the motion for judgment as a matter of law unless the evidence,

together with all reasonable inferences in favor of the verdict, could lead a reasonable person

to only one conclusion, namely, that the there is a total failure of evidence to prove plaintiff's

case. *See* Vázquez-Valentín v. Santiago-Díaz, 385 F.3d 23, 29 (1st Cir. 2004); Lama v. Borrás,

16 F.3d 473, 477 (1st Cir. 1994). In reviewing the record, the Court will evaluate neither the

credibility of the witnesses nor the weight of the evidence. Vázquez-Valentín, 385 F.3d at 29;

Santiago-Negrón v. Castro-Dávila, 865 F.2d 431, 445 (1st Cir. 1989).

Defendant USPS avers the only evidence the jury could have considered to justify its

verdict evolves:

First, only evidence of the three available claims, and not the plethora of claims,[4] was

to be considered as to retaliation for the change in rest days, the sexual or gender discrimination

allegation that involved Ms. Mayra Irene and the claim that the coffee break policy by defendant

was not applied in an equal and nondiscriminatory manner.

---

[4] Defendant's Motion to Set Aside Verdict and under F.R.C.P. 50 and 59 (a) and (e), pp. 9-10 (Docket No. 437).

Angel David Morales Vallellanes v. U.S. Postal Service
Civil No. 97-2459 (GAG-CVR)
Opinion and Order
Page No. 5

Secondly, defendant argues that, since plaintiff Morales Vallellanes was not fired, suspended, demoted, or otherwise suffered any adverse personnel action, continued to enjoy having Sundays and Mondays off as rest days and any change in rest days were due to business reasons or operational needs, no tangible harm or loss under Title VII would have allowed him to prevail on the jury award. Defendant claims plaintiff's evidence for discrimination as to the change of rest days for the upcoming position that he bid on, which was later changed, or as to the seniority or qualifications entailed to award the position, were but pure speculation and did not meet the definition of adverse action for the jury to have granted such an award. Still, the jury found otherwise and awarded monetary compensation upon a finding of discrimination.

The verdict form filled out by the jury indicated plaintiff had proven that (1) he was intentionally discriminated against by defendant on the basis of sex or gender; (2) he was subjected by defendant to intentional discriminatory retaliation. The amount of compensatory damages awarded for both (1) and (2) components was found to be $500,000.00. (Docket No. 405).

Defendant has once more submitted plaintiff Morales-Vallellanes should not be entitled to a cause of action for his claim of retaliation since the grounds submitted in support refers to some OSHA violations he filed and these are not the protected activities contemplated by statute. This argument was previously raised in defendant USPS' motion for summary judgment (Docket Nos. 244, 245) and was denied as presenting genuine factual disputes in controversy. (Docket No. 270).

Angel David Morales Vallellanes v. U.S. Postal Service
Civil No. 97-2459 (GAG-CVR)
Opinion and Order
Page No. 6

On one hand, defendant USPS argues legal grounds to dismiss plaintiff Morales-Vallellanes' claim of retaliation because his OSHA complaints are not to be considered protected activity under Title VII since Section 631 does not entail retaliation for OSHA complaints.[5] At first glance, there is an expansive nature of the rights to be free from retaliatory actions by an employer, including the federal employers, when the Highest Court of this nation ruled in Gómez-Perez v. Potter although specifically as to ADEA [age discrimination] retaliation related claims.[6] Prior Supreme Court decisions had found that claims of retaliation were covered by anti-discrimination statutes. See Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400 (1969); Jackson v. Birmingham Bd. of Ed., 544 U.S. 167, 125 S.Ct. 1497 (2005).[7]

On the other hand, and rather dispositive of the defendant's contention, although OSHA claims were grounds for plaintiff Morales-Vallellanes' complaint as to the change in rest days for the position published, whether these are considered to be or not covered by the federal cause of action filed, plaintiff had also filed an EEO pre-complaint based on retaliation because of having changed the rest days of a position he was interested. Thereafter, he filed a formal EEO complaint based on retaliation for the changes made as to the rest days for the position at issue.

---

[5] 29 USCA §660(2) -any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such violation.

[6] See Gomez-Perez v. Potter, – U.S. –, 128 S.Ct. 1931 (2008) (certiorari granted and vacating summary disposition when favoring defendant's arguments the federal-sector provision does not reach retaliation for an ADEA claim).

[7] Retaliation covered by vindication under §1981 [race discrimination] as to rights of minorities and Title IX covers retaliation related to discrimination under any education program [education rights and federal funds involved programs], respectively, which evidently includes discrimination on account of having complained about discrimination. Gómez Pérez v. Potter, 128 S.Ct. at 1937.

Angel David Morales Vallellanes v. U.S. Postal Service
Civil No. 97-2459 (GAG-CVR)
Opinion and Order
Page No. 7

For these reasons, the OSHA claims were not the only grounds for the rights to be vindicated but rather a more general non-itemized rights covered by EEO complaints and Title VII.[8]

Thus, these retaliatory actions regarding OSHA and/or EEO based complaints are commingled and can hardly be differentiated. For this reason, defendant's argument that, retaliation for the actions taken by defendant USPS regarding protected activities refer solely to OSHA claims, is not supported by the record nor by the findings of the jury.[9]

**B.  Plaintiff is Precluded from Relief for Constructive Discharge and Emotional Distress.**

Defendant USPS also submits that, under the Court of Appeals for the First Circuit previous remand,[10] plaintiff Morales-Vallellanes was precluded from presenting claims, except for three limited controversies therein enunciated; 1) retaliation for change in rest days, 2) sexual or gender discrimination allegations, and 3) the claim of discriminatory and unequal application of break policies. Thus, anything outside this scope should not have been factored in the liability phase of the case nor in the remedial phase, including equitable relief, that is, when grating or not front and back pay.

---

[8] In Gómez Pérez v. Potter, the Highest Court stated not being persuaded with defendant's contention of a clear difference between a cause of action for discrimination and a cause of action for retaliation. Id. at 1938. Further, whether Congress created or not a private right of action should not be construed as a justification for narrowing the scope of the underlying prohibition, which would otherwise suggest the interpretation t hat Congress could have perceived a need for a strong remedy. Id. at 1938.

[9] The record also shows plaintiff Morales-Vallellanes' gender and sex discrimination for having been removed from his assigned duties and replaced by a female employee, was a reprisal by supervisor López for the filing of an EEO complaint. The jury determined the issues of credibility on this issue and found discrimination.

[10] Morales-Vallellanes v. Potter, 339 F.3d 9 (1st Cir. 2003).

Angel David Morales Vallellanes v. U.S. Postal Service
Civil No. 97-2459 (GAG-CVR)
Opinion and Order
Page No. 8

Accordingly, defendant USPS argues that plaintiff Morales-Vallellanes was precluded from presenting evidence of constructive discharge. To this effect, defendant claims constructive discharge would have required, absent any jury instruction as to constructive discharge or relief thereunder, proof of severity and/or pervasiveness of harassment events to warrant the verdict returned in this case and such evidence was not presented in this case.

Defendant avers the Court of Appeals determined the emotional distress claim was not sufficient as it did not rise to the level of extreme and outrageous, for which this claim fails as a matter of law. These rulings by the Court of Appeals precluded plaintiff Morales-Vallellanes from seeking any relief for constructive discharge and for emotional distress and would also preclude this Court from granting any equitable relief as to back and front pay.

The above argument is consonant with the Court of Appeals prior determination if determined under the narrow scope presented by defendant USPS. Yet, equitable relief may have also attached to the prevailing jury verdict regarding the existence of discrimination and retaliation as can reasonably be ascertained from the jury verdict form which was agreed upon by both parties prior to submitting same to the jurors, as well as the instructions.

Although defendant USPS submits the jury could not have found such amount of damages in the absence of any emotional distress and constructive discharge claims, since it was precluded from considering same, the fact remains on the record the jury indeed rendered a verdict in the amount of $500,000.00, that was capped at $300,000.00, as

required based on the evidence of sex and gender discrimination and for retaliation submitted and considered by them and so expressed in the verdict form.

The instructions provided to the jury were also clear and agreed upon by the parties in that:

Jury Instruction No. 8 - Title VII is not a general activity code for the American workplace and does not prohibit all verbal or physical harassment. The statute only prohibits harassment if it constitutes discrimination with respect to the "terms, conditions, or privileges of employment. Thus, Title VII is violated only "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment... Title VII does not make actionable the ordinary tribulations of the workplace."

The jury was properly instructed as to their need to assess whether based on the evidence before them, a Title VII violation was proven.

The jury was further advised as to what actions they were to consider for purposes of plaintiff's claims. Jury Instruction No. 14A - ... plaintiff Morales' Title VII cause of action is limited to those discrimination and retaliation allegations in his amended complaint that were previously the subject of a formal EEO complaint to wit; 1. Morales' allegation that Job Bid #2541417 was posted with Thursday/Sunday rest days rather than Saturday/Sunday rest days in retaliation for plaintiff's OSHA complaints; 2. Morales' allegation of sexual discrimination and retaliation arising on April 9, 1996, incident in which plaintiff's duties and

Angel David Morales Vallellanes v. U.S. Postal Service
Civil No. 97-2459 (GAG-CVR)
Opinion and Order
Page No. 10

responsibilities were awarded to a female employee and he was given window clerk duties to perform; 3. Morales' allegation that the 'coffee and lunch break's policy' was not applied in an equal and nondiscriminatory matter.

Although defendant USPS has argued the OSHA component of the complaint regarding change in rest days, the complete jury instructions 14A above also made reference to those allegations that were subject of a formal EEO complaint not solely to OSHA.

The jury was also instructed to consider whether the discrimination and retaliation was the motivating factor or if the defendant USPS's reason for employment actions as to plaintiff Morales-Vallellanes were valid and nondiscriminatory. See Jury Instruction No. 15.

In light of the verdict rendered, it is a reasonable inference that the jury chose to consider defendant's reasons as pretextual.[11]

The necessary components of a *prima facie* Title VII retaliation claim was provided to the jury in Jury Instruction No. 16. Plaintiff had to show, the following: 1. participation in a protected activity known to the employer; 2. adverse employment action taken against plaintiff; and 3. causal connection between the protected activity and the adverse employment action. The shifting of the burden when a prima facie case is established to defendant to articulate a legitimate, nondiscriminatory reason was also therein included. Once defendant had dispelled the inference of retaliation by establishing a legitimate, nondiscriminatory reason, the plaintiff can still prevail if the plaintiff demonstrates that the

---

[11] We presume juries understand and follow the court's instructions. United States v. Kornegay, 410 F.3d 89, 97 (1ˢᵗ Cir. 2005).

articulated reason was a mere pretext for discriminating and/or retaliating. The jury assessed the evidence and is considered to have followed the instruction and found for plaintiff Morales-Vallellanes in the discrimination and retaliation items of their verdict form.

The parties further agreed to include instructions No. 17 as to poor management decisions not being ground for Title VII, only those decisions intentionally based on impermissible factors. It was also instructed that personality conflicts or personal animosity was not a form of discrimination. See Jury Instruction No. 18.

Defendant argues as to the damages amount awarded by the jury, yet the jury was instructed that plaintiff could not recover for stress caused by litigation. Jury Instruction No. 19. The employment adverse actions giving grounds to a Title VII claims were also part of the instructions. See Jury Instruction No. 20. The jury was to award the damages, if any, they so determined as reasonable compensation and to consider damages only if necessary. Jury Instructions No. 21, 22. See also instructions on Conduct and Damages Separate and Distinct Issue (No. 23) and Damages for Injury in Fact (No. 24). Both parties also agreed as to the Proximate Causation of said Damages instruction as proper (No. 25), as being those reasonable and not speculative (No. 27).

As such, the jury had the adequate frame of evidence to assess and to make the corresponding credibility determinations. The jury followed the instructions provided by the Court and as agreed upon by the parties, to fulfill their delegated duties and determine liability pursuant to statute and the compensation deemed adequate.

Angel David Morales Vallellanes v. U.S. Postal Service
Civil No. 97-2459 (GAG-CVR)
Opinion and Order
Page No. 12

### C. Amended Formula for Equitable Relief - Back Pay.

In the alternative, defendant USPS indicates that its own expert witness, Dr. Mohinder Bhatia, acknowledged he made a mistake in his calculations for being under the impression plaintiff Morales-Vallellanes was a married man and, thus, wrongfully calculated benefits in 75% as the OWCP annual payment. The amount considered by the Court of $39,389.00 is the 75% of the $52,518.00 and not the 66 2/3% this Court should have considered in its Opinion and Order. Thus, the amount of back pay should be amended to conform to the correct formula.

In fact, the Opinion and Order indeed considered that Dr. Mohinder Bhatia's testimony revealed the figure to be used to estimate equitable back pay, including the set-off from OWCP benefits as well as that these benefits were free from any withholdings and taxes. He also considered fringe benefits in his calculations. *Tr. pp. 16-30, Docket No. 419.*[12]

Documentation and testimony assessed in this Magistrate Judge's prior Opinion and Order indicated the total figure regarding the benefits paid and already received by Morales-Vallellanes was two hundred seventy three thousand six hundred sixty five dollars with twenty one cents ($273,665.21), tax free, and without any withholdings, as well as some medical payments of twelve thousand seven hundred and ninety six dollars with nineteen cents ($12,796.19). *Tr. p. 31-32.* Based on the adjustment of growth of three point one percent (3.1%), plaintiff's adjusted salary would be fifty two thousand five hundred and eighteen dollars

---

[12] Health plan employer's contributions were estimated close to eight hundred three dollars with seventy six cents for the year 1998. *Id. p. 17.* However, sick leave and vacation or annual leave are already calculated in the salary. Id. p. 21-23.

($52,518.00). Annual payments of OWCP are thirty nine thousand three hundred eighty nine dollars ($39,389.00), which if taxable [if divided by ninety point one percent], would increase to forty three thousand eighty five dollars ($43,085.00). *Id. pp. 36-37.* This figure would then be divided by 92.35% to yield an estimated yearly gross income of $46,654.00 being the value amount of the disability payments received by plaintiff Morales- Vallellanes. *Id. pp. 41-42.*

Thus, in our previous Opinion and Order we took and considered $52,518.00 of adjusted yearly salary and reduced from same the total estimated yearly income of $46,654.00 (being the value amount of the disability payments received), the corresponding back pay resulted in an annual difference of $5,864.00, which multiplied by eleven (11) years, from 1997 through 2008, yielded a total $64,504.00, plus interest. Accordingly, the amount of $64,504.00, plus interest, was then estimated as the amount to be granted to plaintiff Morales-Vallellanes as equitable relief for back pay.

Nevertheless, the government correctly has now indicated that its own expert witness, Dr. Bhatia, acknowledged having considered plaintiff Morales-Vallellanes as being a married individual, instead of his single status, which is the correct one. The formula would thus have changed and the figure needs to be examined as back pay should be modified accordingly.

Thus, we now determine the award of back pay under the amended criteria. Incorporating all the findings and determinations of our previous Opinion and Order, we so rule and thus find the award of back pay should be as explained herein below.

Based on the adjustment of growth of three point one percent (3.1%), plaintiff's adjusted salary would be fifty two thousand five hundred and eighteen dollars ($52,518.00).

Annual payments of OWCP at 66 2/3% were for thirty four thousand nine hundred seventy seven dollars ($34,977.00), which if taxable would increase to thirty eight thousand eight hundred twenty dollars ($38,820.00) [$34,977.00 ÷ 90.1 x 100]. This figure would then be divided by 92.35% to yield an estimated yearly gross income of $42,036.00 being the value amount of the disability payments received by plaintiff Morales- Vallellanes. *Id. pp. 41-42.*

Thus, considering $52,518.00 of adjusted yearly salary and reduced from same the total estimated yearly income of $42,036.00 (being the value amount of the disability payments received), the corresponding back pay would result in an annual difference of $10,482.00, which multiplied by eleven (11) years, from 1997 through 2008, yielded a total $115,302.00, plus interest.

Accordingly, the amount of **$115,302.00, plus interest,** would be the adjusted amount to be granted to plaintiff Morales- Vallellanes as equitable relief for back pay.

**D. New Trial or Remittitur.**

Defendant USPS further submits plaintiff's jury award required the jury to consider only the three claims allowed by the Court of Appeals on remand. Thus, the award should be no more than $42,000.00, and this Court should grant remittitur as any recovery for the minimal damages suffered, if any, that plaintiff would have endured solely for six months maximum, at the rate of $7,000.00 per month. Remittitur of the capped amount is thus requested to be no more than $42,000.00.

<u>Angel David Morales Vallellanes v. U.S. Postal Service</u>
Civil No. 97-2459 (GAG-CVR)
Opinion and Order
Page No. 15

"Remittitur is defined as the process by which a court compels a plaintiff to choose between the reduction of an excessive verdict and a new trial." *See* <u>Shu-Tao Lin v. McDonnell Douglas Corp.</u>, 742 F.2d 45 (2nd Cir. 1984). If the court considers that a jury's verdict is excessive, it may condition the grant of a new trial on the victorious party's refusal to accept a reduced verdict. The court cannot enter a judgment with the reduced verdict without the party's consent. Because remittitur presents a direct interference with the jury's prerogatives, the court limits its concession to the situations in which the award "shocks the judicial conscience". *See* <u>Earl v. Bouchard Transp. Co., Inc.</u>, 917 F.2d 1320, 1328 (2nd Cir.1990). "[T]he question [is] whether the amount of damages found by the jury is so excessive and exorbitant as to show passion and prejudice on the part of the jury." *Id*.

Defendant USPS also argues that if the Court adopts the testimony of Dr. Ramón Fortuño as to the adjustment disorder not lasting more than six (6) months after the stressor actions had finished, not the eleven year period plaintiff Morales-Vallellanes has been out of employment, plaintiff should have left behind whatever happened to him at the Caparra Station within said short time period and compensation accordingly should not exceed the $42,000.00 proposed.   Precisely because the jurors' assessment of damages in this case, a six month compensation time as proposed by defendant would be also speculative.

Insofar as defendant's request for new trial, Rule 59(a) allows the Court to order a new trial, upon a party's or its own motion, "for any of the reasons for which new trials have heretofore been granted." Fed.R.Civ.P. 59(a); *see also* <u>Taber Partners I v. Insurance Corp. of</u>

North America Inc., 917 F.Supp. 112, 116 (D. Puerto Rico 1996) *affd*. 121 F.3d 695 (1st Cir. 1997).

    The motion for a new trial may invoke the discretion of the court in so far as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of the alleged substantial errors in admission or rejection of evidence or instructions to the jury. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189 (1940). The Court may grant a new trial although it has denied the entry of judgment as a matter of law under Fed.R.Civ.P. 50, China Resource Products (U.S.A.) Ltd. v. Fayda Intern., Inc., 856 F.Supp. 856, 862 (D. Del.1994), or even when substantial evidence supports the jury's verdict, Lama v. Borras, 16 F.3d 473, 477 (1st Cir. 1994). Instead, a new trial "should only be granted where a 'miscarriage of justice would result if the verdict were to stand,' the verdict 'cries out to be overturned,' or where the verdict 'shocks our conscience.' " Smith v. Delaware Bay Launch Service, Inc., 842 F.Supp. 770, 778 (D. Del. 1994) (quoting Cudone v. Gehret, 828 F.Supp. 267, 269 (D. Del. 1993)).

    The Court does not enjoy unbridled freedom to grant new trials, because a jury verdict may only be overturned in the most compelling of circumstances." Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors, 850 F.2d 803, 811 (1st Cir. 1988). Indeed, "[t]he obstacles which stand in the path" of claims of excessiveness "are formidable ones." Smith v. Kmart Corp., 177 F.3d 19, 29 (1st Cir. 1999)(quoting Wagenmann v. Adams, 829 F.2d 196, 215 (1st Cir. 1987)). A jury award should not be disturbed only because "it is extremely generous or

because ... [the Court] think[s] [that] the damages are considerably less...." <u>Diefenbach v. Sheridan Transp.</u>, 229 F.3d 27, 32 (1st Cir. 2000) (quoting <u>Koster v. Trans World Airlines, Inc.</u>, 181 F.3d 24, 34 (1st Cir. 1999)). The jury's assessment of damages will not be disturbed unless it is "grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand." <u>Correa v. Hospital San Francisco</u>, 69 F.3d 1184, 1197 (1st Cir. 1995); <u>Koster v. Trans World Airlines, Inc</u>., 181 F.3d at 34; <u>Smith v. Kmart Corp</u>., 177 F.3d at 30.

Only if the Court grants remittitur and plaintiff fails to accept same, would a new trial be warranted.

Foremost, jury verdicts are to be respected and sustained if supported by the evidence and when not grossly excessive or shocks the judicial conscience. At this juncture and having perused all the evidence of record, as well as the recollection of the two week trial and the evidence therein presented, this Magistrate Judge fails to find comfort in second-guessing the jury's determination when the record contains evidence wherein a reasonable jury could have reached a verdict based on same. Defendant USPS cannot properly argue there was a complete absence of evidence to support such verdict and nor does the record and the evidence reflect there is a miscarriage of justice under the Rule 59.

Succinctly, defendant USPS' request for judgment as a matter of law and/or for remittitur and/or new trial is DENIED.

Angel David Morales Vallellanes v. U.S. Postal Service
Civil No. 97-2459 (GAG-CVR)
Opinion and Order
Page No. 18

The request to consider the equitable relief is to be amended under the new formula above discussed.  As a result, back pay is amended and awarded in the amount of **$115,302.00, plus interest**, thus correcting the figure on said item determined in our prior Opinion and Order, which is otherwise incorporated and made part of this Order.  The remaining issues requested by defendant USPS and as above discussed are DENIED.

Finally, consonant with the above discussed evidence of record and applicable law, which need not require further discussion, plaintiff's Motion to Partially Set Aside Judgment is also granted in part and denied in part upon amendment to the amount of back pay. (**Docket No. 440**).[13]

## CONCLUSION

In view of the foregoing, defendant USPS's "Motion to Partially Set Aside" and under Rule 50 and 59(a) and (e) (Docket Nos. 436 and 437) are DENIED and plaintiff's Motion to Partially Set Aside Judgment is GRANTED IN PART AND DENIED IN PART.  (Docket No. 440).

The Clerk is to enter Amended Judgment accordingly, which is to be modified as to the award of back pay which shall be **$115,302.00, plus interest** .

---

[13] Plaintiffs prays to be granted back pay and front pay, plus interest, consonant with his expert's economic report, and as such set aside that part of the Opinion and Order at Docket No. 430.

Angel David Morales Vallellanes v. U.S. Postal Service
Civil No. 97-2459 (GAG-CVR)
Opinion and Order
Page No. 19

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th day of August of 2008.

                       s/**CAMILLE L. VELEZ-RIVE**
                         **CAMILLE L. VELEZ-RIVE**
                         **UNITED STATES MAGISTRATE JUDGE**